

Daniel Filor
Tel 212.801.6758
filord@gtlaw.com

**VIA CM/ECF**                                                                                            December 7, 2022

The Honorable Paul G. Gardephe
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

     **Re: *Azima, et al. v. Dechert, LLP, et al.*, Case No. 1:22-cv-08728 (PGG)**

Dear Judge Gardephe:

  We represent Defendants Amir Handjani, Andrew Frank and KARV Communications (collectively, "KARV Defendants") in the above-referenced matter. Pursuant to Part 4A of Your Honor's Individual Practices, we respectfully submit this letter to request a pre-motion conference in connection with the KARV Defendants' proposed motion to dismiss the Complaint, pursuant to F.R.C.P. 12(b)(1) and 12(b)(6). Plaintiffs do not consent to this motion.

  **I. Introductory Statement**

  Plaintiff Farhad Azima, along with companies in which he maintains an ownership interest, filed this action on October 13, 2022, alleging violations of RICO and RICO conspiracy against the KARV Defendants and several other parties. The causes of action arise out of an incident in 2016 in which Azima's computer accounts were purportedly hacked. The resulting UK litigation, using Azima's own documents and testimony, led to a finding of fraud against Azima. His RICO claims here are duplicative of that long-pending UK litigation, in which he is asserting counterclaims relating to the hacking and cover-up.[1] Indeed, Azima's § 1782 Petition asserted to this Court that the UK counterclaim's "actionable conduct" included "the publication of Mr. Azima's stolen data and efforts by the co-conspirators to conceal their actions [that] continued at [sic] through 2020." *Azima v. Handjani*, 21-mc-501 (PGG) (Dkt. 13) Reply at 8. In reliance on Azima's representation, Your Honor ruled that "Azima notes that his counterclaim asserts a hacking conspiracy that began in 2014, as well as efforts to conceal the hack that continued until at least 2020. (*See id.* at 7-8)," and granted discovery of Handjani for use in the UK proceeding. *Azima v. Handjani*, 21-mc-501 (PGG) (Dkt. 26) Order at 15. Shockingly,

---

[1] Grounds exist for the Court to dismiss or stay this action as a matter of international comity considering the pendency of that case. *E.g.*, *Kingstown Capital Management., L.P. v. Vitek*, 2020 WL 5350492 (S.D.N.Y. Sept. 4, 2020) (Cote, J.). That is particularly so not only because this case and the English case arise from the same transaction or occurrence, but because the claims here largely relate to allegations of litigation misconduct in that foreign proceeding, and the foreign court is best placed to evaluate those claims.

Greenberg Traurig, LLP | Attorneys at Law
One Vanderbilt Avenue | New York, New York 10017 | T +1 212.801.9200 | F +1 212.801.6400

www.gtlaw.com

Hon. Paul. G. Gardephe
December 7, 2022
Page 2

Azima's present Complaint tries to distance its allegations from the UK litigation and especially the § 1782 Petition, by inconsistently alleging, "[t]he UK case seeks damages for the 2016 hacking of Azima. This Complaint seeks damages for conduct that post-dates the 2016 hacking. In effect, the UK case focuses on crimes that occurred in or about 2016, while this Complaint focuses on efforts to cover-up those crimes." (Compl., n.2).

The Complaint's 244 pages of meandering allegations are indicative of the misuse of the RICO statute by many civil plaintiffs; a practice long discouraged by the courts. *E.g.*, *Gross v. Waywell*, 628 F. Supp. 2d 475, 480-81 (S.D.N.Y. 2009). This case is particularly egregious because it is litigation over litigation: it improperly tries to criminalize civil litigation conduct—in a foreign civil proceeding, at that—and asserts damages that are not cognizable under RICO and which it does not link to the alleged predicate acts.

The KARV Defendants thus seek to dismiss the Complaint in its entirety based upon Azima's failure to satisfy the pleading requirements under 18 U.S.C. § 1962(c) and (d). The Complaint is, first, deficient because it improperly lumps the KARV Defendants in with the purported conspiracy. Regarding Frank, a communications executive, and his company KARV, the Complaint principally alleges that they helped create an "action plan" in 2016, before the limitations period, and alleges no overt acts to further the conspiracy after that time. Handjani is merely alleged to have repeatedly denied involvement in the hacking, which is precisely the kind of litigation conduct that the Circuit has held cannot ground a RICO claim. *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018). He is also alleged to have arranged payment to a witness in a separate English case, but that is a different action to which these Plaintiffs are not parties, and those allegations cannot support civil RICO claims asserted by Plaintiffs. *See* Compl. ¶ 174.

The Complaint suffers from multiple RICO deficiencies. To survive dismissal, a civil RICO plaintiff must make out a pattern, an enterprise, and damages proximately caused by the actions of the Defendants within the four-year statute of limitations. *See, e.g., El Omari v. Buchanan,* 2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021) (dismissing similar case against some of these same defendants for failing to plausibly allege civil RICO), *aff'd*, 2022 WL 4454536 (2d Cir. Sept. 26, 2022). While the alleged 2016 computer hacking is the foundation on which Plaintiffs build their shaky house, hacking is not a predicate act under RICO. Plaintiffs try to circumvent this fatal flaw by labyrinthine but futile pleading. Their mail, wire and bank fraud allegations detail a scheme purportedly intended to make Azima spend his money paying for lawyers to pursue claims for him, but that is not a cognizable claim to obtain "money or property" through fraud. <u>Nowhere does he allege that any defendant obtained or even schemed to obtain any of Azima's money or property</u>. The obstruction and witness tampering claims deal with foreign litigation, are impermissibly extraterritorial, and/or are premised on non-actionable conduct under the Second Circuit's well-established litigation activities exception.

Any alleged injury is due to the purported computer hacking of Azima more than four years ago—not to "new and independent" conduct—and RICO's four-year limitations period has therefore run. Moreover, none of the asserted damages are cognizable under RICO, nor are they proximately caused by the actions of the KARV Defendants. RICO allows claims only for injury to business or property proximately caused by the predicate acts at issue, and Plaintiffs seek

damages for reputational injury, which is not allowed, and for lost profits in prospective real estate ventures and voluntary legal expenses which are not proximately caused by the conduct alleged. The Complaint additionally fails to allege a plausible enterprise and fails to tie the KARV Defendants to any conspiracy and should be dismissed.[2]

**II. Grounds for Dismissal**

We anticipate that the motion would address at least the following deficiencies:

**A. No Predicate Acts by the KARV Defendants:** The Complaint fails against the KARV Defendants because its allegations do not tie them to any RICO violation. A plaintiff must allege a RICO claim as to each defendant individually. *United States v. Persico,* 832 F.2d 705, 714 (2d Cir. 1987). The only specific allegation against Frank and KARV within the limitations period is that KARV engaged in purported money laundering by receiving a monthly retainer. To constitute money laundering, payments must be made "with the intent to promote the carrying on of specified unlawful activity," 18 U.S.C. § 1956(a)(2). Azima's allegations are conclusory and boilerplate, as he identifies no "specified unlawful activity" to which the retainer payments relate, and as such he fails to state a claim against Frank and KARV.

As for Handjani, Azima's claim is that (a) in ongoing litigation, he denied involvement in the 2016 computer hack; and (b) he was involved in efforts to pay a witness in separate English litigation. Both claims fail because neither the Plaintiffs nor the KARV Defendants are parties in that separate English litigation, and the obstruction and witness tampering statutes require an official proceeding in the United States. *See* 18 U.S.C. §§ 1503, 1512 & 1515(a)(1); *e.g.*, *El Omari v. Buchanan*, 2022 WL 4454536, at *2 (2d Cir. Sept. 26, 2022) (allegations of "potential misconduct only in foreign proceedings and investigations"—the very proceedings at issue here—did not support RICO claim). The first theory further fails because RICO cannot be used to bring a collateral attack on "litigation activity." As a matter of Circuit law, a RICO claim cannot be premised on "proffering false affidavits and testimony." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018). And the latter theory cannot support claims against Handjani because they are wholly unrelated to Plaintiffs and did not cause them injury. *See Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO plaintiff must establish that the RICO offense proximately caused his injuries).

**B. No Pattern or Continuity:** A RICO claim that relies upon a single, limited fraudulent scheme does not satisfy the pattern requirement of 18 U.S.C. § 1961(5). *Crawford v. Franklin Credit Mgmt.*, 758 F.3d 473, 489 (2d Cir. 2014). The Second Circuit has held that allegations regarding "one scheme with one clear victim" do not suffice as RICO claims. *Grace Intl. Assembly of God v. Festa*, 797 F. App'x 603, 606 (2d Cir. 2019). In this case, the single incident of alleged misconduct was computer hacking, followed by continued efforts to deny or conceal involvement in it. *See* Compl. at ¶ 214. Concealment after achieving the central object

---

[2] While the KARV Defendants accept only well-pled allegations as true for purposes of a motion to dismiss, a review of the evidence would clearly establish that the allegations are baseless and wholly without merit.

Hon. Paul. G. Gardephe
December 7, 2022
Page 4

of a conspiracy is not a RICO predicate. *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 444 (S.D.N.Y. 2019). Concealment also does not satisfy the requirement of open-ended or close-ended continuity.  There is no open-ended continuity because Plaintiffs allege at best "an inherently terminable scheme, [which] does not imply a threat of continued racketeering activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) (quotation omitted). There is also no closed-ended continuity because Plaintiffs further allege that "the same misrepresentations" meant to conceal the 2016 hacking were repeated over and over, with only one victim affected.  *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004).

  **C.  Statute of Limitations:** Plaintiffs' claims fall outside of RICO's four-year statute of limitations.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012). The limitations period runs from the date that the injury at issue was discovered; it does not run from the discovery that the injury was part of a pattern of racketeering activity. *Rotella v. Wood*, 528 U.S. 549, 554 (2000). Azima alleges that his injury consists of harm to his reputation, legal fees incurred to defend himself in litigation, and injuries to his business by loss of financing/profits and disclosure of its business documents (all "incidental by products" of the alleged scheme). *See Kelly v. U.S.*, 140 S. Ct. 1565, 1573 (2020).  The Complaint makes it clear that Azima discovered these injuries in 2016, which is when he learned that his emails were hacked and made public, and when he first sued claiming harm from the hacking. Compl. ¶ 6. Any of the alleged acts thereafter purportedly in furtherance of the RICO scheme were related solely to concealment of involvement in the hack, *see* Compl. ¶ 5 n.2, and "efforts to conceal the initial" wrongdoing are "not separate and distinct [] acts resulting in new and independent injuries" for statute of limitations purposes. *In re Merrill Lynch Ltd. P'ship Litig.*, 154 F.3d 56, 59 (2d Cir. 1998). The fact that Azima continued to proactively litigate the issue beyond 2016 does not create a pattern and does not bring the RICO claims within the four-year statute of limitations.

  **D.  No Cognizable RICO Injury or Proximate Cause:** The damages Azima claims are not a cognizable RICO injury, because RICO allows recovery only for injury to a plaintiff's "business or property." 18 U.S.C. § 1964(c). Azima claims harm to his reputation and goodwill (*e.g.*, Compl. ¶ 245), but those are personal injuries not recognized under RICO. *See Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 459 (S.D.N.Y. 2004), *aff'd*, 173 F. App'x. 15 (2d Cir. 2006).  Azima also claims to have lost a financing opportunity as a result of negative publicity concerning the litigation and seeks RICO damages for his associated loss of profits (*see* Compl. ¶¶ 180, 246-249).  But lost profits are too speculative to be allowed as RICO damages. *See, e.g.*, *Kimm v. Chang Hoon Lee and Champ, Inc.*, 196 F. App'x 14, 16 (2d Cir. 2006); *World Wrestling Ent., Inc. v. Jakks P., Inc.*, 530 F. Supp. 2d 486, 520-21 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009). Azima also cannot explain how Defendants' subsequent denial of responsibility for the hacking caused him harm. Finally, Plaintiffs' claim for legal fees cannot stand because most do not identify specifically to which proceedings they relate, and the ones that do relate to foreign litigation and/or activities that are not actionable under *Kimm*'s litigation activity exception discussed above.

  Even if his injuries were otherwise cognizable, Azima's allegations fail RICO's rigorous requirement of proximate causation.  Azima's damages consist of (1) lost business opportunities

that resulted from <u>negative publicity</u> from the ongoing litigation which <u>he initiated</u> in 2016, and (2) legal fees incurred in that litigation. The chain between Defendants' alleged conduct and the lost business opportunities is broken by the "independent actions of third and even fourth parties." *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1, 15 (2010); *see also Empire Merchs., LLC v. Reliable Churchill*, 902 F.3d 132,142 (2d Cir. 2018). Azima's legal expenses are disqualified because they were "an incidental by-product of the scheme," *Kelly,* 140 S. Ct. at 1573, and, as with the lost-opportunities claim, they were the result of an intervening decisionmaker—<u>Azima's own actions in voluntarily initiating investigations and lawsuits</u>—and so do not count. *Hollander*, 173 F. App'x at 18.

Azima's controlled corporate plaintiffs have no independent claims of injury and should be dismissed for lack of RICO standing. The Complaint's allegations relate to Azima personally and do not explain how the businesses were "the target of the racketeering enterprise," *see, e.g.*, Compl. ¶¶ 45, 62 (alleging scheme targeted at "Azima"), or how the damages to any of these entities resulted from the actions of the KARV Defendants or the unlawful acts of the enterprise. *See* Compl. ¶¶ 246-250. These Plaintiffs should be separately dismissed. *Am. Home Mortg. Corp. v. UM Sec. Corp.*, 2007 U.S. Dist. LEXIS 26670, at *10 (S.D.N.Y Apr. 9, 2007).

**E. No RICO Enterprise or Conspiracy:** Azima has failed to sufficiently plead an enterprise. An enterprise requires "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). Plaintiffs fail to meet this standard because they allege an enterprise that is "one and the same" with the pattern of racketeering activity and so is not "separate and distinct" as RICO requires. *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 458-59 (S.D.N.Y. 2009); *see also First Capital*, 385 F.3d at 174. The Complaint also fails to allege that the KARV Defendants "participate[d] in the operation or management" of the enterprise by having "*some part* in directing the enterprise's affairs." *First Capital*, 385 F.3d at 176; *see also Reves v. Ernst & Young*, 507 U.S. 170, 179, 184 (1993). A conspiracy claim, in turn, can only stand if an underlying RICO violation has been adequately pled, so this claim fails for the same reasons described herein. *See First Capital Asset Mgt., Inc. v. Satinwood, Inc.,* 385 F.3d 159, 182 (2d Cir. 2004). It also separately fails because the Complaint does not allege any facts to suggest that any of the KARV Defendants "entered into an agreement to engage in acts that violate the RICO statute." *Cont'l Petroleum Corp., Inc. v. Corp. Funding Partners, LLC*, 2012 WL 1231775, at *8 (S.D.N.Y. Apr. 12, 2012).

**III. Conclusion**

We respectfully request that the Court schedule a pre-motion conference to address the proposed motion to dismiss to be filed by the KARV Defendants.

Respectfully submitted,

/s/ *Daniel P. Filor*

Daniel P. Filor