

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
ATTORNEYS AND COUNSELORS AT LAW

330 Madison Avenue, 27th Floor
New York, NY 10017
T 212.413.9000  F 646.428.2610
nelsonmullins.com

Samuel Rosenthal
T: 202.689.2915
sam.rosenthal@nelsonmullins.com

December 14, 2022

Via ECF

The Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, NY 10007

   Re: Farhad Azima, et al. v. Dechert LLP, et al., Civil Case No. 22-cv-8728 (PGG)

Dear Judge Gardephe:

   Defendants Del Rosso and Vital Management (collectively, "Vital") submit this letter in support of their request for a pre-motion conference and permission to file a motion pursuant to Fed.R.Civ.P. 12(b)(1) and (6), for lack of jurisdiction and failure to state a claim.

   This case represents an egregious violation of the rules prohibiting splitting of claims. In an end-run around adverse rulings, Plaintiff Farhad Azima has filed the same allegations in four different forums, including this Court, the Middle District of North Carolina, the District of Columbia and in London. As also demonstrated below, Plaintiff then tried to conceal his violation of rules against claims splitting by shuffling around parties and theories, and relying on RICO even though the predicate acts for his alleged RICO violation involve the very same conduct previously found lacking in other cases he previously filed or unfounded allegations by parties who are not part of these proceedings.[1] Moreover, even if Plaintiff had not previously alleged the same nucleus of facts elsewhere, the Complaint fails to adequately plead a RICO violation, damages and conduct proximately caused by any violation, and is barred by the statute of limitations.

   **I.**  **The Complaint Reflects An Improper Attempt to Split Claims.**

   This case essentially alleges that Vital violated RICO by illegally accessing computer information relating to Azima, which was then used to execute a bizarre plan in which Azima was lured into signing a settlement agreement in which he received $2.6 million, so that other defendants could then claim – using information obtained by Vital – that Azima breached that agreement by failing to act in good faith. This suit and the North Carolina action allege the same conduct as to Vital. *Compare, e.g.*, Complaint, ¶ 18 (alleging that Vital "conduct[ed] illegal

---

[1] In an effort to obscure the untimeliness of his claims, Plaintiff includes several references to extraterritorial claims allegedly suffered by persons or organizations who are not parties to this action. It is unclear whether Plaintiff claims to suffer damages or is only including sweeping allegations for publicity; however, to the extent that Plaintiff purports to claim damages for non-parties, he and his companies lack standing to do so.

The Honorable Paul G. Gardephe
December 14, 2022
Page 2

computer hacking operations on . . . behalf [of the RICO Enterprise]"), *with, e.g.*, *Azima v. Del Rosso and Vital Management, Inc.*, M.D.N.C. Case No. 1:20-cv-00954, filed Oct. 15, 2020, ⁋ 1 (the "North Carolina Action") ("Defendants Del Rosso and Vital oversaw and directed the hacking of Plaintiff Farhad Azima," and "stole Azima's computer data, including emails and trade secrets."). Azima also unsuccessfully made the same allegation in his now-dismissed lawsuit in the District of Columbia, albeit against the entity alleged to be ultimately responsible for the hacking and computer crimes. *See, e.g.*, *Azima v. RAK Investment Authority*, 926 F.3d 870 (D.C. Cir. 2019) (dismissing lawsuit alleging that by hacking his computers, RAKIA violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and committed the common-law torts of conversion and unfair competition."). Azima admits that after his claims were dismissed he is still pursuing those same claims in London. *See* Complaint, ¶ 162.

As recognized by judges in this Court and the Second Circuit, "[c]laim splitting . . . bars a plaintiff from splitting his claim into various suits, based on different legal theories." *Tera Grp., Inc. v. Citigroup, Inc.*, No. 17 CIV. 4302 (RJS), 2019 WL 3457242, at *9 (S.D.N.Y. July 30, 2019) (internal quotation marks omitted) (citing *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 110 (2d Cir. 2000)); *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002). In assessing whether the two actions arise from "the same nucleus of operative facts" for purposes of the preclusion inquiry, courts consider "(1) whether the case involves the same parties and their privies, and (2) whether separate cases arise from the same transaction or series of transactions." *Tera Grp., Inc.*, at *9 (citing *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841-42 (11th Cir. 2017). By his own admission, that is the situation here.

Plaintiff cannot avoid this doctrine by resorting to a new cause of action, RICO, or even added additional straw parties or theories in the instant case. As the Second Circuit held in *Curtis v. Citibank N.A.*, 226 F.3d 133, 139 (2d Cir. 2000), the doctrine "ensures that a plaintiff may not 'split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which relief is sought, and leave the rest to be presented in a second suit, if the first fails.' " (quoting *Stark v. Starr*, 94 U.S. 477, 485 (1876)).

## II.    The Complaint Relies on a Flawed Pattern of Racketeering

Especially as to Vital, the claimed pattern of racketeering is based on litigation activities. In *Kim v. Kimm*, 884 F.3d 98, 103-04 (2d Cir. 2018) (collecting cases), the Court noted the consensus among other circuits that litigation activities were improper predicates for civil RICO claims. As if addressing the lawsuit here, the Second Circuit held that basing RICO on litigation actions could "spawn a retaliatory action" for every failed lawsuit, "inundate federal courts with procedurally complex RICO pleadings," and undermine the principles buttressing res judicata and collateral estoppel by raising doubts about the validity of documents presented in the underlying litigation, and, *ipso facto*, the judicial decisions that relied on those documents. *Id.*

Not only are allegations proffered by Plaintiffs covered by litigation privileges, but courts following *Kim* hold that false statements in prior litigation cannot support a RICO claim. *See, e.g.*, *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (allegations of "false statements in their

The Honorable Paul G. Gardephe
December 14, 2022
Page 3

various filings" and in testimony "cannot support a claim of a substantive RICO violation"); *Dekom v. Fannie Mae*, 846 F. Appx. 14, 21 (2d Cir. 2019) (summary order); *Smulley v. Fed. Hous. Fin. Agency*, 754 F. Appx. 18, 23 (2d Cir. 2018) (summary order) ("false representations and . . . false documents in … state court action(s) . . . do not constitute RICO predicates."); *Weaver v. Boriskin*, 751 F. Appx. 96, 98 (2d Cir. 2018) (summary order) (allegedly fraudulent actions in other litigation "insufficient to show a RICO predicate act"); *Brock v. Zuckerberg*, No. 20 Civ. 7513 (LJL), 2021 WL 2650070, at *5 (S.D.N.Y. June 25, 2021) (predicate acts improperly "arise purely out of a litigation action"), *aff'd*, No. 21-1796, 2022 WL 1231044 (2d Cir. Apr. 27, 2022).

Similarly, courts following *Kim* routinely dismiss RICO actions where predicate crimes were based on alleged bribery or witness tampering allegedly occurring in prior litigation.  *See, e.g., Rajaratnam v. Motley Rice,* 449 F.Supp.3d 45 (E.D.N.Y. 2020) (dismissing RICO claim based on bribery, false statements and other conduct in holding that "[a] civil RICO action in a neighboring federal district is not the appropriate mechanism to seek redress for false statements made in court filings by a litigation adversary ); *LCS Grp., LLC v. Shire LLC*, No. 18 Civ. 2688 (AT), 2019 WL 1234848, at *10 (S.D.N.Y. Mar. 8, 2019) ("the preparation and filing of sworn declarations . . . 'cannot constitute a RICO predicate act' "), *judgment aff'd, appeal dismissed in part,* No. 20-2319, 2022 WL 1217961 (2d Cir. Apr. 26, 2022). *See, e.g., Brock, supra* ("Plaintiff's claims . . . must fail because they arise purely out of a litigation action.").

## III.    The Complaint fails to satisfy RICO's Additional Elements.

The Complaint fails to meet pleading standards by alleging a RICO "association in fact" consisting of a law firm and consultants hired to support litigation against Azima.  In doing so, the Complaint ignores RICO elements directed at the same overall concept: limiting RICO to cases where there is a criminal enterprise having a clear structure and purpose, and not simply an association in fact made up of entities engaged in normal commercial relationships, particularly where that alleged enterprise has no existence other than the predicate acts allegedly directed at a single discrete victim or even a handful of victims.  Plaintiffs also improperly allege a pattern of racketeering, violating rules against extraterritorial application of RICO, that Vital participated in the operation or management of the alleged "enterprise," or that Azima suffered damages cognizable under RICO which were proximately caused by a pattern of racketeering.[2]

For instance, the Supreme Court has held that a RICO complaint must allege an enterprise which not only has a structure, but must exist "separate and apart from the pattern of racketeering in which it engages").  *See, e.g.*, *United States v. Turkette*, 452 U.S. 576, 583 (1981) *See also Boyle v. United States*, 556 U.S. 938, 946 (2009) (requiring that the enterprise have an identifiable structure).  The Complaint cannot make up for that lack of an enterprise with a clearly defined structure by alleging that Vital performed services for the Dechert firm in the dispute with Plaintiff. That is insufficient to show that either defendant participated in the operation or management of the enterprise.  *See, e.g., Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998)

---

[2] In order to avoid duplication of briefing, Vital incorporates and adopt the arguments of Insight and SDC-Godot, Dkt. No. 76 addressing extraterritorial application of RICO, and of the KARV Defendants, see Dkt. No. 82, demonstrating that the lack of a viable RICO enterprise or conspiracy, or damages recoverable under RICO.

The Honorable Paul G. Gardephe
December 14, 2022
Page 4

("Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c)").  Under 18 U.S.C. § 1956(a)(2), it is not enough to allege that Vital was paid money by members of an alleged enterprise, or hired subcontractors to perform consulting services, unless specific facts are proffered establishing that payments were made with the specific "intent to promote the carrying on of specified unlawful activity."

The Complaint also cannot meet RICO's "continuity" requirement by alleging a scheme directed at a single victim, or related victims.  *See, e.g.*, *Grace Int'l Assembly of God v. Festa*, 797 F. Appx. 603, 606 (2d Cir. 2019) (summary order) (prohibiting "magnify[ing] the racketeering scheme by expanding the number of victims and predicate acts, [which] in reality … is one scheme with one clear victim"); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 186 (2d Cir. 2008) (improperly alleged only a "'discrete and relatively short-lived scheme to defraud a handful of victims,' which is insufficient to establish open-ended continuity."); *Dempsey v. Sanders*, 132 F. Supp. 2d 222, 228 (S.D.N.Y. 2001) (collecting cases).

Here, the Complaint violates the above precepts by alleging a single overarching conspiracy to pursue damaging information and discredit the Plaintiff and his companies.  Even efforts to broaden the allegations by claiming that the RICO scheme was intended to engage in a campaign against "perceived enemies of RAK," *see* Complaint, ¶ 1, fail to identify any conduct constituting the pattern of racketeering activity other than those actions directed at Azima.  *See id.* ⁋ 213 (obstruction of justice designed to avoid discovery and concealing actions directed at Azima); ⁋ 217 (witness tampering intended to conceal criminal conduct directed to Azima); ⁋ 221 (money laundering based on payments supporting cybersecurity or other activities directed at Azima); ⁋ 223 (scheme and artifice "to defraud Azima and harm him financially"); ⁋⁋ 231-36 (bank fraud based on wiring payments related to hacking and cybersecurity directed at Azima).

Finally, the RICO conspiracy rests on allegations that (1) the Dechert firm tried to discredit Plaintiff; (2) Dechert hired Vital to consult in litigation, (3) Vital hired others to help with those consulting services, and (4) an illegal phishing operation by some unidentified individual or entity targeted Plaintiff.  The allegations fail to show that Vital operated or managed the enterprise through mail or wire fraud, and that Plaintiffs relied on any misrepresentations.  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119 (2d Cir. 2013).  Also, "a RICO plaintiff must allege 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.' " *Goren v. New Vision Intern., Inc.*, 156 F.3d 721 (2d Cir. 1998) (internal quotation omitted).  Plaintiff cannot meet that burden.

### IV.    The Complaint is barred by the statute of limitations.

The statute of limitations for civil RICO claims is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 142, 156 (1987).  The statute begins running when "[plaintiffs] sustained the alleged injury for which they seek redress." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58–59 (2d Cir. 1998).  Here, Plaintiff learned of his injuries from the

The Honorable Paul G. Gardephe
December 14, 2022
Page 5

alleged hacking scheme in 2016. After all, that was the reason why his claims were largely dismissed (or substantially cut-back) in the North Carolina Action. *See* Dkt. No. 65, at 9-10 (Dec. 10, 2021). The Court found that "Plaintiff's factual allegations in the 2016 D.C. Complaint — that he had been hacked and his hacked confidential business data published online, (*e.g.*, 2016 D.C. Complaint (Doc. 31-5) ¶¶ 10, 18) — establish that by 2016 Plaintiff had discovered the conduct underlying" counts dismissed by the Court. *Id.* at 9.

Plaintiff cannot avoid that same outcome here by arguing that the North Carolina action failed to contain a RICO claim, unlike his latest suit in this District. As set forth above, a RICO civil claim begins running when the Plaintiff discovered his injuries, exactly the same factual predicate as the causes of action discussed by the Court in the North Carolina Action. Moreover, the Complaint here is based on the same hacking conspiracy alleged in the North Carolina action, which supposedly injured Plaintiff. The Complaint here explicitly alleges that in July 2016 Plaintiff was told in a meeting with other defendants that they intended to make Plaintiff "collateral damage" in their defense of RAK. *See* Complaint, ℙ 65. Plaintiffs further allege that the very next month, in August 2016, the hacking conspiracy resulted in massive amounts of data and information being leaked on the internet, which damaged Plaintiff. *Id.*

To the extent that the Complaint tries to claim that Plaintiff was also injured by luring him into a settlement agreement (in which he was paid $2.6 million), and then claimed – relying on hacked information -- that he had breached that agreement, that too all occurred in 2016, according to the Complaint itself. *See* Complaint, ℙ 69. Similarly, Plaintiff was aware that hacked information was allegedly being used by Defendants as part of this "plan," as Azima alleges that the hacked documents were attached to the lawsuit filed against him. *Id.*, ℙ 70. It also defies common sense for any of the other Plaintiffs named in this suit have some right to demand a different outcome. Because they are all owned by Plaintiff, any knowledge on his part would be imputed to his wholly-owned companies.

Consequently, the Complaint should be dismissed in its entirely. This lawsuit seeks to re-litigate issues which plaintiffs lost in several courts. RICO simply cannot serve any such purpose since – even if plaintiffs' dubious allegations were true – they fail to satisfy RICO elements.

Respectfully submitted,

NELSON MULLINS RILEY &
SCARBOROUGH, LLP

By: */s/ Samuel Rosenthal*
Samuel Rosenthal
*Counsel for Del Rosso and Vital Management*

cc: All counsel of record (by ECF)