**Miller & Chevalier**

**Kirby D. Behre**
Member
(202) 626-5960
kbehre@milchev.com

December 14, 2022

<u>Via CM/ECF</u>

Hon. Paul G. Gardephe
Thurgood Marshall United States Courthouse
Southern District of New York
40 Foley Square
New York, NY 10007

   Re: *Azima, et al. v. Dechert LLP, et al*, 1:22-CV-08728-PGG;
      Response to Pre-Motion Letter of Amir Handjani, Andrew
      Frank, and KARV Communications (ECF No. 82)

Dear Judge Gardephe:

  We submit this letter on behalf of Plaintiffs in the above-referenced action, pursuant to Your Honor's Individual Practice Rule IV.A, in response to the pre-motion letter of December 7, 2022, submitted by Defendants Amir Handjani, Andrew Frank, and KARV Communications (collectively self-styled as the "KARV Defendants"). The KARV Defendants seek leave to file a motion to dismiss Plaintiffs' Complaint based on a generic list of conclusory and boilerplate legal arguments that are either out-of-step with established law or ignore the clear and specific allegations throughout the Complaint relating to the criminal conduct of Handjani, Frank, and KARV. Plaintiffs address these contentions as follows.[1]

### I. PLAINTIFFS' COMPLAINT

  Plaintiffs' Complaint is unlike many RICO actions filed in this District. The Complaint is based on detailed and incriminating information drawn from sworn witness statements, affidavits, bank records, trial testimony, and court documents. For example, the Complaint's appendices contain detailed descriptions, including dates, amounts, and purposes, of 413 money laundering transactions and 173 instances of wire and mail fraud. The Complaint describes with particularity the "Comprehensive Action Plan," prepared at least in part by Handjani, Frank, and KARV, that documents the Enterprise's plan to harm Plaintiff Azima, including through litigation. ECF No. 1 ¶¶ 59-62. Any argument that the Complaint lacks sufficient factual allegations is meritless.

---

[1] The KARV Defendants' "Introductory Statement" includes a series of comments unrelated to the proposed motion to dismiss. Plaintiffs do not here address the various innuendo and characterizations, nor do they debate the merits of the KARV Defendants' casually asserted counter-allegations.

Although this is a civil action, the Complaint details a significant number of criminal acts committed by the RICO Enterprise, including by Handjani, Frank, and KARV. In their pre-motion letter, the KARV Defendants elide this fact by ignoring the detailed Complaint allegations. Defendant Handjani's criminal acts, for example, feature prominently:

> Handjani has committed numerous predicate acts, including mail and wire fraud, obstruction of justice, and witness tampering . . . by participating in multiple meetings regarding the attacks on Azima, causing false statements to be made in U.S. and UK courts in service of the Enterprise's scheme . . . [and] by guaranteeing payment of Patrick Grayson's legal fees in exchange for false testimony.

Compl. ¶ 243; *see also id*. ¶¶ 23, 45, 54, 59-62, 163-69. Similarly, the Complaint details the involvement of Defendants Frank and KARV in a host of criminal acts. For example:

> Frank and KARV Communications have committed numerous predicate acts, including mail and wire fraud, obstruction of justice, and witness tampering . . . by causing false statements to be made in U.S. and UK courts in furtherance of the scheme to defraud . . . drafting the action plan by which the Enterprise would use false statements in litigation to inflict attorneys' fees, costs, and reputational harm . . . developing and executing the scheme to manufacture false evidence to be used against Azima and . . . knowingly causing funds to be transported, transmitted, or transferred to the United States . . . [for] the Enterprise's criminal activity.

*Id*. ¶ 244; *see also id*. ¶¶ 24, 45, 59-61. All in all, the Complaint makes clear that Handjani, Frank, and KARV were much more than mere peripheral members of the Enterprise. Each was a critical player implementing the Enterprise's plan to financially injure Plaintiffs.

## I.    THE KARV DEFENDANTS' ALLEGED GROUNDS FOR DISMISSAL[2]

### A. The Complaint Pleads Predicate Acts Committed by the KARV Defendants

Handjani, Frank, and KARV argue the Complaint fails to "tie them to any RICO violation." ECF No. 82 at 3. But that is simply not the case. As laid out in the allegations above, and elsewhere in the Complaint, Handjani, Frank, and KARV were key members of the Enterprise, who each committed numerous predicate acts, including mail and wire fraud, obstruction of justice, and witness tampering. *See, e.g.*, Compl. ¶¶ 23, 24, 45, 59-62, 131, 243-44. Handjani, Frank, and KARV are thus "tied to" a host of underlying offenses.

Belying their initial contention, the KARV Defendants concede that the Complaint states a "specific allegation . . . that KARV engaged in purported money laundering by receiving a monthly retainer," but they contend that Plaintiffs "identif[y] no 'specified unlawful activity' to

---

[2] The KARV Defendants "anticipate that [their] motion would address *at least*" the grounds for dismissal listed in their pre-motion letter. ECF No. 82 at 3 (emphasis added). The point of the pre-motion requirement is for defendants to set forth their grounds for dismissal, so that arguments can be evaluated in good faith before briefing. Holding back potential arguments for a motion to dismiss defeats the purpose of this rule.

which the retainer payments relate." ECF No. 82 at 3.  The Complaint alleges that these payments were made with the "intent that such payments would fund the Enterprise's criminal activity," Compl. ¶ 244, and therefore relate to the wire fraud and obstruction of justice schemes detailed in the Complaint.  In addition, the KARV Defendants ignore other allegations of unlawful conduct that caused damage to the Plaintiffs within the limitations period, including the drafting of the Comprehensive Action Plan, circulated in furtherance of the scheme to defraud Plaintiffs, and multiple meetings to plan the obstruction and wire fraud scheme.  *Id.* ¶ 59-62, 243, 244.

As to Handjani, he admits that the Complaint alleges obstruction of justice but contends that the obstruction was of U.K. judicial proceedings, which he argues is insufficient to ground a RICO claim.  ECF No. 82 at 3.  Yet this mischaracterizes both the allegations in the Complaint, *see*, *e.g.*, Compl. ¶¶ 45, 54, 59-62, 129-32, 163-64, 174 (alleging Handjani's involvement in a broad array of criminal conduct, including targeting of Azima, participation in the wire fraud and obstruction schemes, directing hacking of Azima and others, and payment of witnesses for false testimony) and the governing law.  The Complaint alleges that Handjani's unlawful obstructive conduct was directed at the U.S., not only through a Section 1782 proceeding in the Southern District of New York, *see* Compl. ¶ 129, but also through efforts to ensure that additional litigation did not ensue in the U.S., *id*. ¶ 173.  Obstruction is a RICO predicate "where, as here, a defendant's efforts were 'designed to prevent detection and prosecution of the organization's illegal activities [and] were part of a consistent pattern that was likely to continue for the indefinite future, absent outside intervention.'"  *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 593 (S.D.N.Y. 2014).[3]

### B. Plaintiffs Have Pled RICO Pattern and Continuity

The KARV Defendants next argue that Plaintiffs' claim fails the RICO statute's pattern requirement because, they argue, it boils down to just a "single incident of alleged misconduct . . . followed by continued efforts to [conceal] it." ECF No. 82 at 3.  This is not an accurate reading of the Complaint.  The Complaint alleges targeting of numerous victims, including Karam Al Sadeq and Khater Massaad.  *See* Compl. ¶¶ 38-43, 60.  In addition, multiple acts in furtherance of a single scheme may constitute a "pattern" sufficient for RICO liability.  *United States v. Daidone*, 471 F.3d 371, 374-75 (2d Cir. 2006).  Here, the sheer number of criminal acts in furtherance of the Enterprise's aims is substantial and sufficient to show a pattern of racketeering activity.

The KARV Defendants also argue, without citation, that "[c]oncealment . . . does not satisfy the requirement of open-ended or close-ended continuity."  ECF No. 82 at 4. This is contrary to precedent.  The Second Circuit has historically had no trouble including "concealment" activities as part of a RICO pattern and continuity.  *See United States v. Coiro*, 922 F.2d 1008, 1017 (2d Cir. 1991); *see also United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir. 1989) (finding cover-up statements in furtherance of conspiracy).

---

[3] The KARV Defendants contend that Plaintiff's claim is foreclosed by *Kim v. Kimm*, 884 F.3d 98 (2d Cir. 2018).  However, there, the Second Circuit only held that "a *single* frivolous, fraudulent, or baseless lawsuit . . . *alone* cannot constitute a viable RICO predicate act."  884 F.3d at 105 (emphasis added).  The court even distinguished another case, like this one, where "defendants used litigation to carry out their scheme" and "engaged in a variety of other out-of-court actions to further this activity."  *Id.* (citing *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 418 (S.D.N.Y. 2010)).

3

### C. The Complaint's Claims are Within the Statute of Limitations

The KARV Defendants argue that some of Plaintiffs' RICO claims are outside of the statute's four-year limitations period because the Complaint includes allegations dating back to 2015, when Azima and his associates were first hacked. ECF No. 82 at 4. The limitations question does not hinge on when the RICO pattern "dates back" to; it hinges on whether the pattern continued into the open period.[4] Here, the pattern clearly continued into recent years with substantial obstructive conduct alleged over the past four years. *See*, *e.g.*, Compl. ¶¶ 129-32, 163-69, 174. In addition, the Enterprise's conduct resulted in new injuries to Plaintiffs as recently as 2019. *Id*. ¶ 180 (Plaintiffs lost a loan worth $13.5 million and suffered $15 million in lost profits as a result the Enterprise's criminal conduct). The KARV Defendants acknowledge, as they must, that RICO claims only become ripe once an injury is suffered. ECF No. 82 at 4. The "'separate accrual rule'" permits a plaintiff to bring a RICO action "each time a plaintiff discovers or should have discovered a new injury caused by [a] RICO violation[]." *Bingham v. Zolt*, 66 F.3d 553, 559 (2d Cir. 1995); *id.* at 559-61 (rule has been "consistently applied"). Injuries that occurred in 2019 could not have accrued before then. There is no viable statute of limitations ground for dismissal.

### D. The Complaint Alleges Cognizable RICO Injuries and Proximate Cause

The KARV Defendants incorrectly argue that "reputation and goodwill," lost profits, and legal fees are not cognizable under RICO. ECF No. 82 at 4. They are mistaken. Courts in this District have found that losses from each of these categories can constitute a loss to "business or property" in appropriate cases. *First Capital Asset Mgmt. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 382 (S.D.N.Y. 2002), *aff'd sub nom. First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) (legal fees); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 310 (S.D.N.Y. 2010) (lost profits); *Reich v. Lopez*, 38 F. Supp. 3d 436, 449-51 (S.D.N.Y. 2014) (damage to reputation). The RICO statute does not limit what injuries to a Plaintiffs' "business or property" are compensable. *See* 18 U.S.C. § 1964(c). The only limitations to Plaintiffs' recovery are proximate causation and lack of speculation. *Elsevier Inc.*, 692 F. Supp. 2d at 310.

Here, Plaintiffs' injuries are specifically alleged and not speculative. *See, e.g.*, Compl. ¶ 180 (alleging lost loan worth $13.5 million and $ 15 million in lost profits). Moreover, causation is clear because these injuries are ***exactly*** what Handjani, Frank, KARV, and their co-conspirators intended and worked towards. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003) ("Central to the notion of proximate cause is . . . . [whether the] injury was reasonably foreseeable or anticipated as a natural consequence.") (cleaned up). The Complaint alleges that Handjani, Frank, and KARV were instrumental in the drafting of the "Comprehensive Action Plan," which "identified steps the Enterprise would take to damage [Plaintiff] Azima's 'reputation and even [ex]pose him [to] criminal exposure.'" Compl. ¶ 61. The object of the scheme was to defraud Azima by harming his businesses and bankrupting him. *Id*. Proximate causation is clear. The injuries incurred by Plaintiffs were not only foreseeable to Defendants; they were foreseen, and one of the objects of the conspiracy was to cripple the Plaintiffs financially.[5]

---

[4] In fact, the RICO statute looks at predicate acts in the past 10 years. 18 U.S.C. § 1961(5).

[5] Plaintiffs also halfheartedly argue Plaintiffs ALG Transportation, Inc., Main 3260 LLC, FFV W39 LLC, and FFV Development LLC should be dismissed for lack of standing. The Complaint alleges that each

4

### E.  Plaintiffs Have Pled a RICO Enterprise and Conspiracy

The KARV Defendants also argue that the Complaint fails to allege a RICO enterprise.  In truth, this is more of a series of conclusory assertions.  Regardless, alleging a RICO enterprise is "generally not a high threshold," *Mackin v. Auberger*, 59 F. Supp. 3d 528, 542 (W.D.N.Y. 2014), and the Complaint states more than adequate allegations. Each Defendant's connection to the Enterprise is summarized in detail.  *See* Compl. ¶¶ 15-25.  Throughout the Complaint, there are specific allegations noting each Defendant's criminal actions and role. *See, e.g.*, *id.* ¶¶ 44, 45, 59-62, 69, 74, 80, 89, 131, 161, 179, 182-83 (examples of specific allegations regarding the criminal conduct of Handjani, Frank, and KARV).  The Complaint even summarizes the organization of the Enterprise.  *See id.* ¶¶ 207-09.  The Enterprise and its essential attributes are properly pled.

Finally, the KARV Defendants argue, in similar conclusory fashion, that Plaintiffs' RICO conspiracy claim fails because the underlying claim was not adequately pled and because they did not enter into an "agreement" to violate the RICO statute.  As discussed above, Plaintiffs' underlying RICO claim is plainly viable.  For a RICO conspiracy claim to withstand a motion to dismiss, a complaint need only plead a substantive RICO claim against *any* named defendant. *See Beck v. Prupis*, 529 U.S. 494, 506-07 (2000).  The Plaintiffs have plainly done that.  With regard to the agreement, the Complaint not only alleges that Handjani, Frank, and KARV entered an agreement but also that they put the agreement in writing.  *See* Compl. ¶ 59 (the plan of attack "was drafted at least in part by Frank and KARV (for whom Handjani serves as a senior advisor) . . . [and] described a multi-prong approach by the Enterprise to attack and damage Azima, including civil litigation, criminal investigations, and planting stories with media."); *see also id.* ¶ 131 (describing Handjani's further involvement).  Plaintiffs' conspiracy claim is plainly viable.[6]

\* \* \*

For all these reasons, Plaintiffs would oppose the KARV Defendants' motion to dismiss.

Sincerely,
/s/ *Kirby D. Behre*
Kirby D. Behre

CC: All Counsel of Record (via CM/ECF)

---

suffered cognizable RICO injuries as a direct result of the Enterprise's criminal violations.  *See* Compl. ¶ 180. The pleading requirements are met.  *See* 18 U.S.C. § 1964(c).

[6] In addition to their stated dismissal arguments, the KARV Defendants footnote an argument outside of the listed grounds, saying "[g]rounds exist for the Court to dismiss or stay this action as a matter of international comity" pending the outcome of the U.K. proceedings. ECF No. 82 at 1 n.1.  The referenced U.K. case involves different plaintiffs, defendants, and claims.  Only two of the eleven defendants overlap and almost none of the parties are U.K.-based.  The U.K. proceeding has also been ongoing for six years and is not scheduled for trial until Spring 2024.  Though the massive cover-up by the RICO Defendants is probative of the fact that the U.K. defendants were responsible for hacking Azima, there are no claims in the U.K. for damages related to the cover-up scheme alleged in this lawsuit.