**KAPLAN HECKER & FINK LLP**

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL         212.763.0889
DIRECT EMAIL        shecker@kaplanhecker.com

December 14, 2022

**BY CM/ECF**

The Honorable Paul G. Gardephe
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 705
New York, New York 10007

      Re:  *Azima et al. v. Dechert LLP et al.*, No. *1:22-cv-08728-PGG*

Dear Judge Gardephe:

  We write on behalf of Defendant Dechert LLP ("Dechert"), in accordance with Rule IV(A) of Your Honor's Individual Rules of Practice, to respectfully request a pre-motion conference concerning our anticipated motion to dismiss the Complaint (Dkt. No. 1) ("Compl.") pursuant to Federal Rule of Civil Procedure 12(b). Plaintiffs do not consent to the motion.

  Plaintiffs devote nearly half of their 262-paragraph Complaint to allegations about a global campaign of hacking and rendition—even as Plaintiffs acknowledge that is not what their case is about. *See* Compl. at 2 n.2. Indeed, those allegations are already the subject of litigation proceedings in the United Kingdom (the "U.K. Proceeding") and elsewhere—proceedings that are, as Plaintiffs acknowledge, "ongoing." *See* Compl. at 27 n.6.

  This case is purportedly about alleged misconduct in those proceedings. *See* Compl. ¶¶ 83–178; *id.* at 2 n.2. But Plaintiffs' effort to use such allegations of misconduct to launch a simultaneous civil RICO case in another country fails as a matter of law. If there was misconduct in connection with the U.K. Proceeding, then comity dictates that the U.K. is the best place to address it—indeed, Plaintiffs are pressing many of the same allegations there. Moreover, Plaintiffs are still bound by the same forum selection clause that sent the hacking claims to the U.K. courts in the first place. And Plaintiffs cannot plead a civil RICO claim in any event.

  The reality is that Plaintiffs always preferred to litigate in the United States rather than the U.K., *see* Compl. ¶ 182, in large part because they are drawn to the prospect of treble damages and disappointed that the U.K. "does not have a comparable statute to RICO," *see id.* at 2 n.2; *id.*, ¶ 9. But Plaintiffs' misuse of the civil RICO statute and of this tribunal would "engender wasteful satellite litigation," and, for the reasons set forth below, the Complaint should be dismissed. *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) (citation omitted) (affirming dismissal of civil RICO claims).

I.     **Background**

The U.K. Proceeding began in 2016, when the Ras Al Khaimah Investment Authority ("RAKIA") sued Plaintiff Farhad Azima for fraud. *See RAKIA v. Azima*, Case. No. HC-2016-002798. Azima's defense in that case was based in part on the same hacking allegations that he makes in the Complaint here; but rather than asserting a counterclaim in the U.K. Proceeding, he filed a new federal suit against RAKIA in the District of Columbia. *See Azima v. RAK Investment Authority*, No. 16-cv-1948 (D.D.C. 2016). Those claims were dismissed by the D.C. Circuit on *forum non conveniens* grounds, based on a forum selection clause in a prior settlement agreement between the parties (the "Settlement Agreement"). *See Azima v. RAK Investment Authority*, 926 F.3d 870, 880 (D.C. Cir. 2019). Then Azima filed counterclaims against RAKIA in the U.K. Proceeding based on the alleged hacking, at a later stage adding Dechert (and others) as defendants.

The U.K. Proceeding remains ongoing. Just last year, Azima sought an order from this Court authorizing discovery for use in the U.K. Proceeding. In support of his request, Azima pointed out that the allegations in the U.K. Proceeding included "efforts by the co-conspirators to *conceal their actions . . . through 2020*." *Azima v. Handjani*, No. 21-MC-501 (S.D.N.Y.) (PGG) ECF No. 13 at 5 (Aug. 4, 2021) (emphasis added). The Court granted Azima's request, relying on his allegations of a post-2016 cover-up. *See id.* ECF No. 26 at 17–18 (July 15, 2022) (citing allegations that "RAKIA allegedly hacked Azima . . . and covered-up the hacking conspiracy.").

II.    **Comity and *forum non conveniens* dictate dismissal.**

Principles of comity call for dismissal of parallel proceedings when respect for the courts of a sovereign nation, fairness to the litigants, and judicial efficiency counsel in favor of a U.S. court's abstention. *See Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006). That is plainly the case here, where Plaintiffs' Complaint raises, between largely overlapping parties, the same hacking and cover-up allegations that are already being litigated in the U.K. Proceeding. *See, e.g.*, *von Spee v. von Spee*, 514 F. Supp. 2d 302, 317 (D. Conn. 2007) (dismissing on basis of comity where parties were litigating similar issues in Germany). Indeed, though Azima now says the U.K. Proceeding is not about the alleged "cover up," Compl. ¶ 2, n.2, as noted above he told this Court the opposite last year, *Azima*, No. 21-MC-501, ECF No. 13 at 17. Having received the discovery he sought based on that representation, Azima is judicially estopped from changing his position now. *In re Adelphia Recovery Trust*, 634 F.3d 678, 695–96 (2d Cir. 2011).

Dismissal is also appropriate on *forum non conveniens* grounds. That is true not only because of the ongoing parallel proceedings, *von Spee*, 514 F. Supp. 2d at 310–17, but also pursuant to the same forum selection provision that the D.C. Circuit enforced in dismissing Azima's 2016 lawsuit against RAKIA. In that ruling, the D.C. Circuit held that Plaintiffs' claims arose "in connection with . . . the formation" of the Settlement Agreement and therefore were subject to that Agreement's forum selection clause. *See Azima*, 926 F.3d at 878. That is also true of the Complaint here, which arises from the same hacking and cover-up allegations. *See, e.g.*, Compl. ¶¶ 38–72. And while Dechert is not a signatory to the agreement, Azima is, and Dechert can enforce the agreement against him because the firm is "closely related" to the other signatory (Dechert's client at the time, RAKIA) and to the agreement itself (which Dechert helped to draft, *see* Compl. ¶ 62). *See Zanghi v. Ritella*, 2021 WL 4392756, at *5 (S.D.N.Y. Sept. 24, 2021).

**KAPLAN HECKER & FINK LLP**

3

### III. The Complaint does not adequately plead the elements of a RICO claim.

#### a. The Complaint does not plead the existence of a RICO enterprise.

The Complaint seeks to satisfy RICO's "enterprise" requirement by alleging an "association-in-fact." Compl. ¶ 210. That requires Plaintiffs to plead "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). More specifically, Plaintiffs must make plausible factual allegations that the alleged members "share a common purpose to engage in a particular fraudulent course of conduct," *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004), and that the enterprise has "an existence separate and apart from the racketeering activity itself," *Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*, 2022 WL 901660, at *20 (S.D.N.Y. Mar. 28, 2022) (Gardephe, J.). The alleged purpose that Plaintiffs ascribe to the enterprise here—to "manufacture and prosecute claims against perceived enemies of RAK . . . [and] to cover up their unlawful conduct and obstruct Plaintiffs' efforts to seek a legal remedy," Compl. ¶ 207—accomplishes neither.

*First*, again, Plaintiffs concede that the alleged hacking is not the basis of their claim here. *See* Compl. at 2 n.2. That leaves a group of entities seeking to respond to Azima's hacking claims. To the extent that can be conceived of as common purpose, it is one Plaintiffs created, and "naming of a string of entities [as defendants] does not adequately allege an enterprise." *Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F. Supp. 2d 514, 539 (S.D.N.Y. 2001); *see also Black v. Ganieva*, 2022 WL 2374514, at *13–15 (S.D.N.Y. June 30, 2022) (finding no common purpose among defendants in litigation because "RICO's common purpose requirement demands more than general synchronicity or shared enmity").

*Second*, even if the Defendants did share a common purpose, the Complaint alleges no facts to support the notion that they "formed any sort of coherent entity beyond simply working together." *Festinger*, 2022 WL 901660, at *21. "The non-existence of an enterprise that is separate and distinct from the fraudulent . . . scheme allegedly engaged in by the Defendants . . . is fatal to Plaintiffs' RICO claim.'" *Weir v. Cenlar FSB*, 2018 WL 3443173, at * 8 (S.D.N.Y. July 17, 2018). Indeed, the entire purported "enterprise" here is RAKIA and a series of lawyers and contractors it hired. *See* Compl. ¶¶ 15–26. In other words, the alleged "enterprise" consists of an entity and its agents, which are insufficient to form a RICO enterprise as a matter of law. *See U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 206 (2d Cir. 2017).[1]

#### b. The Complaint does not plead a "pattern" of racketeering activity.

Plaintiffs also fail to adequately allege a "pattern of racketeering activity," which requires a showing of "continuity" in criminal activity. *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019). Courts routinely reject RICO claims that involve, as this one does, *see* Compl. at 2 n.2, only "one scheme with one clear victim." *Id.* at 606; *see also Dempsey v. Sanders*, 132 F. Supp. 2d 222, 227 (S.D.N.Y. 2001).

---

[1] Indeed, as RAKIA's counsel and thus agent at the relevant time, Dechert enjoys the same immunity from suit in U.S. courts as RAKIA. *See OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 394 (2015); *Moriah v. Bank of China Ltd.*, 107 F.Supp.3d 272, 277 (S.D.N.Y. 2015).

      *c. The alleged litigation misconduct cannot constitute RICO predicate acts.*

  Additionally, a "long line" of courts have found that "litigation activities" cannot constitute predicate acts for the purposes of RICO. *Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174–75 (E.D.N.Y. 2010) (collecting cases). That is true even when defendants are accused of filing fraudulent court papers and giving false testimony. *See Kim*, 884 F.3d at 103–04; *Black*, 2022 WL 2374514, at *23–24.

    **IV. The Complaint does not plead cognizable damages or proximate cause.**

  In order to plead a RICO claim, a plaintiff must allege that he incurred a cognizable injury "to [his] property, and not, for example, physical, emotional or reputational harm." *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 560 (S.D.N.Y. 2014). Here, all of Plaintiffs' injuries sound in reputational harm, as Plaintiffs allege damages only to "Azima's reputation," litigation costs associated with defending Azima's reputation, and impairment of business interests and lost financing flowing indirectly from the reputational harm to Azima.[2] Compl. ¶¶ 179–83, 245–49.

  Even if Plaintiffs had alleged any cognizable injuries, they have failed to plead any plausible theory of proximate cause. *See Kerik*, 64 F. Supp. 3d at 561. For example, Plaintiffs allege that but for the alleged false statements made by Defendants, Azima "could have demonstrated that the 2016 Settlement Agreement" was a fraud and would have "avoided a judgment against him in the U.K." Compl. ¶ 182. But the U.K. Court of Appeal has already considered and rejected that very theory, holding that the hacked documents "ought to have been disclosed by Mr. Azima anyway," and so, as a result, even if Azima's hacking allegations were true, it would not have stricken RAKIA's claims because that "would leave Mr. Azima with the benefit of his fraud." *See RAK Investment Authority v. Azima* [2021] EWCA (Civ) 349 [62].[3] To be sure, Azima is continuing to fight that outcome in the U.K., but that only underscores the problem he faces here. To the extent Azima is permitted to re-try his claims of fraud and challenge the judgment against him in the ongoing U.K. Proceeding, then the alleged harm on which he bases his claims here will be eliminated altogether—yet another reason to defer to the English court. *See RAK Investment Authority v. Azima* [2022] EWHC 2727 (Ch) [148] (granting Azima permission to add counterclaim to set aside First Judgment); *Id.*, [2022] EWHC 2980 (Ch.) [30] (granting U.K. Proceeding defendants permission to appeal decision permitting additional counterclaim).

---

[2] For example, the Complaint alleges that FFV Development ("FFV") lost financing, but only as a result of "negative publicity" about Azima, Compl. ¶ 180, and the Complaint otherwise makes no effort to connect FFV to the civil RICO allegations. This does not work: because FFV is not alleged to have been a target of the racketeering, FFV itself has not stated any claim, *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 124 (2d Cir. 2003); nor can Azima assert a claim on FFV's behalf, *Nygård v. Bacon*, 2021 WL 3721347, at *4 (S.D.N.Y. Aug. 20, 2021).

[3] Moreover, any claim that any Plaintiff suffered an injury based on any Defendant's petitioning to the FBI to investigate that Plaintiff, *see* Compl. ¶ 246, is barred by the *Noerr-Pennington* doctrine as protected First Amendment conduct. *See Bath Petroleum Storage, Inc. v. Mkt. Hub Partners, L.P.*, 229 F.3d 1135 (2d Cir. 2000) (summary order) (holding *Noerr-Pennington* doctrine applicable to RICO claims).

KAPLAN HECKER & FINK LLP

5

V. **The Complaint does not sufficiently plead Dechert's involvement.**

Even if the Complaint is not dismissed in its entirety, the claims against Dechert should be dismissed because the Complaint fails to satisfy the requirements of § 1962(c) with respect to Dechert. *See DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (plaintiff must satisfy requirements as to each defendant).

*First*, the Complaint fails to plead that Dechert participated in the purported pattern of racketeering activity by committing at least two predicate acts. *Id.* The Complaint accuses Dechert of mail and wire fraud, obstruction of justice, witness tampering and money laundering. *See* Compl. ¶ 239. Yet it identifies no actions by Dechert that it alleges constitute witness tampering; the Complaint's brief discussion of alleged witness tampering makes no mention of Dechert. *See* Compl. ¶¶ 217–20. Nor does it identify any transactions by Dechert that could possibly constitute money laundering; indeed, Plaintiffs make no effort to back up that allegation at all. *See* Compl. Ex. A. As for mail and wire fraud, the Complaint fails to allege that money or property was the object of the fraudulent scheme. *See Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020). Rather, the fraud predicates are based primarily on the creation or sharing of reports relying on hacked information and the filing of allegedly fraudulent court documents. *See* Compl. Ex. B. But by Azima's own telling, the alleged object of that conduct was to cover up Defendants' own actions, not to obtain money or property. *See, e.g.*, Compl. Ex. B ¶¶ 57, 68–69, 83. Finally, the obstruction of justice allegation rests on the alleged submission of false declarations and representations in litigation proceedings, as well as vague allegations of evidence destruction. *See* Compl. ¶¶ 213–16. To the extent these allegations involve representations or conduct in the U.K. Proceeding, they are not actionable because § 1503 applies only to attempts to influence proceedings "in or of any court of the United States." 18 U.S.C. § 1503(a). And Plaintiffs' attempts to connect these representations to the D.D.C. proceeding are attenuated, at best. *See* Compl. ¶¶ 101–11. In all events, obstruction of justice requires that a defendant "corruptly intended" to impede a judicial proceeding; Plaintiffs' allegations that Dechert was "recklessly indifferent" are insufficient. *See, e.g., United States v. Quattrone*, 441 F.3d 153, 170 (2d Cir. 2006).

*Second*, the Complaint fails to allege that Dechert participated in the Enterprise's "conduct," by "participat[ing] in the operation or management of the enterprise itself," *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). The Complaint alleges that Dechert participated by "providing the resources and infrastructure" for others' criminal activity and by acting as counsel for RAKIA. *See* Compl. ¶¶ 184–203, 239. But "provid[ing] goods and services that ultimately benefit the enterprise" is insufficient. *See Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 441 (S.D.N.Y. 2019). So is the provision of legal services to an alleged member. *Madanes v. Madanes*, 981 F. Supp. 241, 256–57 (S.D.N.Y. 1997).

Because the Complaint fails to allege violations of RICO, Plaintiffs' RICO conspiracy claim also fails. *See Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428 (S.D.N.Y. 2007). In addition, the Complaint fails to allege that Dechert itself agreed to join a conspiracy, a necessary element of such a claim. *See, e.g., Friedman v. Arizona World Nurseries Ltd. P'Ship*, 730 F. Supp. 521, 548–49 (S.D.N.Y. 1990). Moreover, the Complaint relies almost exclusively on allegations that Dechert was "recklessly indifferent" to evidence of the "Enterprise's crimes," *see, e.g.*, Compl. ¶¶ 184–93. However, one must enter a conspiracy "voluntarily and intentionally"; willful blindness is insufficient. *See United States v. Reyes*, 302 F.3d 48, 55 (2d Cir. 2002).

KAPLAN HECKER & FINK LLP

6

Respectfully submitted,

*Sean Hecker*

Sean Hecker