**LANKLER SIFFERT & WOHL LLP**
ATTORNEYS AT LAW

500 FIFTH AVENUE
NEW YORK, N.Y. 10110-3398
WWW.LSWLAW.COM

TELEPHONE (212) 921-8399
TELEFAX    (212) 764-3701

January 4, 2023

**VIA ECF**

The Honorable Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: **Azima et al. v. Dechert LLP et al.**
    22 Civ. 8728 (PGG)

Dear Judge Gardephe:

Plaintiffs have brought civil RICO claims in this Court against David Hughes for his alleged actions as a solicitor in England. These claims fail as a matter of law, and it is not close: Plaintiffs allege nothing that gives this Court personal jurisdiction over Mr. Hughes. Indeed, the complaint does not suggest that Mr. Hughes did anything related to New York. And all of Mr. Hughes' alleged racketeering conduct occurred in his capacity as an attorney litigating on behalf of his client—precisely the type of RICO claim that the Second Circuit has rejected. For these reasons, and for others set forth in the pre-motion letters filed by Mr. Hughes' co-defendants, the complaint should be dismissed.

Pursuant to Rule IV(A) of the Court's Individual Rules, Mr. Hughes respectfully requests that the Court hold a pre-motion conference or, in the alternative, set a briefing schedule in connection with his proposed motion to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Plaintiffs do not consent to the motion.

I.   **Background**

Most of the allegations in the complaint have nothing to do with Mr. Hughes. The complaint contains various assertions regarding the hacking of plaintiff Farhad Azima's data and the alleged dissemination of that material. But plaintiffs do not claim that Mr. Hughes was involved in any way in that alleged conduct. Plaintiffs do not suggest that Mr. Hughes participated in the formation of the plan to hack Mr. Azima, Compl. ¶ 45, or the hacking itself, *id.* ¶¶ 47–49, or that he reviewed the "Hacking Reports," *id.* ¶¶ 51–53. Plaintiffs do not contend that Mr. Hughes was a member of the "team" that met to "discuss strategy and tactics" related to the alleged plot to target Mr. Azima, *id.* ¶ 54, or that he drafted or reviewed the "Action Plan" describing the same, *id.* ¶¶ 59.

Instead, the complaint appears to contend that at some unspecified point in time Mr. Hughes learned through some unspecified means that the "enterprise" was somehow involved in the hacking, and Mr. Hughes thereafter participated in an alleged "cover-up" of whatever it was he had learned. To the limited extent the complaint offers any particulars as to Mr. Hughes,

L ANKLER  S IFFERT & W OHL LLP

Hon. Paul G. Gardephe
January 4, 2023
Page 2

plaintiffs contend that Mr. Hughes participated in the alleged cover-up in his capacity as a solicitor on behalf of UAE-based Ras Al Khaimah Investment Authority ("RAKIA"), in litigation in England between RAKIA and Azima—i.e., in communications with opposing counsel, *id.* ¶¶ 69–70; statements in court filings, *id.* ¶ 98; and meetings with witnesses, *id.* ¶ 102. While the complaint is sprinkled with statements assigning a greater role to Mr. Hughes—for example, that he was "a high-level deputy" or that he "mastermind[ed] . . . a global criminal enterprise"—these are nothing more than bald assertions, with no factual pleadings in support. *Id.* ¶¶ 17, 185. Likewise, while plaintiffs claim that this Court has personal jurisdiction over Mr. Hughes, *id.* ¶ 36, they plead no facts that would give rise to such jurisdiction. They do not even try. Instead, the complaint merely alleges, with varying degrees of specificity, purported actions by Mr. Hughes related to the District of Columbia (where Azima commenced an action against RAKIA) and is silent on any connection between Mr. Hughes and New York. Plaintiffs offer no theory as to how the complaint's allegations support an assertion of jurisdiction over Mr. Hughes by a U.S. court sitting in New York—because there is none.

**II.     The Complaint Should be Dismissed for Lack of Personal Jurisdiction**

Plaintiffs bear the burden of establishing personal jurisdiction over Mr. Hughes. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). A plaintiff must establish both a statutory basis for personal jurisdiction and that the exercise of jurisdiction comports with due process. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016). In doing so, plaintiffs "must make allegations establishing jurisdiction with some factual specificity and cannot establish jurisdiction through conclusory assertions alone." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 395 (S.D.N.Y. 2021) (internal quotation marks omitted). Plaintiffs come nowhere close to meeting their burden.

To begin, plaintiffs have not established a statutory basis for personal jurisdiction. The sole jurisdictional statute invoked by plaintiffs with respect to Mr. Hughes is the nationwide service provision of the RICO statute, 18 U.S.C. § 1965(b). Compl. ¶ 36. But § 1965(b) "does not provide for international service of process." *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392 (S.D.N.Y. 2002). To establish personal jurisdiction under § 1965(b), a defendant "must be served with process within the United States." *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 n.7 (S.D.N.Y. 2015) (internal quotation marks omitted). Mr. Hughes was served at his home in England, *see* ECF No. 75 at 2–3, and § 1965(b) is unavailing.

Instead, "plaintiffs asserting RICO claims against foreign defendants must rely on the long-arm statute of the state in which they filed suit." *Elsevier, Inc.*, 77 F. Supp. 3d at 343 (internal quotation marks omitted). New York's long-arm statute provides, in relevant part, for specific personal jurisdiction over an out-of-state defendant who: (1) "transacts any business within the state"; (2) "commits a tortious act within the state"; or (3) "commits a tortious act without the state causing injury . . . within the state, . . . if he (i) regularly does or solicits business,

**LANKLER SIFFERT & WOHL LLP**

Hon. Paul G. Gardephe
January 4, 2023
Page 3

or engages in any other persistent course of conduct, or derives substantial revenue from goods used . . . or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[,]" but only "[a]s to a cause of action arising from" the enumerated act. N.Y. C.P.L.R. § 302(a)–(a)(3)(ii).  None of these subsections applies here.

The complaint does not allege that Mr. Hughes transacted business, committed a tortious act, or caused an injury in New York.  In fact, the complaint makes no effort to tie Mr. Hughes to New York at all.  Despite having already obtained the cooperation of alleged participants in the enterprise, Compl. ¶ 9 n.3, as well as discovery by means of a §1782 proceeding brought against a N.Y.-based co-defendant, *see* ECF No. 82 at 1 (describing the §1782 proceeding previously filed with this Court), plaintiffs allege no facts as to Mr. Hughes that have anything to do with New York.  Plaintiffs do not claim that Mr. Hughes, a citizen and resident of England, took any action in New York or directed at New York.  Nor is Mr. Hughes alleged to have caused plaintiffs injury in New York.  While plaintiffs allege that the §1782 proceeding in New York to support their claims of obstruction was itself obstructed—apparently because the respondent in the §1782 proceeding disputed plaintiffs' claims regarding the hacking and cover-up, Compl. ¶¶ 129–32—plaintiffs do not suggest that Mr. Hughes had anything to do with that proceeding.

Nor does the complaint establish long-arm jurisdiction based on the allegations regarding Mr. Hughes' co-defendants.  New York courts have recognized that personal jurisdiction can, in appropriate cases, extend to out-of-state individuals based on an agency or conspiracy theory.  *LaChapelle v. Torres*, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014).  But as Judge Cronan recently explained following an exhaustive examination of New York law, "New York does not provide for some abstract form of conspiracy jurisdiction divorced from the defendant's intentional contacts with the forum."  *Al Thani v. Hanke*, No. 20 Civ. 4765 (JPC), 2021 WL 1895033, at *11 (S.D.N.Y. May 11, 2021).  Rather, a "plaintiff must show that (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirator was to the benefit of the out-of-state conspirator; and (c) the co-conspirator acting in New York acted at the direction or under the control or at the request or on behalf of the out-of-state defendant."  *Id.* (internal quotation marks and alterations omitted).  The allegations in the complaint show none of these things.

And even if plaintiffs had established a statutory basis for jurisdiction, the exercise of jurisdiction over Mr. Hughes would not satisfy due process.  A plaintiff must demonstrate that "a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction over the defendant" and that "the assertion of personal jurisdiction over the defendant comports with 'traditional notions of fair play and substantial justice' under the circumstances of the particular case."  *Waldman*, 835 F.3d at 331 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)).  The Supreme Court has repeatedly emphasized that the exercise of personal jurisdiction "must arise out of contacts that the 'defendant himself' creates

LANKLER SIFFERT & WOHL LLP

Hon. Paul G. Gardephe
January 4, 2023
Page 4

with the forum[.]" *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The complaint, however, does not allege *any* contact between Mr. Hughes and New York, let alone contacts that would meet the requirements of due process. There is simply no suggestion whatsoever that Mr. Hughes has "purposeful[ly] availed" himself of the laws of New York. *Burger King Corp.*, 471 U.S. at 475.

Plaintiffs have fallen far short of demonstrating personal jurisdiction over Mr. Hughes. Indeed, they have not even established a *prima facie* case for jurisdiction that could justify jurisdictional discovery. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007); *Wilder v. News Corp.*, No. 11 CIV. 4947 (PGG), 2014 WL 1315960, at *6–*7 (S.D.N.Y. Mar. 31, 2014). Plaintiffs have written a 262-paragraph complaint with a panoply of allegations spanning the globe. They have obtained evidence from various alleged participants in the enterprise. And yet, by plaintiffs' own account, none of this has anything to do with Mr. Hughes and New York. Mr. Hughes is not properly before this Court, and the claims against him should be dismissed.

**III.    The Complaint Should be Dismissed for Failure to State a Claim**

Dismissal is also warranted because the complaint fails to state a claim as to Mr. Hughes. In the interest of judicial economy and efficiency, Mr. Hughes will not repeat arguments already set forth in co-defendants' pre-motion letters regarding (a) comity and the doctrine of forum non conveniens; and (b) the complaint's various pleading deficiencies relating to the elements of substantive RICO and RICO conspiracy claims. Instead, Mr. Hughes simply notes that those arguments apply to him with equal force and warrant dismissal of the complaint against him.

Additionally, the complaint fails as to Mr. Hughes because the RICO predicates alleged as to him all involve litigation on behalf of his client: communicating with opposing counsel, Compl. ¶¶ 69–70, 87, 91, 99, *id.* Ex. B at 24–26, 43; making statements in court filings, *id.* ¶¶ 98, 103, 105; meeting with witnesses in the U.K. litigation, *id.* ¶¶ 102, 104, 106, *id.* Ex. B. at 46, 54; and preparing for the same, *id.* Ex. B. at 45. The Second Circuit has held that "'allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act.'" *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (quoting *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)). For Mr. Hughes, there is nothing "more." Once his litigation activity is stripped from the complaint, there are no RICO predicates alleged as to Mr. Hughes, and the case against him must be dismissed. Even if (contrary to fact) there was a racketeering enterprise, and Mr. Hughes acted as a lawyer to illegally cover up the affairs of that enterprise, that still would not suffice to state a RICO claim against him. As Judge Sand explained long ago, a lawyer who "knowingly conceal[s] the fraudulent activities of the enterprise" does not come within the "operation or management" of the enterprise and is not subject to liability under the RICO statute. *Madanes v. Madanes*, 981 F. Supp. 241, 256 (S.D.N.Y. 1997).

In response to other pre-motion letters challenging the complaint's reliance on litigation

L ANKLER  S IFFERT & W OHL LLP

Hon. Paul G. Gardephe
January 4, 2023
Page 5

activity, plaintiffs have pointed to *Chevron Corp. v. Donziger*, 871 F Supp. 2d 229 (S.D.N.Y. 2012), and *Sykes v. Mel Harris & Associates, LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010).  But in neither case did the district court address whether litigation activity could properly qualify as RICO predicates.  And, in any event, both cases involved—as plaintiffs' claims against Mr. Hughes do not—allegations of extensive non-litigation racketeering activity.  *See Kim*, 884 F.3d at 105 (distinguishing *Sykes* on that ground); *Chevron*, 871 F. Supp. 2d at 247–48, 251 (describing allegations of non-litigation racketeering activity).  Those district court decisions, which predate the Circuit's holdings in *Kim* and *Butcher*, have no bearing on the outcome here.

      Moreover, while plaintiffs claim that Mr. Hughes committed "mail and wire fraud, obstruction of justice, witness tampering, and money laundering," Compl. ¶ 240, each of these fact-free allegations fails by its terms.  Plaintiffs fail to identify any act of money laundering committed by Mr. Hughes.  *Id.* Ex. A.  Additionally, while plaintiffs allege that Mr. Hughes committed witness tampering by "secretly coaching witnesses in the U.K. proceeding," *id.* ¶ 240, the federal witness tampering statute applies only to "official proceeding[s]," which does not include litigation overseas. 18 U.S.C. §§ 1512(b)(1)–(2)(D), 1515(a)(1).  Likewise, Mr. Hughes' alleged activity in the U.K. litigation cannot constitute obstruction of justice because the federal obstruction statute reaches only attempts to influence proceedings "in or of any court of the United States." 18 U.S.C. § 1503(a).  And while plaintiffs state that Mr. Hughes' alleged activity in the U.K. proceeding was "directed at least in part toward the U.S. litigation," Compl. ¶ 240, "the allegation[] [is] conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  Finally, the fraud predicates, based on Mr. Hughes' communications with opposing counsel and statements of his client's position in litigation, likewise fail as a matter of law.  *See Butcher*, 975 F.3d at 241; *Kim*, 884 F.3d at 104; *see also Paul S. Mullin & Associates, Inc. v. Bassett*, 632 F. Supp. 532, 540 (D. Del. 1986) ("The Court finds absurd plaintiffs' apparent suggestion that a lawyer's act in posting a letter which states a client's legal position in a dispute can constitute mail fraud.  If such were the situation, every dispute in which the parties' counsel exchanged letters could give rise to RICO litigation.  Such activity simply is not fraudulent.").

      The complaint provides no basis for claims against Mr. Hughes.  Accordingly, Mr. Hughes requests that the Court hold a pre-motion conference or set a schedule for briefing his motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

      Respectfully,

Helen Gredd
Michael Gerber
*Attorneys for Defendant David Hughes*

cc:  All Counsel of Record via CM/ECF