Miller & Chevalier

**Kirby D. Behre**
Member
(202) 626-5960
kbehre@milchev.com

January 11, 2022

**VIA ECF**

Honorable Paul G. Gardephe
United States District Court Judge
Thurgood Marshall United States Courthouse
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:   *Azima, et al. v. Dechert LLP, et al*, 1:22-CV-08728-PGG;
            Response to Pre-Motion Letter of David Hughes (ECF No. 96)

Dear Judge Gardephe:

      Pursuant to Your Honor's Individual Practice Rule IV.A, Plaintiffs submit this letter in response to Defendant David Hughes's pre-motion letter of January 4, 2023 (ECF No. 96, hereafter, the "Hughes Letter").

      The assertion by David Hughes ("Hughes") that he is named as a Defendant in this action because he is a solicitor in the UK is inaccurate. Rather, Hughes is a Defendant because he was an active participant in a criminal enterprise and conspiracy that operated in New York and targeted a U.S. citizen (among others), and whose unlawful objectives included the obstruction of judicial proceedings in New York and other U.S. forums. As alleged in the Complaint, and as detailed below, Hughes personally transacted relevant illicit business in New York; he personally committed wrongful and tortious acts within and directed at New York; and he instructed his agents, business partners and co-conspirators in New York, including at Dechert LLP, to take further actions to advance the RICO enterprise's scheme. He worked closely with Gerrard and Dechert (collectively, with Hughes, the "Dechert Defendants") to organize and manage the Enterprise's misconduct, which included substantial activity in New York. Indeed, it was the human rights abuses committed by the Dechert Defendants, targeting Karam Al Sadeq, that set in motion the Enterprise's illicit activity. In all events, because he purposefully availed himself of this forum, this Court plainly has personal jurisdiction over him.

      For this reason, and for the balance of the reasons discussed below, Plaintiffs would oppose the motion to dismiss contemplated by Hughes.

**I.      THIS COURT HAS PERSONAL JURISDICTION OVER HUGHES**

Defendant Hughes does not dispute that he has relevant ties to the United States, and he does not dispute, as a general proposition, that "under RICO's nationwide service provision, the defendant's national contacts, rather than [his] minimum contacts with the forum state, determine whether the district court has personal jurisdiction over the defendant." *Doe I v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1182 (C.D. Cal. 1998), *aff'd and adopted by* 248 F.3d 915 (9th Cir. 2001). Rather, Hughes contends that, by the mere circumstances of his service of process in this case – he was served via Hague Convention processes – the RICO "national contacts" rule is inapplicable to him and that minimum contacts must instead be established specifically to New York, consistent with New York's long-arm statute, CPLR § 302(a). Hughes Letter at 2-3. This is an exceedingly thin basis to circumvent RICO's national jurisdiction – and we submit an incorrect interpretation of the law – but it is ultimately academic, because Hughes has plain, substantial, and relevant contacts with the State of New York, sufficient to satisfy jurisdiction under CPLR § 302(a)(1) (transacting business within the state) and CPLR § 302(a)(2) (committing tortious acts within the state), as well as Due Process.

Hughes's erroneous suggestion that his physical presence in New York is required to establish jurisdiction is contrary to settled New York law that a defendant may purposefully avail himself of the state – and be subject to jurisdiction under any prong of the long-arm statute – "even if [he] never actually entered the state." *Rich v. Fox News Network LLC*, No. 18-cv-2223, 2020 WL 6276026, at *3 (S.D.N.Y. Sept. 15, 2020). Thus, as would surprise no financier, lawyer, or businessman, a person may "transact business" in New York (grounding jurisdiction under CPLR § 302(a)(1)) without setting foot in New York. *Id*. In particular, remote communications effecting business in New York, including through the actions of others within the state, may confer personal jurisdiction. *See Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 204 (S.D.N.Y. 2019) (defendant "'purposefully avail[ed] itself of the privilege of conducting activities within New York'" where it arranged for the distribution and performance of its content by others from New York, even if the defendant itself was not present in the state) (quoting *Royalty Network, Inc. v. Dishant.com LLC*, 638 F. Supp. 2d 410, 4178-18 (S.D.N.Y. 2009)); *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11-cv-3673, 2012 WL 123989, at *4 (S.D.N.Y. Jan. 3, 2012) ("When a defendant's remote communications effectuate some purposeful business in New York, personal jurisdiction will be found."). Telephone calls, emails, and video conferences are all means of transacting business in New York, and any such remote interaction is a contact sufficient to confer jurisdiction under the long-arm statute. As a result, because Hughes transacted business in New York, Due Process is satisfied.

The Complaint also pleads specific instances of Hughes interacting remotely with New York-based personnel who acted on Hughes's behalf to further the RICO enterprise's scheme. For example, Hughes fed false information to his New York-based partner at Dechert, Linda Goldstein, to enable Goldstein to make false submissions to U.S. courts on his behalf. Compl. ¶¶ 93, 102-06. He emailed with Goldstein to keep abreast of the U.S. judicial proceedings that he obstructed, and Goldstein filed false statements from Hughes. *Id*. ¶¶ 98-99. From her New York office, Goldstein attended a meeting with Hughes and others to develop false testimony of a key witness. *Id.* ¶ 104. Goldstein copied Hughes and Gerrard on emails including false statements, and she clearly relied on Hughes and Gerrard to marshal the "facts" that she presented in court and to opposing counsel.

*Id.* ¶¶ 118-19.  And the Complaint alleges that Goldstein committed wire fraud from New York on behalf of the Enterprise.  Compl. Ex. B at lines 53, 64, 78, 82-88, 92, 118-19.  Hughes "worked closely with Gerrard in organizing and structuring the Enterprise, coordinating and carrying out its affairs, and directing and executing its illegal acts.  Compl. ¶ 17.  Surely, Messrs. Hughes and Gerrard cannot use a New York lawyer as their mouthpiece and deploy the resources of a New York law office to advance their ends without purposefully availing themselves of the jurisdiction of this State.

Indeed, in a conspiracy such as that alleged, a defendant's delegation to an in-state co-conspirator or agent is a separate basis to ground personal jurisdiction.  Conspiracy jurisdiction is appropriate where (1) an out-of-state defendant was aware of the effects of their activity in New York, (2) the activity of the New York conspirator benefitted the defendant, and (3) the New York conspirator acted at the request of or on behalf of the defendant.  *Al Thani v. Hanke*, No. 20 Civ. 4765, 2021 WL 1895033, at *11 (S.D.N.Y. May 11, 2021).  The Complaint alleges all three prongs against Hughes.  For instance, Hughes was aware that his instructions to Goldstein in New York would result in Dechert filing obstructive statements.  Compl. ¶ 36; *id.* Ex. B at lines 57, 84.  The false statements filed by Goldstein and Dechert sought to advance the interests of Hughes's co-conspirator and client, RAKIA, and therefore inured ultimately to Hughes's financial benefit.  *Id.* ¶ 62.  And Goldstein's electronic communications with Hughes confirm that she was acting at his direction and on his behalf.  *Id.* ¶ 98; *id.* Ex. B at line 85.

More generally, it is settled under the law of New York and Pennsylvania (where Dechert is organized) that, absent circumstances to indicate the contrary, partners such as Hughes and Goldstein are each "'an agent of [their] fellow partners, as well as of the partnership.'"  *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 616 (S.D.N.Y. 2008) (quoting *Durkin v. Shea*, 957 F. Supp. 1360, 1366 (S.D.N.Y. 1997)); *Friedson v. Lesnick*, No. 91-cv-2133, 1992 WL 51543, at *2 (S.D.N.Y. Mar. 9, 1992) ("Under New York law, each general partner acts as the agent of every other general partner and of the partnership."); N.Y. P'ship Law § 20(1) ("Every partner is an agent of the partnership for the purpose of its business"), *accord Slomowitz v. Kessler*, 268 A.3d 1081, 1096-98 (Pa. Super. Ct. 2021) (citing 15 Pa. Cons. Stat. § 8431(1) for the statement that "[e]ach partner is an agent of the partnership for the purpose of its business" in defining the fiduciary duties of general partners).  Because of this, "[w]here a court has personal jurisdiction over a partnership, either because of the partnership's activities as a whole or the actions of a single partner acting on behalf of the partnership, the court has personal jurisdiction over all of the general partners."  *Afloat in France, Inc. v. Bancroft Cruises Ltd.*, No. 03-cv-917, 2003 WL 22400213, at *5 (S.D.N.Y. Oct. 21, 2003); *Friedson*, 1992 WL 51543, at *2 (citing *Wichita Fed. Sav. & Loan Ass'n v. Comark*, 586 F. Supp. 940, 943–44 (S.D.N.Y.1984)) ("[B]ased on these agency relationships, courts have personal jurisdiction over general partners if the court has jurisdiction over the partnership itself, and the lawsuit arises out of partnership affairs.").  Ultimately, "long-arm jurisdiction can be established over a non-resident principal through an agent if that agent 'acted in the state for the benefit of, and with the knowledge and consent of the non-resident principal.'"  *Durkin*, 957 F. Supp. at 1366.  As discussed above, it is clear that Goldstein acted at least as Hughes's New York-based agent.  The Dechert Defendants' purposeful use of Goldstein, and of other Dechert personnel in New York, underscores that Hughes and his co-Defendants are subject to this Court's jurisdiction.

For all of these reasons, the Complaint supports personal jurisdiction over Hughes, and any dismissal motion should be denied.

For the reasons discussed above, the Complaint directly and specifically defeats Hughes's claim that he did not "have anything to do with New York." Hughes Letter at 3. However, if the Court believes that jurisdictional discovery might help clarify jurisdiction over Hughes, Plaintiff requests that such discovery be ordered to take place as soon as possible prior to any motion practice seeking dismissal based on personal jurisdiction. Plaintiffs' allegations are more than adequate to indicate that they "'may be able to establish jurisdiction if given the opportunity to develop a full factual record.'" *Piotrowicz v. Techtronic Indus. N. Am., Inc.*, No. 19-cv-11522, 2021 WL 1721709, at *3 (S.D.N.Y. Apr. 30, 2021) (citation omitted). As Hughes admits, the Complaint cites "**evidence** from various alleged participants in the enterprise," Hughes Letter at 4 (emphasis added), detailing significant contacts between the Enterprise and New York, identifying key players who reside in New York and work out of offices in New York, and describing regular meetings among the Defendants at Dechert's New York office to plan their next steps to fulfill their Action Plan against Plaintiffs. Compl. ¶¶ 15, 18, 22, 23-25, 29, 54, 60, 77, 104, 106, 130. Jurisdictional discovery could include limited document requests to Hughes and Dechert for billing records, travel records, calendar invites, and other documents, as well as a targeted deposition of Hughes, to test Hughes's suggestion that he did not "have anything to do with New York." Hughes Letter at 3. Proceeding with any necessary jurisdictional discovery prior to briefing would ensure efficient use of judicial resources.

## II. THE COMPLAINT ADEQUATELY PLEADS RICO CLAIMS

The Complaint sufficiently alleges RICO claims against Hughes. Like the other Defendants, Hughes argues that his illicit activities are litigation activities and therefore are not cognizable RICO predicate acts.[1] As with the other Defendants, Hughes's arguments fail because they misconstrue the facts in the Complaint and misapply the law to those facts.

In addition to the detailed allegations of obstruction, Hughes ignores the allegations of his predicate acts that are not "litigation activities." Hughes "worked closely with Gerrard in organizing and structuring the Enterprise, coordinating and carrying out its affairs, and directing and executing its illegal acts." Compl. ¶ 17. Hughes was one of three Dechert partners accused by Karam Al Sadeq of inhumane detention, coerced interrogation, and human rights abuses that led directly to the Enterprise's misconduct. *Id.* ¶¶ 40-43. Hughes was a key player in clandestine meetings with a witness (Majdi Halabi), as well as with admitted hacker Stuart Page, Eitan Arusy (based in the U.S.), and others to orchestrate the witness's false testimony, which cannot be considered litigation activity. *Id.* ¶¶ 102-06. Hughes is also among those alleged in the Complaint to have received the anonymous package mailed from Lebanon meant to defraud the U.S. District

---

[1] Hughes incorporates arguments raised by other Defendants, specifically relating to comity and *forum non conveniens*, as applying to him with equal force. *See* Hughes Letter at 4. However, Hughes is not a party to any other litigation with Azima, and it is not clear what his arguments for comity and transfer are. Regardless, to the extent Hughes raises these arguments solely by reference to the previously filed letters, Plaintiffs similarly incorporate their prior responses.

Court for the District of Columbia.  *Id.* ¶¶ 123-24.  As pleaded in the Complaint, the co-conspirators included their own names on the recipient list specifically to deceive the court into believing that they had played no part in distributing the false documents.  *Id*.  The Dechert Defendants and their client RAKIA clearly benefited from this deception – and this kind of subterfuge is not protected litigation activity as contemplated by the Second Circuit in *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018).  A litigator does not have immunity to engage in such unlawful conduct, and Defendant Hughes errs in citing *Kim* and its progeny to suggest as much.

Finally, Hughes errs in suggesting that his conduct is extraterritorial or otherwise beyond the ambit of the federal obstruction laws.  Most notably, when Hughes prepared Halabi to provide false testimony, the civil action in U.S. District Court for the District of Columbia was the *only* proceeding in which the hacking was being litigated, and thus the District of Columbia was the only forum in which the false story about Halabi discovering the hacked documents would have been helpful at the time.  Compl. ¶ 110.  Simply put, the Complaint alleges in detail why Hughes's obstructive conduct was directed to this U.S. proceeding.  *Id*. ¶¶ 83-85, 90, 101-05 (explaining why Hughes actions were "necessarily intended, at least in part, to obstruct those U.S. proceedings").  As with each of the Defendants, and as made clear in the Complaint's allegations, Hughes's objectives were to obstruct U.S. legal proceedings and to conceal the hacking of a U.S. citizen's private data, to financially injure a U.S. citizen, and to retaliate against him for having the temerity to speak out against human rights abuses perpetrated by a Dechert client and the Dechert Defendants.  *Id*.

These allegations are well pleaded, and any dismissal motion must be denied.

\* \* \*

For all these reasons, Plaintiffs would oppose Hughes's proposed motion to dismiss.

Sincerely,

*/s/ Kirby D. Behre*

Kirby D. Behre

CC:  All Counsel of Record (VIA ECF)