# Miller & Chevalier

**Kirby D. Behre**
Member
(202) 626-5960
kbehre@milchev.com

January 13, 2022

**VIA ECF**

Honorable Paul G. Gardephe
United States District Court Judge
Thurgood Marshall United States Courthouse
Southern District of New York
40 Foley Square
New York, NY 10007

> Re:    *Azima, et al. v. Dechert LLP, et al*, 1:22-CV-08728-PGG;
> Response to Pre-Motion Letter of Neil Gerrard (ECF No. 99)

Dear Judge Gardephe:

Pursuant to Your Honor's Individual Practice Rule IV.A, Plaintiffs submit this letter in response to Defendant Neil Gerrard's pre-motion letter of January 10, 2023 (ECF No. 99; hereafter, the "Gerrard Letter"). Gerrard seeks leave to file a motion to dismiss based upon arguments that repeatedly fail to address clear language in the Complaint defeating those arguments.

Gerrard is the architect of the RICO Enterprise scheme alleged in the Complaint. He engaged in illegal and abhorrent conduct to advance his, Dechert's, and members of the Enterprise's financial interests. He participated in the physical abuse of detainees. He commissioned and oversaw the hacking of Plaintiffs' data and the weaponization of this data to retaliate against Azima for speaking out against his client's human rights abuses. And he oversaw an extensive scheme to conceal the conspirators' wrongdoing, including by obstructing judicial proceedings in New York and in other U.S. fora.

Gerrard seeks permission to file a motion to dismiss based upon his contention that he is beyond the jurisdiction of this Court. The Complaint clearly alleges otherwise and describes in detail his regular participation in meetings in New York, his use of Dechert's flagship New York law office to further the work of the Enterprise and his deployment of Dechert's New York-based lawyers to effectuate his scheme. Compl. ¶¶ 54, 98-99, 102-06, 118-19, 184-203. In addition, Gerrard met with and oversaw New York based co-conspirators Handjani, Frank, and KARV Communications, a New York public relations firm ("Handjani Defendants"), to plan and execute his RICO scheme, which included obstructing proceedings in this courthouse. Compl. ¶¶ 35, 54,

59-61. The face of the complaint establishes that Gerrard's personal jurisdiction arguments are baseless.

Gerrard also repeats arguments of other Defendants about the adequacy of the Complaint. Because we have previously addressed these legal arguments, we do so briefly in this response and incorporate our prior responses. ECF Nos. 83, 86, 90, 91, and 100.

For these reasons, and for those discussed below, Plaintiffs would oppose the motion to dismiss contemplated by Gerrard.

## I.   THIS COURT HAS PERSONAL JURISDICTION OVER GERRARD

Gerrard claims he is not subject to personal jurisdiction in this courthouse yet concedes that the Complaint alleges that he "carried on the affairs of the Enterprise out of Dechert's New York office" and "met with others in New York to cause filing false statements." Gerrard Letter at 2 (citing Compl. ¶¶ 15, 35). Thus, his argument regarding personal jurisdiction is that there is not enough detail about his contacts with New York. That argument is easily defeated by the Complaint itself, which alleges numerous direct and regular contacts with New York, including:

- Gerrard "repeatedly met with Handjani, Frank, Del Rosso, and other Dechert lawyers in New York to cause the filing of false statements in U.S. and U.K. courts and to U.S. law enforcement agencies in service of the Enterprise's goal of inflicting reputation harm and litigation costs on Azima." Compl. ¶ 35.
- "Forlit met with Gerrard at least a dozen times between 2015 and 2020, including at Dechert's offices in New York." *Id*. ¶ 54.
- "Gerrard, Handjani, Buchanan, Frank, Del Rosso, and others also met regularly during this time period [2015-2020], including at Dechert's offices in New York, to plan strategy for the attacks against Azima." *Id*. ¶ 54; *see also id*. ¶ 130 (regularly meetings every four to six weeks).
- The comprehensive action plan that outlined the plan to harm Azima was created by Gerrard and the Handjani Defendants in New York: "In December 2015, Frank, Gerrard, and others, . . . met in New York to discuss this plan." *Id*. ¶ 60.

The Complaint thus alleges that many of the Enterprise's activities were planned by Gerrard (and many of his co-defendants) while physically present in New York, sometimes at Dechert's New York offices. Given his substantial contacts transacting business in New York and committing torts in New York, jurisdiction is clearly proper under CPLR § 302(a) and Due Process is satisfied.[1]

Given the substantial contacts Gerrard had with New York and his role in running a conspiracy out of New York, jurisdiction is plainly proper. As with Hughes and Dechert, if the

---

[1] Moreover, while Gerrard and his team often operated from New York, his physical presence in the state is not even required to establish jurisdiction under either prong of the long arm statute. *See Rich v. Fox News Network LLC*, No. 18-cv-2223, 2020 WL 6276026, at *3 (S.D.N.Y. Sept. 15, 2020); *see also* ECF No. 100 at 3-4 (response to David Hughes pre-motion letter).

Court determines that jurisdictional discovery would aid the inquiry, such discovery should be done as soon as possible prior to briefing of these issues, so as to conserve judicial resources.

## II.   THE COMPLAINT IS APPROPRIATELY BEFORE THIS COURT

Like his co-conspirators, Gerrard seeks leave to move to dismiss based upon the argument that the Complaint splits claims raised in the North Carolina and U.K. Proceedings.  Gerrard Letter at 3-4; *see also* ECF No. 85 at 1-2; ECF No. 87 at 2.  Yet at least one of the cases he cites undermines its own argument:  Where key differences in cases require different showings of proof, there is no "claim splitting."  *See Tera Grp., Inc. v. Citigroup, Inc.*, No. 17-cv-4302, 2019 WL 3457242, at *9-10 (S.D.N.Y. July 30, 2019) (denying motion to dismiss). The North Carolina case is about trade secrets, with many of predicate acts from this case occurring after that suit was filed. *See* Compl. ¶¶ 147-53, 165-69.

The U.K. proceeding, which has been pending for more than six years and focuses on hacking, has different parties and claims from this case. Also, in that case, Dechert's client withdrew from the U.K. proceedings, claiming that they may have been misled by the Dechert Defendants, who they described as "dishonest and unscrupulous third-party advisers who have taken steps to advance their own interests for their own gains." *Id.* ¶ 201.  As "[o]nly the clearest of justifications will warrant dismissal" for comity, *Royal & Sun All. Ins. Co. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92, 93 (2d Cir. 2006) ("The mere existence of parallel foreign proceedings does not negate the district courts' virtually unflagging obligation . . . to exercise the jurisdiction given them.") (cleaned up), there is no basis for a stay or dismissal here where there is, among other things, minimal overlap between the two cases, the U.S. claims could not be brought in the U.K., only two of the eleven defendants in this action are defendants in the U.K. action, and many of the predicate acts involve obstruction of U.S. courts. Simply put, Gerrard ran a conspiracy through New York involving regular meetings in Dechert's New York office with New York co-conspirators.

Lastly, Gerrard says that a forum selection clause in a settlement agreement between Azima and RAKIA "is likely triggered" by this lawsuit but does not explain why that would be the case. The forum selection clause was in a contract between Azima and RAKIA, was fraudulently induced, and is limited to claims arising out of or in connection with the settlement agreement between Azima and RAKIA.  Compl. ¶ 62; *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 877 (D.C. Cir. 2019).  This is no such dispute.  RAKIA is not a defendant in this case, and the conduct of the Dechert Defendants in this case is unrelated to the formation of Azima's settlement agreement with RAKIA.

## III.   THE COMPLAINT ALLEGES PREDICATE ACTS WITHIN THE PAST FOUR YEARS

Gerrard's argument that the Complaint is time-barred is directly defeated by the four corners of the Complaint, which alleges predicate acts of obstruction, fraud, and witness tampering committed by Gerrard within the past four years. Gerrard's meetings to concoct perjury for U.S. and U.K. courts in Cyprus and London occurred in 2018 and 2019. *Id.* ¶¶ 101-06. Gerrard's mail fraud upon the U.S. District Court for the District of Columbia occurred in April 2019. *Id.* ¶¶ 121-

24. Gerrard's involvement in Handjani's efforts to make improper payments to a witness occurred in 2020. *Id.* at Ex. B at 154. The Complaint also alleges new injuries within the past four years. *Id.* ¶ 180

## IV.   THE COMPLAINT PROPERLY PLEADS A RICO ENTERPRISE AND SCHEME

Lastly, Gerrard repeats four arguments made by other defendants that the Complaint does not properly plead a RICO scheme. Gerrard Letter at 4-5. Each of these arguments fails, as previously explained and summarized below.

*First*, Gerrard argues the Complaint fails to allege an enterprise with a common purpose. The Complaint states more than adequate allegations, and alleging a RICO enterprise is "generally not a high threshold," *Mackin v. Auberger,* 59 F. Supp. 3d 528, 542 (W.D.N.Y. 2014). Each Defendant's connection to the Enterprise is summarized in detail at the outset of the Complaint. *See, e.g.*, Compl. ¶¶ 15-25. The Complaint even summarizes the organization of the Enterprise. *See id.* ¶¶ 207-09. The Complaint also explains that "as Azima came closer to uncovering the truth above the hacking through litigation in the U.S. and the UK, the Enterprise repeatedly sought to obstruct justice . . . to avoid detection and to obtain a multi-million-dollar judgment against Azima." *Id.* ¶ 75. The Enterprise's conduct, moreover, was not only directed at Plaintiff Azima like Gerrard suggests. It also targeted numerous victims, including the other plaintiffs, Karam Al Sadeq, and Dr. Khater Massaad. *Id.* ¶¶ 3, 8, 38-43, 60, 163-66, 185-89.

*Second*, and similarly, Gerrard's argument that the Complaint fails to allege a pattern of racketeering because there is "only one scheme" and "one victim" fails because it ignores the plain language of the Complaint. As noted, the Enterprise targeted multiple victims in a staggering number of criminal acts. *Id.* ¶¶ 38-43, 61. Regardless, multiple acts in furtherance of the same scheme can constitute a pattern. *United States v. Daidone*, 471 F.3d 371, 374-75 (2d Cir. 2006). And here, the sheer number of criminal acts the Gerrard-led Enterprise orchestrated in furtherance of the same unlawful goals is sufficient to show a pattern.

*Third*, Gerrard argues that injury and proximate cause have not been alleged. This argument simply fails to address or consider the plain language of the Complaint. A RICO injury is recoverable if it injures "business or property." 18 U.S.C. § 1964(c). There is no categorical limitation. Reputational damages are recoverable. *See Nygård v. Bacon*, No. 19-cv-1559, 2021 WL 3721347, at *5 (S.D.N.Y. Aug. 20, 2021). And so are lost profits. *Elsevier Inc. v. W.H.P.R., Inc.,* 692 F. Supp. 2d 297, 310 (S.D.N.Y. 2010). The only limitations to a RICO recovery are proximate causation and lack of speculation. *Id.*

Here, Plaintiffs' injuries are specifically alleged, not speculative, and directly connected to the Enterprise's RICO violations. *See, e.g.*, Compl. ¶ 180 (alleging lost loan worth $13.5 million and $15 million in lost profits). Moreover, causation is clear because these injuries are exactly what Gerrard and his co-conspirators intended and worked towards. *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003) ("Central to the notion of proximate cause is . . . [whether the] injury was reasonably foreseeable or anticipated as a natural consequence.") (cleaned up). The Complaint alleges that Gerrard was instrumental in the drafting of the "comprehensive action plan," which "identified steps the Enterprise would take to damage [Plaintiff] Azima's 'reputation

and even [ex]pose him [to] criminal exposure.'" Compl. ¶ 61.  The object of the scheme was to defraud Azima by harming his businesses and bankrupting him.  *Id.*  Proximate causation is clear.  The injuries incurred by Plaintiffs were not only foreseeable to Defendants; they were foreseen, and one of the objects of the conspiracy was to cripple the Plaintiffs financially.

**Fourth**, Gerrard argues that the Complaint fails to allege predicate acts against him in the U.S.  As discussed, Gerrard committed a number of predicate acts in New York.  *See infra* Section I.  He also committed countless predicate acts that were intended to affect events in the U.S.  For example, Gerrard prepared Majdi Halabi for false testimony directed at least in part to U.S. proceedings.  *Id.* ¶ 110.  And Gerrard's leadership role in the anonymous mailing from Lebanon was intended to defraud the same U.S. court.  *Id.* ¶¶ 123-24.  Like other Defendants, Gerrard tries to hide behind his crimes by arguing they were protected litigation activities.  But these acts were intentionally obstructive, they were illegal, and therefore, they are actionable under RICO.  *See, e.g.*, *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 250-51 (S.D.N.Y. 2012).

\* \* \*

For or all these reasons, Plaintiffs would oppose Gerrard's proposed motion to dismiss.

Sincerely,

*/s/ Kirby D. Behre*

Kirby D. Behre

CC: All Counsel of Record (VIA ECF)