**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

FARHAD AZIMA, et. al.,                          :
                                                :
                                                :
              Plaintiff                         :
                                                :   Civil Action No. 1:22-cv-08728 (PGG)
       v.                                       :
                                                :
                                                :
DECHERT LLP, et al.                             :
                                                :
                                                :
              Defendants.                       :
                                                :

**NOTICE OF MOTION TO DISMISS**

**PLEASE TAKE NOTICE** that upon the accompanying Memorandum of Law in Support of Nicholas Del Rosso's and Vital Management Services, LLP's motion to dismiss, the Joint Memorandum of Law in Support of Defendants' motion to dismiss, the Declaration in Support, and all other pleadings and proceedings had herein, Defendants Nicholas Del Rosso and Vital Management Services, LLP, by their counsel, Nelson Mullins Riley & Scarborough, LLP, will move this Court before the Honorable Paul G. Gardephe, United States District Judge, Thurgood Marshall United States Courthouse for the Southern District of New York, 40 Foley Square, New York, New York 10007, as soon as counsel may be heard, for an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing, with prejudice, the Complaint filed by Plaintiffs Farhad Azima, ALG Transportation, Inc., Main 3260 LLC, FFV W39 LLC, and FFV Development LLC.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Civil Rule 6.1(b), opposing papers (if any) and reply papers (if any) should be made in accordance with the Court's ordered briefing schedule set forth at docket no. 111.

Dated:  New York, New York          NELSON MULLINS RILEY & SCARBOROUGH, LLP
        February 28, 2023

                                              Respectfully submitted,

                                              */s/ Samuel Rosenthal*
                                              Samuel Rosenthal, Esq.
                                              Lisa Herbert, Esq.
      Nelson Mullins Riley & Scarborough LLP
      330 Madison Avenue, 27th Floor
      New York, New York  10017
      sam.rosenthal@nelsonmullins.com
      lisa.herbert@nelsonmullins.com
      Tel:    202-689-2915
      Fax:    202-689-2860

      *Counsel for Nicholas Del Rosso and Vital Management Services, Inc.*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

FARHAD AZIMA, et. al.,                          :
                                            :
                                            :
      Plaintiff     :
                                            :   Civil Action No. 1:22-cv-08728 (PGG)
   v.                             :
                                            :       ORAL ARGUMENT REQUESTED
                                            :
DECHERT LLP, et al.                             :
                                            :
                                            :
     Defendants.         :
                                            :

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Samuel Rosenthal, Esq.
Lisa Herbert, Esq.
Nelson Mullins Riley & Scarborough LLP
330 Madison Avenue
27th Floor
New York, New York  10017
sam.rosenthal@nelsonmullins.com
lisa.herbert@nelsonmullins.com
Tel:    212.413.9058
Fax:    646.428.2610

*Counsel for Nicholas Del Rosso and Vital Management Services, Inc.*

TABLE OF CONTENTS

**Page(s)**

STATEMENT OF FACTS ........................................................................................................1

ARGUMENT .........................................................................................................................4

I.      Plaintiff's Lawsuit is Barred by the Doctrines of Collateral Estoppel and Res
        Judicata. ...................................................................................................................4

        A.      Plaintiffs' Hacking Claims Are Barred Not Only by General Principles
                Governing RICO Claims, But Also by the Doctrine of Collateral Estoppel ..........5

        B.      Plaintiffs' Allegations of Fraudulent Concealment Are Similarly Barred by
                the Doctrine of Collateral Estoppel........................................................................7

        C.      Plaintiffs' Claims are Also Barred by the Doctrine of *Res Judicata* .....................7

        D.      Azima's Companies Cannot Escape Res Judicata and Collateral Estoppel
                Even if They Were Not Named As Plaintiffs in the Prior Action ..........................9

II.     The Complaint Fails to Allege That Either Del Rosso or Vital Participated in the
        Operation or Management of the Affairs of the Alleged RICO Enterprise.......................9

        CONCLUSION....................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
  483 U.S. 142 (1987).................................................................................................4

*Arbogast v. Kansas*,
  752 F. App'x 582 (10th Cir. 2018) ..........................................................................1

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................10

*Ashe v. Swenson*,
  397 U.S. 436 (1970).................................................................................................5

*Azima v. Del Rosso*,
  No. 1:20-cv-954 (filed Oct. 15, 2020) .....................................................................2

*Azima v. Del Rosso*,
  No. 1:20CV954, 2021 WL 5861282 (M.D.N.C. Dec. 10, 2021)....................... 2, 3, 7

*Azima v. Del Rosso*,
  No. 1:20CV954, 2022 WL 837185 (M.D.N.C. Mar. 21, 2022) ................................3

*Azima v. RAK Inv. Auth.*,
  926 F.3d 870 (D.C. Cir. 2019)..................................................................................2

*Azima v. RAK Inv. Auth.*,
  No. 1:16-cv-01948-KBJ (D.D.C. Sept. 30, 2016) ....................................................4

*Azima v. RAK*,
  No. 16-cv-01948-KBJ, Dkt. No. 1 (filed Sept. 30, 2016)..........................................2

*Ben-Zvi v. Bo Hi Pak*,
  No. 10 CV 9588(VB), 2011 WL 7095422 (S.D.N.Y. Dec. 16, 2011)......................5

*Bin Saud v. Bank of N.Y.*,
  734 F. Supp. 628 (S.D.N.Y. 1990) ...........................................................................8

*Boguslavsky v. Kaplan*,
  159 F.3d 715 (2d Cir. 1998).....................................................................................5

*Bongiorno v. Baquet*,
  20-cv-7288 (LJL), 2021WL 4311169 (S.D.N.Y. Sept. 20, 2021) ..........................10

*Bravo-Fernandez v. United States,*
    580 U.S. 5 (2016) ............................................................................................ 5

*Cayman Expl. Corp. v. United Gas Pipe Line Co.,*
    873 F.2d 1357 (10th Cir. 1989) ...................................................................10

*Cohen v. S.A.C. Trading Corp.,*
    711 F.3d 353 (2d Cir. 2013) ........................................................................4

*Cullen v. Paine Webber Grp, Inc.,*
    689 F. Supp. 269 (S.D.N.Y. 1988) ..............................................................8

*DeFalco v. Bernas,*
    244 F.3d 286 (2nd Cir. 2001) ....................................................................10

Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y. City
    Dep't of Educ., 9 F.4th 91 (2d Cir. 2021) ...................................................1

*Dundon v. Komansky,*
    15 F. App'x 27 (2d Cir. 2001) .....................................................................5

*Ennenga v. Starns,*
    677 F.3d 766 (7th Cir. 2012) ......................................................................1

*Epperson v. Ent. Express, Inc.,*
    242 F.3d 100 (2nd Cir. 2001) .....................................................................9

*Expert Elec. Inc. v. Levine,*
    554 F.2d 1227 (2d Cir. 1977) ......................................................................8

*Federated Dept. Stores, Inc. v. Moitie,*
    452 U.S. 394 (1981) .....................................................................................8

*Feirstein v. Nanbar Realty Corp.,*
    963 F. Supp. 254 (S.D.N.Y. 1997) ............................................................11

*Goren v. New Vision Int'l, Inc.,*
    156 F.3d 721 (7th Cir. 1998) ................................................................11, 12

*Gross v. Waywell,*
    628 F. Supp. 2d 475 (S.D.N.Y. 2009) .......................................................13

*Jones v. Meridian Towers Apartments, Inc.,*
    816 F. Supp. 762 (D.D.C. 1993) ...............................................................11

*Leather v. Eyck,*
    180 F.3d 420 (2nd Cir.1999) .......................................................................8

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
  6 F.4th 293 (2d Cir. 2021) ................................................................1

*Mathews v. N.Y. Racing Ass'n, Inc.*,
  193 F. Supp. 293 (S.D.N.Y. 1961) ......................................................8

*In re Merrill Lynch Ltd. P'ships Litig.*,
  154 F.3d 56 (2d Cir. 1998)................................................................ 4

*Montana v. United States*,
  440 U.S. 147 (1979) ....................................................................... 5

*Monterey Bay Military Housing, LLC v. Ambac Assurance Corp.*,
  531 F. Supp. 3d 673 (S.D.N.Y. 2021)...................................................4

*Norman v. Niagara Mohawk Power Corp.*,
  873 F.2d 634 (2nd Cir. 1989)............................................................8

*RAK Inv. Auth. v. Azima*
  [2020] ...................................................................................1, 2, 6

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)................................................................9, 10, 12

*Rivet v. Regions Bank of La.*,
  522 U.S. 470 (1998) ......................................................................8

*Saylor v. Lindsley*,
  391 F.2d 965 (2nd Cir. 1968)............................................................9

*St. Pierre v. Dyer*,
  208 F.3d 394 (2nd Cir. 2000)............................................................8

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008)..............................................................1

*Taylor v. Sturgell*,
  553 U.S. 880 (2008)........................................................................5

*United States v. Persico*,
  832 F.2d 705 (2nd Cir. 1987)...........................................................10

*In re WellPoint, Inc.*,
  903 F. Supp. 2d 880 (C.D. Cal. 2012) ................................................12

*Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*,
  913 F.2d 948 (D.C. Cir. 1990), *abrogated on other grounds by Reves*, 507
  U.S. ....................................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

**Statutes**

18 U.S.C. §1964(d) ......................................................................................................4

Defendants Nicholas Del Rosso ("Del Rosso") and Vital Management Services, LLP ("Vital") (collectively, "Defendants") file this Memorandum in support of their Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

This is the fourth lawsuit filed by Azima, alleging that he was the victim of an effort to hack into his emails and computers.  As explained below, Azima initially filed a lawsuit in the District of Columbia setting forth his hacking claims, a counterclaim setting forth the same allegations in the United Kingdom, and a lawsuit against Del Rosso and Vital in the Middle District of North Carolina, in which the same or similar allegations were dismissed.[1]  While Del Rosso and Vital rely on the comprehensive statement of facts contained in Defendants' Omnibus Brief, the following events are important background relating, specifically, to Del Rosso and Vital's claims that Azima's present case is time-barred in its entirety.

By way of background, Azima filed all four of those actions after he was accused of engaging in multiple frauds by a foreign government, Ras Al Khaimah ("RAK"), in a lawsuit in London.  The court in London ultimately ruled that Azima had been involved in bribery and fraud.  *RAK Inv. Auth. v. Azima* [2020] EWHC 1327 (Ch) [159, 246, 250, 381].  It also concluded that Plaintiff's testimony was "frequently inconsistent with the contemporaneous documents," "inherently implausible," and at times "untruthful."  *Id.* ¶ 70–71, 127.  The court also found that Azima backdated documents to fabricate his dispute with RAK, fraudulently

---

[1] Because Azima has expressly referenced the other litigation he commenced, *see* Compl. ¶¶ 75, 83–178, it is appropriate for the Court to consider those pleadings. *See, e.g.*, Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y. City Dep't of Educ., 9 F.4th 91, 94 (2d Cir. 2021); *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305 (2d Cir. 2021).  Moreover, the Court may take judicial notice of those other pleadings. *See, e.g.*, *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012) (rejecting an argument that "the statute-of-limitations defense was not properly raised in a motion to dismiss because the defense was not plain on the face of the complaint," because "the court [properly] took judicial notice of the dates on which certain actions were taken . . . in the earlier state-court litigation — facts readily ascertainable from the public court record"); *Arbogast v. Kansas*, 752 F. App'x 582, 584 n.1 (10th Cir. 2018); *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425–26 (2d Cir. 2008).

induced RAKIA to settle its dispute with Azima for millions of dollars, conspired to misappropriate $1,500,000 from RAKIA when a hotel in Georgia was being sold, committed bribery, and devised a "sham" written agreement to "conceal that misappropriation."  [2020] EWHC 1327 (Ch), ¶¶ 93, 117, 138–42, 1891, 237, 247–50.

In the U.S., Azima responded to RAK's U.K. lawsuit by alleging, in 2016, that the hacking of his emails occurred after he was asked by RAK to assist in mediating a settlement agreement between RAK and the former CEO of the RAK Investment Authority, *see Azima v. RAK*, No. 16-cv-01948-KBJ, Dkt. No. 1 (filed Sept. 30, 2016), who had also been accused by RAK of misusing funds.   That lawsuit was dismissed in its entirety.  *See Azima v. RAK Inv. Auth.*, 926 F.3d 870 (D.C. Cir. 2019).

Azima responded to the dismissal of his D.C. lawsuit by filing a counterclaim against RAK Investment Authority in London, repeating allegations that he had been targeted in a hacking scheme by Defendants.  *See RAK Inv. Auth. v. Azima*, Counterclaim, No. HC-2016-002798 ¶ 5.  Those claims are still pending in the U.K.

The third lawsuit filed by Azima in the Middle District of North Carolina was filed in 2020.  *Azima v. Del Rosso*, No. 1:20-cv-954 (filed Oct. 15, 2020).  In that lawsuit, Azima specifically named Del Rosso and Vital as having been involved in the hacking of his emails. The court largely dismissed Azima's allegations, ruling that the majority of the claims against Del Rosso and Vital were time-barred.  *See Azima v. Del Rosso*, No. 1:20CV954, 2021 WL 5861282, at *8–9 (M.D.N.C. Dec. 10, 2021).  The court found that the only claims surviving the statute of limitations were those involving alleged events in 2018 and 2019, when emails and confidential information were alleged posted on publicly available websites by Del Rosso and/or Vital, in violation of a North Carolina statute protecting trade secrets and common law civil

conspiracy relating to those 2018 and 2019 events.  *Id.*  Because no such state law claim is made in this case, the North Carolina court effectively dismissed all hacking claims again raised here.

More specifically, the Middle District of North Carolina explicitly limited Azima's two remaining claims to "a North Carolina misappropriation of trade secrets claim arising from the 2018–2019 online posting of new links to Plaintiff's confidential business data [Count VIII], and (2) a North Carolina civil conspiracy claim contingent upon the viability of the trade secrets claim [Count X]."  *Azima v. Del Rosso*, No. 1:20CV954, 2022 WL 837185, at *1 (M.D.N.C. Mar. 21, 2022).  Accordingly, the ruling by that court in 2020 meant that Azima's hacking claims were no longer viable.

Finally, the present suit was filed by Azima in 2022, two years after the statute of limitations ruling in the Middle District of North Carolina.  In this suit, Azima nevertheless alleges that the hacking of his emails was part of a "trap" in which Azima was paid $2.6 million by RAK in order to settle a stale commercial dispute with him.  Compl. ¶ 63.  Azima maintains that RAK entered into that agreement only so that it could then turn around and sue him for $4.2 million, contending that Azima breached the settlement agreement.  *Id.* ¶ 69.

Accordingly, the heart of Plaintiffs' present Complaint is that Azima was the victim of a conspiracy to hack into his computer essentially at the direction of RAK.  Azima and companies which he either wholly owned, or in which he held a 50% interest, *see* Compl. ¶¶ 11–13, repeated his previous allegations that approximately eight years ago, in April 2015, RAK devised a plan to hack into Azima's emails and computer information and then use that information in 2019 to discredit him by publicly posting information demonstrating Azima's involvement illicit activities.  *Id.* ¶ 45.  Much of the Complaint goes on to allege that defendants then tried to conceal or cover-up their activities.  Notwithstanding such efforts, Azima admits being aware of

any alleged hacking into his emails and computer prior to 2016 when he filed his lawsuit in D.C. *See* Compl. ¶¶ 67, 70, 72.

The present Complaint is based on two different causes of action: (l) violation of the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1964(c); and (2) conspiracy to violate RICO, in violation of 18 U.S.C. §1964(d).

## ARGUMENT

**I.**      Plaintiff's Lawsuit is Barred by the Doctrines of Collateral Estoppel and Res Judicata.

Nether of the two causes of action at issue can survive the relevant statute of limitations, as shown below. Del Rosso and Vital rely on the extensive discussion of the statute of limitations contained in the Omnibus Memorandum filed by Defendants. See Defs' Omnibus Mem. Pt. II. It is apparent, however, that the bar imposed by the statute is particularly clear as to Del Rosso and Vital.

It bears repeating that the statute of limitations for civil RICO claims is four years. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 142, 156 (1987); *Monterey Bay Military Housing, LLC v. Ambac Assurance Corp.*, 531 F. Supp. 3d 673, 710 (S.D.N.Y. 2021). *See also Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013). The statute begins running when "[plaintiffs] sustained the alleged injury for which they seek redress." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58–59 (2d Cir. 1998). Azima filed suit in September 2016, more than six years before this lawsuit, alleging that, in 2016, he learned that of the alleged hacking scheme "on or about August 7, 2016." Compl. ⁋ 10, *Azima v. RAK Inv. Auth.*, No. 1:16-cv-01948-KBJ (D.D.C. Sept. 30, 2016). Based on Plaintiff's own allegations, any RICO claim would have therefore expired four years later, or in July 2021. The present Complaint was filed in October 2022, more than a year after the statute expired.

### A.      Plaintiffs' Hacking Claims Are Barred Not Only by General Principles Governing RICO Claims, But Also by the Doctrine of Collateral Estoppel.

It is unfair to require Del Rosso and Vital to relitigate these issues. The collateral estoppel doctrine reflects an "issue-preclusion principle [which] means that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Bravo-Fernandez v. United States*, 580 U.S. 5, 7–8 (2016) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). "The doctrine of collateral estoppel—also known as issue preclusion—bars successive litigation of an issue of fact or law actually litigated and resolved in a prior judgment, even if the issue recurs in the context of a different claim." *Ben-Zvi v. Bo Hi Pak*,  No. 10 CV 9588(VB), 2011 WL 7095422 , at *2 (S.D.N.Y. Dec. 16, 2011) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)).

Here, all requirements relating to collateral estoppel are satisfied: "(1) the identical issue [must have been] raised in the previous proceeding; (2) the issue was actually litigated and decided; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998); *see also Dundon v. Komansky*, 15 F. App'x 27, 29 (2d Cir. 2001).  "By precluding parties from contesting issues they have had a full and fair opportunity to litigate, these doctrines protect against multiple lawsuits, conserve judicial resources, and foster reliance on judicial action by minimizing the possibility of inconsistent decisions." *Ben-Zvi*, 2011 WL 7095422, at *2 (citing *Montana v. United States*, 440 U.S. 147, 153–154  (1979)).

Plaintiffs already litigated—and lost—the ultimate issue of fact governing application of the statute of limitations, namely whether Azima had sufficient knowledge of the injuries to trigger the statute.  The Court in the Middle District of North Carolina expressly found that he

did.  Relying on Azima's 2016 D.C. Complaint, the Court found that Azima admitted knowledge

at that time that he "had been hacked and his hacked confidential business data posted online."

*Azima*, 2021 WL 5961282, at *3 (citing 2016 D.C. Complaint (Doc. 31-5) ¶¶ 10, 18); *see also*

Ex. A (M.D.N.C. Opinion at 9).   The Court went on to "conclude[] that Plaintiff's factual

allegations in the 2016 D.C. Complaint — that he had been hacked and his hacked confidential

business data published online, (e.g., 2016 D.C. Complaint (Doc. 31-5) ¶¶ 10, 18) — establish

that by 2016 Plaintiff had discovered the conduct underlying [various counts in Complaint and

that] . . . the statutes of limitations seemingly accrued in 2016 and lapsed in 2019 — prior to this

case's filing in 2020."  *Azima*, 2021 WL 5961282, at *3; *see also* Ex. A (M.D.N.C. Opinion at 9–

10).  That finding clearly established that the statute lapsed.

 The court's finding in that case clearly satisfies the first two prongs of the test governing

collateral estoppel set forth above.  It makes no difference that the relevant causes of action

dismissed by the court in the Middle District of North Carolina involved a three year statute of

limitations; the result is no different whether a three or four year statute of limitations applies:  as

reflected in the Omnibus Brief, Defs'. Omnibus Mem., Pt. II, the limitations period in a RICO

claim began running when Plaintiff had notice of his injuries; because Azima had sufficient

notice at least in 2016, if not earlier, more than four years elapsed prior to the filing of the instant

lawsuit.

 Similarly, the remaining prongs of the collateral estoppel doctrine are satisfied.  The

Middle District of North Carolina ruled after Azima was given more than ample opportunity to

litigate that issue.  And finally, the finding as to notice to Azima was necessary to support a final

judgment since the Court relied on that finding in dismissing various counts of Azima's

Complaint.  *See Azima*, 2021 WL 5861282, at *9; *see also* Ex. A (M.D.N.C. Opinion at 24).

Accordingly, all four prongs of the test are satisfied.

> **B.      Plaintiffs' Allegations of Fraudulent Concealment Are Similarly Barred by the Doctrine of Collateral Estoppel.**

In addition to the hacking allegations barred by the statute of limitations, Plaintiffs also

allege that Defendants fraudulently concealed their conduct by, among other things, falsely

denying their conduct.  *See, e.g.*, Compl. ¶¶ 91–100, 107–12, 129–39.   As reflected in

Defendants' Omnibus Memorandum, those additional allegations fail for a number of reasons;

such allegations cannot even constitute predicate facts under RICO and cannot toll the statute of

limitations.  *See* Defs.' Omnibus Mem. at 20–22, 28–32.   Once again, the bar of the statute is

particularly clear as to Del Rosso and Vital since they previously litigated that issue.

Allegations of fraudulent concealment were directly raised in the Middle District of

North Carolina.   *See* Ex. C ¶ 36 (alleging that "[b]ecause of Del Rosso's concealment of the

true facts, of which he had knowledge, Azima did not learn of the role played by Del Rosso and

Vital until recently").  Moreover, the court in that case directly ruled on the issue of fraudulent

concealment, discussing at length such allegations and holding that Azima failed to

demonstrate any conduct, including fraudulent concealment, that would toll the statute of

limitations.  *See Azima*, 2021 WL 5861282, at *5; Ex. A (M.D.N.C. Opinion at 14–15

("Plaintiff has failed to establish the elements required for either fraudulent concealment or

equitable estoppel to toll the statute of limitations for the remaining count arising under federal

law.")).

> **C.      Plaintiffs' Claims are Also Barred by the Doctrine of *Res Judicata*.**

Finally, it makes no difference that Plaintiffs have relied in the present lawsuit on RICO,

rather than the federal and state causes of action set forth in his lawsuit in the Middle District of

North Carolina.  Not only does "issue preclusion," as discussed above, require dismissal of the lawsuit, but "[u]nder the doctrine of *res judicata,* or claim preclusion, [a] final adjudication on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2nd  Cir. 2000) (quoting *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398, (1981); *Leather v. Eyck*, 180 F.3d 420, 424 (2nd  Cir.1999) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476  (1998)).

"RICO claims are not exempt from the application of *res judicata*." *Bin Saud v. Bank of N.Y.*, 734 F. Supp. 628, 635 (S.D.N.Y. 1990) (citing *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 638 (2nd Cir. 1989)), *aff'd*, 929 F.2d 916 (2d Cir. 1991).  Numerous courts have therefore rejected the ploy used by Plaintiffs here: repackaging earlier theories and allegations into a RICO lawsuit and trying to avoid the bar of the statute by arguing that RICO was not previously alleged as a cause of action in the earlier suit.  *Id.* at 635–36 (cases collected); *see also Cullen v. Paine Webber Grp, Inc.*, 689 F. Supp. 269, 279 (S.D.N.Y. 1988).

It is now firmly established that a party cannot avoid the bar of the statute of limitations in a RICO case simply by changing their legal theory.  "The crucial element" in evaluating whether res judicata applies is "the factual predicate of the several claims asserted."  *Bin Saud*, 734 F. Supp. at 633 (quoting *Expert Elec. Inc. v. Levine*, 554 F.2d 1227, 1234 (2d Cir. 1977)). "For it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies."  *Expert Elec.*, 554 F.2d at 1234 (citing *Mathews v. N.Y. Racing Ass'n, Inc.*, 193 F. Supp. 293, 294 (S.D.N.Y. 1961)).

Because the operative facts here are identical to those raised and rejected in Azima's earlier lawsuits, Azima cannot relitigate those issues anew in this case.

### D.     Azima's Companies Cannot Escape Res Judicata and Collateral Estoppel Even if They Were Not Named As Plaintiffs in the Prior Action.

Another ploy reflected in the current lawsuit is naming parties owned or controlled by Azima, which were not named as plaintiffs in the earlier lawsuit in the Middle District of North Carolina.  These include companies wholly owned by Azima, *see, e.g.*, Compl. ¶ 11, as well as those where he holds at least a fifty percent interest.  *See id.* ¶ 12, 13, 14.

Under the doctrine of res judicata, parties need not be explicitly named in the earlier lawsuit for that doctrine to apply.  Rather, res judicata provides that:

> [A] valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, ***or those in privity with them***, upon the same claim or demand. It operates to bind the parties both as to issues actually litigated and determined in the first suit, and as to those grounds or issues which might have been, but were not, actually raised and decided in that action."

*Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 108–09 (2nd Cir. 2001) (emphasis added) (quoting *Saylor v. Lindsley*, 391 F.2d 965, 968 (2nd Cir. 1968)).

## II.     The Complaint Fails to Allege That Either Del Rosso or Vital Participated in the Operation or Management of the Affairs of the Alleged RICO Enterprise.

Even if this case were not time-barred, it should be dismissed as to Del Rosso and Vital because none of the allegations are sufficient to show that either Del Rosso or Vital participated in the operation or management of the affairs of the alleged enterprise.

To set forth a claim under RICO, a defendant must have more than a mere association with a RICO enterprise.  In the seminal case of *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993), the Supreme Court held that to be liable under section 1962(c) of RICO, a defendant must "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs, [and] must participate in the operation or management of the enterprise itself."  In evaluating this issue, Plaintiffs must demonstrate that allegations relating specifically to conduct by Del Rosso

and Vital meet that test.  *See DeFalco v. Bernas,* 244 F.3d 286, 306 (2nd  Cir. 2001); *United States v. Persico*, 832 F.2d 705, 714 (2nd Cir. 1987) (the focus of § 1962(c) "is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise").

Allegations directed toward Del Rosso or Vital cannot satisfy *Reves*.  The bulk of the allegations related to litigation activities, such as filing answers in other litigation, denying wrongdoing, which, as demonstrated in Defendants' Omnibus Brief, cannot support a RICO claim.  *See, e.g.*, Complaint, Ex. B, Fact Nos. 168, 173 (alleging that pacer filings denying Plaintiff's allegations constituted RICO acts).  The remaining allegations include Paragraphs 18, 19 and 32, which only set forth background information on Del Rosso and Vital, such as their locale, offering conclusory generic allegations similar to those repeatedly rejected by courts.  *See Ashcroft v.  Iqbal*,  556 U.S. 662, 681 (2009).  Courts are even more loathe to accept conclusory allegations under RICO given its treble damage and fee relief.  *See, e.g.*, *Cayman Expl. Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362 (10th Cir. 1989); *Bongiorno v. Baquet*, 20-cv-7288 (LJL), 2021 WL 4311169, at *18 (S.D.N.Y. Sept. 20, 2021).

Next, Plaintiffs allege Del Rosso and Vital met with other defendants, *see* Compl. ¶ 35, 54, took direction from them, *id.* ¶¶ 68, 123; knew others who played some role in the alleged RICO conspiracy, *see id.* ¶ 78; contacted the FBI to complain about Azima, or agreed with others about some aspect of the plan to discredit Azima, *see id.* ¶ 122.  But mere association with an enterprise cannot show management or control of the affairs of an enterprise.

A party cannot be held liable under RICO even if they were aware of the illegal enterprise and took action which benefitted that enterprise.  For instance, the D.C. Circuit has construed the term "conduct" in RICO as being "synonymous with 'management' or

'direction.'" *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 913 F.2d 948, 954 (D.C. Cir. 1990), *abrogated on other grounds by Reves*, 507 U.S. at 179 & n.4. The Court therefore held that "'conduct of [the enterprise's] affairs' thus connotes more than just some relationship to the enterprise's activity; the phrase refers to the guidance, management, direction or other exercise of control over the course of the enterprise's activities." *Id.*

Other allegations accuse Del Rosso and Vital of providing services to Dechert which included hacking Azima's emails and confidential data for which they were paid. *See* Compl. ¶¶ 35, 47–48. Even assuming Del Rosso and Vital knew of the plan to use that data to harm Azima, that is not enough to satisfy this element of RICO. *See Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998) ("Indeed, simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c)"); *see also Feirstein v. Nanbar Realty Corp.*, 963 F. Supp. 254 (S.D.N.Y. 1997) ("It is well established that professional services by outsiders is insufficient to satisfy the participation element of RICO." (citations omitted)). It follows that receiving payment for such services, *see* Compl. ¶ 35, cannot satisfy this element of RICO. The very fact that Del Rosso and Vital were alleged to have acted on instructions from others, *see id.*, undercuts even further the notion that Del Rosso or Vital were directing the enterprise.

In fact, even *assuming arguendo* those litigation services by Del Rosso and Vital were wrongful, that would still not be enough to satisfy RICO. *Jones v. Meridian Towers Apartments, Inc.*, 816 F. Supp. 762, 771–72 (D.D.C. 1993) (Mere participation in the underlying acts alleged to constitute a pattern of racketeering cannot establish a RICO violation). A person must participate, to some extent, in "running the show." *Yellow Bus Lines*, 913 F.2d at 954. Averments alleging "the existence of a business relationship between these defendants and the

11

enterprise" fall short of pleading that Defendants "took some part in directing [an enterprise's] affairs." *See Goren*, 156 F.3d at 728 (quoting *Reves*, 507 U.S. at 179). The defendants must have controlled the other members of the enterprise. *See, e.g.*, *In re WellPoint, Inc.*, 903 F. Supp. 2d 880, 911 (C.D. Cal. 2012) (element not satisfied by pleadings which "did not plausibly show that [the defendant] controlled the other members in the associated-in-fact enterprise").

Another set of allegations is that Del Rosso and Vital hired subcontractors who "reported" to Del Russo what they were doing, *see* Compl. ¶ 26(g) (as to a non-defendant who is not even named as a defendant); paid other non-defendants for engaging in hacking, *id.* ¶ 26(h) (again as to a non-defendant); that Del Rosso and Vital were retained and paid by the Dechert law firm, *id.* ¶ 47, and in turn hired and paid others as part of its work for Dechert. *Id.* ¶ 48. Those allegations fall short of demonstrating that Del Rosso and Vital controlled those third parties, and at best, simply paid them for work alleged to be illicit. The closest Plaintiffs come to alleging that Del Rosso or Vital controlled any of the co-conspirators is when they allege that Del Rosso and Vital "directed" two others to commit acts which are not even included in the list of predicate acts allegedly forming the RICO pattern of racketeering. *See id.* ¶ 26(i).

Finally, the Complaint alleges that Del Rosso and Vital obstructed justice by making illicit payment and other devices, thereby concealing their own conduct. *See, e.g.*, *id.* ¶¶ 18–19; 144–60, 241. As reflected in Defendants' Omnibus Brief, conduct constituting litigation activities cannot be used to establish predicate crimes under RICO. *See* Defs.' Omnibus Mem. at 28–30. Yet when it comes to conduct alleged as to Del Rosso and Vital constituting obstruction of justice and a cover-up, the only thing that is alleged are such litigation activities.

In sum, Plaintiff has failed to satisfy key elements of a RICO cause of action. Count One should therefore be dismissed in its entirety. Further, "the dismissal of a RICO action because

the substantive claims are deficient compels that related charges under § 1962(c) of conspiracy to violate RICO also must fail." *Gross v. Waywell*, 628 F. Supp. 2d 475, 500 (S.D.N.Y. 2009).

## CONCLUSION

Three lawsuits raising the same claims are enough.  Plaintiffs have no right to transverse the globe filing lawsuits raising the same operative claims.  Although Del Rosso and Vital rely on each of the arguments raised in Defendants' Omnibus Memorandum, the entire Complaint should be dismissed as to Del Rosso and Vital because it is time-barred and fails to set forth conduct demonstrating that either defendant managed the affairs of the alleged RICO enterprise.

Dated:  February 28, 2023                  Respectfully submitted,

/s/ *Samuel Rosenthal*
Samuel Rosenthal, Esq.
Lisa Herbert, Esq.
Nelson Mullins Riley & Scarborough LLP
330 Madison Avenue, 27th Floor
New York, New York  10017
sam.rosenthal@nelsonmullins.com
lisa.herbert@nelsonmullins.com
Tel:    212.413.9058
Fax:    646.428.2610

*Counsel for Nicholas Del Rosso and Vital*
*Management Services, Inc.*