## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FARHAD AZIMA,<br>ALG TRANSPORTATION, INC.,<br>MAIN 3260 LLC,<br>FFV W39 LLC, and<br>FFV DEVELOPMENT LLC,<br><br>        Plaintiffs,<br><br>  -against-<br><br>DECHERT LLP,<br>DAVID NEIL GERRARD,<br>DAVID GRAHAM HUGHES,<br>NICHOLAS DEL ROSSO,<br>VITAL MANAGEMENT SERVICES, INC.,<br>AMIT FORLIT,<br>INSIGHT ANALYSIS AND RESEARCH LLC,<br>SDC-GADOT LLC,<br>AMIR HANDJANI,<br>ANDREW FRANK, and<br>KARV COMMUNICATIONS,<br><br>        Defendants. | Civil Action No. 22-CV-8728 (PGG)<br><br>**<u>Oral Argument Requested</u>** |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT DAVID GRAHAM HUGHES' MOTION TO DISMISS

Helen Gredd
Michael Gerber
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, NY 10110
(212) 921-8399
(hgredd@lswlaw.com)
(mgerber@lswlaw.com)

*Attorneys for Defendant David Graham Hughes*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

PLAINTIFFS' ALLEGATIONS REGARDING MR. HUGHES ..................................................1

ARGUMENT .............................................................................................................................2

I.      THIS COURT LACKS PERSONAL JURISDICTION OVER MR. HUGHES...............3

        A.      The complaint fails to establish a statutory
                basis for personal jurisdiction over Mr. Hughes. .....................................................3

                1.      18 U.S.C. § 1965(b) is inapplicable here. ....................................................4

                2.      The New York long-arm statute does not provide a
                        statutory basis for personal jurisdiction over Mr. Hughes..........................5

                        i.      Plaintiffs do not allege conduct by
                                Mr. Hughes within the scope of § 302(a)(1)...................................5

                        ii.     Plaintiffs do not allege conduct by
                                Mr. Hughes within the scope of § 302(a)(2)...................................7

                        iii.    Plaintiffs do not allege conduct that would
                                support personal jurisdiction under a conspiracy theory. ...............8

        B.      Exercise of personal jurisdiction over Mr. Hughes would violate due process.....10

II.     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. HUGHES..............12

        A.      The complaint fails to allege predicate acts of racketeering as to Mr. Hughes. ....12

        B.      The complaint fails to plead facts showing that Mr. Hughes participated in the
                operation or management of a RICO enterprise. ....................................................15

CONCLUSION........................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al Thani v. Hanke*,
    No. 20 Civ. 4765 (JPC), 2021 WL 1895033 (S.D.N.Y. May 11, 2021)...................................9

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    171 F.3d 779 (2d Cir. 1999)...................................................................................3, 6, 7

*Berdeaux v. OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021)........................................................................3

*Berkshire Bank v. Lloyds Banking Group plc*,
    No. 20-1987-cv, 2022 WL 569819 (2d Cir. Feb. 25, 2022) ....................................10

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007).......................................................................................3

*Bloomgarden v. Lanza*,
    40 N.Y.S.3d 142 (2d Dep't 2016).........................................................................5, 6

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462, 474 (1985).........................................................................................11

*Butcher v. Wendt*,
    975 F.3d 236 (2d Cir. 2020)...............................................................................12, 13

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).................................................................................................10

*Daventree v. Rep. of Azerbaijan*,
    349 F. Supp. 2d 736 (S.D.N.Y. 2004).......................................................................9

*De Sole v. Knoedler Gallery, LLC*,
    974 F. Supp. 2d 274 (S.D.N.Y. 2013).....................................................................12

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001).....................................................................................12

*Dem. Nat'l Comm. v. Russian Fed'n*,
    392 F. Supp. 3d 410 (S.D.N.Y. 2019).....................................................................14

*Doe v. Unocal Corp.*,
    27 F. Supp. 2d 1174 (C.D. Cal. 1998) ......................................................................4

*Elsevier, Inc. v. Grossman,*
    77 F. Supp. 3d 331 (S.D.N.Y. 2015)........................................................................4

*Festinger v. Snitow Kaminestsky Rosner & Snitow, LLP,*
    No. 20-cv-9784, 2022 WL 901660 (S.D.N.Y. Mar. 28, 2022)................................15

*First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.,*
    218 F. Supp. 2d 369 (S.D.N.Y. 2002).....................................................................4

*First Cap. Asset Mgmt, Inc. v. Satinwood, Inc.,*
    385 F.3d 159 (2d Cir. 2004)...................................................................................15

*Fischbarg v. Doucet,*
    9 N.Y.3d 375 (2007)...............................................................................................5

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011).........................................................................................10, 11

*Grove Press Inc. v. Angleton,*
    649 F.2d 121 (2d Cir. 1973)....................................................................................8

*Grunewald v. United States,*
    353 U.S. 391, 405 (1957)......................................................................................14

*Hanson v. Denckla,*
    357 U.S. 235, 253 (1958)......................................................................................11

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945)..............................................................................................11

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009)......................................................................................13

*Kim v. Kimm,*
    884 F.3d 98 (2d Cir. 2018)....................................................................................13

*Lehigh Valley Inds., Inc. v. Birenbaum,*
    527 F.2d 87 (2d Cir 1975)..................................................................................9, 10

*Madanes v. Madanes,*
    981 F. Supp. 241 (S.D.N.Y. 1997)........................................................................15

*Marvel Characters, Inc. v. Kirby,*
    726 F.3d 119 (2d Cir. 2013)....................................................................................3

*Moore v. PaineWebber, Inc.,*
    189 F.3d 165 (2d Cir. 1999)..................................................................................14

*O'Malley v. N.Y.C. Transit Auth.*,
 896 F.2d 704 (2d Cir. 1990)..................................................................13

*Pac. Life Ins. Co. v. U.S. Bank Nat. Assoc.*,
 _ F. Supp. 3d _, 2022 WL 11305628 (S.D.N.Y. Oct. 19, 2022)....................................13

*Parke-Bernet Galleries, Inc. v. Franklyn*,
 26 N.Y.2d 13, 18 (1970) ........................................................................5

*PDK Labs, Inc. v. Friedlander*,
 103 F.3d 1105 (2d Cir. 1997)..................................................................3

*Pincione v. D'Alfonso*,
 No. 10-cv-3618, 2011 WL 4089885 (S.D.N.Y. Sept. 13, 2011) ........................................6

*Reves v. Ernst & Young*,
 507 U.S. 170 (1993)..............................................................................15

*Runberg, Inc. v. McDermott*,
 No. 652516/2014, 2015 WL 2090370 (N.Y. Sup. Slip. Op 30739 April 29,
 2015) ............................................................................................7

*In re Terrorist Attacks on Sept. 11, 2001*,
 714 F.3d 659 (2d Cir. 2013)................................................................3, 10

*Viasystems Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*,
 646 F.3d 589 (8th Cir. 2011) ..................................................................11

*Walden v. Fiore*,
 571 U.S. 277 (2014)..........................................................................9, 11

**Statutes**

18 U.S.C. § 1503 ....................................................................................13

18 U.S.C. § 1512 ....................................................................................13

18 U.S.C. § 1515 ....................................................................................13

18 U.S.C. § 1962 ................................................................................12, 15

18 U.S.C. § 1965 ..................................................................................3, 4

N.Y. C.P.L.R. § 302 ..........................................................................5, 7, 8

15 Pa. Cons. Stat. § 8201 ..........................................................................7

15 Pa. Cons. Stat. § 8632 ..........................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 9 ................................................................................14

Federal Rule of Civil Procedure 12 ............................................................................1, 3

Defendant David Graham Hughes respectfully submits this memorandum of law in support of his motion to dismiss plaintiffs' complaint (ECF No. 1) ("Compl.") under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs seek to use the U.S. racketeering laws to attack Mr. Hughes' conduct as a solicitor litigating in England on behalf of a client in the United Arab Emirates.  Plaintiffs' claims fail as a matter of law, and it is not close:  Plaintiffs allege nothing that gives this Court personal jurisdiction over Mr. Hughes.  Indeed, plaintiffs struggle to identify any connection at all between Mr. Hughes and New York.  And all of Mr. Hughes' alleged racketeering conduct occurred in his capacity as an attorney litigating on behalf of his client—precisely the type of civil RICO claim that the Second Circuit has rejected.  For these reasons and others—including the forum selection clause that governs the claims in the complaint and would be enforceable by Mr. Hughes,[1] and the pleading defects identified in the joint memorandum submitted by all defendants (the "Joint Memorandum"), the complaint should be dismissed as to Mr. Hughes.

## PLAINTIFFS' ALLEGATIONS REGARDING MR. HUGHES

Plaintiffs characterize Mr. Hughes as a "high-level deputy" of a "global criminal enterprise" who "mastermind[ed]" a "campaign of rampant criminal conduct" that targeted, among others, Mr. Azima.  Compl. ¶¶ 17, 185.  But the complaint does not allege a single fact in support of the inflammatory labels it throws at Mr. Hughes.  In fact, the vast majority of the allegations in

---

[1] While the Court need not reach the issue as to Mr. Hughes because personal jurisdiction is lacking, Mr. Hughes joins in and incorporates by reference Dechert LLP's analysis of the forum selection clause that plaintiff Farhad Azima agreed to in 2016.  *See* Memorandum of Law in Support of Defendant Dechert LLP's Motion to Dismiss (the "Dechert Memorandum") at Point I.  Like Dechert, Mr. Hughes would be entitled to enforce the forum selection clause because he is, by plaintiffs' own account, closely related to a signatory to the clause (his former client).  *See, e.g.,* Compl. ¶¶ 1-4, 17, 61-63 (alleging that Mr. Hughes acted in concert with his former client and was among those responsible for the agreement that contained the forum selection clause).

the complaint have nothing to do with Mr. Hughes.  Plaintiffs do not claim that Mr. Hughes participated in the formation of the alleged plan to hack and disseminate Mr. Azima's data, *id.* ¶ 45, or the hacking itself, *id.* ¶¶ 47–49, or that he reviewed the "Hacking Reports" detailing its progress, *id.* ¶¶ 51–53.  Plaintiffs do not claim that Mr. Hughes was a member of the "team" that met to "discuss strategy and tactics" related to the alleged plot against Mr. Azima, *id.* ¶ 54, or that he contributed to or reviewed the "Action Plan" describing the same, *id.* ¶¶ 59–61.  Plaintiffs likewise do not claim that Mr. Hughes had any involvement in a later instance of alleged hacking supposedly undertaken to determine who was funding litigation brought by Mr. Azima and another individual targeted by the "enterprise."  Compl. ¶¶ 161–178.  Instead, the complaint simply claims that at some unspecified point in time Mr. Hughes learned through some unspecified means that the "enterprise" was somehow involved in hacking Mr. Azima's data, and Mr. Hughes thereafter participated, in connection with litigation on behalf of his client, in an alleged "cover-up" of whatever it was he had learned.

Additionally, while the complaint broadly claims that this Court has personal jurisdiction over Mr. Hughes, there are no allegations that Mr. Hughes, who lives and worked in England, transacted any business in New York, directed any conduct towards New York, or caused any injury in New York.  Plaintiffs offer no theory as to how their allegations support an assertion of jurisdiction over Mr. Hughes by a court sitting in New York.  That is because there is none.

## **ARGUMENT**

The complaint against Mr. Hughes fails on multiple grounds.  As a threshold matter, the complaint fails to allege facts establishing that this Court has jurisdiction over Mr. Hughes.  That alone requires dismissal of the complaint.  But even if, contrary to the fact, the complaint were assumed sufficient to establish jurisdiction, it still must be dismissed because it fails to state a

claim as to Mr. Hughes, both for the reasons set out in the Joint Memorandum and for additional reasons specific to Mr. Hughes.

## I.    <u>THIS COURT LACKS PERSONAL JURISDICTION OVER MR. HUGHES.</u>

"When responding to a Rule 12(b)(2) motion to dismiss . . . the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). In order to meet that burden, the plaintiff "must make allegations establishing jurisdiction with some factual specificity and cannot establish jurisdiction through conclusory assertions alone." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 395 (S.D.N.Y. 2021) (internal quotation marks omitted). The plaintiff must establish both a statutory basis for personal jurisdiction, *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013), and that the exercise of jurisdiction comports with due process, *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). Although a court evaluating a 12(b)(2) motion construes allegations in the light most favorable to the plaintiff, *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997), the court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation," *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted). Measured against these settled standards, the complaint does not come close to establishing that this Court has jurisdiction over Mr. Hughes.

### A.    The complaint fails to establish a statutory<br>       <u>basis for personal jurisdiction over Mr. Hughes.</u>

The complaint cites 18 U.S.C. § 1965(b) as the statutory basis for jurisdiction over Mr. Hughes, Compl. ¶ 36, but that statute in fact has no application here. And while plaintiffs have sought in their response to Mr. Hughes' pre-motion letter to rely, in the alternative, on two

provisions in New York's long-arm statute to establish jurisdiction over Mr. Hughes, *see* ECF No. 100 at 2, those provisions are likewise unavailing.

### 1.   18 U.S.C. § 1965(b) is inapplicable here.

The sole jurisdictional statute referenced in the complaint with respect to Mr. Hughes is the nationwide service provision of the RICO statute, 18 U.S.C. § 1965(b).  Compl. ¶ 36.  That provision supplements § 1965(a)—which provides for personal jurisdiction over a defendant in "any district in which [the defendant] resides, is found, has an agent, or transacts his affairs"—by allowing "other parties residing in any other district [to] be brought before the court" via "process for that purpose . . . *served in any judicial district of the United States*."  18 U.S.C. § 1965(b) (emphasis added).  By its terms, Section 1965(b) "does not provide for international service of process," *First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392 (S.D.N.Y. 2002), and thus, in order to establish personal jurisdiction under § 1965(b), a defendant "must be served with process within the United States," *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 n.7 (S.D.N.Y. 2015) (internal quotation marks omitted).

Mr. Hughes was served at his home in England, *see* ECF No. 75 at 2–3, and § 1965(b) accordingly does not provide a basis for personal jurisdiction over Mr. Hughes.  Instead, because plaintiffs are attempting to assert RICO claims against a foreign defendant who was served abroad, they "must rely on the long-arm statute of the state in which they filed suit." *Elsevier, Inc.*, 77 F. Supp. 3d at 343 (internal quotation marks omitted).[2]

---

[2] In their response to Mr. Hughes' pre-motion letter, plaintiffs contend without elaboration that Mr. Hughes is "incorrect" in his interpretation of § 1965(b), ECF No. 100 at 2, but the only authority they cite in fact supports Mr. Hughes' interpretation.  *See Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1182–84 (C.D. Cal. 1998) (holding that § 1965(b) "does not apply where, as here, the defendant is served outside of the United States").

2.      **The New York long-arm statute does not provide a
        <u>statutory basis for personal jurisdiction over Mr. Hughes.</u>**

The complaint makes no mention of the New York long-arm statute, N.Y. C.P.L.R. § 302,

but plaintiffs have since contended, in their response to Mr. Hughes' pre-motion letter, that two of

that statute's provisions are applicable:  § 302(a)(1), which provides for personal jurisdiction over

those who transact business within the state, and § 302(a)(2), which provides for personal

jurisdiction over those who commit a tortious act within the state.  ECF No. 100 at 2.  Plaintiffs'

reliance on those provisions is misplaced.[3]

i.      **Plaintiffs do not allege conduct by
        <u>Mr. Hughes within the scope of § 302(a)(1).</u>**

"Whether a defendant has transacted business within New York is determined under the

totality of the circumstances, and rests on whether the defendant, by some act or acts, has

purposefully availed itself of the privilege of conducting activities with New York." *Bloomgarden

v. Lanza*, 40 N.Y.S.3d 142, 144 (2d Dep't 2016) (internal quotation marks omitted).  Where a

defendant is not physically present in New York, jurisdiction is proper only "if the defendant 'on

his [or her] own initiative . . . project[s] himself [or herself]' into this state to engage in a 'sustained

and substantial transaction of business.'" *Fischbarg v. Doucet*, 9 N.Y.3d 375, 382 (2007) (quoting

*Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 18 (1970)).

Plaintiffs do not suggest—either in their complaint or their pre-motion letter—that Mr.

Hughes projected himself into New York to engage in a sustained and substantial transaction of

---

[3] Plaintiffs have not sought to rely on either of the two remaining provisions of New York's long-arm statute—which require, respectively, a showing that a tortious act committed outside of the state caused injury within the state (plus the presence of certain other factors) or that the defendant owns, uses, or possesses real property in the state.  *See* §§ 302(a)(3), 302(a)(4).  And the complaint in any event contains no allegation that any tortious act committed or directed by Mr. Hughes caused any injury in New York, nor does it allege that Mr. Hughes had any real estate connection to New York.

business.  On the contrary, the complaint alleges that Mr. Hughes took actions in England and Cyprus while representing the Ras Al Khaima Investment Authority ("RAKIA"), an entity based in the United Arab Emirates, in a suit against Mr. Azima in England.  Compl. ¶¶ 69, 98, 102–06.

Moreover, while plaintiffs stress in their pre-motion letter that Mr. Hughes communicated with Linda Goldstein, a partner in Dechert's New York office, in connection with legal actions involving RAKIA in the U.K. and the District of Columbia (the latter having been initiated by Mr. Azima), *see* ECF No. 100 at 2-3, that does not give rise to personal jurisdiction in New York over Mr. Hughes.  Instead, it is settled law that an out-of-state attorney who litigates a case or performs other legal services in an out-of-state jurisdiction does not "transact business" in New York, even if he communicates with New York domiciliaries about the services he is performing.  *See Bank Brussels Lambert*, 171 F.3d at 788–89 (Puerto Rico law firm that rendered opinion on the legality of a security interest under Puerto Rican law and executed a security transaction in Puerto Rico on behalf of New York-based clients did not transact business in New York even though the firm communicated by various means with New York-based clients, the opinion was addressed to New York banks, and the opinion and security transaction were conditions precedent to a loan transaction in New York); *Bloomgarden*, 40 N.Y.S. 3d at 144–45 (California lawyers who litigated in Florida on behalf of New York-domiciled clients did not transact business in New York even though they communicated with the clients via mail, telephone, and email); *Pincione v. D'Alfonso*, No. 10-cv-3618, 2011 WL 4089885, at *7 (S.D.N.Y. Sept. 13, 2011) (calls and messages to plaintiff in New York, and plaintiff's participation from New York in a video conference were not enough to "project the [defendant] into New York and avail himself of its laws").

Similarly, plaintiffs are mistaken in their claim that because the Court has personal jurisdiction over Dechert, it also has personal jurisdiction over all Dechert partners across the

world.  *See* ECF No. 100 at 3.  In support of that sweeping assertion, plaintiffs point in their pre-motion letter to "settled" law that each general partner acts as the agent of every other general partner and of the partnership.  *Id.*  But as plaintiffs themselves acknowledge, "Dechert LLP . . . is a Pennsylvania *limited liability* partnership."  Compl. ¶ 15 (emphasis added).  And in Pennsylvania (as in New York), "[a] limited partner is not an agent of a limited partnership solely by reason of being a limited partner."  15 Pa. Cons. Stat. § 8632(a)*; id.* § 8201(c) (incorporating, to the extent they are not in conflict, statutory subchapters governing general and limited partnerships into subchapter governing limited liability partnerships); *see also Runberg, Inc. v. McDermott*, No. 652516/2014, 2015 WL 2090370, at *3 (N.Y. Sup. Slip. Op 30739 April 29, 2015)(U)(Trial Order) (rejecting plaintiff's reliance on caselaw relating to general partners, "whose legal duties and obligations are far broader than limited liability partners," and holding that jurisdiction over a limited liability partnership does not result in jurisdiction over an individual partner of the limited liability partnership under New York's long-arm statute).  As a result, although plaintiffs would have it otherwise, settled principles of partnership law demonstrate that this Court does *not* have jurisdiction over Mr. Hughes simply because he was a Dechert partner.

### ii.  Plaintiffs do not allege conduct by<br>Mr. Hughes within the scope of § 302(a)(2).

Plaintiffs fare no better in citing § 302(a)(2), which provides for personal jurisdiction over a defendant for claims arising out of the "commi[ssion of] a tortious act within the state,"  N.Y. C.P.L.R. § 302(a)(2).  To satisfy that provision, a defendant must have committed a tort while physically present in New York, s*ee Bank Brussels Lambert*, 171 F.3d at 790, or directed an agent to do so.  *See* N.Y. C.P.L.R. § 302(a) (providing for personal jurisdiction over a defendant who satisfies its requirements "in person or through an agent").

The complaint does not allege that Mr. Hughes committed a tortious act in New York.  Nor does the complaint identify a tort committed in New York by someone who was directed or controlled by Mr. Hughes.  *See Grove Press Inc. v. Angleton,* 649 F.2d 121, 122 (2d Cir. 1973) ("[B]efore an agency relationship will be held to exist under section 302(a)(2), a showing must be made that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal.") (collecting cases).

While plaintiffs' pre-motion letter derisively describes Ms. Goldstein as a "mouthpiece" for Mr. Hughes, ECF No. 100 at 3—a pejorative better suited to low-budget gangster films than to legal submissions—the complaint alleges no facts to support plaintiffs' suggestion that Ms. Goldstein engaged in tortious conduct at the behest of Mr. Hughes.  Ms. Goldstein's ethical and legal obligations ran to her client, not Mr. Hughes, and plaintiffs do not allege any basis to conclude that Ms. Goldstein was somehow directed or controlled by Mr. Hughes, or that she made representations to the D.C. courts presiding over the action brought by Mr. Azima without a good faith belief in the truth of those statements.  Plaintiffs cannot simply slap a thuggish, fact-free label on Ms. Goldstein and thereby spontaneously generate personal jurisdiction over Mr. Hughes.

### iii.    Plaintiffs do not allege conduct that would support personal jurisdiction under a conspiracy theory.

Nor can plaintiffs alter the jurisdictional result by seeking to invoke the concept of conspiracy jurisdiction.  In order for a New York court to exercise personal jurisdiction over an out-of-state defendant based on the acts of his putative co-conspirator, a plaintiff must "allege[] facts sufficient (1) to establish a *prima facie* case of conspiracy, (2) to warrant the inference that the [out-of-state] defendant[] w[as] [a] member[] of that conspiracy, (3) to demonstrate that a putative co-conspirator committed a tort or transacted business within the meaning of [the long-arm statute], and (4) to justify the finding of an agency relationship between the putative co-

8

conspirator acting in New York and the [out-of-state] defendant[]." *Daventree v. Rep. of Azerbaijan*, 349 F. Supp. 2d 736, 759 (S.D.N.Y. 2004).

A "bland assertion of conspiracy or agency is insufficient." *Lehigh Valley Inds., Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir 1975). Instead, "plaintiff[s] must allege the underlying tort and four elements: (a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury." *Daventree*, 349 F. Supp 2d at 759 (internal quotation marks omitted).

Moreover, because "New York does not provide for some abstract form of conspiracy jurisdiction divorced from the defendant's intentional contacts with the forum," the plaintiff must show, with respect to the agency relationship between the defendant and his in-forum co-conspirator, "that (a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the in-state co-conspirator was to the benefit of the out-of-state conspirator; and (c) the co-conspirator acting in New York acted at the direction or under the control or at the request or on behalf of the out-of-state defendant." *Al Thani v. Hanke*, No. 20 Civ. 4765 (JPC), 2021 WL 1895033, at *11 (S.D.N.Y. May 11, 2021) (internal quotation marks omitted). These requirements ensure that any conspiracy theory of jurisdiction "abide[s] by due process," which requires that the defendant must '*himself*' create the contacts in the forum*." Id*. at *12 (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).[4]

_____

[4] The *Al Thani* opinion contains an exhaustive review of the caselaw governing conspiracy jurisdiction under the New York long-arm statute. *Al Thani*, 2021 WL 1895033, at *11–*14. In addition, along similar lines to the analysis in *Al Thani*, the Second Circuit recently noted in an unpublished summary order that while a showing of direction or control is not required to establish conspiracy jurisdiction under the New York statute, plaintiff must plausibly allege facts demonstrating, at the very least, that the in-state co-conspirator acted "at the request or on behalf

The complaint does not come close to satisfying this test.  It does not allege facts sufficient

to establish a prima facie case of conspiracy between Mr. Hughes and one or more actors in New

York.  It does not allege facts warranting an inference that Mr. Hughes was aware of any tort or

transaction of business in New York by an any alleged co-conspirator or that Mr. Hughes benefited

from any such conduct.  It likewise does not plead a single fact suggesting that any action by any

alleged co-conspirator in New York was taken at Mr. Hughes' direction or request, on his behalf,

or under his control.  Simply put, the allegations leveled against Mr. Hughes amount to no more

than a "bland assertion of conspiracy or agency" and thus fail to satisfy the requirements for

conspiracy jurisdiction under the New York long-arm statute.  *Lehigh Valley*, 527 F.2d at 93.

### B.   Exercise of personal jurisdiction over Mr. Hughes would violate due process.

The complaint's failure to satisfy the requirements of the New York long-arm statute is

reason enough to dismiss the complaint.  But exercising jurisdiction over Mr. Hughes is also

improper because it would violate due process.

In order to establish that the exercise of personal jurisdiction is consistent with due process,

a plaintiff must allege "(1) that a defendant has certain minimum contacts with the relevant forum,

and (2) that the exercise of jurisdiction is reasonable in the circumstances."  *In re Terrorist Attacks*

*on Sept. 11, 2001*, 714 F.3d at 673 (internal quotation marks omitted).  Mr. Hughes, an English

solicitor and resident, does not have New York contacts that are "so constant and pervasive 'as to

render [him] essentially at home in the forum state.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 122

(2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

---

of the out-of-state defendant."  *Berkshire Bank v. Lloyds Banking Group plc*, No. 20-1987-cv,
2022 WL 569819 *3 (2d Cir. Feb. 25, 2022) (internal quotation marks omitted).  The Court further
noted that such a requirement reflects the need to remain "consonant with the due process principle
that a defendant must have purposefully availed itself of the privilege of doing business in the
forum."  *Id.*  (internal quotation marks omitted).

As a result, the complaint must establish specific jurisdiction by alleging "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  The complaint alleges nothing of the sort.

By plaintiffs' own account, Mr. Hughes was copied on an email exchange involving Ms. Goldstein and Mr. Azima's counsel in August 2018, Complaint ¶ 99; *id.* Ex. B at line 85; and attended two meetings in, respectively, Cyprus and London, which Ms. Goldstein attended remotely from New York.  *Id.* ¶¶ 104, 106; *id.* Ex. B at line 119.  That is nowhere close to the deliberate and substantial connection needed to render an assertion of personal jurisdiction consistent with due process.  *See, e.g., Viasystems Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011) ("[S]cattered e-mails, phone calls, and a wire-transfer . . . do not constitute a 'deliberate' and 'substantial connection' with the state such that [defendant] could 'reasonably anticipate being haled into court there.'") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  And that is especially so given that "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden*, 571 U.S. at 291.

Moreover, "traditional notions of fair play and substantial justice" confirm that personal jurisdiction is impermissible here.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945) (internal quotation marks omitted).  All of Mr. Hughes' alleged conduct took place overseas; it is the subject of ongoing litigation in England (where, notably, Mr. Azima has not sought to sue Mr. Hughes personally); and, at bottom, it has nothing to do with New York.  There would be nothing remotely reasonable about forcing Mr. Hughes to litigate these claims in New York.

Whether analyzed as a matter of statute, constitutional law, fair play, or common sense, the outcome is the same:  The complaint alleges nothing that gives rise to personal jurisdiction over Mr. Hughes in New York.

## II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. HUGHES.

The complaint against Mr. Hughes also fails because even if it is assumed, contrary to fact, that plaintiffs had established that this Court has personal jurisdiction over Mr. Hughes,  the claims against him are deficient as a matter of law.  In addition to the general defects set out in the Joint Memorandum, there are two that apply to the particular allegations against Mr. Hughes.

### A.    The complaint fails to allege predicate acts of racketeering as to Mr. Hughes.

As noted in the Joint Memorandum, the elements of section 1962(c) must be alleged as to each defendant, including "factual allegations sufficient to demonstrate that defendant[] committed two or more predicate acts as part of a pattern of racketeering activity."  *De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 299 (S.D.N.Y. 2013); *see also DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The requirements of section 1962(c) must be established as to each individual defendant.").  Plaintiffs attempt to meet this test for Mr. Hughes by asserting that he committed "mail and wire fraud, obstruction of justice, witness tampering, and money laundering." Compl. ¶ 240.  Plaintiffs do not adequately plead any of these predicates as to Mr. Hughes.

To begin, the predicates posited by plaintiffs arise out of Mr. Hughes' conduct as a solicitor litigating in England: They involve communicating with opposing counsel, *id.* ¶¶ 69–70, 91, 99, *id.* Ex. B, Lines 48–49, 51, 85, making statements in court filings, *id.* ¶¶ 98, 103, 105, meeting with witnesses in the English litigation, *id.* ¶¶ 102, 104, 106, *id.* Ex. B, Lines 92, 119, and preparing for the same, *id.* Ex. B, Line 90.  As discussed in the Joint Memorandum, the Second Circuit has squarely held that "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act."  *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir.

2020) (quoting *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)).  For Mr. Hughes, even on plaintiffs'

account, there is nothing "more."  Plaintiffs' purported list of "specific instances" of fraud (Exhibit

B) only confirms this.  Compl. ¶ 240.  The line items attributed to Mr. Hughes are communications

with opposing counsel, *id.* Ex. B, Lines 48–49, 51, 85, and communications in connection with

witness preparation, *id*. Lines 90, 92, 119.  This sort of pleading—which seeks to transform

complaints about litigation activity into RICO predicates—is precisely what the Second Circuit

has forbidden.  *Butcher*, 975 F.3d at 241; *Kim*, 884 F.3d at 104.

       The allegations that Mr. Hughes violated the federal obstruction of justice and witness

tampering statutes are likewise premised on litigation activities and defective for that reason alone,

but also suffer from an additional defect: The statutes at issue do not apply to foreign legal

proceedings. See *O'Malley v. N.Y.C. Transit Auth.*, 896 F.2d 704, 707 (2d Cir. 1990) ("To

constitute an offense under [18 U.S.C. § 1503], the act must relate to a proceeding in a federal

court of the United States.") (collecting cases); 18 U.S.C. §§ 1512(b)(1)-(2)(D), 1515(a)(1)

("official proceeding" does not include a foreign proceeding).  To avoid this settled law, the

complaint simply asks the Court to assume, without a shred of factual support, that Mr. Hughes'

alleged actions as an English solicitor, in connection with a case pending in England, were *actually*

done to obstruct the proceeding initiated by Mr. Azima in the District of Columbia.  Compl. ¶¶ 98,

102–06.  This is precisely the sort of "naked assertion" that the Court need not, and should not,

accept as true.  *Pac. Life Ins. Co. v. U.S. Bank Nat. Assoc.*, _ F. Supp. 3d _, 2022 WL 11305628,

at *9 (S.D.N.Y. Oct. 19, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[5]

---

[5] Nor is it of any moment that some unidentified member of the "enterprise" is alleged to have first
spoken to Mr. Halabi about providing false testimony in 2017, when, according to plaintiffs, the
D.C. proceeding was the only forum in which Mr. Azima's hacking claims were at issue.  ECF
No. 100 at 5 (citing Compl. ¶ 110).  By plaintiffs' own account, Mr. Hughes did not hear what Mr.

Further still, the wire fraud and obstruction predicates posited as to Mr. Hughes fail for the additional reasons that: (1) each is an alleged "act[] of concealment done after the central objectives of the conspiracy ha[d] been attained, for the purpose of covering up after the crime," which cannot, as a matter of law, serve as a RICO predicate, *Dem. Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 444 (S.D.N.Y. 2019) (quoting *Grunewald v. United States*, 353 U.S. 391, 405 (1957)); and (2) they fail to meet the particularity requirements of Federal Rule of Civil Procedure 9(b) because the complaint fails to allege facts that provide a basis for concluding that Mr. Hughes—who, by the complaint's own account, did not participate in the hacking of Mr. Azima's data—believed that any of the statements he made about the hacking were untrue. *See Moore v. PaineWebber, Inc.,* 189 F.3d 165, 172-173 (2d Cir. 1999) (Rule 9(b) applies to RICO predicates sounding in fraud and requires, among other things, the allegation of "facts that give rise to a strong inference of fraudulent intent" (internal quotations marks omitted)).

Finally, the money laundering claim against Mr. Hughes is non-existent.  The complaint does not contain a single allegation that Mr. Hughes engaged in money laundering.  Indeed, Exhibit A, which purports to describe "specific instances of money laundering" by other defendants, says nothing about Mr. Hughes.  *See* Compl. Ex. A; *compare* Compl. ¶¶ 238–39, 241–42, 244, *with* Compl. ¶ 240.  Other than putting the words "money laundering" in the same sentence as "Mr. Hughes," there is no allegation of money laundering against Mr. Hughes.

The failure to allege any racketeering predicates as to Mr. Hughes is fatal to plaintiff's substantive RICO claim in Count One, and the result is no different for the RICO conspiracy claim in Count Two.  The predicates that Mr. Hughes is alleged to have known of as part of the purported

---

Halabi had to say until a year later, when Mr. Hughes met with Mr. Halabi in Cyprus in connection with Mr. Halabi's upcoming testimony in the U.K. proceeding.  Compl. ¶¶ 101–05.

conspiracy are the same predicates that make up the substantive RICO claim, and they fail for precisely the same reasons. *See First Cap. Asset Mgmt, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004); *Festinger v. Snitow Kaminestsky Rosner & Snitow, LLP*, No. 20-cv-9784, 2022 WL 901660, at *21 n.33 (S.D.N.Y. Mar. 28, 2022).

### B.   The complaint fails to plead facts showing that Mr. Hughes participated in the operation or management of a RICO enterprise.

The RICO claims against Mr. Hughes also fail for an additional and independent reason: Notwithstanding the inflammatory—and wholly conclusory—allegations that Mr. Hughes was a "high-level deputy" and "mastermind[]" of a "global criminal enterprise," Compl. ¶¶ 17, 185, plaintiffs allege no facts demonstrating that Mr. Hughes "conduct[ed] or participate[d], directly or indirectly" in the affairs of the alleged RICO enterprise. 18 U.S.C. § 1962(c). The Supreme Court has held that "in order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (quoting § 1962(c)). On the facts alleged in the complaint, Mr. Hughes did not direct the affairs of any racketeering enterprise or conspiracy. To the contrary, the gravamen of plaintiffs' claim against Mr. Hughes is that, in his capacity as a lawyer, he covered up the crimes of the enterprise. It is precisely this claim that fails as a matter of law: A lawyer who "knowingly conceal[s] the fraudulent activities of the enterprise" does *not* come within the "operation or management" of the enterprise and, as a matter of law, is not subject to liability under the RICO statute. *Madanes v. Madanes*, 981 F. Supp. 241, 256 (S.D.N.Y. 1997). For this reason as well, the claims against Mr. Hughes must be dismissed.

### <u>CONCLUSION</u>

For the foregoing reasons, and for the reasons set out in the Joint Memorandum and Point I of Dechert's Memorandum, the complaint should be dismissed as to Mr. Hughes.

Dated: February 28, 2023
      New York, New York

_____

Helen Gredd
Michael Gerber
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, NY 10110
(212) 921-8399
hgredd@lswlaw.com
mgerber@lswlaw.com

*Attorneys for Defendant David Graham Hughes*