UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FARHAD AZIMA,<br>ALG TRANSPORTATION, INC.,<br>MAIN 3260 LLC,<br>FFV W39 LLC, and<br>FFV DEVELOPMENT LLC,<br><br>      Plaintiffs,<br><br> -against-<br><br>DECHERT LLP,<br>DAVID NEIL GERRARD,<br>DAVID GRAHAM HUGHES,<br>NICHOLAS DEL ROSSO,<br>VITAL MANAGEMENT SERVICES, INC.,<br>AMIT FORLIT,<br>INSIGHT ANALYSIS AND RESEARCH LLC,<br>SDC-GADOT LLC,<br>AMIR HANDJANI,<br>ANDREW FRANK, and<br>KARV COMMUNICATIONS,<br><br>      Defendants. | Civil Action No. 22-CV-8728 (PGG)<br><br>**Oral Argument Requested** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DAVID GRAHAM HUGHES' MOTION TO DISMISS**

            Helen Gredd
            Brandon Davis
            LANKLER SIFFERT & WOHL LLP
            1185 Avenue of the Americas
            New York, NY 10036
            (212) 921-8399
            (hgredd@lswlaw.com)

            *Attorneys for Defendant David Graham Hughes*

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................................1

I.   THIS COURT LACKS PERSONAL JURISDICTION OVER MR. HUGHES. .................1

    A.   NYCPLR § 302(a)(1) does not provide a basis for personal jurisdiction. ...............2

    B.   NYCPLR § 302(a)(2) does not provide a basis for personal jursidction. ................3

    C.   Plaintiffs' reading of New York's long-arm statute violates due process. ..............4

    D.   Fed. R. Civ. P. (4)(k)(2) does not provide a basis for personal jurisdiction. ...........5

II.  THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. HUGHES. ................5

CONCLUSION.......................................................................................................................................7

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                      **Page(s)**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
   No. 13-cv-981 (PGG), 2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ........................................... 5

*Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*,
   480 U.S. 102 (1987) ..................................................................................................................... 5

*Beacon Enters., Inc. v. Menzies*,
   715 F.2d 757 (2d Cir. 1983) ........................................................................................................ 2

*Best Van Lines, Inc. v. Walker*,
   490 F.3d 239 (2d Cir. 2007) ........................................................................................................ 5

*Chloe v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010) ........................................................................................................ 4

*Gamma Traders – I LLC v. Merrill Lynch Commodities, Inc.*,
   41 F.4th 71 (2d Cir. 2022) ........................................................................................................... 2

*Lehigh Val. Indus. Inc. v. Birenbaum*,
   527 F.2d 87 (2d Cir. 1975) .......................................................................................................... 3

*Madanes v. Madanes*,
   981 F. Supp. 241 (S.D.N.Y. 1997) .............................................................................................. 7

*Parke-Bernet Galleries, Inc. v. Franklyn*,
   26 N.Y.2d 13 (1970) ................................................................................................................ 2, 3

*In re SSA Bonds Antitrust Litig.*,
   420 F. Supp. 3d 219 (S.D.N.Y. 2019) ......................................................................................... 5

*The Wave Studio, LLC v. trivago N.V.*, No. 23-cv-3586 (NSR), 2023 WL 3720079
   (S.D.N.Y. May 30, 2023) ............................................................................................................ 5

*Wilder v. News Corp.*,
   No. 11-cv-4947 (PGG), 2014 WL 1315960 (S.D.N.Y. Mar. 31, 2014) ...................................... 5

**Statutes**

NYCPLR § 302(a)(1) ......................................................................................................................... 2

NYCPLR § 302(a)(2) ......................................................................................................................... 3

**Other Authorities**

Fed. R. Civ. P. 4(k)(2) .................................................................................................................. 1, 5

Defendant David Graham Hughes respectfully submits this reply memorandum of law in further support of his motion to dismiss plaintiffs' complaint (ECF No. 1) ("Compl.").

### INTRODUCTION

Plaintiffs' inability to articulate a viable theory of personal jurisdiction over Mr. Hughes—which is on full display in their opposition to Mr. Hughes' motion to dismiss ("Hughes Opp.")—confirms that Mr. Hughes does not belong before this Court. Plaintiffs have already abandoned two jurisdictional theories (including the only one cited in their complaint), and they fail to identify allegations sufficient to support their remaining theories. As a result, they propose interpretations of New York's long-arm statute that are odds with both precedent and due process. Plaintiffs also have proposed, at the 11th hour, yet another theory in the apparent hope that it will serve as a jurisdictional lifeline. It does not. Plaintiffs neither provide the requisite certification for invoking Fed. R. Civ. P. 4(k)(2), nor do they even try to identify specific factual allegations—as opposed to gauzy generalities—in claiming that Mr. Hughes had sufficient contacts with the U.S. as a whole to justify personal jurisdiction over him. Plaintiffs likewise traffic in conclusory assertions and inflammatory rhetoric in contending that Mr. Hughes' alleged misconduct as an English solicitor supports a claim against him under the U.S. RICO laws. For these reasons and others—including those set out in Defendants' joint submissions and the forum selection analysis in Dechert LLP's submissions (in which Mr. Hughes joins)—the complaint should be dismissed as to Mr. Hughes.

### I.    THIS COURT LACKS PERSONAL JURISDICTION OVER MR. HUGHES.

Plaintiffs appear to have included Mr. Hughes in this action in the mistaken belief that RICO's nationwide service provision would obviate the need to analyze whether Mr. Hughes had a connection with New York sufficient to support personal jurisdiction over him. When it was pointed out that the provision in question does not apply to foreign defendants served abroad (ECF No. 96 at 2), plaintiffs began floating alternative theories. (ECF No. 100 at 2–3.) And when it was pointed out in Mr.

Hughes' opening memorandum ("Hughes Mem.") that one of the new theories reflected a fundamental misunderstanding of limited liability partnerships (Hughes Mem. at 6–7), that theory joined the RICO service provision on the scrap heap, and plaintiffs added yet another new theory to the mix. The current theories, like their predecessors, are meritless. The complaint against Mr. Hughes should be dismissed for lack of personal jurisdiction.

        A.      **NYCPLR § 302(a)(1) does not provide a basis for personal jurisdiction.**

It is settled law in New York that a defendant will not be held to have transacted business in the state "solely on the basis of [a] defendant's communication from another locale with a party in New York." *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983). Thus, a plaintiff cannot rely on such communications to establish jurisdiction under Section 302(a)(1) of New York's long-arm statute unless the defendant, "on his own initiative . . . projected himself into" the state to engage in "the sustained and substantial transaction of business here." *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 18 (1970).

As plaintiffs' opposition merely confirms, the complaint does not come close to meeting that standard. In fact, most of the allegations cited by plaintiffs do not mention Mr. Hughes at all, (*see* Compl. ¶¶ 15, 18, 23–24, 29–32, 37, 54, 60, 77), or reference conduct with no nexus to New York, (*see id.* ¶¶ 69–71, 91, 102–03, 105). Still others contain "the sort of merely conclusory statement[s] that [the Court] need not credit, even on a motion to dismiss." *Gamma Traders – I LLC v. Merrill Lynch Commodities, Inc.*, 41 F.4th 71, 80 (2d Cir. 2022) (internal quotation marks omitted). (*See* Compl. ¶¶ 17, 36, 118–19, 185.) The remainder are out-of-state communications involving New York-based Dechert partner Linda Goldstein about litigation pending elsewhere. (*See id.* ¶¶ 98–99, 104, 106, Ex. B, Lines 85, 92, 119.) But the caselaw is clear that an out-of-state attorney who performs legal services in an out-of-state jurisdiction does not "transact business" in New York, even if he communicates with New York domiciliaries about those services. (*See* Hughes Mem. at 6

2

(collecting cases)). And although plaintiffs would have it otherwise, that precedent contains no suggestion that it is limited to "run-of-the-mill" legal activities. (Hughes Opp. at 6.)[1]

Plaintiffs fare no better in contending that even if Mr. Hughes himself did not personally transact business in New York, he did so through Ms. Goldstein, whom plaintiffs characterize as a "co-conspirator" and therefore an agent of Mr. Hughes. (Hughes Opp. at 4–6.) Plaintiffs point to no allegations in the complaint suggesting that Ms. Goldstein and Mr. Hughes in fact entered into an agreement to violate the law—much less describing when, how, and with whom such an agreement was formed and what the contours of that agreement were. Plaintiffs likewise point to no facts suggesting that there was at least one overt act committed by Ms. Goldstein in New York in furtherance of her purported agreement to violate the law, that Mr. Hughes had an awareness of the effects in New York of Ms. Goldstein's purported activity, and that Ms. Goldstein's purported activity was undertaken at the direction or under control or at the request of Mr. Hughes. Instead, all that plaintiffs have offered is a "bland assertion of conspiracy," which is "insufficient to establish jurisdiction" over Mr. Hughes. *Lehigh Val. Indus. Inc. v. Birenbaum*, 527 F.2d 87, 93 (2d Cir. 1975). (*See also* Hughes Mem. at 8–9 & n.4 (collecting and discussing cases)).[2]

### B.   NYCPLR § 302(a)(2) does not provide a basis for personal jurisdiction.

With respect to Section 302(a)(2) of the long-arm statute, which confers jurisdiction over a defendant who commits a tortious act within the state, plaintiffs contend that while a defendant's

---

[1] Plaintiffs also fail, in any event, to explain what their proposed distinction even means, much less how it would bear on whether a defendant had "projected himself" into New York to engage in "the sustained and substantial transaction of business here." *Parke-Bernet*, 26 N.Y.2d at 18.

[2] Although plaintiffs claim to provide the requisite specificity elsewhere in their opposition brief and/or in their complaint (Hughes Opp. 4–6), a reader of those documents would search in vain for the promised particulars and would find instead only conclusory assertions and inflammatory rhetoric. Such "allegations" fall far short of the mark for establishing a basis for the exercise of conspiracy jurisdiction, and indeed are entitled to no weight by this Court.

3

physical presence in the state is "[n]ormally" required for Section 302(a)(2) to apply, it will be excused where, as here, it has been alleged that the tortious act was committed by a co-conspirator. (Hughes Opp. 7.) In fact, however, plaintiffs' contention that Ms. Goldstein conspired to file intentionally false statements and then did so at Mr. Hughes' direction (*id.*) is bereft of support in the complaint. As a result, plaintiffs' reliance on conspiracy jurisdiction with respect to Section 302(a)(2) fails for the same reason it does with respect to Section 302(a)(1).

### C. **Plaintiffs' reading of New York's long-arm statute violates due process.**

Plaintiffs' view of what is sufficient to establish personal jurisdiction collides not only with settled interpretation of New York's long-arm statute, but with the due process clause as well. Plaintiffs contend that Mr. Hughes "purposely availed himself of the privilege of conducting activities [within New York]" by "organiz[ing] and structur[ing] the New-York-centered Enterprise." (Hughes Opp. at 8.) But that contention does not merely lack support in the complaint, it is affirmatively contradicted by it. As noted above, *supra* at 2, the complaint's non-conclusory allegations relating to activity in New York have nothing to do with Mr. Hughes, and the non-conclusory allegations relating to Mr. Hughes have nothing to do with New York. Moreover, the sole case cited by plaintiffs cuts against their position. In *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 166–67 (2d Cir. 2010)—unlike here—there were non-conclusory allegations of personal involvement by the defendant in an unlawful scheme that targeted New York residents.

Further still, for the reasons set out in Mr. Hughes' opening memorandum, an exercise of personal jurisdiction over Mr. Hughes would not be reasonable. (*See* Hughes Mem. at 11.) The U.K. remains, to borrow a phrase from plaintiffs, the "center of gravity," as well as the jurisdiction with the greater interest. And while plaintiffs play down the burden on Mr. Hughes of defending himself abroad, they rely on inapposite cases involving large entities with significant U.S. ties (Hughes Opp. at 9) and ignore the Supreme Court's admonition that courts should give "significant weight" to the

4

"unique burdens placed upon one who must defend oneself in a foreign legal system." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 114 (1987).

### D. Fed. R. Civ. P. (4)(k)(2) does not provide a basis for personal jurisdiction.

Plainly worried that the requisite New York nexus is lacking, plaintiffs attempt a Hail Mary pass by belatedly seeking to throw Federal Rule of Civil Procedure 4(k)(2) into the mix. (Hughes Opp. at 9–10.) But the pass fails for several reasons. *First*, plaintiffs have not certified that, to their knowledge, Mr. Hughes is not subject to personal jurisdiction in any U.S. state, and courts in this Circuit routinely require such a certification before entertaining a claim under Rule 4(k)(2).[3] *Second*, plaintiffs have not identified specific allegations showing the requisite minimum contacts with the U.S. and have instead merely repeated conclusory claims about Mr. Hughes' purported role in the "enterprise." *Third,* plaintiffs' suggestion that Mr. Hughes does not dispute having sufficient contacts with the U.S. to satisfy Rule 4(k)(2) (Hughes Opp. at 10) is baseless. Mr. Hughes has had no occasion until this filing to address Rule 4(k)(2). And, for avoidance of doubt, Mr. Hughes does in fact dispute the point and notes that the burden lies with plaintiffs, who have failed to carry it. *See, e.g.*, *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 240 (S.D.N.Y. 2019).[4]

## II. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST MR. HUGHES.

As to the defects in plaintiffs' complaint, Mr. Hughes principally relies upon the Joint Reply, but notes several points of particular relevance to him. *First,* plaintiffs concede that the money

---

[3] *See, e.g., The Wave Studio, LLC v. trivago N.V.*, No. 23-cv-3586 (NSR), 2023 WL 3720079, at *6 (S.D.N.Y. May 30, 2023); *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13-cv-981 (PGG), 2015 WL 1514539, at *13 (S.D.N.Y. Mar. 31, 2015), *aff'd*, 771 F. App'x 498 (2d Cir. 2019) (summary order).

[4] Plaintiffs also observe in a footnote that this Court could order jurisdictional discovery (Hughes Opp. at 9 n.7), but they wisely do not contend that they are entitled to it. They are not. *See Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007); *Wilder v. News Corp.*, No. 11-cv-4947 (PGG), 2014 WL 1315960, at *6–*7 (S.D.N.Y. Mar. 31, 2014).

laundering predicates are defective as to Mr. Hughes by offering no response other than an odd (and unsupported) claim that Mr. Hughes' involvement in money laundering need not be described because he purportedly "supervise[d] co-conspirators who laundered millions." (Hughes Opp. at 13 n.9.)

**Second,** the remaining predicate acts posited as to Mr. Hughes are not cognizable RICO predicates because they all relate to alleged litigation misconduct and acts of concealment that occurred after the central objectives of the conspiracy had been achieved. (*See* Joint Reply at Points IV.C.1 and IV.C.2.) In addition, as to Mr. Hughes, the predicates premised on the U.S. obstruction and witness tampering statutes (which do not apply to foreign proceedings) also fail because the complaint contains only conclusory claims and speculation that the alleged misdeeds of Mr. Hughes, an English solicitor litigating in England, "were designed in part to obstruct the [litigation brought by Mr. Azima in the District of Columbia]." (Hughes Opp. at 11–12.)[5]

**Third**, and similarly, while plaintiffs contend that the complaint adequately alleges that Mr. Hughes participated in the operation and management of the RICO enterprise (Hughes Opp. at 14–15), the "support" they offer consists of conclusory assertions, embellishments that are nowhere to be found in the complaint (even in conclusory form), and citations to the complaint that simply do not support the assertions made (and, in fact, often make no mention of Mr. Hughes). Tellingly, plaintiffs' own complaint makes clear that far from being a "mastermind" of the alleged enterprise, Mr. Hughes

---

[5] In arguing to the contrary, plaintiffs stress that Ms. Goldstein (who was involved in the D.C. litigation) was a remote attendee at several meetings abroad with Majdi El Halabi—even going so far as to claim that Ms. Goldstein's attendance shows "an effort by Hughes and the Enterprise to make 'real' the lies fed to the D.C. court through Goldstein." (Hughes Opp. at 12.) But Ms. Goldstein's attendance shows no such thing. The complaint contains no indication that Mr. Hughes sought Ms. Goldstein's remote attendance at the meetings, much less for the purpose of "feeding lies" to the D.C. court. Moreover, as Mr. Hughes contended in his opening memorandum, and as plaintiffs failed to dispute in their opposition, the complaint's descriptions of the meetings at issue are so conclusory that they do not even support an inference that Mr. Hughes and Ms. Goldstein (neither of whom, by the complaint's own account, was involved in the hacking) were aware that the narrative recounted by Mr. Halabi was untrue. (Hughes Mem. at 14; Hughes Opp. at 13–14.)

6

played no part in the alleged crimes that were at its core. Thus, the complaint:

- contains no claim that Mr. Hughes participated in the formation of the alleged plan to hack and disseminate Mr. Azima's data; or the hacking itself; or that he reviewed the "Hacking Reports" detailing its progress (Compl. ¶¶ 45, 47–49, 51–53);

- contains no claim that Mr. Hughes was a member of the "team" that met to "discuss strategy and tactics" related to the alleged plot against Mr. Azima, or that he contributed to or reviewed the "Action Plan" describing the same (*id.* ¶¶ 54, 59–61); and

- contains no claim that Mr. Hughes had any involvement in a later instance of alleged hacking supposedly undertaken to determine who was funding litigation brought by Mr. Azima and another individual targeted by the "enterprise." (*Id.* ¶¶ 161–78.)

To be sure, the complaint does allege that Mr. Hughes threatened to sue Mr. Azima and then made good on that threat, but litigators on both sides of the Atlantic engage in such activity every day of the week. The complaint contains no basis for inferring that Mr. Hughes believed that the litigation had been made possible through illegal means. And while the complaint also alleges, in conclusory terms, that Mr. Hughes eventually came to participate in the "creation" of a false narrative about the hacking (by engaging in an exercise more neutrally described as witness preparation), the complaint is conspicuously silent on many key points—including when and even whether Mr. Hughes was told about how and why Mr. Azima's data allegedly came to be hacked.

Stripped of its speculation and inflammatory rhetoric, the complaint offers nothing in support of plaintiffs' attempted portrayal of Mr. Hughes as a criminal "mastermind." *See Madanes v. Madanes,* 981 F. Supp. 241, 256 (S.D.N.Y. 1997). Indeed, because of the lack of specifics and significant gaps in the narrative, the complaint does not even support a claim that Mr. Hughes knowingly participated in concealing the alleged crimes of the "enterprise." (Hughes Mem. at 14.)

## **CONCLUSION**

For the reasons stated herein, and in the other memoranda submitted or joined in by Mr. Hughes, the complaint should be dismissed in its entirety as to Mr. Hughes.

Dated: June 20, 2023
      New York, New York

                                       Helen Gredd
                                       Brandon Davis
                                       LANKLER SIFFERT & WOHL LLP
                                       1185 Avenue of the Americas
                                       New York, NY 10036
                                       (212) 921-8399
                                       hgredd@lswlaw.com

                                       *Attorneys for Defendant David Graham Hughes*