**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FARHAD AZIMA,<br>ALG TRANSPORTATION, INC.,<br>MAIN 3260 LLC,<br>FFV W39 LLC, and<br>FFV DEVELOPMENT LLC,<br><br>                  Plaintiffs,<br>v.<br><br>DECHERT LLP,<br>DAVID NEIL GERRARD,<br>DAVID GRAHAM HUGHES,<br>NICHOLAS DEL ROSSO,<br>VITAL MANAGEMENT SERVICES, INC.,<br>AMIT FORLIT,<br>INSIGHT ANALYSIS AND RESEARCH LLC,<br>SDC-GADOT LLC,<br>AMIR HANDJANI,<br>ANDREW FRANK, and<br>KARV COMMUNICATIONS,<br><br>                  Defendants. | Case No. 1:22-cv-08728 (PGG) (JW)<br><br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT DAVID NEIL GERRARD'S MOTIONS TO DISMISS**

Andrew St. Laurent
Evan W. Bolla
HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street, 53rd Floor
New York, NY 10005
Tel: (212) 397-3370
andrew@hs-law.com
ewbolla@hs-law.com

*Counsel for Defendant David Neil Gerrard*

# TABLE OF CONTENTS

I.   Azima's Claims Should be Dismissed in Favor of Litigation in the U.K. Based on the Settlement Agreement's Forum Selection Clause ............................................................. 1

   A.  The Claims in the Complaint are Covered by the Forum Selection Clause ........................ 2

   B.  Gerrard Can Enforce the Forum Selection Clause ................................................................. 3

   C.  Azima Is Bound by the Previous Decision of Another Federal Court that the Forum Selection Clause in the Settlement Agreement Covers Claims Related to the Alleged Hacking ............................................................................................................................. 5

II.   Plaintiffs Have Not Demonstrated Personal Jurisdiction Over Gerrard ................................ 6

   A.  Standard Under Rule 12(b)(2) ............................................................................................. 6

   B.  Only New York Statutes Can Provide Jurisdiction for Plaintiffs over Gerrard ................... 7

   C.  The Complaint Does Not Establish Jurisdiction Over Gerrard .......................................... 7

       i.   The Complaint Does Not Sufficiently Plead General Jurisdiction Over Gerrard ........... 8

       ii.   The Complaint Does Not Sufficiently Plead Specific Jurisdiction Over Gerrard .......... 8

          a.   The Complaint Does Not Allege That Gerrard Transacted Business in New York That Would Give Rise to Specific Jurisdiction ...................................................... 9

          b.   The Complaint Does Not Allege Gerrard Committed a Tortious Act In New York .. 11

          c.   Plaintiffs Have Not Alleged Conspiracy Jurisdiction ................................................. 11

III.   The Complaint Does Not Allege the Requisite Facts to Support the Alleged RICO Predicate Acts By Gerrard ........................................................................................................... 12

   A.  The Complaint Does Not Sufficiently Allege Claims for Money Laundering or Mail or Wire Fraud Against Gerrard ............................................................................................. 13

   B.  Obstruction of Justice as Alleged Here is Not a Predicate Act ........................................... 14

IV.   Conclusion ........................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*260 Madison Ave. HVAC Unit Collapse*
  2018 N.Y. Slip Op. 32413(U) (N.Y. Sup. Ct. Sep. 26, 2018) .................................................. 8

*Aguas Lenders Recovery Grp. v. Suez, S.A.*
  585 F.3d 696 (2d Cir. 2009)............................................................................................. 3

*Allied Dynamics Corp. v. Kennametal, Inc.*
  965 F. Supp. 2d 276 (E.D.N.Y. 2013) .................................................................................. 9

*Azima v. RAK Investment Authority*
  926 F.3d 870 (D.C. Cir. 2019) ................................................................................... 3, 5

*Beacon Enters. v. Menzies*
  715 F.2d 757 (2d Cir. 1983)............................................................................................. 10

*Best Van Lines, Inc. v. Walker*
  490 F.3d 239 (2d Cir. 2007)............................................................................................. 10

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*
  137 S. Ct. 1773 (2017).................................................................................................... 11

*Cambridge Management Group, LLC v. Baker*
  No. 12 Civ. 3577 (NLH), 2013 WL 1314734 (D.N.J. Mar. 28, 2013) ...................................... 4

*Chloe v. Queen Bee of Beverly Hills, LLC*
  616 F.3d 158 (2d Cir. 2010)............................................................................................. 9

*CrossBorder Sols., Inc. v. Macias, Gini, & O'Connell, LLP*
  No. 20 CIV. 4877 (NSR), 2022 WL 562934 (S.D.N.Y. Feb. 23, 2022)..................................... 9

*Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*
  758 F. Supp. 2d 153 (E.D.N.Y. 2010) .................................................................................. 14

*CutCo Industries, Inc. v. Naughton*
  806 F.2d 361 (2d Cir. 1986)............................................................................................. 9

*Daimler AG v. Bauman*
  571 U.S. 117 (2014)........................................................................................................ 8

*DeFalco v. Bernas*
  244 F.3d 286 (2d Cir 2001)............................................................................................. 12

*Democratic Natl. Comm. v. Russian Fedn.*
   392 F Supp 3d 410 (S.D.N.Y. 2019)...................................................................... 14

*Elsevier, Inc. v. Grossman*
   77 F. Supp. 3d 331 (S.D.N.Y. 2015)...................................................................... 7

*First Capital Asset Mgt., Inc. v. Brickellbush, Inc.*
   218 F Supp 2d 369, 391 (S.D.N.Y. 2002)................................................. 7, 10, 11, 12

*Griffin v. Sirva, Inc.*
   291 F. Supp. 3d 245 (E.D.N.Y. 2018) .................................................................... 6

*Grove Press, Inc. v. Angleton*
   649 F.2d 121 (2d Cir. 1981).................................................................................. 12

*Gucci Am., Inc. v. Weixing Li*
   768 F.3d 122 (2d Cir. 2014).................................................................................. 8

*Hollander v. Pressreader, Inc.*
   2020 WL 2836189 (S.D.N.Y. 2020)...................................................................... 14

*In re Optimal U.S. Litig.*
   813 F.Supp.2d 351 (S.D.N.Y. 2011)...................................................................... 3

*Jazini v. Nissan Motor Co., Ltd.*
   148 F.3d 181 (2d Cir. 1998).............................................................................. 6, 7

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*
   828 F. App'x 740 (2d Cir. 2020) .......................................................................... 6

*Johnson v. Ward*
   797 N.Y.S.2d 33 (2005)...................................................................................... 10

*Kernan v. Kurz-Hastings, Inc.*
   175 F.3d 236 (2d Cir. 1999).................................................................................. 9

*Kreutter v. McFadden Oil Corp.*
   71 N.Y.2d 460 (1988) .......................................................................................... 12

*Lawyers Funding Group, LLC v. White*
   No. 14 Civ. 2962 (BS), 2015 WL 921588 (E.D. Pa. Mar. 4, 2015) ......................... 4

*Magi XXI, Inc. v. Stato della Citta del Vaticano*
   714 F.3d 714 (2d Cir. 2013).................................................................................. 3

*McGowan v. Smith*
  52 N.Y.2d 268 (1981) ................................................................................ 9

*Mills v. Polar Molecular Corp.*
  12 F3d 1170 (2d Cir 1993) ........................................................................ 13

*Parklane Hosiery Co. v. Shore*
  439 U.S. 322 (1979) ................................................................................... 6

*Penguin Grp. (USA) Inc. v. Am. Buddha*
  609 F.3d 30 (2d Cir. 2010) ........................................................................ 6

*Phillips v. Audio Active Ltd.*
  494 F.3d 378 (2d Cir. 2007) ...................................................................... 2

*Poindexter v. Cash Money Records*
  No. 13 Civ. 1155, 2014 WL 818955 (S.D.N.Y. Feb. 25, 2014) ................. 6

*Postlewaite v. McGraw-Hill*
  333 F.3d 42 (2d Cir. 2003) ........................................................................ 6

*RAK Investment Authority v. Azima*
  [2021] EWCA Civ 349 [147–48] ............................................................ 2, 3

*Roth v. Jennings*
  489 F.3d 499 (2d Cir. 2007) ...................................................................... 1

*Shaw Family Archives Ltd. v. CMG Worldwide, Inc.*
  No. 05 Civ. 3939 (CM), 2008 WL 4127830 (S.D.N.Y. Sept. 2, 2008) ...... 6

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*
  450 F.3d 100 (2d Cir. 2006) .................................................................. 9, 10

*Sound Around Inc. v. Audiobahn, Inc.*
  No. 07 CV 773 RJD CLP, 2008 WL 5093599 (E.D.N.Y. Nov. 24, 2008) ... 10

*Troma Entm't, Inc. v. Centennial Pictures Inc.*
  729 F.3d 215 (2d Cir. 2013) ...................................................................... 6

*U.S. Theatre Corp. v. Gunwyn/Lansburgh Ltd. P'ship*
  825 F. Supp. 594 (S.D.N.Y. 1993) ........................................................ 9, 10

*United States v. Hawit*
  15-CR-252 (PKC), 2017 WL 663542 (E.D.N.Y. Feb. 17, 2017) .............. 14

*Weingard v. Telepathy, Inc.*
   No. 05 CIV. 2024 (MBM), 2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005)................................. 4

*Wexner v. First Manhattan Co.*
   902 F.2d 169 (2d Cir.1990)...................................................................................... 13

*Wilder v. News Corp.*
   No. 11 CIV. 4947 (PGG), 2014 WL 1315960 (S.D.N.Y. Mar. 31, 2014)................................ 7

*Zanghi v. Ritella*
   19 CIV. 5830 (NRB), 2021 WL 4392756 (S.D.N.Y. Sept. 24, 2021).............................. 2, 3, 4

**Statutes**

18 U.S.C. § 1343............................................................................................................ 14

18 U.S.C. § 1503............................................................................................................ 15

18 U.S.C. § 1956............................................................................................................ 13

18 U.S.C. § 1961........................................................................................................ 13, 15

18 U.S.C. § 1962............................................................................................................ 12

18 U.S.C. § 1965.............................................................................................................. 7

**Rules**

Federal Rules of Civil Procedure Rule 12 ............................................................................ 6

N.Y.C.P.L.R. § 301........................................................................................................... 8

N.Y.C.P.L.R. § 302................................................................................................ 8, 9, 10, 12

David Neil Gerrard ("Gerrard") fully joins Defendants' Joint Memorandum of Law in support of the joint motion to dismiss. In addition, Gerrard moves to dismiss the complaint based on the forum selection clause of the March 2, 2016 settlement agreement between Azima and Gerrard's then-client RAKIA[1] (the "Settlement Agreement"); the Plaintiffs' failure to establish personal jurisdiction over him; and the absence of properly plead predicate acts necessary to support Plaintiffs' RICO claims against him.

## I.  Azima's Claims Should be Dismissed in Favor of Litigation in the U.K. Based on the Settlement Agreement's Forum Selection Clause

Plaintiff Farhad Azima ("Azima") and RAKIA entered into a 2016 settlement agreement. According to the Complaint, this was at Gerrard's direction and in furtherance of the Enterprise's scheme to cause injury to Plaintiffs. Compl. ¶¶ 62-64. The Settlement Agreement contains a clause that controls the forum and choice of law for any dispute relating to the agreement, its formation, or the subject matter:

> This Settlement Agreement and any dispute or claim arising out of, or in connection with, it or its subject matter or formation (including, without limitation, any contractual or non-contractual disputes, claims or obligations) is governed by and shall be construed in accordance with English law and the Parties submit to the exclusive jurisdiction of the courts of England and Wales.[2]

A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of David Gopstein ("Ex. 1").

---

[1] All capitalized terms adopt the same definition as in the defendants' joint memorandum unless otherwise stated. For the purposes of this motion only, all the well-pleaded allegations in the Complaint are taken as true.

[2] "Documents that are incorporated in [a complaint] by reference are deemed part of the pleading and may be considered [by the court in ruling on a motion to dismiss]." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

### A.  The Claims in the Complaint are Covered by the Forum Selection Clause

A forum selection clause is presumptively enforceable when: "(1) the clause was reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory ...; and (3) the claims and parties to the dispute are subject to the clause." [3] *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84, 392 (2d Cir. 2007) (citations omitted); *see also Zanghi v. Ritella*, 19 CIV. 5830 (NRB), 2021 WL 4392756, at *4 (S.D.N.Y. Sept. 24, 2021), *appeal dismissed sub nom. Zanghi v. Callegari*, 22-266, 2023 WL 1097560 (2d Cir Jan. 30, 2022).

The Complaint alleges that the hacking, the enforcement of the Settlement Agreement, and the cover-up of the hacking were part of one scheme to use the Settlement Agreement as a "trap" to harm Azima. Compl. ¶¶ 62-64. The Enterprise (as defined in ¶¶ 1-25 of the Complaint) hacked Azima in 2015 and discovered documents that demonstrated Azima had engaged in bad faith and fraud in relation to his interactions with RAKIA. *See* Compl. ¶¶ 45-58 and *RAK Investment Authority v. Azima* [2021] EWCA Civ 349 [147–48]. The Enterprise induced Azima to enter into the Settlement Agreement with RAKIA under which RAKIA would pay Azima $2.6 million and Azima would make certain representations concerning his prior conduct that the Enterprise (and presumably Azima) knew were false. *See* Compl. ¶ 62, 64. Azima denied his prior bad faith conduct and made the false representations, thereby "falling into the trap". *Id.* at ¶ 63; Ex. 1. The Enterprise laundered the hacked materials through public sources and RAKIA initiated successful litigation concerning Azima's bad faith and false representations in the Settlement Agreement

---

[3] A party may defeat the presumption of enforcement by making a sufficiently strong showing that: "(1) [the forum selection clause's] incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum state; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84, 392 (2d Cir. 2007) (citations omitted). We will address any attempts by Plaintiffs to carry this burden in reply.

based on the hacked materials. *Id.* at ¶¶ 65-72. During the ensuing litigation, the Enterprise covered up the hacking. *Id.* at ¶¶ 73-75; 83-183.[4] Accordingly, the Complaint has a "logical or causal connection" to not only the subject matter and formation of the Settlement Agreement but to the Settlement Agreement itself. *Azima v. RAK Investment Authority*, 926 F.3d 870, 877 (D.C. Cir. 2019). The forum selection clause accordingly should control the forum in which this litigation should occur.

### B.  Gerrard Can Enforce the Forum Selection Clause

Although not a signatory to the Settlement Agreement, Gerrard is nonetheless bound by the forum selection clause and accordingly has the ability to enforce its terms against Azima. The "fact [that] a party is a non-signatory to an agreement is insufficient, standing alone, to preclude enforcement of a forum selection clause." *Aguas Lenders Recovery Grp. v. Suez, S.A.*, 585 F.3d 696, 701 (2d Cir. 2009). As relevant here, a forum selection clause may be enforced by a non-signatory to a contract when the non-signatory is sufficiently "closely related" to a contracting party or the dispute arising from the transaction that it is foreseeable that it will be bound by the forum selection clause. *See Magi XXI, Inc. v. Stato della Citta del Vaticano,* 714 F.3d 714, 723 (2d Cir. 2013); *In re Optimal U.S. Litig.,* 813 F.Supp.2d 351, 369 (S.D.N.Y. 2011).

Courts in this Circuit have generally found that a sufficiently close relationship arises in two situations: (1) "where the non-signatory had an active role in the company that was the signatory," or (2) "where the non-signatory had an active role in the transaction between the signatories*." Zanghi v. Ritella*, 19 CIV. 5830 (NRB), 2021 WL 4392756, at *5 (S.D.N.Y. Sept. 24, 2021) (citation omitted). Thus, even if a non-signatory is not formally affiliated with a

---

[4] The U.K. Court of Appeal found "the hacked materials ought to have been disclosed by Mr. Azima anyway." *RAK Investment Authority v. Azima* [2021] EWCA Civ 349 [147–48] at ¶ 62.

contracting party, there may be a sufficiently "close relationship" to allow the non-signatory to rely on a forum selection clause where it is alleged the non-signatory "acted in concert" with a signatory in connection with the transaction. *Id.*

In *Zanghi v. Ritella*, the Court found that an attorney and firm who were not signatories to the underlying agreement were subject to the forum selection clause where, as here, the attorney was alleged to be closely related to his client, participated in not only the drafting of the papers but the surrounding transactions, and where it was alleged that the attorney stood to gain from the underlying agreement. 2021 WL 4392756, at *5. Courts outside this Circuit have also relied on the "closely related" theory to find that forum selection clauses bind non-signatory attorneys representing claimants in agreements. *See, e.g., Cambridge Management Group, LLC v. Baker,* No. 12 Civ. 3577 (NLH), 2013 WL 1314734, at *11 (D.N.J. Mar. 28, 2013); *Lawyers Funding Group, LLC v. White,* No. 14 Civ. 2962 (BS), 2015 WL 921588, at *6 (E.D. Pa. Mar. 4, 2015); *see also Weingard v. Telepathy, Inc.*, No. 05 CIV. 2024 (MBM), 2005 WL 2990645, at *6 (S.D.N.Y. Nov. 7, 2005) (allegations that defendants were acting in concert satisfied "closely related" element).

Here, both the pleadings and the Settlement Agreement demonstrate a close and direct relationship between Gerrard, RAKIA, and Azima. The Complaint describes Dechert and Gerrard's role and connection with the Settlement Agreement and the forum selection clause in particular: "the Enterprise, acting through Dechert, induced Azima to enter into [the Settlement Agreement]", Compl. ¶ 62, and included the forum selection clause for the specific purpose of allowing Gerrard to file and manage any subsequent litigation in the UK. *Id.* The Settlement Agreement's front page shows Dechert U.K. Office's involvement in the creation of the Settlement Agreement (and Gerrard's position at Dechert and representation of RAKIA is established in the

pleadings). *See* Ex. 1. In addition, the confidentiality obligations contained in the Settlement Agreement extend not only to the Parties but to "their advisers," including Gerrard. *See* Ex. 1, § 5.1. A close and direct relationship is both alleged in the Complaint and supported by the underlying agreement. The forum selection clause should be enforced and Azima required to bring these claims in the courts of England and Wales.[5]

### C. Azima Is Bound by the Previous Decision of Another Federal Court that the Forum Selection Clause in the Settlement Agreement Covers Claims Related to the Alleged Hacking

The Court of Appeals for the D.C. Circuit (the "D.C. Appeals Court") previously examined the forum selection clause in connection with Azima's suit against RAKIA for the hacking underlying this action (the "D.C. Proceeding"). Compl. ¶ 72; *Azima v. RAK Investment Authority*, 926 F.3d 870, 874-880 (D.C. Cir. 2019). In that matter, the D.C. Appeals Court held that the forum selection clause was mandatory, was broad in application, and that the alleged hacking of Azima's information was covered by it. *Id. at* 877. The D.C. Appeals Court found that the prepositional clause "arising out of, or in connection with" in the forum selection clause was "quite broad". *Id.* Under this broad reading, the D.C. Appeals Court found that because the hacking was alleged to have a "logical or causal connection" to the other business disputes between the parties, it was related to the formation of the Settlement Agreement and thus covered by the forum selection clause. *Id.*

"Under either federal law or New York State law, collateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action." *Shaw*

---

[5] As he has, in fact, already done. *See* Joint Brief pp. 14-18 (arguing for dismissal of instant in action in favor of UK proceedings already in process considering the same claims).

*Family Archives Ltd. v. CMG Worldwide, Inc.*, No. 05 Civ. 3939 (CM), 2008 WL 4127830, at *18 (S.D.N.Y. Sept. 2, 2008), quoting *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003). As Azima was an active litigant in the proceeding, and the D.C. Appeals Court made a full and final determination concerning the scope of the forum selection clause, the D.C. Appeals Court's interpretation is binding on Azima. *See Poindexter v. Cash Money Records*, No. 13 Civ. 1155, 2014 WL 818955, at *2 (S.D.N.Y. Feb. 25, 2014). Moreover, although Gerrard was not a party to that proceeding, as a defendant, there is no bar to him raising a non-mutual decision in his favor. "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979) (noting that defensive issue preclusion did not raise fairness concerns of non-mutual offensive issue preclusion); *see also Griffin v. Sirva, Inc.*, 291 F. Supp. 3d 245, 253 (E.D.N.Y. 2018).

## II. Plaintiffs Have Not Demonstrated Personal Jurisdiction Over Gerrard

### A. Standard Under Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit[,]" *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)), although "the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 742 (2d Cir. 2020).

A *prima facie* case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place. *See Jazini v. Nissan Motor Co., Ltd.,* 148 F.3d 181, 185 (2d Cir. 1998). Where plaintiffs do not establish a *prima facie* case

that the district court has jurisdiction over the defendant, the district court may appropriately dismiss the complaint without further proceedings. *Id.* at 185; *Wilder v. News Corp.*, No. 11 CIV. 4947 (PGG), 2014 WL 1315960, at *6–*7 (S.D.N.Y. Mar. 31, 2014).

  B. *Only New York Statutes Can Provide Jurisdiction for Plaintiffs over Gerrard*

  The sole jurisdictional statute invoked by plaintiffs with respect to Gerrard is the nationwide service provision of the RICO statute, 18 U.S.C. § 1965(b). But § 1965(b) "does not provide for international service of process." *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392 (S.D.N.Y. 2002). To establish personal jurisdiction under § 1965(b), a defendant "must be served with process within the United States." *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 n. 7 (S.D.N.Y. 2015) (internal quotation marks omitted).

  Gerrard was purported to be served in England;[6] thus, § 1965(b) is inapplicable. In the event of service outside the United States "plaintiffs asserting RICO claims against foreign defendants must rely on the long-arm statute of the state in which they filed suit." *Elsevier, Inc.*, 77 F. Supp. 3d at 343 (internal quotation marks omitted).  As described in more detail below, the allegations in the Complaint provide neither general nor specific jurisdiction over Gerrard in New York.

  C. *The Complaint Does Not Establish Jurisdiction Over Gerrard*

  The Complaint alleges that Gerrard transacted business "[t]hrough his regular business activities in New York while a partner at Dechert." Compl. ¶ 35.  The Complaint states that "Gerrard and others carried on the affairs of the Enterprise out of Dechert's New York office," (*id.* at ¶ 15), and more specifically, that he met with others in New York to cause the filing of false

---

  [6] Gerrard does not concede that service as described in the submitted affidavit (Dkt: 89) is proper, but Gerrard has agreed to waive any defense based on service.

statements (*Id.* at ¶ 35). Significantly, none of the meetings alleged to have taken place in New York are pled with any specificity as to what occurred or how they give rise to the colorable claims and none of the litigation filings Gerrard is alleged to have been involved in were made in New York.

    i.  The Complaint Does Not Sufficiently Plead General Jurisdiction Over Gerrard

General jurisdiction is available pursuant to N.Y.C.P.L.R. § 301, which provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." This requires, at a minimum, "proof of solicitation together with activities that are of sufficient permanence and continuity to establish the defendant's presence in New York." *260 Madison Ave. HVAC Unit Collapse,* 2018 N.Y. Slip Op. 32413(U) (N.Y. Sup. Ct. Sep. 26, 2018). Further, to comport with due process, the defendant's contacts with New York must be "so 'continuous and systematic,' judged against [its] national and global activities, that it is 'essentially at home' in th[e] state." *Gucci Am., Inc. v. Weixing Li,* 768 F.3d 122, 135 (2d Cir. 2014) (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 139 (2014)).

Plaintiffs allege neither permanence nor continuity of activity to establish general jurisdiction over Gerrard in New York. Even under the most generous reading of the Complaint, Gerrard was based out of London and the UK and his presence in New York was both temporary and transitory.

    ii.  The Complaint Does Not Sufficiently Plead Specific Jurisdiction Over Gerrard

Specific personal jurisdiction in New York is available over an out-of-state defendant who: (1) "transacts any business within the state"; (2) "commits a tortious act within the state"; or (3) "commits a tortious act without the state causing injury…. within the state…". N.Y.C.P.L.R. § 302(a)-(a)(3)(ii). In determining whether the exercise of specific personal jurisdiction comports

with due process, courts consider: "(1) the minimum contacts inquiry, and (2) the reasonableness inquiry." *Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 296 (E.D.N.Y. 2013). The minimum contacts inquiry examines whether the defendant's conduct was "purposefully directed" toward the forum state. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171 (2d Cir. 2010). The reasonableness inquiry requires that "the assertion of jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable under the circumstances of [this] case." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (internal quotations omitted); *see also CrossBorder Sols., Inc. v. Macias, Gini, & O'Connell, LLP*, No. 20 CIV. 4877 (NSR), 2022 WL 562934, at *6 (S.D.N.Y. Feb. 23, 2022).

      a.   The Complaint Does Not Allege That Gerrard Transacted Business in New York That Would Give Rise to Specific Jurisdiction

As noted above, the sparse allegations in the Complaint allege that Gerrard met with other members of the purported RICO enterprise on unspecified dates between 2014 and 2020 at Dechert's New York offices to further the purposes of that enterprise. These allegations are not sufficient to establish personal jurisdiction over Gerrard. N.Y.C.P.L.R. § 302(a)(1) requires that "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 52 N.Y.2d 268, 273 (1981)). "A nondomiciliary transacts business under CPLR § 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) (internal quotations and citations omitted). Transacting business "has been interpreted to require a certain quality, rather than a specific quantity, of contacts with the forum." *U.S. Theatre Corp. v. Gunwyn/Lansburgh Ltd. P'ship*, 825 F. Supp. 594, 595 (S.D.N.Y. 1993). "Whether or not the contacts are of the

appropriate nature must be determined by an analysis of the totality of the circumstances." *Id.* To satisfy the second prong, plaintiffs must also show that "there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007) (citation omitted). Where "the relationship between the claim and transaction is too attenuated" or "merely coincidental," no jurisdiction lies. *Johnson v. Ward*, 797 N.Y.S.2d 33, 35 (2005). "Courts have required 'a direct relation between the cause of action and the in-state conduct' as 'an important condition of acquiring jurisdiction over the non-domiciliary defendant.'" *Sound Around Inc. v. Audiobahn, Inc.*, No. 07 CV 773 RJD CLP, 2008 WL 5093599, at *4 (E.D.N.Y. Nov. 24, 2008) (quoting *Beacon Enters. v. Menzies*, 715 F.2d 757, 764 (2d Cir. 1983)); *see also Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir. 2006) (citing cases).

Here, the alleged conduct by Gerrard relates to litigation in D.C., the U.K., and North Carolina, with no mention of Gerrard having any involvement with the New York litigation, (Compl. ¶¶ 129-132). Accordingly, given the limited contact between Gerrard and New York and the remoteness of those contacts to the events alleged to have caused injury to the plaintiffs, jurisdiction is lacking in New York under N.Y.C.P.L.R. § 302(a)(1). *See First Capital Asset Mgt., Inc. v. Brickellbush, Inc.*, 218 F Supp 2d 369, 391, 398 (S.D.N.Y. 2002) (as the N.Y. activity occurred prior to the alleged RICO claims, the claim did not arise from NY conduct and the allegation that "[Defendant] traveled to New York in early May 1997 and met with his nephew, [], in connection with the transactions involved in [his nephew's] bankruptcy and the instant lawsuit" was vague and conclusory and lacked the factual specificity necessary to contribute to plaintiffs' *prima facie* showing of jurisdiction). In addition, because the conduct giving rise to the injuries alleged by plaintiffs took place elsewhere (even if plaintiffs allege some preliminary

actions took place in New York) and none of the conduct alleged to have been committed by Gerrard was directed at New York, the exercise of personal jurisdiction over Gerrard by a New York court would be inconsistent with the requirements of Due Process. *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1782 (2017).

   b.   The Complaint Does Not Allege Gerrard Committed a Tortious Act In New York

   The Complaint fails to establish that Gerrard committed any "tort" in New York related to the actual claim the Plaintiffs allege this matter is about – "the cover-up." Compl. ¶ 5, fn. 2. The only alleged facts related to New York are contained in Section II of the Complaint, which pertains to the hacking conspiracy being litigated in the U.K., not the cover-up which is discussed starting at Paragraph 73. Those allegations do not describe tortious activity but, at most, discussions in preparation thereof: "In December 2015, Frank, Gerrard, and others, including upon information and belief Handjani, met in New York to discuss this plan" (¶ 60) and "Forlit met with Gerrard at least a dozen times between 2015 and 2020, including at Dechert's offices in New York" (¶ 54).

   c.   Plaintiffs Have Not Alleged Conspiracy Jurisdiction

   "To establish jurisdiction over a nondomiciliary defendant on the basis of the New York acts of a co-conspirator, the plaintiff must (1) establish a *prima facie* case of conspiracy, (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy, (3) demonstrate the commission of a tortious act in New York, and (4) demonstrate the requisite agency relationship between the nondomiciliary defendant and the in-state tortfeasor." *First Capital Asset Mgt., Inc. v. Brickellbush, Inc.*, 218 F Supp 2d 369, 394 (S.D.N.Y. 2002) (additional procedural history omitted)

   In *Kreutter v. McFadden Oil Corp.*, the New York Court of Appeals expounded upon the agency requirement, explaining that while a plaintiff need not establish a "formal agency

relationship" to establish jurisdiction, a plaintiff must "convince the court that [the in-state defendant] engaged in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of the [out-of-state defendants] and that they *exercised some control over* [the in-state defendant] in the matter." 71 N.Y.2d 460, 467 (1988) (emphasis added); *see also Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981) ("[B]efore an agency relationship will be held to exist under section 302(a)(2), a showing must be made that the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and *under some control by*, the nonresident principal." (emphasis added)).

Here, there are no allegations that any of the co-conspirators acted in New York for the benefit of Gerrard, with his knowledge and consent, or under his control. What is alleged is that they acted in concert, either for the benefit of RAKIA, the client in litigation, or for their own self-interest in avoiding detection. *See e.g.* Compl. ¶¶ 129-132 (under section heading "Handjani Obstructs Azima's Section 1782 Proceeding in New York").[7] *See First Capital Asset Mgt., Inc. v. Brickellbush, Inc.*, 218 F Supp 2d at 398-99. In addition, and in the alternative, for the reasons described above, exercising personal jurisdiction over Gerrard on the basis of these allegations would violate his rights under the Due Process Clause.

### III.    The Complaint Does Not Allege the Requisite Facts to Support the Alleged RICO Predicate Acts By Gerrard

To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must establish that each defendant, through the commission of two or more predicate acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce. *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir 2001).

---

[7] Plaintiffs do not claim any injury in New York under 302(a)(3).

Here, Plaintiffs have failed to plead two predicate acts by Gerrard. Plaintiffs have failed to plead RICO claims based on mail and wire fraud with particularity, *see Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990), Gerrard's alleged conduct consists of litigation or cover-up activities both of which are excluded as predicate acts (*See* Joint Memo, pp. 28-31); and the Plaintiffs have alleged a significant amount of foreign conduct without tying the allegations to specific racketeering activities in 18 U.S.C. § 1961(1) which have extraterritorial application.

A. *The Complaint Does Not Sufficiently Allege Claims for Money Laundering or Mail or Wire Fraud Against Gerrard*

The Complaint repeatedly states that specific instances of money laundering are included in Exhibit A. *See e.g.* Compl. ¶ 238. However, a review of that document shows that not one transfer is alleged to have been sent or received by Gerrard. Further, there are no allegations that Gerrard directed any of those payments to be made. Further, nowhere in the Complaint have the Plaintiffs alleged the elements of "money laundering" as a racketeering activity (as defined in 18 U.S.C. § 1961(1) and 18 U.S.C. § 1956), in that there is no allegation that any of the Defendants were involved in the transfer of "proceeds" of "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7).

While Gerrard is included in Exhibit B which purports to provide examples of mail or wire fraud, the allegations are generic and accordingly insufficiently particular. *Mills v. Polar Molecular Corp.*, 12 F3d 1170, 1176 (2d Cir 1993) ("Like allegations of securities fraud, allegations of predicate mail and wire fraud acts should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent."). The vast majority of the alleged examples simply allege "Co-conspirator Page called Defendant Gerrard to discuss the scheme to defraud Azima" without providing any particulars of what was allegedly said. Indeed, all but three of the examples are concededly not substantive acts of mail or

wire fraud, with the Plaintiffs describing them as "Communications between coconspirators in furtherance of scheme to defraud Azima." There is no allegation of an intent to deceive, a deception, a victim, or an injury in these communications. The remaining examples of "wire fraud" on Exhibit B (*see e.g.* #85, 115, and 118) involve litigation communications which, as separately briefed, are excluded as predicate acts.  *See* Joint Memo pp. 28-30.

In addition, Plaintiffs' claims of wire fraud under 18 U.S.C. § 1343 fail because Plaintiffs fail to identify the location of the relevant acts and the statute does not apply extraterritorially, *see United States v. Hawit,* 15-CR-252 (PKC), 2017 WL 663542, at *4 (E.D.N.Y. Feb. 17, 2017); and, because Plaintiffs have failed to adequately allege that the objective of the alleged mail or wire fraud was the acquisition of money or property, *see Hollander v. Pressreader, Inc.*, 2020 WL 2836189, at *4 (S.D.N.Y. 2020).

### B.  *Obstruction of Justice as Alleged Here is Not a Predicate Act*

As detailed at length in the Defendants' Joint Memorandum, in "a long line of cases," courts have found "as a matter of law, that the 'litigation activities' … cannot constitute predicate acts for the purposes of RICO." *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. L. Offs. of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011). Rather, claims of litigation misconduct should be "direct[ed] . . . to the [] courts where these acts are allegedly occurring and where the underlying litigation is still pending," *Id.* at 173–74. Furthermore, "acts of concealment done after the[ ] central objectives [of the conspiracy] have been attained, for the purpose of covering up after the crime," are not considered part of the conspiracy and cannot form the necessary predicate acts. *Democratic Natl. Comm. V. Russian Fedn.*, 392 F Supp 3d 410, 444 (S.D.N.Y. 2019) ("Here, the

alleged acts of concealment were all done allegedly to cover the defendants' tracks after the goal of the alleged conspiracy had been attained.")

In addition, Plaintiffs' allegations concerning the Defendants conspiring to provide false testimony before the High Court in the UK, which the Plaintiffs allege amounts to "obstruction of justice" involves the impermissible extraterritorial application of the obstruction of justice statutes. Compl. ¶¶ 103-110. Alleged false testimony before a Court in the U.K. cannot, as a matter of law, constitute a predicate racketeering activity as it does not fall within the definition of such activity per 18 U.S.C. § 1961(1) and 18 U.S.C. § 1503.

In the end, once the litigation activity, extraterritorial, and insufficiently plead predicate acts are removed there are no predicate acts left to support a claim against Gerrard.

## IV.    Conclusion

For the reasons set forth in the Defendants Joint Memorandum and the additional reasons set forth here, the Complaint against Gerrard should be dismissed in favor of the proceedings plaintiffs are already prosecuting in the UK and/or dismissed for lack of personal jurisdiction and for failure to state a claim. Finally, Gerrard joins in the arguments of the Defendants in their individual memoranda of law to the extent that they apply to him.

DATED: February 28, 2023        HARRIS ST. LAURENT & WECHSLER LLP
      New York, New York

                    By:    /s/ *Andrew St. Laurent*
                         Andrew St. Laurent
                         Evan W. Bolla
                         40 Wall Street, 53rd Floor
                         New York, NY 10005
                         Tel: (212) 397-3370
                         andrew@hs-law.com
                         ewbolla@hs-law.com

                         *Counsel for Defendant David Neil Gerrard*