# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FARHAD AZIMA,<br>ALG TRANSPORTATION, INC.,<br>MAIN 3260 LLC,<br>FFV W39 LLC, and<br>FFV DEVELOPMENT LLC,<br><br>                    Plaintiffs,<br><br>v.<br><br>DECHERT LLP,<br>DAVID NEIL GERRARD,<br>DAVID GRAHAM HUGHES,<br>NICHOLAS DEL ROSSO,<br>VITAL MANAGEMENT SERVICES, INC.,<br>AMIT FORLIT,<br>INSIGHT ANALYSIS AND RESEARCH LLC,<br>SDC-GADOT LLC,<br>AMIR HANDJANI,<br>ANDREW FRANK, and<br>KARV COMMUNICATIONS,<br><br>                    Defendants. | Case No. 1:22-cv-08728 (PGG) (JW)<br><br>**ORAL ARGUMENT REQUESTED** |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' AMIT FORLIT, INSIGHT ANALYSIS AND RESEARCH, LLC,
## AND SDC-GADOT, LLC'S MOTIONS TO DISMISS

By: */s/ Christopher S. Salivar, Esq.*
     Christopher S. Salivar, Esquire
     Florida Bar No.: 57031

     CHRISTOPHER S. SALIVAR, P.L.L.C.
     301 West Atlantic Ave., Suite O-5
     Delray Beach, FL 33444
     Tel: (561) 628-8908
     Email: cssalivarattorney@gmail.com

By: */s/ Elan I. Baret, Esq.*
     Elan I. Baret, Esquire
     Florida Bar No.: 20676

i

BARET LAW GROUP, P.A.<br>
3999 Sheridan Street, 2nd Floor<br>
Hollywood, Florida 33021<br>
Tel: (954) 486-9966<br>
Facsimile: (954) 585-9196<br>
Email: <u>elan@baretlawgroup.com</u>

## TABLE OF CONTENTS:

| | ISSUES: | Page |
|---|---|---|
| 1. | Want of Personal Jurisdiction (Amit Forlit) | 1-6 |
| 2. | Failure to Allege Actionable Predicate Acts of Racketeering Activity | 6-10 |
| 3. | Lack of Standing/Failure to Allege Injury from Racketeering Activities Directed to Plaintiffs | 10-11 |
| 4. | Claims Barred under *Beck v. Pupris*, 529 U.S. 494 (2000) | 11-13 |
| 5. | Conclusion | 14 |

## TABLE OF AUTHORITIES:

*Case Authority*:  Page:

1. *AmTrust Fin. Servs. v. Lacchini*,  1, 2, 4
   260 F. Supp. 3d 316 (S.D. NY 2017)

2. *Elsevier, Inc. v. Grossman*,  1, 2
   77 F. Supp. 3d 331 (S.D. NY 2015)

3. *Fernando v. Fernando*,  5
   2010 U.S. Dist. LEXIS 79254 (E.D. NY 2010)

4. *R.J.R. Nabisco v. European Cmty.*,  9-10
   579 U.S. 325 (2016)

5. *Targum v. Citrin Cooperman & Co, LLP*,  10
   2013 U.S. Dist. LEXIS 164585 (S.D. NY 2013)

6. *Bates v. Northwestern Human Servs.*,  10-11
   466 F. Supp. 2d 69, 91 (D.D.C. 2006)

7. *Beck v. Prupis*,  12-13
   529 U.S. 494, 507 (2000)

*Statutes*:

1. 18 U.S.C. § 1503 (1996)  7-8

2. 18 U.S.C. § 1515 (1996)  7

Defendants Amit Forlit ("Forlit"), Insight Analysis and Research LLC ("Insight"), and SDC-Gadot LLC ("SDC-Gadot"), respectfully submit this supplemental memorandum of law in support of their motions to dismiss the Complaint filed by Plaintiffs on October 13, 2022.

## **WANT OF PERSONAL JURISDICTION (FORLIT)**

As an initial point, Defendant Forlit asserts that there is a complete absence of basis for this Court to possess or assert personal jurisdiction over him, as at all times he has been an Israeli citizen domiciled in Israel. Moreover, Plaintiffs (who are not New York residents, and who have not identified any New York property allegedly damaged by the conduct of Forlit) have failed to plead a cognizable basis for the exercise of long arm jurisdiction over Forlit under New York's long arm statute (N.Y. CPLR § 302 (2012)).

"RICO does not have a jurisdictional provision authorizing personal jurisdiction—via authorized service of process—over foreign defendants. *See PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71-72 (2d Cir. 1998) (18 U.S.C. § 1965 "does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant is found"); *see also* 18 U.S.C. § 1965(b) (permitting, when "ends of justice require," service of process upon "other parties residing *in any other district*" (emphasis added)); *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 342-43 (S.D.N.Y. 2015) (18 U.S.C. § 1965 may not be used to exert personal jurisdiction over foreign defendants). See *AmTrust Fin. Servs. v. Lacchini*, 260 F. Supp. 3d 316, 330 (S.D. NY 2017).

"Instead, "[p]laintiffs asserting RICO claims against foreign defendants must rely on the long-arm statute of the state in which they filed suit." *Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998); *accord First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392 (S.D.N.Y.), *aff'd sub nom. First Capital Asset*

1

*Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004)." *See Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D. NY 2015).

"New York's long-arm statute permits personal jurisdiction over non-New York domiciliaries based upon four distinct circumstances. A court may exercise personal jurisdiction over a non-domiciliary who, "in person or through an agent:" (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state;" (2) "commits a tortious act within the state[;]" (3) "commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial review from interstate or international commerce;" or (4) "owns, uses or possesses any real property situated within the state." N.Y. CPLR § 302(a)." *AmTrust Fin. Servs. v. Lacchini*, 260 F. Supp. 3d 316, 330 (S.D. NY 2017).

As to Defendant Forlit, Plaintiffs' jurisdictional allegations are found in paragraph 37 of the Complaint, which state: "Exercise of jurisdiction over Defendant Forlit is proper pursuant to 18 U.S.C. § 1965(b) because Forlit transacted business and engaged in conduct in the United States and New York that give rise in part to Azima's claims. Among other things, Forlit participated in meetings in New York with the RICO Conspirators in which they discussed and planned the use of the hacked data and deploying false statements in U.S. and UK courts and to U.S. law enforcement agencies in service of the Enterprise's goal of inflicting reputation harm and litigation costs on Azima. Forlit, through his U.S.-based companies Insight and SDC-Gadot, used the U.S. financial system to send and receive multiple wires overseas and within the U.S. for the purpose of promoting unlawful criminal activity, including wires that passed through New York. Also, as

set forth more fully herein, Forlit's co-conspirators have engaged in intentional, wrongful, illegal, and/or acts in the United States and New York. Forlit was aware of the effects in the United States and New York of those acts."

Attached hereto as Exhibits "1" and "2" are transcripts of testimony provided by Defendant Forlit as representative of Defendants SDC-Gadot and Insight (respectively) during Rule 30(b)(6) depositions conducted by Plaintiff's counsel in S.D. Fla. Case No.: 1:22-cv-20707-JEM[1]. As identified therein, Defendant Forlit appeared as Rule 30(b)(6) representative for each entity, and swore, under oath, that Insight and SDC-Gadot were "wallet companies" whose sole purpose of existence was to process and transmit payments on behalf of an Israeli company, Gadot Information Services a/k/a Gadot Israel. Insight and SDC-Gadot were not "alter egos" or operated solely for the benefit of Forlit. Mr. Forlit also testified that he, Insight, SDC-Gadot, and Gadot Israel Services, never conducted any investigation of Plaintiff Farhad Azima, and had no hand in the "hacking" of his computers or data. These transcripts have been provided in their entirety, with relevant portions highlighted establishing that Mr. Forlit has not availed himself of this jurisdiction for purposes of establishing a predicate for personal jurisdiction in connection with the instant RICO claims.

Attached as Exhibits "A" and "B" to the Complaint are compilations of funds transfers, and communications, which the Plaintiffs allege substantiate the RICO claims they have asserted. Looking to Exhibit "A", Plaintiffs have not identified a single funds transfer that was paid to or by, or received by, a person or entity located or operating within the State of New York. During the Rule 30(b)(6) depositions of Insight and SDC-Gadot Defendant Forlit testified that he directed the funds transfers when Insight and SDC-Gadot sent or received monies, and that he has at all

---

[1] These depositions were conducted on July 20, 2022, and July 21, 2022, in Tel Aviv, Israel.

relevant times been a resident of Israel. As to Mr. Forlit's actual time spent in the State of New York, per his testimony that consisted of a single trip to New York in 2018 to meet with Jamie Buchanan for the purpose of passing on the contents of a disturbing conversation Mr. Forlit had with Stuart Page, wherein Mr. Page indicated that he was being threatened and it was demanded that he falsely implicate, or frame, Defendant Neil Gerard for "improper actions". Mr. Forlit did not meet with Mr. Buchanan, or any of the other co-Defendants, within the State of New York at any time for purposes of planning or carrying out any alleged "racketeering activities" identified in the Complaint.

On its face, the Complaint is devoid of any specific allegation of Mr. Forlit conducting business in, or directed to, the State of New York, or any damage(s) to the Plaintiffs or any property of the Plaintiffs in the State of New York. The record before this Court also establishes that Defendant Forlit was not served in the United States, but rather in his country of domicile (Israel). As such, there is a complete want of personal jurisdiction.

Even had the Plaintiff been able to allege a sufficient nexus or basis under N.Y. CPLR § 302, due process would still mandate dismissal for want of jurisdiction. "When the conduct at issue occurs entirely outside of the forum, and the only relevant jurisdictional contacts are in-forum effects harmful to the plaintiff, "the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum." *Licci*, 732 F.3d at 173 (citing *Calder*, 465 U.S. at 789). But "the fact that harm in the forum is foreseeable . . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant." *In re Terrorist Attacks*, 714 F.3d at 674. Instead, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 134 S. Ct. at 1125. That is because "mere injury to a forum

resident is not a sufficient connection to the forum. . . . [A]n injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Id*. Put differently, a defendant's actions in one forum do not create sufficient contacts with another forum merely because the defendant "allegedly directed his conduct at plaintiffs whom he knew had . . . connections" to the other forum. *Id*." *AmTrust Fin. Servs. v. Lacchini*, at 332-333.

For purposes of determining whether minimum contacts exist with the State of New York to support personal jurisdiction over a foreign defendant, "When contacts with New York have been found sufficient to support personal jurisdiction, a defendant "'on his own initiative . . . project[ed] himself into New York to engage in a sustained and substantial transaction of business.'" *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 420 (S.D.N.Y. 2010) (quoting *Parke-Bernet Galleries. Inc. v. Franklyn*, 26 N.Y.2d 13, 18, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970))." *See Fernando v. Fernando*, 2010 U.S. Dist. LEXIS 79254, *22 (E.D. NY 2010). Absent such a sustained and substantial transaction of business, the Courts have found personal jurisdiction wanting. "*See C.B.C. Wood Products, Inc. v. LMD Integrated Logistics Services, Inc.*, 455 F. Supp. 2d 218, 225 (E.D.N.Y. 2006) (finding no personal jurisdiction over defendant where contract was executed outside of New York and defendant never visited New York); *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) ("New York courts have consistently [*24] refused to sustain § 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York."); *see also Berkshire Capital Group, LLC v. Palmet Ventures, LLC*, 307 Fed. Appx. 479 (2d Cir. 2008) (finding negotiation of an agreement by telephone calls and e-mails from Illinois to New York insufficient to establish personal jurisdiction over defendant in New York); *Fiedler v. First City National Bank*

5

*of Houston,* 807 F.2d 315 (2d Cir. 1986) (finding no personal jurisdiction over defendant bank that made two telephone calls and a mailing to New York plaintiffs)." *See Id*.

Again, nowhere in the Complaint have the Plaintiffs alleged an injury to them, or their property, in the State of New York. And aside from filing Affidavits with the Court in the Southern District of Florida[2] correctly attesting to his status as a non-resident and non-citizen, and that he is not a "hacker" and that he never participated in hacking Plaintiff Farhad Azima, Plaintiff has failed to allege actual conduct of defendant Forlit which would substantiate a minimum contacts analysis sufficient for this Court to find that it comports with constitutional notions of due process to assert jurisdiction over Defendant Forlit.

As a final aside, though "hacking" is alleged numerous times within the Complaint, Plaintiffs have never alleged where the hacking occurred, where the data storage device(s) which were hacked were located, or when or where the data storage device(s) which were allegedly hacked were accessed, for purposes of determining in what venue the alleged "hacking" occurred. It has not been alleged that any data storage device was "hacked" or accessed in New York, or from a computer or device located in New York. And though a second incident of "hacking" is alleged beyond the 2015 incident discussed in the Complaint, there are no facts alleged which would allow any party to identify the who, what, where, when, and how of this second alleged "hack", making it completely insufficient to stand as a basis to substantiate any allegation that personal jurisdiction over Defendant Forlit would lie in the State of New York.

---

[2] Exhibit "B" to the Complaint identifies communications which Plaintiffs allege constitute "wire fraud". The three (3) communications identified as to Defendant Forlit consist of filing affidavits with the United States District Court in and for the Southern District of Florida, for purposes of a Motion for Protective Order which was granted by the Court. See S.D. Fla. Case No.: 22-cv-20707-JEM, at Dkt. # 7, #10, #17, and #21.

Given the foregoing, the Complaint must be dismissed with prejudice as to Defendant AMIT FORLIT.

## **FAILURE TO ALLEGE ACTIONABLE PREDICATE ACTS OF RACKETEERING ACTIVITY**:

To expand upon a point addressed in the Defendants' Joint Memorandum, the Plaintiffs' Complaint fails to allege with any manner of clarity or specificity the actual commission of "racketeering activities" as defined in 18 U.S.C. § 1961. While Plaintiffs use key words like "obstruction", "wire fraud", "money laundering", and "fraud", Plaintiffs have not actually alleged facts which, when taken in a light most favorable to the Plaintiffs, fall within the statutory definition of "racketeering activities" as set forth in 18 U.S.C. § 1961. Moreover, a great deal of the conduct alleged relates to activities conducted abroad, without any bother by the Plaintiffs to seek to allege how those activities fall under the ambit of RICO.

For purposes of example, 18 U.S.C. § 1961 does not identify a statutory activity criminalizing "cover up" of alleged false filings or false testimony presented before a foreign court or tribunal. The statue does not address "obstruction of justice" activities which do not occur in an "official proceeding" which is statutorily defined (18 U.S.C. § 1515) as "(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury; (B) a proceeding before the Congress; (C) a proceeding before a Federal Government agency which is authorized by law; or (D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or

7

agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce;" See 18 U.S.C. § 1515 (1996).

Additionally, allegedly filing a false affidavit, motion, pleading, or document in an "official proceeding" would not constitute "obstruction of justice" under 18 U.S.C. § 1503, which criminalizes the following conduct: "(a) Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b). …" See 18 U.S.C. § 1503 (1996).

In the Complaint, the "obstruction" allegations directed to Defendant Forlit (though also tangentially directed to Insight and SDC-Gadot) consist entirely of a) filing affidavits with the United States District Court in and for the Southern District of Florida, and b) filing document discovery responses. Of note, Amit Forlit is not individually a party to the proceedings in S.D. Fla. Case No.: 22-cv-20707-JEM, as Farhad Azima's initial deposition subpoena was quashed by Order of the Court (See Dkt. # 21), and despite briefing on Farhad Azima's Amended Petition for Discovery under 28 U.S.C. 1782 directed to Mr. Forlit, the Court has not yet ruled that Mr. Forlit is "found" in the Southern District of Florida so as to be subject to the discovery provisions of 28

U.S.C. § 1872. In essence, the Plaintiffs' claims as to these Defendants and any alleged "obstruction" amounts to nothing more than the Plaintiffs disagreeing with the positions taken, and the facts presented, to a trial Court in the Southern District of Florida. As a matter of law those activities are not RICO predicate "racketeering activities", and cannot substantiate any claim for relief.

Plaintiffs also allege conduct directed to third parties and which occurred beyond the territorial jurisdiction of the United States, without bothering to allege that the underlying statutes upon which the Plaintiff's RICO claims rely apply extra-territorially. In *R.J.R. Nabisco v. European Cmty.*, 579 U.S. 325 (2016), the Supreme Court had occasion to rule on the issue of extraterritorial application of 18 U.S.C. § 1961 *et seq.*, and specifically which "racketeering activities" as defined in 18 U.S.C. § 1961(1) committed outside of the territorial jurisdiction of the United States of America could substantiate an actionable claim under 18 U.S.C. § 1962. In its holding, the Court stated: "It is a basic premise of our legal system that, in general, "United States law governs domestically but does not rule the world." Microsoft Corp. v. AT&T Corp., 550 U.S. 437, 454, 127 S. Ct. 1746, 167 L. Ed. 2d 737 (2007). This principle finds expression in a canon of statutory construction known as the presumption against extraterritoriality: Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *See Id.* at 491-92. The Court then explained the scope of application of 18 U.S.C. § 1962(b) and (c) to extraterritorial acts as follows: "We therefore conclude that RICO applies to some foreign racketeering activity. A violation of §1962 may be based on a pattern of racketeering that includes predicate offenses committed abroad, *provided that each of those offenses violates a predicate statute that is itself extraterritorial*. This fact is determinative as to §1962(b) and §1962(c), both of which prohibit the employment of a pattern of racketeering. Although they differ

9

as to the end for which the pattern is employed—to acquire or maintain control of an enterprise under subsection (b), or to conduct an enterprise's affairs under subsection (c)—this difference is immaterial for extraterritoriality purposes." *Id.* at 495 (emphasis added). Also, though a claim for conspiracy in violation of 18 U.S.C. 1962(d) was not at issue and before the Court in *R.J.R. Nabisco v. European Cmty.*, the Court stated the following as to the rationale and analysis that would be applicable to such a claim: "Finally, although respondents' complaint alleges a violation of RICO's conspiracy provision, §1962(d), the parties' briefs do not address whether this provision should be treated differently from the provision (§1962(a), (b), or (c)) that a defendant allegedly conspired to violate. We therefore decline to reach this issue, and assume without deciding that §1962(d)'s extraterritoriality tracks that of the provision underlying the alleged conspiracy." *Id.* at 495-96.

Having failed to actually plead that the "racketeering activities" allegedly committed abroad and which were directed to third parties arose under statutes which apply extra-terratorially, Plaintiffs have failed to state valid claims upon which relief may be granted, and the Complaint must be dismissed.

Finally, Plaintiffs' allegations of "wire fraud" fail to state a colorable cause of action, as they do not actually plead the elements of a claim for wire fraud. *See Targum v. Citrin Cooperman & Co, LLP*, 2013 U.S. Dist. LEXIS 164585 (S.D. NY 2013) ("*First*, "[t]he elements of mail or wire fraud are (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate mail or wires."). Plaintiffs' allegations of "wire fraud" either pertain to a) the transfer of funds allegedly put to use to pay for "hacking", or b) the filing of documents with various District Courts in the United States which Plaintiffs contend were "false". Neither scenario addresses a

10

scheme to defraud to get money or property, and therefore neither scenario constitutes actionable "wire fraud".

### LACK OF STANDING/FAILURE TO ALLEGE INJURY FROM RACKETEERING ACTIVITIES DIRECTED TO PLAINTIFFS:

Another key deficiency in the Plaintiff's Complaint is the litany of nebulous allegations of conduct which was not directed to the Plaintiffs themselves, but rather to third parties. As stated in *Bates v. Northwestern Human Servs.*, 466 F. Supp. 2d 69, 91 (D.D.C. 2006),

> A RICO plaintiff, however, "only has standing if . . . he has been injured . . . by the conduct constituting the violation," Sedima, 473 U.S. at 496, an unexceptional requirement which buttresses the need for the plaintiffs to plead not only actual fraud, but actual fraud directed at the plaintiffs. See Anza v. Ideal Steel Supply Co., _ U.S. _, _, 126 S. Ct. 1991, 1996-97, 164 L. Ed. 2d 720 (June 5, 2006) (holding that the plaintiff had not suffered an injury under Section 1962(c) where "the direct victim of [the alleged mail and wire fraud]" was not the plaintiff, but the State of New York). As the Sixth Circuit has stated, "the defendant must make a false statement or omission of fact to the plaintiff to support a claim of wire fraud or mail fraud as a predicate act for a RICO claim." Cent. Distributors of Beer, Inc. v. Conn, 5 F.3d 181, 184 (6th Cir. 1993) (emphasis in original); see Shahmirzadi v. Smith Barney, Harris Upham & Co, 636 F. Supp. 49, 54 (D.D.C. 1985) (noting that the Rule 9(b) standard requires, among other things, a showing that the allegedly fraudulent statements "misled the plaintiff") (citation omitted) (emphasis added).
>
> *See Id*. at 91.

Throughout their Complaint, the Plaintiffs allege "wire fraud", "bank fraud", "money laundering", or "obstruction" communications which were not directed to the Plaintiffs

11

themselves, but rather to third parties. Later in the Complaint, Plaintiffs allege a second incident of "hacking", designed to determine the "source of litigation funding". *See* Complaint at Paragraphs 162-169. These allegations however are entirely directed to third parties (i.e., Al Sadeq, and his legal counsel) and not the Plaintiffs themselves, and completely devoid of alleged factual support (instead relying upon "information and belief"). These allegations cannot support claims by the Plaintiffs as they are not directed to activities which, in turn, were directed to the Plaintiffs or their "business or property".

Moreover, the Complaint is completely devoid of allegation as to how the subject alleged "racketeering activities" were directed to ALG TRANSPORTATION, INC., MAIN 3260, LLC, FFV W39 LLC, and FFV DEVELOPMENT, LLC. To the contrary, all allegations in the Complaint address conduct allegedly directed to Plaintiff Farhad Azima, or to third parties. This at a minimum mandates dismissal of the corporate Plaintiffs' claims with prejudice.

**CLAIMS BARRED UNDER *BECK V. PUPRIS*, 529 U.S. 494 (2000)**:

As to the claims for damages arising out of alleged "lost business opportunity", Plaintiffs' claims fail based upon the rationale set forth in *Beck v. Prupis*, 529 U.S. 494, 507 (2000). Therein, the Supreme Court held:

> <u>As at common law, a civil conspiracy plaintiff cannot bring suit under RICO based on injury caused by *any* act in furtherance of a conspiracy that might have caused the plaintiff injury. Rather, consistency with the common law requires that a RICO conspiracy plaintiff allege injury from an act that is analogous to an "act of a tortious character," see 4 Restatement (Second) of Torts § 876, Comment *b,* meaning an act that is independently wrongful under RICO.</u> The specific type of act that is analogous to an act of a tortious character may depend

on the underlying substantive violation the defendant is alleged to have committed. However, respondents' alleged overt act in furtherance of their conspiracy is not independently wrongful under any substantive provision of the statute. Injury caused by such an act is not, therefore, sufficient to give rise to a cause of action under § 1964(c).

Petitioner challenges this view of the statute under the longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute meaningless or superfluous. He asserts that under our view of the statute, any person who had a claim for a violation of § 1962(d) would necessarily have a claim for a violation of § 1962(a), (b), or (c). However, contrary to petitioner's assertions, our interpretation of § 1962(d) does not render it mere surplusage. Under our interpretation, a plaintiff could, through a § 1964(c) suit for a violation of § 1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962.

***We conclude, therefore, that a person may not bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused by an overt act that is not an act of racketeering or otherwise unlawful under the statute.***

See *Id*. at 505-506 (emphasis added).

Denial of a loan or financing application is not a "racketeering activity" defined under 18 U.S.C. § 1961(1), nor is "publications damaging to reputation"[3]. Moreover, it has not been alleged

---

[3] Of note, while Plaintiffs make reference to multiple online journal and news articles criticizing Plaintiff Farhad Azima, no allegation is made that any journal or news article was drafted, posted, or published, by any of these Defendants, or that any of these Defendants possessed power to direct the posting or hosting of any such journal or news article. Moreover, none of the identified journal or news articles alleged by the Plaintiff appear to have anything to do with the corporate Plaintiffs.

13

that any of the Defendants coerced, blackmailed, threatened, or extorted Plaintiffs' alleged lender into denying the alleged financing application(s). To the extent Plaintiffs' claims seeking relief under 18 U.S.C. § 1964(c) based upon a violation of 18 U.S.C. 1962(d), as the overt act causing Plaintiffs' alleged damages was the denial of Plaintiffs' loan or financing application by their bank or lender, their claims are barred as a matter of law.

## **CONCLUSION:**

**Upon proffer of the foregoing,** Defendants, AMIT FORLIT submits that he has established a complete want of personal jurisdiction requiring dismissal of all claims directed to him. Furthermore, Defendants INSIGHT RESEARCH AND ANALYSIS, LLC, and SDC-GADOT, LLC proffer that they have established that the Complaint fails to state a valid cause of action under Counts I and II, and as such dismissal with prejudice is warranted, as the nature of the identified defects establishes that grating leave to amend will not allow the Plaintiffs to cure their pleadings.

**WHEREFORE** Defendants, AMIT FORLIT, INSIGHT RESEARCH AND ANALYSIS, LLC, and SDC-GADOT, LLC, respectfully request that this honorable Court Dismiss the Plaintiffs' Complaint with prejudice.

Dated this 28th day of February, 2023.

By: */s/ Christopher S. Salivar, Esq.*
    Christopher S. Salivar, Esquire
    Florida Bar No.: 57031

    CHRISTOPHER S. SALIVAR, P.L.L.C.
    301 West Atlantic Ave., Suite O-5
    Delray Beach, FL 33444
    Tel: (561) 628-8908
    Email: cssalivarattorney@gmail.com

By: */s/ Elan I. Baret, Esq.*
    Elan I. Baret, Esquire

14

Florida Bar No.: 20676
BARET LAW GROUP, P.A.
3999 Sheridan Street, 2nd Floor
Hollywood, Florida 33021
Tel: (954) 486-9966
Facsimile: (954) 585-9196
Email: elan@baretlawgroup.com
