**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------  )
FARHAD AZIMA, et al.,                                         )
                                                             )
                              Plaintiffs,                    )
                                                             )
v.                                                           )          1:22-cv-8778 (PGG)
                                                             )
DECHERT LLP, et al.,                                         )
                                                             )
                              Defendants.                    )
------------------------------------------------------------  )
```

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**</u>

Daniel Filor
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-6758
Fax: (212) 801-6400
Filord@gtlaw.com

David G. Barger (admitted pro hac vice)
Michael R. Sklaire (admitted pro hac vice)
**GREENBERG TRAURIG, LLP**
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel:  (703) 749-1300
Fax: (703) 749-1301
David.Barger@gtlaw.com
Michael.Sklaire@gtlaw.com

*Attorneys for Defendants Amir Handjani, Andrew*
*Frank and KARV Communications*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

ALLEGATIONS OF THE COMPLAINT.....................................................................................3

ARGUMENT ......................................................................................................................5

I.     PLAINTIFFS' CLAIMS AGAINST THE KARV DEFENDANTS SHOULD BE DISMISSED BECAUSE THEY ARE UNTIMELY ......................5

II.    PLAINTIFFS' CLAIMS BASED ON MAIL AND WIRE FRAUD FAIL ..........9

III.   PLAINTIFFS' CLAIMS ARE DEFICIENT BECAUSE THE ALLEGATIONS DO NOT SATISFY THE PATTERN OR CONTINUITY REQUIREMENT FOR PLEADING A PROPER RICO CLAIM............................................................................................ 11

IV.   PLAINTIFFS' CLAIMS FAIL BECAUSE THEY HAVE NOT ALLEGED ANY COGNIZABLE RICO INJURY OR THAT ANY INJURY WAS PROXIMATELY CAUSED BY THE KARV DEFENDANTS .................................................................................. 12

V.    PLAINTIFFS' CLAIMS AGAINST THE KARV DEFENDANTS ARE NOT ACTIONABLE BECAUSE THEY NEITHER DIRECTED NOR MANAGED THE ALLEGED ENTERPRISE ...................................... 14

VI.   PLAINTIFFS' RICO CONSPIRACY CLAIM IS EQUALLY UNSUPPORTED BY THE FACTS ALLEGED AGAINST THE KARV DEFENDANTS ................................................................................. 15

CONCLUSION....................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Home Mortg. Corp. v. UM Sec. Corp.*,
2007 U.S. Dist. LEXIS 26670 (S.D.N.Y Apr. 9, 2007)...........................................................14

*Azrielli v. Cohen Law Offices*,
21 F.3d 512 (2d Cir. 1994)............................................................................................................15

*Bangl. Bank v. Rizal Commer. Banking Corp.*,
2020 WL 1322275 (S.D.N.Y. Mar. 20, 2020) ........................................................................12

*Bingham v. Zolt*,
66 F.3d 553 (2d Cir. 1995)........................................................................................................6, 7

*Brock v. Zuckerberg*,
2021 WL 2650070 (S.D.N.Y. June 25, 2021) ...........................................................................9

*Butcher v. Wendt*,
975 F.3d 236 (2d Cir. 2020).........................................................................................................8

*BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*,
69 F. Supp. 3d 342 (S.D.N.Y. 2014)........................................................................................10

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
187 F.3d 229 (2d Cir. 1999).......................................................................................................12

*Comm. to Defend U.S. Const. v. Moon*,
776 F. Supp. 568 (D.D.C. 1991) ...............................................................................................11

*Cont'l Petroleum Corp., Inc. v. Corp. Funding Partners, LLC*,
2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012).........................................................................15

*Crawford v. Franklin Credit Mgmt.*,
758 F.3d 473 (2d Cir. 2014)........................................................................................................11

*Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*,
758 F. Supp. 2d 153 (E.D.N.Y. 2010), *aff'd* 443 F. App'x 582 (2d Cir. 2011)........................6

*Democratic Nat'l Comm. v. Russian Fed'n*,
392 F. Supp. 3d 410 (S.D.N.Y. 2019).....................................................................................12

*El Omari v. Buchanan*,
2022 WL 4454536 (2d Cir. Sept. 26, 2022) ...............................................................................8

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
    902 F.3d 132,142 (2d Cir. 2018)........................................................................13

*FindTheBest.com, Inc. v. Lumen View Tech. LLC*,
    20 F. Supp. 3d 451 (S.D.N.Y. 2014).................................................................9

*First Cap. Asset Mgmt. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004).................................................................12, 14, 15

*First Interregional Advisors Corp. v. Wolff*,
    956 F. Supp. 480 (S.D.N.Y. 1997) ..................................................................15

*Grace Intl. Assembly of God v. Festa*,
    797 F. App'x 603 (2d Cir. 2019) ......................................................................11

*Gross v. Waywell*,
    628 F. Supp. 475 (S.D.N.Y. 2009) ....................................................................1

*Hemi Group, LLC v. City of New York, N.Y.*,
    559 U.S. 1 (2010)..............................................................................................13

*Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*,
    665 F. Supp. 2d 239 (S.D.N.Y. 2009)..............................................................10

*Hollander v. Flash Dancers Topless Club*,
    340 F. Supp. 2d 453 (S.D.N.Y. 2004), *aff'd*, 173 F. App'x 15 (2d Cir. 2006)..................12, 13

*Holmes v. Sec. Inv. Prot. Corp.*,
    503 U.S. 258 (1992)...........................................................................................9

*Jones v. Nat'l Commc'n & Surveillance Networks*,
    409 F. Supp. 2d 456 (S.D.N.Y. 2006)...........................................................7, 10

*Jus Punjabi, LLC* v. *Get Punjabi US, Inc.*,
    640 F. App'x 56 (2d Cir. 2016) .........................................................................9

*Kelly v. U.S.*,
    140 S. Ct. 1565 (2020)................................................................................11, 13

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018)..........................................................................2, 8, 9

*Kimm v. Chang Hoon Lee and Champ, Inc.*,
    196 F. App'x 14 (2d Cir. 2006) ........................................................................13

*Koch v. Christie's Int'l PLC*,
    785 F. Supp. 2d 105 (S.D.N.Y. 2011)................................................................5

*Lewis v. M&T Bank*,
  2022 U.S. App. LEXIS 6596 (2d Cir. Mar. 15, 2022)............................................8

*In re Merrill Lynch Ltd. Partnerships Litig.*,
  154 F.3d 56 (2d Cir. 1998).............................................................................6, 7

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*,
  170 F.R.D. 361 (S.D.N.Y. 1997) ....................................................................10

*Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*,
  888 F. Supp. 2d 491 (S.D.N.Y. 2012)............................................................10

*Rajaratnam v. Motley Rice, LLC*,
  449 F. Supp. 3d 45 (E.D.N.Y. 2020) ................................................................9

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)........................................................................................14

*Singh v. NYCTL 2009-A Trust*,
  2016 U.S. Dist. LEXIS 94738 (S.D.N.Y. July 20, 2016) ................................6

*Smulley v. Fed. Hous. Fin. Agency*,
  754 F. App'x 18 (2d Cir. 2018) ........................................................................8

*United States v. Sang Han*,
  280 F. Supp. 3d 144 (D.D.C. 2017)................................................................11

*Weaver v. Boriskin*,
  751 F. App'x 96 (2d Cir. 2018) ........................................................................8

*World Wrestling Ent., Inc. v. Jakks P., Inc.*,
  530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009)....................13

**Statutes**

18 U.S.C. § 1503.................................................................................................8

18 U.S.C. § 1512.................................................................................................8

18 U.S.C. § 1515.................................................................................................8

18 U.S.C. § 1964...............................................................................................12

Pursuant to the Court's February 2, 2023 Order (Doc. No. 111), Defendants Amir

Handjani, Andrew Frank and KARV Communications ("KARV") (collectively, "KARV

Defendants") respectfully submit this Memorandum of Law in Support of the Motion to Dismiss,

seeking dismissal of the Complaint with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## INTRODUCTION

The KARV Defendants seek to dismiss the Complaint in its entirety because Plaintiffs

failed to plead a cause of action under 18 U.S.C. § 1962(c) and (d).  While Plaintiffs attempt to

establish that the KARV Defendants engaged in "numerous predicate acts, including mail and

wire fraud, obstruction of justice and witness tampering," the allegations of the Complaint fail to

properly plead any of those predicates.  Compl. ¶¶ 23, 24, 243.   There are no facts asserted to

support a timely claim of fraud, obstruction of justice or witness tampering, specifically against

any of the KARV Defendants.  The allegations germane to the KARV Defendants also fail to

meet Rule 9(b)'s heightened pleading requirement, are improperly lumped together with all the

Defendants, and cannot plausibly establish proximate cause of their alleged harm.[2]

Regarding Mr. Frank, a communications executive, and his company KARV, Plaintiffs

generally and thinly allege that they helped create an "action plan" over *seven* years ago, before

the statute of limitations period, whose purpose was to "defraud Azima of money and property."

Compl. ¶ 61.  Not only is any claim based on this allegation untimely, nowhere in the Complaint

do Plaintiffs plausibly allege that Frank or KARV obtained or sought to obtain Azima's money

---

[1]  The KARV Defendants submit this Memorandum to address certain issues that relate solely to
allegations against them and to supplement the Joint Memorandum of Law in Support of
Defendants' Motion to Dismiss (the "Joint Brief"), which addresses common defense issues. To
the extent permitted by law and applicable to the KARV Defendants, they also adopt the
arguments in the other Defendants' individual briefs.

[2] The Complaint is an example of the misuse of the civil RICO statute this Court has often
counseled against. *Gross v. Waywell*, 628 F. Supp. 475, 480-81 (S.D.N.Y. 2009).

or property.  Instead, their mail, wire and bank[3] fraud allegations assert a scheme purportedly intended to make Azima spend his money paying for lawyers to pursue claims for him, but that is not a cognizable claim to obtain "money or property" through fraud.  Plaintiffs' accusations are wholly conclusory and lack factual support.

Plaintiffs further generally allege that Frank subsequently attended meetings to discuss the ongoing post-hacking litigation where he allegedly received hacked materials.  But there are no well-pled allegations in the Complaint that could establish that those actions constitute obstruction or tampering (or even "extortion" as casually referenced and buried in the Complaint).  Plaintiffs also attempt to establish that Frank and KARV committed money laundering by purportedly receiving monthly retainer payments from their client, a non-party. But nowhere do Plaintiffs allege how those ordinary retainer payments were used to promote illegal activity.   Significantly, none of the allegations in the Complaint support a conclusion that Plaintiffs have advanced a timely RICO claim against Frank and KARV.

Similarly, the feeble allegations regarding Mr. Handjani are conclusory and fail to support a claim for the alleged RICO damages. The allegations of Mr. Handjani's involvement derive solely from his participation in ongoing litigation pursued by Azima in which Handjani allegedly participated in the concealment of the hacking by simply denying knowledge, which is precisely the kind of litigation conduct that the Second Circuit has held cannot ground a RICO claim. *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018). He is also alleged to have arranged payment to a witness in an unrelated UK case, to which these Plaintiffs are not parties.  Those allegations cannot support, as a matter of law, the witness tampering or obstruction of justice

---

[3] The bank fraud allegation is also specious since no bank is a party and there is no allegation of any financial institution being defrauded of any money or property.  *See* Compl. ¶¶ 207, 231, 236, 241.

claims asserted by Plaintiffs.  The obstruction and witness tampering claims deal with foreign

litigation, are impermissibly extraterritorial, and are premised on non-actionable conduct under

the Second Circuit's well-established litigation activities exception.

Finally, even if Plaintiffs could allege sufficient facts to support any predicate offenses,

Plaintiffs have failed to sufficiently plead that any of the KARV Defendants were in a

managerial or supervisory role within the alleged enterprise, or that the KARV Defendants'

actions proximately caused damages that are cognizable under RICO.  RICO allows claims only

for injury to business or property proximately caused by the predicate acts at issue. Plaintiffs

seek damages for reputational injury, which is not allowed, and for lost profits in prospective real

estate ventures and for voluntary legal expenses, none of which are proximately caused by the

alleged conduct.  The Complaint should be dismissed with prejudice against the KARV

Defendants in its entirety.

## ALLEGATIONS OF THE COMPLAINT

Plaintiffs summarize the roles of the KARV Defendants[4] as follows:  Defendants Frank

and KARV participated in the drafting of an "action plan" in 2016 that resulted in obstruction of

justice because they caused "false statements to be made in U.S. and UK courts" many years

later. Compl. ¶ 244.  Plaintiffs vaguely describe an alleged earlier "outline" called "View from

the Window" that allegedly led to the "action plan" (tellingly neither of which they attach as

exhibits) as being drafted "at least in part by Frank and KARV," in late 2015 and January 2016

"to defraud Azima of money and property by harming his businesses and bankrupting him," *id.*

¶¶ 59-61, but offer no particulars for these vague conclusions.  Plaintiffs' lack of transparency is

purposeful. They accuse Frank and KARV of engaging in "extortion" by "developing and

---

[4] While the KARV Defendants accept, for purposes of this motion only, well-pled allegations as
true, the evidence would clearly establish that the allegations are wholly without merit.

executing the scheme," but offer no facts to support an extortion claim. *Id.* ¶ 244. They then allege that Frank and KARV engaged in wire fraud and money laundering by "knowingly causing funds to be" sent to the U.S. from the UAE "to fund the Enterprise's criminal activity." *Id.* ¶ 244. No further description of the money laundering conduct is set forth in the Complaint. Instead, Plaintiffs identify numerous $40,000 monthly retainer payments (some with expense reimbursements), sent to KARV between 2014 and 2022, in Exhibit A. Plaintiffs never explain how that ordinary compensation was used by KARV to promote any allegedly specified unlawful activity, particularly since most payments post-date the alleged creation of the action plan in 2016 or precede the statute of limitations bar. *See* Compl. Ex. A. Finally, without specific dates or times or supporting facts, Plaintiffs allege that Defendants Frank and KARV received hacked materials and disseminated them to "the press." *See, e.g.*, Compl. ¶¶ 24, 25, 80.

Regarding Defendant Handjani, Plaintiffs allege that he acted as a supposed "front man" whose role in the enterprise was to "befriend" Azima and then deny the enterprise's "role in the hacking and theft of his documents, materials and other information." Compl. ¶ 23. Plaintiffs generally allege that he committed acts of "mail and wire fraud, obstruction of justice and witness tampering" by (1) "participating in meetings,"(2) "causing false statements to be made in U.S. and UK courts about the hacking" after-the-fact, and (3) "by guaranteeing payment of [] legal fees in exchange for false testimony" in a UK proceeding (Stokoe) that did not involve Azima or any of the Plaintiffs in this case. *Id.* ¶¶ 45, 59, 62, 163-69, 243.

Concerning Azima's UK proceeding, which was the basis for the Section 1782 application before this Court, Plaintiffs claim that Handjani made false statements in discovery when he denied in court filings knowledge of the alleged hacking of Azima's computer, that he attended litigation strategy meetings in 2020 (Compl. ¶¶ 129-132, 163), and that he attempted to

determine who was funding Azima's litigation.  Compl. ¶ 163.   Plaintiffs also accuse Handjani

of reassuring a witness in the unrelated Stokoe UK proceeding (where neither the KARV

Defendants nor Azima are parties), that "his legal fees would be fully paid by [Dechert]."

Compl. ¶ 174.  Plaintiffs describe this conversation as an attempt to "bribe" the witness for his

"silence," and allege that it constituted witness tampering, in violation of 18 U.S.C. § 1512.

Compl. ¶¶ 217-220.   Plaintiffs allege, without further specification, that false statements made in

the court proceedings (presumably including Handjani's denial of participation in the hacking)

constituted obstruction of justice, in violation of 18 U.S.C. § 1503.  In support of their

allegations, Plaintiffs generally identify several phone calls and text messages in which Handjani

discusses the ongoing litigation with alleged co-conspirators.  *See* Compl. Exh. B.  Plaintiffs,

however, provide no explanation as to how these calls and messages fit within, or furthered, the

alleged scheme, or how these calls and messages either defrauded Plaintiffs or proximately

caused their RICO damages.

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS AGAINST THE KARV DEFENDANTS SHOULD BE DISMISSED BECAUSE THEY ARE UNTIMELY

Plaintiffs' claims against the KARV Defendants fail because their allegations do not tie

them to any predicate acts committed within RICO's four-year statute of limitations.  As

described in the Joint Brief, because RICO's four-year statute of limitations runs from the time

when Plaintiffs "discover[] or reasonably should have discovered the RICO injury," *Koch v.

Christie's Int'l PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011) (citation omitted), Plaintiffs

claims must fail as Azima[5] knew of the alleged injury in 2016 but did not file the Complaint until

2022. The fact that Azima continued to proactively litigate the issue beyond 2016, or that

---

[5] As noted in the Joint Brief, the other Plaintiffs are Azima's corporate entities.

allegedly some of the "wires in furtherance of this scheme were sent in the past four years" (Compl. ¶ 223), does not save the RICO claims from the four-year statute of limitations because Azima discovered his alleged injury in 2016. *Id.*; *Bingham v. Zolt*, 66 F.3d 553, 559 (2d Cir. 1995). If Plaintiffs argue that the "separate accrual" rule saves their untimely claims, this contention will fail because none of the predicate acts alleged against the KARV Defendants within the past four years caused Plaintiffs a "new and independent injury." *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998); *Bingham*, 66 F.3d at 559.

Isolating the alleged facts against the KARV Defendants within the statute of limitations reveals that there is no new and independent injury, and thus no cause of action. First, the "action plan" and "view from the window" pre-date the statute of limitations bar. Otherwise, Frank and KARV are accused of participating in meetings and receiving funds (addressed below). Handjani is accused of attending litigation meetings and attending to other litigation-related matters purportedly to conceal knowledge and participation in the hacking operation. Those are not the types of predicate acts that could support a RICO claim. *See Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010), *aff'd* 443 F. App'x 582 (2d Cir. 2011) (holding that "this court joins a long line of cases in finding, as a matter of law" that litigation activities "cannot constitute predicate acts for the purposes of RICO"); *Singh v. NYCTL 2009-A Trust*, 2016 U.S. Dist. LEXIS 94738, at *11 (S.D.N.Y. July 20, 2016) (holding that the plaintiff failed to state a RICO claim because the defendants' "litigation-related communications with Plaintiff cannot amount to RICO predicate acts.") (collecting cases).

The money laundering allegation appears to be simply that KARV received monthly retainer payments from 2014-2022 for its communications consulting services. *See* Compl. ¶¶

221, 244, Plaintiffs' Ex. A.  Plaintiffs, however, fail to provide any factual allegations

establishing how KARV's receipt of ordinary monthly retainers promoted specified unlawful

activity. Plaintiffs do not identify any specified unlawful activity that was funded with any of the

identified payments.  Plaintiffs do not specify how the money was spent, who spent it or how it

ties back to Azima or how it furthered the alleged scheme.  Plaintiffs do not even attempt to

identify which Defendants had access to the funds.  Instead, they simply provide a list of money

transfer payments and baldly claim that "money laundering" occurred.  That cannot form the

basis of a predicate act against *any* Defendant and should be disregarded:  Azima's allegations

are conclusory and boilerplate, as he identifies no "specified unlawful activity" to which the

retainer payments relate, and as such he fails to state a claim against Frank and KARV. *E.g.,*

*Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 473 (S.D.N.Y. 2006)

("[C]onclusory allegations are insufficient to survive a motion to dismiss RICO claims.").  There

certainly is no allegation of "new and independent injury" to Plaintiffs from this purported

"money laundering" to cause a new RICO claim to accrue. *In re Merrill Lynch*, 154 F.3d at 59;

*Bingham*, 66 F.3d at 559.

        Moreover, Plaintiffs' alleged facts supporting the money laundering allegation are

simply a list of transactions obtained from the website of the Department of Justice (DOJ) in the

Foreign Agent Registration Act (FARA) section for reports from Foreign Agents.  KARV is a

Registered Foreign Agent and is required by law to file publicly available transaction reports.   In

support of their generalized and wholly conclusory money laundering allegation, Plaintiffs

merely point to publicly filed DOJ reports in which the source, date, amount and recipient are

disclosed and not concealed.  There is no plausible connection between these lawfully reported

payments and any of the activities described in the Complaint.  Absent any facts to support how

these funds were, or could be, used to promote a specified unlawful activity, the money laundering claims are wholly unsubstantiated and should be dismissed. [6]

As for Handjani, Azima's claim regarding conduct in the past four years is that (a) in ongoing litigation, he denied involvement in the 2016 computer hack; and (b) he was allegedly involved in efforts to pay a witness in the entirely separate Stokoe UK litigation. Both claims fail because Plaintiffs here are not parties in the UK litigation, and the obstruction and witness tampering statutes require an official proceeding **in the United States**. *See* 18 U.S.C. §§ 1503, 1512 & 1515(a)(1); *e.g.*, *El Omari v. Buchanan*, 2022 WL 4454536, at *2 (2d Cir. Sept. 26, 2022) (allegations of "potential misconduct only in foreign proceedings and investigations" –the very same UK proceedings at issue here – could not support RICO claim).

The first theory, ongoing litigation, further fails because RICO cannot be used to bring a collateral attack on "litigation activity." As a matter of well-settled Circuit law, a RICO claim cannot be premised on "proffering false affidavits and testimony." *Kim*, 884 F.3d at 104; *see also Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) ("allegations that the private defendants made false statements in their various filings" and in testimony "cannot support a claim of a substantive RICO violation" under *Kim*); *Smulley v. Fed. Hous. Fin. Agency*, 754 F. App'x 18, 23 (2d Cir. 2018) (summary order) ("[T]o the extent [the Plaintiff] alleges that any Defendants made false representations and filed false documents in [Plaintiff's] state court action(s), those acts do not constitute RICO predicates.") (citing *Kim*, 884 F.3d at 104); *Weaver v. Boriskin*, 751 F. App'x 96, 98 (2d Cir. 2018) (summary order) (where plaintiff "alleged the defendants

---

[6] The Court can take judicial notice of the FARA filings on the DOJ website pursuant to FRE 201(b)(2) and (c)(2).  *See Lewis v. M&T Bank*, 2022 U.S. App. LEXIS 6596, at *2-3 (2d Cir. Mar. 15, 2022) (*citing Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (holding that district court may take judicial notice of publicly available documents such as regulatory filings on a Rule 12(b)(6) motion)).

engaged in various fraudulent litigation activities related to the foreclosure action," such allegations "are insufficient to show a RICO predicate act") (citing *Kim*, 884 F.3d at 104); *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 460 (S.D.N.Y. 2014) ("[C]ourts have consistently refused to recognize as wire or mail fraud even litigation activities that rise to the level of malicious prosecution simply because the mail or wires were used."); *Brock v. Zuckerberg*, 2021 WL 2650070, at *5 (S.D.N.Y. June 25, 2021) (complaint failed to state RICO claim where alleged predicate acts "arise purely out of a litigation action") (citing *Kim*, 884 F.3d at 105); *Rajaratnam*, 449 F. Supp. 3d at 70-72 (following *Kim*, dismissing RICO claim based on litigation activity as predicate act, and distinguishing plaintiff's cases).

Plaintiffs' second theory, alleged witness payments in the Stokoe UK case, cannot support claims against Handjani because they are wholly unrelated to Plaintiffs and did not cause them injury. *See Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992) (RICO plaintiff must establish that the RICO offense proximately caused his injuries).  Azima and his companies are not parties in the Stokoe UK proceeding, and there is no nexus with the United States.

## II.   PLAINTIFFS' CLAIMS BASED ON MAIL AND WIRE FRAUD FAIL

The allegations of mail and wire fraud predicates necessarily fail for several reasons. First, as fraud-based predicates, they "must be pleaded with particularity in accordance with Federal Rule of Civil Procedure 9(b)." *Jus Punjabi, LLC* v. *Get Punjabi US, Inc.*, 640 F. App'x 56, 58 (2d Cir. 2016) (summary order) (citing *Lundy* v. *Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013)). "This particularity requirement extends 'to each defendant.'" *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 68 (E.D.N.Y. 2020) (quoting *Fuji Photo Film U.S.A., Inc.* v. *McNulty*, 640 F. Supp. 2d 300, 314 (S.D.N.Y. 2009)).  In contravention of Rule 9(b), Plaintiffs have failed to specify the "content of the alleged misrepresentations, explain

how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Id.*

"[P]articipating in multiple meetings regarding the attacks on Azima" (Compl. ¶ 243), does not nearly meet Rule 9(b)'s pleading standard. Such an allegation is fundamentally vague and conclusory; hence the Court cannot credit it. *See Ho Myung Moolsan Co. v. Manitou Min. Water, Inc.*, 665 F. Supp. 2d 239, 260 (S.D.N.Y. 2009) (dismissing RICO claims where allegations merely stated that "some defendants" committed fraud "through" their purported agent); *Jones*, 409 F. Supp. 2d at 473 ("[C]onclusory allegations are insufficient to survive a motion to dismiss RICO claims."). And "causing false statements" to be made in courts (Compl. ¶ 243), fails under the RICO law regarding litigation participation cited above. Second, Plaintiffs fail to identify how the KARV Defendants sought to obtain Azima's money or property through the supposed fraudulent scheme. *See, e.g.*, *BWP Media USA, Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 363 (S.D.N.Y. 2014) ("The failure to demonstrate a scheme to defraud precludes Plaintiffs from pleading a mail or wire fraud offense as a RICO predicate."); *Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs*, 888 F. Supp. 2d 491, 506 (S.D.N.Y. 2012) (holding that a plaintiff failed to allege that the defendant caused any mail or wire communications to be sent in connection with a fraudulent scheme); *Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*, 170 F.R.D. 361, 382-84 (S.D.N.Y. 1997) (dismissing a plaintiff's RICO claim because the plaintiff's mail and wire fraud allegations "must rest on firmer ground than an assertion that mail and wire communications [were] inherent to defendants' scheme"). Without allegations explaining their significance, one is left to presume that Plaintiffs' reference to a series of emails, calls, and messages purportedly between Handjani

10

and others (as alleged in Exhibit B to the Complaint), appears to relate to the concealment allegation, which cannot support the RICO claim.  They do not relate to any attempt by Handjani or others to deprive the Plaintiffs of money and property as required under the statute.  *See Kelly v. U.S.*, 140 S. Ct. 1565, 1573 (2020) (Azima's legal expenses were "an incidental by-product of the scheme"); *United States v. Sang Han*, 280 F. Supp. 3d 144, 153 (D.D.C. 2017) (explaining that the federal-wire fraud statute imposes penalties "'for obtaining money or property by means of false or fraudulent pretenses'") (quoting 18 U.S.C. § 1343); *Comm. to Defend U.S. Const. v. Moon*, 776 F. Supp. 568, 572 n.4 (D.D.C. 1991) ("An act can only constitute mail or wire fraud if it results in money or property damage.").

## III.  PLAINTIFFS' CLAIMS ARE DEFICIENT BECAUSE THE ALLEGATIONS DO NOT SATISFY THE PATTERN OR CONTINUITY REQUIREMENTS FOR PLEADING A PROPER RICO CLAIM

Plaintiffs' RICO claims fail against the KARV Defendants for the additional reason that Plaintiffs fail to plead a pattern of predicate acts and continuity.  Plaintiffs' allegation of actions by the KARV Defendants to deny or conceal the enterprise's involvement in the hacking is not sufficient to plead continuity as required under RICO.  A RICO claim that relies upon a single, limited fraudulent scheme does not satisfy the pattern requirement of 18 U.S.C. § 1961(5). *Crawford v. Franklin Credit Mgmt.*, 758 F.3d 473, 489 (2d Cir. 2014). The Second Circuit has held that allegations regarding "one scheme with one clear victim" do not suffice as RICO claims.  *Grace Intl. Assembly of God v. Festa*, 797 F. App'x 603, 606 (2d Cir. 2019). In this case, the single incident of alleged misconduct was computer hacking, followed by continued efforts to deny or conceal involvement in it.  *See* Compl. ¶ 214.  The alleged concealment by Handjani after achieving the central object of a conspiracy cannot form the basis of a RICO predicate. *See Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 443-44 (S.D.N.Y. 2019).

Concealment does not satisfy the requirement of open-ended or close-ended continuity.  There is no open-ended continuity because Plaintiffs allege at best "an inherently terminable scheme [which] does not imply a threat of continued racketeering activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) (quotation omitted).  There is also no closed-ended continuity because Plaintiffs further allege that "the same misrepresentations" meant to conceal the 2016 hacking were repeated over and over, with only one victim affected. *First Cap. Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 181-82 (2d Cir. 2004) (finding no open or closed-ended continuity where fraudulent conveyance was followed by multiple false statements of concealment); *see also Bangl. Bank v. Rizal Commer. Banking Corp.*, 2020 WL 1322275, at *7 (S.D.N.Y. Mar. 20, 2020) (fraudulently concealing illegal activities for years is inadequate to satisfy RICO's continuity requirement). The unspecified facts alleging that Handjani repeatedly misrepresented the enterprise's involvement in the hacking fall squarely within this precedent such that a RICO claim cannot be sustained.

**IV.    PLAINTIFFS' CLAIMS FAIL BECAUSE THEY HAVE NOT ALLEGED ANY COGNIZABLE RICO INJURY OR THAT ANY INJURY WAS PROXIMATELY CAUSED BY THE KARV DEFENDANTS**

As discussed in the Joint Brief, the damages Azima claims from the conduct of the KARV Defendants cannot constitute a cognizable RICO injury because RICO allows recovery only for injury to a plaintiff's "business or property." 18 U.S.C. § 1964(c). Azima claims harm to his reputation and goodwill (*e.g.*, Compl. ¶ 245), but those are personal injuries not recognized under RICO. *See Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 459 (S.D.N.Y. 2004), *aff'd*, 173 F. App'x 15 (2d Cir. 2006).  Azima also claims to have lost a financing opportunity because of negative publicity concerning the litigation and seeks RICO damages for his associated loss of profits. *See* Compl. ¶¶ 180, 246-249.  But lost profits are too speculative to

be allowed as RICO damages.  *See, e.g.*, *Kimm v. Chang Hoon Lee and Champ, Inc*., 196 F.

App'x 14, 16 (2d Cir. 2006); *World Wrestling Ent., Inc. v. Jakks P., Inc*., 530 F. Supp. 2d 486,

520-21 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).

Even if those damages were allowed, proximate cause between the actions of the KARV

Defendants and Plaintiffs' losses does not exist. Proximate cause fails when the chain between

Defendants' alleged conduct and the lost business opportunities is broken by the "independent

actions of third and even fourth parties." *Hemi Group, LLC v. City of New York, N.Y*., 559 U.S.

1, 15 (2010); *see also Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132,142 (2d

Cir. 2018). Azima's legal expenses are disqualified because they were "an incidental by-product

of the scheme," *Kelly,* 140 S. Ct. at 1573, and, as with the lost-opportunities claim, they were the

result of an intervening decisionmaker—Azima's own actions to voluntarily initiate lawsuits and

investigations—and so break any potential causation chain.  *See Hollander*, 173 F. App'x at 18.

Moreover, the loss of reputation, loans or business opportunities resulted from the

independent decisions of third parties, such as banks or lenders, who made independent

judgments as to why they did not want to work with Azima or his companies, or reporters who

drafted articles resulting in negative publicity about Azima. There is no specified link alleged

between the KARV Defendants and these supposed losses.

Simply put, Plaintiffs cannot connect any RICO damages to any alleged wrongdoing by

the KARV Defendants.  Azima also cannot explain how Defendants' alleged subsequent denial

of responsibility for the hacking caused him harm other than purportedly prolonging his legal

fight.  Azima admits that it was the hacking of the computer that resulted in his loss of

opportunities and profits, not the litigation about the hacking.  And certainly, Plaintiffs cannot

link the alleged offer to pay witness fees in the Stokoe litigation (in a foreign jurisdiction in

which neither he nor any of his companies are a party) to any loss incurred as set forth in the

Complaint.  Plaintiffs cannot plausibly allege that the described acts of the KARV Defendants

proximately caused actionable financial harm to Azima and his companies.

Similarly, Azima's controlled corporate plaintiffs have no independent claims of injury

and should be dismissed for lack of RICO standing.  The Complaint conclusorily asserts that

these entities were harmed by the alleged hacking and the ongoing litigation, but the Complaint's

allegations relate to Azima personally and do not explain how the businesses were "the target of

the racketeering enterprise," *see, e.g.*, Compl. ¶¶ 45, 62 (alleging scheme targeted at "Azima"),

or how the damages to any of these entities resulted from the actions of the KARV Defendants or

the unlawful acts of the enterprise. *See* Compl. ¶¶ 246-250.  These Plaintiffs should be separately

dismissed.  *See Am. Home Mortg. Corp. v. UM Sec. Corp.*, 2007 U.S. Dist. LEXIS 26670, at *10

(S.D.N.Y Apr. 9, 2007) (plaintiff must show that a defendant directly injured the plaintiff's

business or property to satisfy the injury element of section 1962's standing requirement).

**V.    PLAINTIFFS' CLAIMS AGAINST THE KARV DEFENDANTS ARE NOT
        ACTIONABLE BECAUSE THEY NEITHER DIRECTED NOR MANAGED THE
        ALLEGED ENTERPRISE**

Plaintiffs' claims should be dismissed because they do not allege that the KARV

Defendants "participate[d] in the operation or management" of the enterprise by having "*some

part* in directing the enterprise's affairs." *First Capital*, 385 F.3d at 176; *see also Reves v. Ernst

& Young*, 507 U.S. 170, 179, 184 (1993) (holding that "*some* part in directing the enterprise's

affairs is required" to find RICO liability).   Plaintiffs do not allege that the KARV Defendants

directed the activities of the enterprise.  While the Complaint relies on dated and insufficient

allegations that Frank contributed to an "action plan," it does not state that he did anything other

than attend meetings or handle some of the hacked emails.  Similarly, while Plaintiffs attempt to

call Handjani a "front man," they describe that role as requiring him to merely "befriend" Azima. Those are not the actions of a manager or director of the enterprise. *See First Interregional Advisors Corp. v. Wolff*, 956 F. Supp. 480, 485 (S.D.N.Y. 1997) ("Merely being associated with the RICO enterprise is insufficient to establish liability under RICO.") (citing *Reves*, 507 U.S. at 179). At no point do the Plaintiffs allege facts that the KARV Defendants were anything more than participants. *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521-22 (2d Cir. 1994) (dismissing a RICO claim because the Plaintiff failed to produce any evidence that the Defendant "in any way participated in the management or direction of a RICO enterprise"). And even those allegations were either outside of the statute of limitations or involving separate UK litigation (the Stokoe Proceedings) that had nothing to do with Azima or his companies.

## VI.   PLAINTIFFS' RICO CONSPIRACY CLAIM IS EQUALLY UNSUPPORTED BY THE FACTS ALLEGED AGAINST THE KARV DEFENDANTS

A conspiracy claim, in turn, can only stand if an underlying RICO violation has been adequately pled, so this claim fails for the same reasons described herein. *See First Capital,* 385 F.3d at 182. The claim fails for a separate reason: Plaintiffs do not allege any facts to suggest that any of the KARV Defendants "entered into an agreement to engage in acts that violate the RICO statute." *Cont'l Petroleum Corp., Inc. v. Corp. Funding Partners, LLC*, 2012 WL 1231775, at *8 (S.D.N.Y. Apr. 12, 2012). Accordingly, the claim, too, should be dismissed.

## CONCLUSION

For the foregoing reasons, and those included in the Joint Brief, the KARV Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: February 28, 2023        Respectfully  submitted,

/s/ Daniel Filor
Daniel Filor
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-6758
Fax: (212) 801-6400
Filord@gtlaw.com

David G. Barger (admitted pro hac vice)
Michael R. Sklaire (admitted pro hac vice)
**GREENBERG TRAURIG, LLP**
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel:  (703) 749-1300
Fax: (703) 749-1301
David.Barger@gtlaw.com
Michael.Sklaire@gtlaw.com

*Attorneys for Defendants Amir Handjani, Andrew*
*Frank and KARV Communications*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of February, 2023, I served a copy of the foregoing
to all counsel of record.


/s/ Daniel Filor
Daniel Filor
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-6758
Fax: (212) 801-6400
Filord@gtlaw.com