UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FARHAD AZIMA, *et al.*,

       *Plaintiffs,*

v.

DECHERT LLP, *et al.*,

       *Defendants.*

---

1:22-cv-8728 (PGG)

**Oral Argument Requested**

# KARV DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Daniel P. Filor
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-6758
Fax: (212) 801-6400
Filord@gtlaw.com

David G. Barger (admitted pro hac vice)
Michael R. Sklaire (admitted pro hac vice)
**GREENBERG TRAURIG, LLP**
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
David.Barger@gtlaw.com
Michael.Sklaire@gtlaw.com

*Attorneys for Defendants Amir Handjani,
Andrew Frank and KARV Communications, Inc.*

Plaintiffs seek in their Opposition to substitute volume and hubris for facts sufficient to state a valid cause of action. Plaintiffs' attempt to weave together various baseless allegations against the KARV Defendants fails because the important allegations are conclusory, not plausible and defy common sense. For a RICO complaint to survive a motion to dismiss, it must allege more than groundless conclusions and speculation. *E.g., Jones v. Nat'l Comm. & Surveillance Networks*, 409 F. Supp. 2d 456, 473 (S.D.N.Y. 2006). The allegations must be plausible. *See Nichols v. Mahoney*, 608 F. Supp. 2d 526, 536 (S.D.N.Y. 2009) (noting that with the vast implications of a civil RICO case, additional scrutiny is required to determine whether the facts are "plausible"). Recognizing that the Complaint cannot clear that bar, Plaintiffs try to use their Opposition to turn bald speculation into supposed fact, but in so doing, they actually demonstrate why the charged allegations against the KARV Defendants cannot be sustained.[1]

In the Complaint, Plaintiffs relied extensively on phrases such as "upon information and belief" and "presumably" in describing the alleged RICO activities. *See, e.g.,* Compl. ¶ 131 ("upon information and belief, Handjani was also involved in the preparation of the Action Plan"), ¶ 164 ("[u]pon information and belief, Gerrard and Handjani knew and intended that Page would engage hackers"), ¶ 174 ("Del Rosso … offered [Grayson] a 'bonus payment' of £500,000, presumably in exchange for his silence concerning Del Rosso's role in the hacking of Stokoe. Handjani also discussed the 'bonus' payment with Grayson …"). However, in their Opposition, those qualifiers are conveniently removed, and speculative "facts" are now repeatedly described as if they had been alleged with certainty. *See* Opp. at 2 ("Handjani directed a co-conspirator whom 'Handjani knew and intended … would engage hackers . . . '")

---

[1] The KARV Defendants adopt, to the extent permitted by law, the co-Defendants' Replies, and due to space limitations do not waive any other defenses to the Opposition not specifically addressed in this Reply.

1

(omitting "upon information and belief"); Opp. at 2 ("Handjani agreed to make a payment 'in exchange for [the witness's] silence . . .'") (citing Compl. ¶ 174 but omitting "presumably" and substituting Handjani); Opp. at 4 ("Handjani attempted to bribe a witness and promised to have the witness's legal fees covered if he … [denied] Del Rosso's role in the hacking …") (citing Compl. ¶ 174 but substituting Handjani).  Spinning the allegations even further in the Opposition, Defendant Frank has now become "involved [sic] every step of the way," Handjani has now become "intimately involved" in the ongoing litigation, and both defendants are now accused of having "directed co-conspirators," and "designed and implemented over several years the five-prong Plan."  Opp. at 1, 4, 10.[2]  The Opposition's newly enhanced allegations are not supported by the Complaint or by any facts alleged therein.

In stretching their allegations to prevent dismissal, Plaintiffs argue that the KARV Defendants "committed numerous predicate acts sufficient to sustain a RICO claim: obstruction, witness tampering, mail and wire fraud, bank fraud and money laundering."  Opp. at 6.  But those predicate acts are simply not in the Complaint.

First, there is no allegation in the Complaint that any of the KARV Defendants committed bank fraud, and any such frivolous assertion should be disregarded.  *See* Compl. ¶¶ 231-36 (in which KARV Defendants are neither named nor referenced).

Second, the money laundering claim, which has now morphed into an unpled violation of 18 U.S.C. § 1956(a)(1)(A), contains no explanation of how the KARV Defendants obtained,

---

[2]This is the first time that Plaintiffs, without attribution, describe the Plan as having five prongs. That is not what was alleged in the Complaint.  *See* Compl. ¶¶ 59-61.  Plaintiffs have not attached a copy of the Plan to the Complaint and fail to identify what supposed "overlapping content" is attributable to the KARV Defendants. While Plaintiffs contend that Defendant Frank co-authored the "Comprehensive Action Plan" to defame Azima, it is an untimely allegation outside the limitations period, not supportive of any RICO predicate, and is speculative and baseless.

used, or concealed the proceeds of anything illegal. The identified "90 transactions" were monthly retainer payments made *to* KARV, were reported to the DOJ via FARA filings, and the Complaint fails to explain how they could constitute proceeds. Nor are there any factual allegations regarding how any money was used by anyone to promote any illegal activity. And it is not clear what proceeds could have conceivably been gained by the KARV Defendants, if the supposed goal of the Enterprise was merely to cause Azima to spend money on his lawyers for litigation or lose financing opportunities.

Third, the obstruction and witness tampering allegations, which the Complaint alleged against Handjani only,[3] cannot support a RICO claim, because the allegations involved a UK proceeding. *See El Omari v. Buchanan,* No. 22-cv-55, 2022 U.S. App. LEXIS 26799, at *4-5 (2d Cir. Sept. 26, 2022) (noting that the obstruction statute does not cover a foreign proceeding and cannot form the basis for a RICO claim). In their Opposition, to try to avoid the fatal case law, Plaintiffs attempt to recharacterize the alleged conduct as occurring in the context of a North Carolina proceeding that neither concerned Azima or his companies nor could proximately have caused their alleged injuries. The Court should reject this obfuscation. Plaintiffs claim Handjani "bribed a witness in return for his false testimony denying involvement in the hacking of Azima in connection with a proceeding in North Carolina." Opp. at 9 (citing Compl. ¶ 174).

As an initial matter, the Complaint <u>actually alleges</u> it was Del Rosso, *not* Handjani, who supposedly paid the "bribe," whereas Handjani allegedly merely "also discussed the 'bonus.'" Compl. ¶ 174. But even accepting Plaintiffs' reformulation, the Complaint nowhere alleges that these efforts to procure "false testimony" were aimed at a U.S. proceeding. Indeed, the sole

---

[3] Plaintiffs ridiculously argue that claims against Handjani should be "imputable" to Frank and KARV simply because they worked together and filed a joint brief. *See* Opp. at 1, n.2. Unsurprisingly, Plaintiffs fail to provide any citation for such a baseless contention.

paragraph of the Complaint relied on by Plaintiffs concerns a witness statement allegedly prepared on behalf of Patrick Grayson—a non-party residing in the UK, *see id.* ¶ 26(f)—"to file in the Stokoe Proceeding" in the UK. *Id.* ¶¶ 171, 174. The Complaint only mentions North Carolina insofar as the alleged impetus for Del Rosso to procure such "false testimony" from Grayson was the filing of a § 1782 application by Stokoe in North Carolina "seeking discovery from Del Rosso" in aid of the UK litigation. *Id.* In other words, notwithstanding stray references to North Carolina, the alleged obstruction and witness tampering concerned testimony by a UK witness in a UK proceeding. Plaintiffs therefore cannot avoid the Second Circuit's *El Omari* holding.

Fourth, as for the mail and wire fraud allegations, Plaintiffs rely on Exhibit B to the Complaint, an appended list of emails and text messages, and argue that they do not need to connect them to the KARV Defendants or an intent to defraud Plaintiffs of money or property. But that is not what the case law requires. *E.g.*, *El Omari v. Buchanan*, 2021 U.S. Dist. LEXIS 236933, at *14-15 (S.D.N.Y. Dec. 10, 2021) (stating that as RICO predicates, "wire fraud allegations must 'satisfy Rule 9(b) as to each defendant and cannot do so by making vague allegations about defendants as a unit.' As a result, for RICO claims involving multiple defendants, 'the plaintiff must connect the allegations of fraud to each individual defendant'") (citations omitted). Merely identifying a bunch of emails is not enough. In fact, the only emails identified in the Opposition are two that Handjani merely received, far outside the statute of limitations period, which Plaintiffs speculatively contend were false. Opp. at 3 (citing Ex. B at lines 1, 44) (emails from Buchanan to Handjani in 2015 and 2016). Further, there is no allegation that they were allegedly caused by Handjani (or any of the KARV Defendants),

4

reasonably foreseeable, necessary, or in furtherance of any scheme to defraud Plaintiffs of money or property.

The only other Opposition citations are to communications that, similarly, are not demonstrated or even argued to meet the elements of wire fraud. *See* Opp. at 7 (citing Ex. B, line 130 (non-Handjani email speculated to be false); 138, 141, 142, 153 (phone calls unrelated to any fraud on Azima); 139 (email *to* Handjani with unsupported speculation); 154 (email unrelated to Azima). These communications, as well as the alleged meetings, are at most purported concealment of the underlying old hack[4] or litigation activities, neither of which can provide a valid basis for a RICO predicate. *E.g., Democratic Nat'l Comm. v. Russian Federation*, 392 F. Supp. 3d 410, 444 (S.D.N.Y. 2019) (finding "acts of concealment" are not RICO predicate acts); *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) (holding "false statements in their various filings and in the course of testifying" cannot support RICO claim) (citing *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018)).

Finally, as for the statute of limitations argument, Plaintiffs attempt to stave off dismissal by claiming that they "do not seek relief for the hacking" Azima claims he learned about in 2016 but instead "for the damage the Enterprise caused to the Plaintiffs through subsequent litigation, interactions with law enforcement, and medial [sic] outreach . . ." Opp. at 6. Even assuming Plaintiffs adequately alleged predicate acts by each of the KARV Defendants—and they have not—Plaintiffs' effort to avoid RICO's four-year statute of limitations must fail because

---

[4] To the extent that Plaintiffs baselessly claim that Frank or any of the KARV Defendants disseminated any hacked materials, there is no suggestion in the Complaint or Opposition that such allegation could support any identified RICO predicates. *See* Opp. at 1, 2 (citing Compl. ¶¶ 24-25). First, there are no factual details about any dissemination, which is rank speculation. In addition, any dissemination of hacked material would be untimely and relate to the old hacking (the subject of the pending UK proceeding), rather than this action regarding the purported concealment.

5

Plaintiffs do not allege "separate and distinct fraudulent acts resulting in new and independent injuries" necessary to trigger separate accruals. *City of Almaty v. Ablyazov*, No. 15-CV-5345 (AJN), 2018 U.S. Dist. LEXIS 50782, at *13 n.3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Plaintiffs allege only injuries stemming from efforts to "conceal an old injury," which the law holds to be necessarily derivative and not "independent" for purposes of extending the limitations period for their RICO claims. *Id.* Consequently, Plaintiffs' claims are time-barred and should be dismissed.

In order for the RICO allegations to survive a motion to dismiss, Plaintiffs must argue that the following fact pattern is plausible and that the injuries were proximately caused in whole or in part by the KARV Defendants: In 2016, RAK settled a lawsuit with Azima and paid him $2.6 million. RAK settled the suit with the intent, <u>at the time of settlement</u>, to later accuse Azima of breaching the good faith portions of the arms-length settlement agreement in order for RAK to get its money back, and paid a number of people to hack Azima's computer and defraud him out of his money[5] by causing him to (voluntarily) spend money on his lawyers to litigate a lawsuit in the UK brought by RAK against Azima. Such effort included publishing the content of his hacked data, which he cannot claim is either materially false or defamatory. And it was intended that the leaking of that truthful material would result in a bank denying Azima loans because the bank did not like the negative publicity.

The fact pattern defies common sense, the allegations in the Complaint do not provide the basis for a RICO complaint, and Azima's attempt to sweep the KARV Defendants into conclusory and overlapping allegations fails under scrutiny and should be dismissed.

---

[5] According to recent filings concerning the UK litigation, Azima's litigation may be funded by third parties. *See In re Application of David Neil Gerrard for an Order Pursuant to 28 U.S.C. § 1782*, Case No. 1:23mc-21921-BB (S.D. Fla.) (ECF No. 4).

Dated: June 20, 2023                    Respectfully submitted,

/s/ Daniel P. Filor
Daniel P. Filor
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-6758
Fax: (212) 801-6400
Filord@gtlaw.com

David G. Barger (admitted pro hac vice)
Michael R. Sklaire (admitted pro hac vice)
**GREENBERG TRAURIG, LLP**
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
David.Barger@gtlaw.com
Michael.Sklaire@gtlaw.com

*Attorneys for Defendants Amir Handjani, Andrew Frank and KARV Communications, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of June, 2023, I served a copy of the foregoing to all counsel of record.

/s/ Daniel P. Filor
Daniel P. Filor
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-6758
Fax: (212) 801-6400
Filord@gtlaw.com