UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FARHAD AZIMA,<br>ALG TRANSPORTATION, INC.,<br>MAIN 3260 LLC,<br>FFV W39 LLC, and<br>FFV DEVELOPMENT LLC,<br><br>                Plaintiffs,<br><br>v.<br><br>DECHERT LLP,<br>DAVID NEIL GERRARD,<br>DAVID GRAHAM HUGHES,<br>NICHOLAS DEL ROSSO,<br>VITAL MANAGEMENT SERVICES, INC.,<br>AMIT FORLIT,<br>INSIGHT ANALYSIS AND RESEARCH LLC,<br>SDC-GADOT LLC,<br>AMIR HANDJANI,<br>ANDREW FRANK, and<br>KARV COMMUNICATIONS,<br><br>                Defendants. | Case No. 1:22-cv-08728 (PGG) (JW)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DECHERT LLP'S MOTION TO DISMISS**

Sean Hecker
John C. Quinn
David Gopstein
Mark Weiner
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
shecker@kaplanhecker.com
jquinn@kaplanhecker.com
dgopstein@kaplanhecker.com
mweiner@kaplanhecker.com

February 28, 2023                                            *Attorneys for Defendant Dechert LLP*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT .....................................................................................................1

PLAINTIFFS' ALLEGATIONS ......................................................................................................2

      A.      The Settlement Agreement ............................................................................... 2

      B.      The D.C. Proceeding ........................................................................................ 3

      C.      The Instant Complaint ...................................................................................... 3

STANDARD OF REVIEW ..............................................................................................................4

ARGUMENT ....................................................................................................................................4

    I.    The Doctrine of *Forum Non Conveniens* Mandates Dismissal Pursuant to the FSC ... 4

      A.      Plaintiffs' RICO Claims are Covered by the Forum-Selection Clause ............. 5

      B.      Dechert Can Enforce the Forum-Selection Clause Against Plaintiffs .............. 8

    II.    The Complaint Fails to State a RICO Claim Against Dechert .................................. 10

      A.      Litigation Misconduct is not a RICO Predicate Act ....................................... 10

      B.      The Complaint Fails to Allege RICO Predicates Against Dechert ................. 12

      C.      The Complaint Fails to Establish a "Pattern" of Predicate Acts ..................... 13

      D.      The Complaint Fails to Allege that Dechert Participated in the Operation or Management of the Enterprise ....................................................................... 14

CONCLUSION ...............................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 4, 13

*Azima v. RAK Inv. Auth.*,
  926 F.3d 870 (D.C. Cir. 2019) ............................................................................... 3, 5, 8

*Azrielli v. Cohen Law Offices*,
  21 F.3d 512 (2d Cir. 1994) ............................................................................................ 14

*Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*,
  229 F.3d 1135 (2d Cir. 2000) ........................................................................................ 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 4

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ............................................................................................ 2

*Coregis Ins. Co. v. Am. Health Found., Inc.*,
  241 F.3d 123 (2d Cir. 2001) ........................................................................................ 5, 6

*Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*,
  758 F. Supp. 2d 153 (E.D.N.Y. 2010) .................................................................... 10, 11

*Curtis v. Greenberg*,
  2021 WL 4340788 (E.D.N.Y. Sept. 23, 2021) ............................................................. 13

*De Wit v. Firstar Corp.*,
  879 F. Supp. 947 (N.D. Iowa 1995) .............................................................................. 14

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001) .......................................................................................... 14

*Democratic Nat'l Comm. v. Russian Fed'n*,
  392 F. Supp. 3d 410 (S.D.N.Y. 2019) ........................................................................... 14

*F5 Capital v. RBS Sec. Inc.*,
  2015 WL 5797019 (D. Conn. Sept. 30, 2015) ................................................................ 7

*Fasano v. Li*,
  47 F.4th 91 (2d Cir. 2022) ............................................................................................. 10

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004) .................................................................................................. 13

*Hollander v. Pressreader, Inc.*,
  2020 WL 2836189 (S.D.N.Y. May 30, 2020) ....................................................................... 12

*Kelly v. United States*,
  140 S. Ct. 1565 (2020) ........................................................................................................... 12

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018) ..................................................................................................... 13

*Kottler v. Deutsche Bank AG*,
  607 F. Supp. 2d 447 (S.D.N.Y. 2009) ..................................................................................... 4

*Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*,
  337 F. Supp. 3d 274 (S.D.N.Y. 2018) ................................................................................. 5, 6

*Lynch v. Amoruso*,
  232 F. Supp. 3d 460 (S.D.N.Y. 2017) ................................................................................... 10

*Madanes v. Madanes*,
  981 F. Supp. 241 (S.D.N.Y. 1997) ........................................................................................ 14

*Magi XXI, Inc. v. Stato della Citta del Vaticano*,
  714 F.3d 714 (2d Cir. 2013) .................................................................................................... 8

*Martinez v. Bloomberg LP*,
  740 F.3d 211 (2d Cir. 2014) .................................................................................................... 8

*Morin v. Trupin*,
  835 F. Supp. 126 (S.D.N.Y. 1993) ........................................................................................ 15

*Overseas Ventures, LLC v. ROW Mgmt., Ltd., Inc.*,
  2012 WL 5363782 (S.D.N.Y. Oct. 26, 2012) .................................................................... 9, 10

*Paduano v. Express Scripts, Inc.*,
  55 F. Supp. 3d 400 (E.D.N.Y. 2014) ....................................................................................... 5

*Rajaratnam v. Motley Rice, LLC*,
  449 F. Supp. 3d 45 (E.D.N.Y. 2020) ..................................................................................... 11

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ............................................................................................................... 14

*Saluzzo v. Greenbaum*,
  2011 WL 13234286 (N.D.N.Y. Feb. 4, 2011) ....................................................................... 11

*Shetiwy v. Midland Credit Mgmt.*,
   15 F. Supp. 3d 437 (S.D.N.Y. 2014) .................................................................................. 10

*Smith v. Combustion Eng'g, Inc.*,
   856 F.2d 196 (6th Cir. 1988) ............................................................................................... 11

*Sundwall v. Weinstein & Assocs.*,
   1997 WL 507724 (D. Conn. Aug. 19, 1997) ...................................................................... 13

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
   303 F. Supp. 2d 432 (S.D.N.Y. 2004) ................................................................................. 14

*Universal Grading Serv. v. eBay, Inc.*,
   2009 WL 2029796 (E.D.N.Y. June 10, 2009) .................................................................... 10

*Weingard v. Telepathy, Inc.*,
   2005 WL 2990645 (S.D.N.Y. Nov. 7, 2005) .................................................................... 8, 9

*Zanghi v. Ritella*,
   2021 WL 4392756 (S.D.N.Y. Sept. 24, 2021) .................................................................... 10

**Statutes**

18 U.S.C. § 1341 ........................................................................................................................... 4

18 U.S.C. § 1343 ........................................................................................................................... 4

18 U.S.C. § 1503 ..................................................................................................................... 4, 13

18 U.S.C. § 1512 ........................................................................................................................... 4

18 U.S.C. § 1956(a)(2)(A) ............................................................................................................ 4

18 U.S.C. § 1961(5) .................................................................................................................... 10

28 U.S.C. § 1782 ........................................................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 4

**Other Authorities**

Order, *Azima v. Handjani*,
   No. 21-MC-501 (S.D.N.Y. July 15, 2022) ........................................................................... 6

Reply Brief of Petitioner, *Azima v. Handjani*,
   No. 21-MC-501 (S.D.N.Y. Aug. 4, 2021) ............................................................................ 6

Defendant Dechert LLP ("Dechert") respectfully submits this motion to dismiss the Plaintiffs' Complaint filed on October 13, 2022.

## PRELIMINARY STATEMENT

Plaintiff Farhad Azima has been litigating the allegations raised in the Complaint on both sides of the Atlantic since 2016. His litigation campaign has included cases in the United Kingdom, the District of Columbia, and North Carolina. The D.C. Circuit dismissed similar claims based on a forum-selection clause that Azima agreed to in 2016, which dictates that his claims be litigated in the United Kingdom. Litigation remains ongoing in the United Kingdom, and yet Azima keeps trying to open new fronts, with this case being his most recent, as he tries to avail himself of civil RICO's treble damages provision.

As set forth in the joint memorandum submitted by all Defendants (the "Joint Memorandum") the Complaint should be dismissed because (1) principles of comity and the prohibition on claim-splitting warrant dismissal in favor of the ongoing U.K. and N.C. proceedings; (2) Plaintiffs' claims are barred by the statute of limitations, as he has been asserting them, in one form or another, since 2016; and (3) the Complaint does not adequately plead the elements of a RICO claim—no enterprise, no pattern, and no cognizable predicates.

As set forth more fully in this brief, the Court should dismiss the claims against Dechert for three additional reasons. *First*, consistent with the D.C. Circuit's dismissal of Azima's prior case, Plaintiffs' claims should be dismissed pursuant to the forum-selection clause executed by Azima in 2016. *Second*, Azima fails to sufficiently allege a single predicate act, let alone a "pattern" of racketeering, committed by Dechert. And *third*, Azima fails to allege that Dechert participated in the operation or management of the purported "enterprise."

1

**PLAINTIFFS' ALLEGATIONS**

Dechert incorporates the statement of Plaintiffs' Allegations set forth in the concurrently filed Joint Memorandum. *See id.* at 4–13.

A.   **The Settlement Agreement**

Dechert is a global law firm that represented non-party Ras Al Khaimah Investment Authority ("RAKIA") in matters in which Azima was adverse to RAKIA. *See* Compl. ¶ 26. Between 2007 and 2016, RAKIA and the non-party Emirate of Ras Al Khaimah ("RAK") engaged in some commercial ventures with Azima. *Id.* ¶¶ 4, 10, 62. After business disputes arose between RAKIA and Azima, Dechert prepared a settlement agreement (the "Settlement Agreement") to resolve those disputes. *Id.* ¶ 62; *see also* Declaration of David Gopstein ("Gopstein Decl."), Ex. 1 (Settlement Agreement).[1] Among other things, the Agreement provided that RAKIA would pay one of Azima's companies $2.6 million and warranted that Azima had at all times acted in good faith towards RAKIA and would continue to do so going forward. Compl. ¶¶ 62–63; *see also* Gopstein Decl., Ex. 1 ¶¶ 1.1, 3.2. It also included a forum-selection clause (the "FSC") designating the courts of England and Wales as having "exclusive jurisdiction" over "any dispute or claim arising out of, or in connection with, [the Settlement Agreement] or its subject matter or formation." Compl. ¶ 62; Gopstein Decl., Ex. 1 ¶ 7.

In September 2016, RAKIA (represented by Dechert) sued Azima in the U.K. ("the U.K. Proceeding") for breach of the Settlement Agreement's "good faith" clause based on information that Azima had engaged in multiple acts of fraud in his previous commercial ventures with RAKIA. *See* Compl. ¶¶ 63, 69, 106 & n.8. Azima defended against that lawsuit by arguing that

---

[1] The Court may consider the 2016 Settlement Agreement because "the complaint is deemed to include . . . documents incorporated in it by reference," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002), and the Complaint here repeatedly references it. *See* Compl. ¶¶ 62–65, 69.

2

RAKIA's allegations of fraud were based on communications and other materials that had been unlawfully hacked. *See Azima v. RAK Inv. Auth.*, 926 F.3d 870, 873 (D.C. Cir. 2019).

### B. The D.C. Proceeding

While the U.K. Proceeding was ongoing, Azima sued RAKIA (represented by Dechert) in the District of Columbia, asserting claims based on the alleged hacking. *Id.* Azima alleged that the hack was in retaliation for his unsuccessful "mediation services" in a dispute between RAKIA and its former CEO. *Id.* at 878. The D.C. Circuit found that the alleged hack related to the mediation, and that the mediation services were a reason for the Settlement Agreement's "formation." *Id.* The court held that because the hacking claims "connect[ed] with the formation" of the Settlement Agreement, the FSC controlled. *Id.* (cleaned up). The court therefore dismissed the case on *forum non conveniens* grounds based on the FSC.

### C. The Instant Complaint

The Complaint here reiterates the hacking allegations that Azima pressed in the D.C. Proceeding. *See* Compl. ¶¶ 44–61. Plaintiffs attempt to avoid the fate of that proceeding by adding allegations that Defendants "cover[ed] up" the hacking, and disclaiming reliance on any allegations other than the "cover-up" allegations. *See id.* ¶ 5 & n.2, 6. The cover-up allegations are that Dechert engaged in purported litigation misconduct, basically by denying that its client (RAKIA) had engaged in wrongdoing. Those purportedly false denials were made in the course of communicating on behalf of RAKIA with Azima's counsel, *see, e.g., id.*, Ex. B ¶¶ 48, 50, 53, 64; in court filings in the D.C. and U.K. Proceedings, *see, e.g., id.*, Ex. B ¶¶ 57, 68, 69, 83–84, 86–88; and, in one instance, in a letter to the press regarding coverage of the litigations, *id.*, Ex. B ¶ 130. The Complaint further alleges that Dechert participated in meetings to prepare the testimony of non-party Majdi El Halabi for the U.K. Proceeding. *See* Compl. ¶ 26(j), 192. According to the Complaint, Dechert also participated in the Enterprise's conduct by providing

3

"infrastructure, offices, finances, and reputation," including by supplying mobile phones to one of its employees and allowing use of its facilities for meetings. *Id.* ¶¶ 15, 23, 184, 196.

On the basis of these allegations, Plaintiffs claim that Dechert's conduct amounted to mail and wire fraud, 18 U.S.C. §§ 1341, 1343, obstruction of justice, 18 U.S.C. § 1503, witness tampering, 18 U.S.C. § 1512, and money laundering, 18 U.S.C. § 1956(a)(2)(A), although the Complaint includes no specific allegations against Dechert relating to (let alone stating any basis for) the final two predicates. *See* Compl. ¶ 239.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "mere 'formulaic recitation of the elements of a cause of action' will not suffice; instead, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 457 (S.D.N.Y. 2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

## ARGUMENT

**I.  The Doctrine of *Forum Non Conveniens* Mandates Dismissal Pursuant to the FSC**

As the D.C. Circuit has already recognized, the FSC that Azima executed in 2016 is broad on its face, applying to "any dispute or claim arising out of, or in connection with, *it* [i.e., the Settlement Agreement itself] *or* its subject matter *or* formation (including, without limitation, any contractual or non-contractual disputes, claims or obligations)." Gopstein Decl., Ex. 1 ¶ 7 (emphasis added). Plaintiffs' claims against Dechert are asserted "in connection with" both the Settlement Agreement itself as well as its formation, and thus the FSC mandates dismissal here.

4

A forum-selection clause is "'presumptively enforceable' if the moving party can demonstrate that: (1) the clause was reasonably communicated to the party challenging enforcement; (2) the clause is mandatory, rather than permissive, in nature; and (3) the clause encompasses the plaintiff's claims." *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 289 (S.D.N.Y. 2018), *aff'd*, 785 F. App'x 18 (2d Cir. 2019). There can be no dispute that the FSC was reasonably communicated to Plaintiff, *see* Compl. ¶ 62 (admitting Azima's consent to terms), and is mandatory, *Azima*, 926 F.3d at 876 (finding clause mandatory). For the reasons explained below, the clause also encompasses Plaintiffs' claims in this action.

### A. Plaintiffs' RICO Claims are Covered by the Forum-Selection Clause

In reviewing the language of the FSC, the D.C. Circuit, citing to Second Circuit caselaw, held that its scope was "quite broad." *Azima*, 926 F.3d at 878 (remarking that "[i]f the parties had wished to mark a narrower boundary for this forum-selection clause, they could easily have done so") (citing *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001) (Sotomayor, J.)); *see also Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 432 (E.D.N.Y. 2014) ("The Second Circuit has endorsed an expansive reading of the scope of forum selection clauses, in keeping with the public policy favoring their use."). Applying the broad scope of the FSC, the D.C. Circuit held that Azima's claims of hacking were "link[ed]" to the "formation" of the Agreement and therefore bound by the FSC. *Azima*, 926 F.3d at 878.

The same result is warranted here for at least two independent, and independently sufficient, reasons: (1) despite Plaintiffs' false dichotomy, his claims of a "cover up" of the hacking are part and parcel of the same hacking claims the D.C. Circuit already found to be bound by the FSC; and (2) in any event, the RICO claims in the instant Complaint are explicitly asserted "in connection with" the Settlement Agreement, as well as its formation.

5

*First*, Plaintiffs' attempt to separate claims of a "cover-up" from the underlying alleged acts to escape the strictures of the D.C. Circuit's holding fails because acts aimed at concealing conduct *within* the scope of a forum-selection clause do not fall outside the clause. Courts addressing similar facts (and similar contract language) have consistently held that acts of concealment are covered by that language. *See Coregis Ins. Co.*, 241 F.3d at 129–30 (misrepresentations "intended to hide" a covered activity were themselves covered by clause in insurance contract because they were "related to" covered activity, and lawsuits based on misrepresentations were "unquestionably 'connected to'" the same); *see also Lazare Kaplan Int'l Inc.*, 337 F. Supp. 3d at 292 (RICO scheme involving, *inter alia*, alleged cover-up was subject to forum-selection clause because of its broad language).

Plaintiff himself previously recognized and conceded as much. Indeed, while he now tries to draw a sharp distinction between the allegations of hacking and the allegations of the cover-up of the hacking, and argues that the U.K. Proceeding is about the alleged hacking and this case is about the "cover up," Compl. ¶ 5 & n.2, he previously told this Court the opposite. In a 28 U.S.C. § 1782 application seeking discovery in support of the U.K. Proceeding, Azima described the U.K. Proceeding as including "efforts by the co-conspirators to *conceal* their actions . . . through 2020," Gopstein Decl., Ex. 2 (Reply Brief of Petitioner, *Azima v. Handjani*, No. 21-MC-501, Dkt. 13 (S.D.N.Y. Aug. 4, 2021)) at 5) (emphasis added), and the Court relied on this characterization in granting the application, *see* Gopstein Decl., Ex. 3 (Order, *Azima v. Handjani*, No. 21-MC-501, Dkt. 26 (S.D.N.Y. July 15, 2022)) at 17–18. And in the U.K. court, too, Azima has expressly included the same or similar allegations of the purported cover-up. *See* Joint Mem. At 11, 15 (citing Quinn Decl., Ex. 5 (RRRACC)). The purported distinction is a fantasy, and the D.C. Circuit's holding is on point here.

*Second*, Plaintiffs' claims here are explicitly asserted "in connection with" the Settlement Agreement. Indeed, the allegations "in the Complaint are littered with references to and events directly arising out of the Agreement." *F5 Capital v. RBS Sec. Inc.*, 2015 WL 5797019, at *7 (D. Conn. Sept. 30, 2015). Thus:

- The Complaint alleges that one of the purposes of the scheme was to "deceive Azima, the U.S. courts, UK courts, and the public to believe the 2016 Settlement Agreement was negotiated in good faith when in fact it was procured by fraud." Compl. ¶ 224.

- The Complaint also alleges that the Settlement Agreement "was a trap" that was used by Dechert to sue Azima in England on behalf of RAKIA in an effort to "neutralize him and cause him injury for attempting to bring the human rights abuses of Dechert and RAK to light." *Id.* ¶¶ 63, 64.

- The Settlement Agreement, and its clause that Azima had "at all times acted in good faith" leading up to its execution, was the basis of the U.K. Proceeding, in which much of the purported litigation misconduct at issue here took place. *See id.* ¶¶ 101–10; *see also* Gopstein Decl., Ex. 1 ¶ 3.2.

- The Complaint alleges a slew of litigation misconduct in the D.C. Proceeding with respect to the Settlement Agreement itself. *See, e.g., id.* ¶¶ 87–88, 96–97, 112, 125–26, 214, 224. For example, Plaintiffs allege that Dechert engaged in misconduct when it "insisted the 2016 Settlement Agreement was obtained through a good-faith negotiation, and not fraud" in a motion before the D.C. court. *Id.* ¶ 96. Indeed, Plaintiffs allege that all of the "RICO Conspirators' false statements" to the D.C. district court and D.C. Circuit "prevented Azima from demonstrating that the 2016 Settlement Agreement (including its UK forum

7

clause) was a fraud . . . and prevented Azima from obtaining a favorable judgment in the D.C. District Court Proceeding against RAKIA." *Id.* ¶ 112.

In short, Plaintiffs' claims against Dechert in the instant matter are explicitly asserted "in connection with" the Settlement Agreement.

Plaintiffs' claims here are also asserted "in connection with" the "formation" of the Agreement. According to the Complaint, the purpose of the alleged hacking underlying all of Plaintiffs' claims was "to induce [Azima] to enter into" the purportedly fraudulent Settlement Agreement, with the secret intention to then sue him for breach. Compl. ¶¶ 5, 26(a), 62–64.

Once a party demonstrates that a forum-selection clause encompasses the claims at issue, the opposing party bears a "heavy burden" of rebutting the presumption of its applicability by showing it would be "unfair, unjust, or unreasonable to hold that party to his bargain." *Martinez v. Bloomberg LP*, 740 F.3d 211, 219 (2d Cir. 2014). The Complaint makes no such showing here, and the D.C. Circuit found that Plaintiff could not carry such a burden, because England is an appropriate venue and "judicial economy and administrative convenience point towards resolving the parties' U.S. and U.K. claims in the same forum." *Azima*, 926 F.3d at 880. The same is true here, and dismissal is appropriate.

### B. Dechert Can Enforce the Forum-Selection Clause Against Plaintiffs

The fact that Dechert drafted rather than signed the Settlement Agreement does not alter the conclusion that the FSC compels dismissal. "[I]t is well established that 'a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Weingard v. Telepathy, Inc.*, 2005 WL 2990645, at *5 (S.D.N.Y. Nov. 7, 2005). Accordingly, "a non-signatory to a contract . . . may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013). This "closely related" test is satisfied

8

where, as here, a plaintiff alleges that "non-signatory defendants . . . have acted in concert with [a] signatory . . . ." *Overseas Ventures, LLC v. ROW Mgmt., Ltd., Inc.*, 2012 WL 5363782, at *6 (S.D.N.Y. Oct. 26, 2012) (citing cases). Here, Dechert is "closely related" to RAKIA, its client and the signatory, for two reasons: first, the Complaint alleges that Dechert acted in concert with RAKIA in connection with the course of conduct alleged in the Complaint; and second, Dechert was RAKIA's counsel in the drafting and execution of the Settlement Agreement itself.

*First*, the crux of Plaintiffs' complaint is that Dechert "played a central role" in an "Enterprise" with its "RICO [Co]conspirator" RAKIA. *See* Compl. ¶¶ 8, 26. According to Plaintiffs, Dechert "committed numerous predicate acts in violation of U.S. federal law in the ordinary course of Dechert's representation of RAKIA." *Id.* ¶ 185. The allegedly concerted conduct included hacking Azima as part of "a global campaign against perceived enemies" of RAK, *id.* ¶¶ 1, 5; "induc[ing] him to enter into a fraudulent settlement agreement with RAKIA," *id.* ¶ 26; "br[inging] suit against Azima in the English High Court on behalf of RAKIA," *id.* ¶ 69; and engaging in litigation misconduct "that threatened to unravel the Enterprise's conspiracy and reveal its role in the hacking of Azima," to name a few, *id.* ¶ 126. Dechert is thus alleged to have acted "in concert" with RAKIA, a signatory to the Settlement Agreement, and it can enforce the FSC against Plaintiffs on that ground alone. *See, e.g.*, *Weingard*, 2005 WL 2990645, at *6 (non-signatory defendants could enforce FSC where plaintiff alleged they acted "in concert" with signatory in a scheme to harm him).

*Second*, Dechert acted as RAKIA's counsel in drafting and executing the Settlement Agreement, and the Complaint alleges that "the Enterprise, *acting through Dechert*, induced Azima to enter into a written settlement agreement." *Id.* ¶ 62 (emphasis added). Courts have found that counsel who assist in preparation and execution of agreements are sufficiently "closely

9

related" to be covered by a forum-selection clause. *See Zanghi v. Ritella*, 2021 WL 4392756, at *5 (S.D.N.Y. Sept. 24, 2021); *Overseas Ventures, LLC*, 2012 WL 5363782, at *1, *6 (finding marketing agent who drafted and brokered real estate agreement "closely related").[2]

## II. The Complaint Fails to State a RICO Claim Against Dechert

To establish a "pattern of racketeering activity" a plaintiff must plead at least two predicate racketeering offenses over a ten-year period. 18 U.S.C. § 1961(5). In a case involving multiple defendants, the Complaint must allege that *each* defendant committed two or more predicate acts. *See Shetiwy v. Midland Credit Mgmt.*, 15 F. Supp. 3d 437, 443 (S.D.N.Y. 2014). And the only violations of law that can form a RICO predicate are the crimes delineated within the RICO statute itself. *See, e.g.*, *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 467 (S.D.N.Y. 2017). The Complaint fails to plausibly allege that Dechert violated a single such statute.

### A. Litigation Misconduct is not a RICO Predicate Act

As an initial matter, and as set forth in the Joint Memorandum, courts have consistently concluded that "litigation activities" cannot constitute RICO predicate acts. *See* Joint Mem. at 28–30 (citing, *e.g.*, *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010), *aff'd sub nom. Curtis v. L. Offs. of David M. Bushman, Esq.*, 443 F. App'x 582 (2d Cir. 2011) (collecting cases)). This principle applies with particular force to Dechert for the obvious reason that Dechert is a law firm and the allegations against it are almost exclusively

---

[2] Azima's inclusion of four of his (non-signatory) companies as Plaintiffs similarly does not affect the application of the FSC; those companies are also bound because their interests here are "directly related to, if not predicated upon" those of signatory Plaintiff Azima. *Fasano v. Li*, 47 F.4th 91, 103–04 (2d Cir. 2022) (finding non-signatory companies "closely related" to signatories because companies were either wholly owned or 60% owned by a signatory company's largest stockholder); *see also Universal Grading Serv. v. eBay, Inc.*, 2009 WL 2029796, at *16 (E.D.N.Y. June 10, 2009) (finding FSC enforceable as to non-signatory corporate plaintiff based on its "close business relationship" with signatory co-plaintiff who was corporation's president and a shareholder).

10

allegations of misconduct in or directly related to litigation. In particular, the Complaint alleges that Dechert "caus[ed] false statements to be made in U.S. and UK courts and to U.S. law enforcement agencies in furtherance of the scheme to defraud Azima," Compl. ¶ 239, and Exhibit B attached to the Complaint alleges several purportedly false or misleading statements made either to counsel or the Court in or regarding these proceedings. *See, e.g.*, Compl. Ex. B, ¶¶ 50, 53, 57, 64, 68, 69, 78, 82–88, 92, 118–19, 130, 172. These are precisely the types of activities courts have rejected as RICO predicate acts. *See Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 69 (E.D.N.Y. 2020) (law firm's "disseminating false statements to [state] court with intent to coerce plaintiff into settling" did not support RICO violation); *Curtis & Assocs., P.C.*, 758 F. Supp. 2d at 175–76 (law firms' mailing of pleadings and other litigation documents could not constitute RICO predicate); *Saluzzo v. Greenbaum*, 2011 WL 13234286, at *3 (N.D.N.Y. Feb. 4, 2011).

The sole non-litigation-related conduct Plaintiffs allege against Dechert is that Dechert "and others[] provided U.S. federal law enforcement agencies with a selection of documents stolen from Azima through hacking and an extensive dossier prepared by Dechert lawyers," without informing law enforcement that the documents were "illegally" obtained, Compl. ¶ 76, causing a short-lived but ultimately terminated investigation into Azima, *id.* ¶ 79. However, Plaintiffs fail to allege how giving documents or other evidence to law enforcement—whatever its providence—constitutes *any* unlawful act, let alone a delineated RICO predicate. And even if it could, petitioning the government is protected activity under the First Amendment pursuant to the *Noerr-Pennington* Doctrine. *See Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 229 F.3d 1135, at *1 (2d Cir. 2000) (unpublished table decision) (holding *Noerr-Pennington* doctrine applies to RICO claims); *Smith v. Combustion Eng'g, Inc.*, 856 F.2d 196, at *3 (6th Cir. 1988)

11

(unpublished table decision) (efforts to spark investigation were protected by the *Noerr-Pennington* Doctrine). Thus, this allegation fails as well.

### B. The Complaint Fails to Allege RICO Predicates Against Dechert

The Complaint broadly accuses Dechert of (1) witness tampering, (2) money laundering, (3) mail and wire fraud, and (4) obstruction of justice. *See* Compl. ¶ 239. Yet it fails to adequately allege any of these claims.

As an initial matter, the Complaint's brief discussion of alleged witness tampering makes no mention of Dechert at all, *see id*. ¶¶ 217–20, and the Complaint's exhibit listing the acts of alleged money laundering does not list a single alleged act involving Dechert. *See id*., Ex. A. The Complaint is thus obviously deficient with respect to these two supposed predicates.

With respect to mail and wire fraud, the Complaint alleges that Dechert used wires to falsely deny its clients' roles in the hacking, or arranged for the provision of false testimony along the same lines. *See, e.g.*, *id*., Ex. B, ¶¶ 50, 53, 82–88, 118–19. But as described in the Joint Memorandum, in order to sustain a claim for wire fraud, a plaintiff must allege that the object of the scheme was money or property. *See* Joint Mem. at 31–32 (citing *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020)). By Plaintiffs own telling, the object of these purportedly false statements or filings was to "conceal [the Enterprise's] role in the hacking of Azima," not to obtain any money or property from any Plaintiff. *See, e.g.*, Compl. ¶¶ 87–119; *see Hollander v. Pressreader, Inc.*, 2020 WL 2836189, at *4 (S.D.N.Y. May 30, 2020) ("Perhaps the most glaring defect—among many—in Hollander's wire fraud allegations is his failure to allege any money or property that was the object of the alleged wire fraud scheme.").

Finally, the Complaint's obstruction of justice claim against Dechert fails for a couple of reasons. First, to the extent Plaintiffs rely on false statements made in or prepared for the U.K. Proceeding, they are not actionable because the obstruction of justice statute applies only to

12

attempts to influence proceedings "in or of any court of the United States." 18 U.S.C. § 1503(a). Plaintiffs' breezy allegations that those actions were "intended, at least in part, to obstruct the D.C. District Court Proceeding," Compl. ¶¶ 101–11, are entirely conclusory, asserted without explanation or logical basis, and "not entitled to be assumed true." *Ashcroft*, 556 U.S. at 681. Second, as noted above, courts reject the filing of false statements in court by lawyers or law firms as obstruction of justice RICO predicates because they are, by their very nature, non-actionable litigation misconduct. *See Kim v. Kimm*, 884 F.3d 98, 103–04 (2d Cir. 2018) (rejecting preparation and filing of false statements as obstruction of justice RICO predicates); *Sundwall v. Weinstein & Assocs.*,1997 WL 507724, at *2 (D. Conn. Aug. 19, 1997).

### C. The Complaint Fails to Establish a "Pattern" of Predicate Acts

Even if the Complaint did allege an actionable RICO predicate against Dechert (and it does not), it would still fail as a matter of law because it does not allege a "pattern" of unlawful activity. It is well-established that courts should "take care to ensure that plaintiffs do not artificially fragment a singular act into multiple acts simply to invoke RICO." *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 168 (2d Cir. 2004) (cleaned up). In *Satinwood*, for example, the Second Circuit affirmed the district court's holding that allegations of repeated false statements to a court amounted to a single act and was therefore insufficient to establish a "pattern" for RICO purposes. *Id.* at 168, 180–82. Here, Plaintiffs similarly allege that Dechert made the same purportedly false statement multiple times by denying their clients' involvement in the hacking of Azima. *See* Compl. ¶¶ 87–100. Even if that sort of alleged litigation misconduct were actionable (which it is not), still these allegations would fail to establish a "pattern" of racketeering activity. *Satinwood*, 385 F.3d at 168, 180–82; *see also Curtis v. Greenberg*, 2021 WL 4340788, at *10 (E.D.N.Y. Sept. 23, 2021) ("Although the defendants' fraudulent acts spanned more than two years, each predicate act of fraud involved the same misrepresentations.").

13

### D. The Complaint Fails to Allege that Dechert Participated in the Operation or Management of the Enterprise

Finally, in order to state a RICO claim, Plaintiffs must allege that Dechert "conduct[ed]" the affairs of the enterprise. *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (noting that each RICO element must be established as to each defendant). That requires plausible allegations that Dechert "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). That test is not satisfied by merely "perform[ing] 'tasks that are necessary and helpful' to the enterprise." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 441 (S.D.N.Y. 2019) (quoting *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451–52 (S.D.N.Y. 2004)). Nor does a showing that a defendant was going about its own business suffice; the defendant must "conduct[] or participate[] in the conduct of the '*enterprise's* affairs,' not just [its] *own* affairs." *Reves*, 507 U.S. at 185.

Plaintiffs allege that Dechert participated in the Enterprise by "providing the resources and infrastructure" for others' criminal activity and by acting as legal counsel for RAKIA in the U.K. and D.C. proceedings. *See* Compl. ¶¶ 184–203, 239. But "provid[ing] 'goods and services that ultimately benefit the enterprise,'" is not enough to establish control over the enterprise's affairs. *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 441 (quoting *United States Fire Ins. Co.*, 303 F. Supp. 2d at 451–52). Nor are Plaintiffs' claims that Dechert filed statements in court, participated in meetings, and communicated that neither it nor its client were involved in alleged hacking sufficient to establish "operation or management," as courts have consistently held that "the provision of standard legal services" does not equate to conducting an enterprise's affairs, "even when the provision of services is 'essential to the operation of the RICO enterprise itself.'" *Madanes v. Madanes*, 981 F. Supp. 241, 255–57 (S.D.N.Y. 1997) (quoting *De Wit v. Firstar Corp.*, 879 F. Supp. 947, 966 (N.D. Iowa 1995), and collecting cases); *see also Azrielli v. Cohen Law*

14

*Offices*, 21 F.3d 512, 521–22 (2d Cir. 1994); *Morin v. Trupin*, 835 F. Supp. 126, 134–35 (S.D.N.Y. 1993) (collecting cases finding lawyers did not conduct enterprise's affairs even when "substantially involved in an enterprise's activities").[3]

## CONCLUSION

For the foregoing reasons, Dechert respectfully requests that the Court dismiss Plaintiffs' Complaint.

Dated: February 28, 2023
New York, New York

By: *[signature]*

Sean Hecker
John C. Quinn
David Gopstein
Mark Weiner
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
shecker@kaplanhecker.com
jquinn@kaplanhecker.com
dgopstein@kaplanhecker.com
mweiner@kaplanhecker.com

*Attorneys for Defendant Dechert LLP*

---

[3] To the extent Plaintiffs assert that Dechert is vicariously liable for the actions of Defendants Gerrard and Hughes, such claims fail because the Complaint does not adequately allege any RICO predicate acts against Gerrard or Hughes, for the reasons set forth in the Joint Memorandum and in their individual briefs.  For the avoidance of doubt, however, Dechert reserves all rights with respect to any purported factual bases for an assertion of vicarious liability, should this case or any part of it proceed.