UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FARHAD AZIMA,<br>ALG TRANSPORTATION, INC.,<br>MAIN 3260 LLC,<br>FFV W39 LLC, and<br>FFV DEVELOPMENT LLC,<br><br>                                   Plaintiffs,<br><br>v.<br><br>DECHERT LLP,<br>DAVID NEIL GERRARD,<br>DAVID GRAHAM HUGHES,<br>NICHOLAS DEL ROSSO,<br>VITAL MANAGEMENT SERVICES, INC.,<br>AMIT FORLIT,<br>INSIGHT ANALYSIS AND RESEARCH LLC,<br>SDC-GADOT LLC,<br>AMIR HANDJANI,<br>ANDREW FRANK, and<br>KARV COMMUNICATIONS,<br><br>                                   Defendants. | Case No. 1:22-cv-08728 (PGG) (JW)<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DECHERT LLP'S MOTION TO DISMISS**

Sean Hecker
John C. Quinn
David Gopstein
Mark Weiner
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
shecker@kaplanhecker.com
jquinn@kaplanhecker.com
dgopstein@kaplanhecker.com
mweiner@kaplanhecker.com

June 20, 2023                                              *Attorneys for Defendant Dechert LLP*

Plaintiffs' Opposition tries to sidestep the binding forum selection clause (the "FSC") in the 2016 Settlement Agreement by applying the wrong country's law and taking the untenable position that Dechert was not "closely related" to its own client—who was also, according to Plaintiffs' Complaint, its co-conspirator.  The Opposition then asserts that the Complaint—which mentions the Settlement Agreement more than twenty-five times and generally asserts a "cover up" of alleged conduct that the D.C. Circuit has already found falls within the scope of the FSC—somehow falls outside of the FSC's scope.  These flimsy arguments cannot overcome what is clear on the face of the Complaint and the FSC:  Plaintiffs are in the wrong forum.

The Opposition also fails to identify any well-pleaded allegations that Dechert itself engaged in cognizable RICO predicate acts, or participated in the management of the Enterprise.

**I.     The Forum Selection Clause Mandates Dismissal**

As set forth in the Dechert Motion, the FSC designates the courts of England as having "exclusive jurisdiction" over "any dispute or claim arising out of, or in connection with, [the Settlement Agreement] or its subject matter or formation." Declaration of David Gopstein ("Gopstein Decl."), Ex. 1 (Settlement Agreement) ¶ 7.  In *Azima v. RAK Inv. Auth.*, 926 F.3d 870 (D.C. Cir. 2019), the D.C. Circuit held that Azima's hacking claims were "connect[ed] with the formation" of the Settlement Agreement, and therefore dismissed his case on *forum non conveniens* grounds.  *Id.* at 878–79.  The same outcome is warranted here.

**A.  Dechert Can Enforce the Forum Selection Clause Against Plaintiffs**

The Opposition's primary argument is that Dechert cannot enforce the FSC because, according to Plaintiffs, the Court "must look to U.K. law to determine" who may enforce the FSC.  Opp. to Dechert at 9.  This argument is based solely on the FSC's choice-of-law provision stating that disputes shall be construed "in accordance with English law." *Id.* (quoting Gopstein Decl.,

Ex. 1 ¶ 7). And, say Plaintiffs, under U.K. law, Dechert, as a non-party, "cannot assert a claim to any benefit by virtue that contract." *Id.* at 10 (citing Declaration of Lord Hoffman (the "Hoffman Decl.") ¶ 8).

Plaintiffs' argument stumbles out of the gate. U.S. federal common law, not U.K. law, applies to the threshold question of whether Dechert may enforce the FSC. "When determining whether a non-signatory to a forum selection clause is bound by it, courts in this Circuit have consistently applied federal law, even where the agreement contains a choice of law provision specifying the law of a different jurisdiction." *Zeta Global Corp. v. Maropost Marketing Cloud, Inc.*, 2021 WL 1668134, at *4 (S.D.N.Y. Apr. 28, 2021) (citing *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 718, 722–23 (2d Cir. 2013) (applying federal law in determining defendant may enforce forum selection clause despite choice of Vatican law clause)). And under U.S. law, Dechert "may enforce the forum selection clause against a signatory" if it is "'closely related' to another signatory"; here, RAKIA. *Magi XXI, Inc.*, 714 F.3d at 723; Dechert Mot. at 9.

As set forth in the Dechert Motion, Dechert is "closely related" to RAKIA as a matter of law because: (1) Dechert is alleged to have acted "in concert" with RAKIA, *see Weingard v. Telepathy, Inc.*, 2005 WL 2990645, at *6 (S.D.N.Y. Nov. 7, 2005), and (2) Dechert acted as counsel in assisting in preparation and execution of the Settlement Agreement, *see Zanghi v. Ritella*, 2021 WL 4392756, at *5 (S.D.N.Y. Sept. 24, 2021). Dechert Mot. at 9–10.

The Opposition asserts that Dechert did not "act in concert" with RAK to cause Azima to enter into the Agreement because "RAK was simply Dechert's client" and "Dechert and Gerrard [] acted for their own benefit without their client's authority." Opp. to Dechert at 10–11. As a preliminary matter, RAKIA, not RAK, was the signatory to the Settlement Agreement, so that is the relevant entity, and Plaintiffs explicitly allege that RAKIA was Dechert's RICO co-

2

conspirator. *See* Compl. ¶ 26. Plaintiffs cannot run from their own allegations on a motion to dismiss.

Moreover, the Opposition itself asserts that Dechert orchestrated a scheme to "fraudulently induce Azima to enter into" the Settlement Agreement. Opp. to Dechert at 5–6. That is well beyond the level of involvement necessary to establish that it was foreseeable Dechert could invoke the FSC. *See Zanghi*, 2021 WL 4392756, at *5 ("[F]oreseeability standard implies that the non-signatory must have been involved in the transaction in some manner.") (cleaned up).

To try to hang on to something, the Opposition argues that even if Dechert can enforce the FSC against Azima, the companies he owns and included here as additional plaintiffs are not sufficiently closely related to him to be bound. Opp. to Dechert at 11. This is also mistaken, for two reasons.

*First*, a "close business relationship" is sufficient to establish the necessary ties to a forum selection clause. *See Universal Grading Serv. v. eBay, Inc.*, 2009 WL 2029796, at *16 (E.D.N.Y. June 10, 2009) (sufficient that individual plaintiff was president and shareholder of corporate plaintiff); *Midamines SPRL Ltd. v. KBC Bank NV*, 2014 WL 1116875, at *6 (S.D.N.Y. Mar. 18, 2014) (non-signatory closely related where plaintiff formed non-signatory company "shortly before the initiation of th[e] action, . . . [plaintiff] is the sole officer of record for [the company, and . . . [the company] operates under the "Assumed Name" of [signatory]). Here, Azima admits that he wholly owns ALG Transportation, Inc. and has a 50% stake in FFV Development LLC, and that 3260 LLC and FFV W39 LLC are both wholly-owned subsidiaries of FFV Development. Compl. ¶¶ 11–14. This is more than enough. *Fasano v. Li*, 47 F. 4th 91, 103–04 (2d Cir. 2022) (companies were bound by forum selection clause because they "were wholly owned and 60% owned by" signatory).

3

*Second*, the closely related test is also satisfied if the non-signatory's interests "are completely derivative of and directly related to, if not predicated upon" the signatory's interests. *Power Up Lending Grp., Ltd. v. Nugene Int'l, Inc.*, 2019 WL 2119844, at *7 (E.D.N.Y. Jan. 10, 2019) (cleaned up and citation omitted). Here, all of the corporate plaintiffs' injuries are derivative of injuries to Azima due to purported "negative publicity," Compl. ¶ 180; indeed, there is no allegation the Defendants were even aware of these corporate entities. *See F5 Cap. v. RBS Sec. Inc.*, 2015 WL 5797019, at *5 (D. Conn. Sept. 30, 2015) (non-signatory closely related where "each of the claims concerns conduct attributable, at least in part, to [signatory]").

### B. Plaintiffs' RICO Claims are Covered by the Forum Selection Clause

As described in Dechert's opening brief, the Complaint's RICO claims fall within the substantive reach of the FSC for two reasons. *First*, the Complaint says so. It expressly raises matters "in connection with" the Settlement Agreement, contending that the purpose and effect of the scheme was to "deceive Azima, the U.S. courts, UK courts, and the public to believe that the 2016 Settlement Agreement was negotiated in good faith when in fact it was procured by fraud." Compl. ¶ 224. And it raises matters "in connection with" the "*formation*" of the Agreement because it alleges that the hacking underlying Plaintiff's claims was designed to "induce [Azima] to enter into" the Agreement in the first place. *Id*. ¶ 26(a); *see* Dechert Mot. at 5–8.

*Second*, the D.C. Circuit already held that the FSC covers Azima's hacking claims. *See Azima v. RAK Inv. Auth.*, 926 F.3d 870, 878 (D.C. Cir. 2019). And under binding precedent, when underlying claims are within the scope of an FSC, claims of a "cover-up" are too. *See Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 129–30 (2d Cir. 2001); *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 292 (S.D.N.Y. 2018). The Opposition responds that U.K. law should apply—the first time Azima has made that assertion with respect to the scope of the

4

FSC.[1]  Opp. to Dechert at 12.  Regardless, U.K. law does not change the outcome.  As courts in this district have noted, "it appears that English law is equally, if not more, generous in its interpretation of forum-selection clauses than federal law, and the Court would likely reach the same result in this case if it were to apply English law." *George V Eatertainment S.A. v. Elmwood Ventures LLC*, 2023 WL 2403618, at *4 n.3 (S.D.N.Y. Mar. 8, 2023).  And Plaintiffs' Declaration from Lord Hoffman does not suggest otherwise; he simply says that he "find[s] it hard to see how these allegations . . . can be said to arise out of the relationship between RAKIA and Heavylift International Airlines or the Settlement Agreement."  Hoffman Decl., ¶ 11.  But Lord Hoffman ignores the plain language of the FSC, which reaches far more broadly than claims that "arise out of" the Settlement Agreement.  Rather, the FSC covers "any dispute or claim arising out of, or in connection with, it or its subject matter or formation."  Gopstein Decl., Ex. 1 ¶ 7.  As stated in the attached Declaration of Lord David Neuberger, that provision has a broad scope that reaches the conduct alleged here, even under UK law.[2]  Declaration of Lord Neuberger, ¶¶ 9–13.

Plaintiff relies on *Rio Tinto PLC v. Vale S.A.*, 2014 WL 7191250 (S.D.N.Y. Dec. 17, 2014), but that case is easily distinguished.  First, *Rio Tinto* involved a *non*-exclusive jurisdiction clause, as opposed to the exclusive jurisdiction mandated here.  *Id.* at *10.  Second, *Rio Tinto* involved a more limited forum selection clause, encompassing only disputes which "may arise out of or in connection with" a prior confidentiality agreement.  *Id.*  Indeed, the D.C. Circuit relied on the

---

[1] Azima did not invoke U.K. law with respect to the scope of the FSC before the D.C. federal courts, and he should be estopped from doing so here.  *See Kurz v. Chase Manhattan Bank USA, N.A.*, 319 F. Supp. 2d 457, 462 (S.D.N.Y. 2004) (plaintiff who did not appeal choice of law issue collaterally estopped from asserting choice of law in subsequent proceeding); *NatTel LLC v. SAC Cap. Advisors*, 2005 WL 2253756, at *8 (D. Conn. Sept. 16, 2005).

[2] This is particularly so when read in conjunction with clause 3.1 of the Settlement Agreement, which provides that it "is in full and final settlement of all claims, in any jurisdiction, whether or not presently known to [the parties] or to the law," Gopstein Decl., Ex. 1 ¶ 3.1.  Decl. of Lord Neuberger, ¶¶ 7–8.

"formation" language present here but not present in *Rio Tinto* to conclude Azima's hacking claims were within its scope. *Azima*, 926 F.3d at 878. Third, the terms of the confidentiality agreement in *Rio Tinto* were "subsidiary" or "irrelevant" to the causes of action. 2014 WL 7191250, at *11. Here, by contrast, the Complaint relies heavily on the Settlement Agreement as a key element of the purported RICO conspiracy. *See* Dechert Mot. at 7 (collecting Complaint cites). This includes allegations of the "cover up," which was purportedly to "deceive Azima, the U.S. courts, UK courts, and the public to believe that the 2016 Settlement Agreement was negotiated in good faith when in fact it was procured by fraud." Compl. ¶ 224.

Finally, Plaintiffs retreat to the argument that the Settlement Agreement is unenforceable "because it was obtained by fraud." Opp. to Dechert at 15 (citing *Charter Oak Oil Co v. Applied Underwriters, Inc.*, 2018 WL 1046787 (D. Conn. Feb. 26, 2018)). However, "the case law in this Circuit is abundantly clear that an allegation of fraud in the inducement of a contract in general is insufficient to invalidate a forum selection provision; rather, the party must show that the forum selection clause itself was the product of fraud." *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, 2009 WL 4907060, at *3 (S.D.N.Y. Dec. 21, 2009) (collecting cases). Plaintiffs here have made no such allegation. *See also J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, 181 F.3d 82, at *1 (2d Cir. 1999).[3]

---

[3] The Opposition cites to *Charter Oak*, which is plainly inapposite. That court did not hold a forum selection clause unenforceable due to allegations of fraudulent inducement; rather, it held that the plaintiff's claims did not fall within the scope of the clause. 2018 WL 1046787, at *6. And contrary to Plaintiffs' claim, Opp. to Dechert at 13 n.8, courts in this Circuit have consistently held that the possibility of multiple parallel proceedings does not render an FSC unenforceable. *Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*, 2010 WL 3743826, at *11 (S.D.N.Y. Sept. 24, 2010) (Gardephe, J.). Indeed, the court in the one case cited by Plaintiffs later confirmed, on reconsideration, that "courts in this Circuit have declined to credit such arguments in evaluating forum selection clauses." *Charter Oak Oil Co., Inc. v. Applied Underwriters, Inc.*, 2018 WL 1046787, at *7 (D. Conn. Feb. 26, 2018).

## II. The Complaint Fails to State a RICO Claim Against Dechert

The Opposition underscores Plaintiffs' pleading failures with respect to Dechert by focusing nearly exclusively on the alleged conduct of co-Defendants Gerrard and Hughes, and asserting vicarious liability. *See* Opp. to Dechert at 16–22. But any assertion of vicarious liability fails for the reasons set forth in the Joint Memorandum and the individual briefs of Gerrard and Hughes. Dechert Mot. at 15 n.3. We therefore respond solely to the Opposition's half-hearted attempts to assert that Dechert itself engaged in RICO activity.

The Opposition argues that Dechert took "actions to facilitate the Enterprise's misconduct" by "ignoring [] evidence" regarding Gerrard, storing "hacked data on its servers," providing Gerrard "do-not-enter rooms," giving Gerrard phones, perpetuating a "party line" that Gerrard had acted appropriately, and "instigat[ing]" a law enforcement investigation. Opp. to Dechert at 19 (citations omitted). But none of these are remotely RICO predicate acts. *See* 18 U.S.C. § 1961(1). Otherwise, Plaintiffs point to things like a former partner's alleged participation in a meeting and "support[ing] Gerrard's false statements," Opp. to Dechert at 21–22, which are clearly allegations of litigation misconduct not actionable under RICO. *See* Dechert Mot. at 10–11.

Nor have Plaintiffs established that Dechert "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). The applicable standard for operation or management requires more than a defendant "merely attend[ing] to its own business." *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 441 (S.D.N.Y. 2019). Despite the Opposition's strained rhetoric, provision of phones, offices, and the like demonstrates nothing more.

## III. Conclusion

For the foregoing reasons, Dechert respectfully requests that the Complaint be dismissed.

7

Dated: June 20, 2023
      New York, New York

By: _____
Sean Hecker
John C. Quinn
David Gopstein
Mark Weiner
Kaplan Hecker & Fink LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
Fax: (212) 564-0883
shecker@kaplanhecker.com
jquinn@kaplanhecker.com
dgopstein@kaplanhecker.com
mweiner@kaplanhecker.com

*Attorneys for Defendant Dechert LLP*