**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| FARHAD AZIMA,<br>ALG TRANSPORTATION, INC.,<br>MAIN 3260 LLC,<br>FFV W39 LLC, and<br>FFV DEVELOPMENT LLC,<br><br>                    Plaintiffs,<br><br>v.<br><br>DECHERT LLP,<br>DAVID NEIL GERRARD,<br>DAVID GRAHAM HUGHES,<br>NICHOLAS DEL ROSSO,<br>VITAL MANAGEMENT SERVICES, INC.,<br>AMIT FORLIT,<br>INSIGHT ANALYSIS AND RESEARCH LLC,<br>SDC-GADOT LLC,<br>AMIR HANDJANI,<br>ANDREW FRANK, and<br>KARV COMMUNICATIONS,<br><br>                    Defendants. | Case No. 1:22-cv-08728 (PGG) (JW)<br><br><br>**ORAL ARGUMENT REQUESTED** |

**JOINT MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTIONS TO DISMISS**

*[Signature blocks on following page.]*

February 28, 2023

David G. Barger*
Michael R. Sklaire*
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
David.Barger@gtlaw.com
Michael.Sklaire@gtlaw.com

Daniel Filor
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-6758
Filord@gtlaw.com

*Counsel for Defendants Amir Handjani,
Andrew Frank and KARV Communications*

Andrew St. Laurent
Evan W. Bolla
HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street, 53rd Floor
New York, NY 10005
Tel: (212) 397-3370
andrew@hs-law.com
ewbolla@hs-law.com

*Counsel for Defendant David Neil Gerrard*

Samuel Rosenthal, Esq.
Lisa Herbert, Esq.
NELSON MULLINS RILEY & SCARBOROUGH LLP
330 Madison Avenue, 27th Floor
New York, New York 10017
Tel: (212) 413-9058
sam.rosenthal@nelsonmullins.com
lisa.herbert@nelsonmullins.com

*Counsel for Defendants Nicholas Del Rosso
and Vital Management Services, Inc.*

Sean Hecker
John C. Quinn
David Gopstein
Mark Weiner
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
shecker@kaplanhecker.com
jquinn@kaplanhecker.com
dgopstein@kaplanhecker.com
mweiner@kaplanhecker.com

*Counsel for Defendant Dechert LLP*

Helen Gredd
Michael Gerber
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, NY 10110
Tel: (212) 921-8399
hgredd@lswlaw.com
mgerber@lswlaw.com

*Counsel for Defendant David Graham Hughes*

Elan I. Baret, Esq.*
BARET LAW GROUP, P.A.
3999 Sheridan Street, 2nd Floor
Hollywood, FL 33021
Tel: (954) 486-9966
elan@baretlawgroup.com

Christopher S. Salivar, Esquire*
CHRISTOPHER S. SALIVAR, P.L.L.C.
301 W. Atlantic Ave., Suite O-5
Delray Beach, FL 33444
Tel: (561) 628-8908
cssalivarattorney@gmail.com

*Counsel for Defendants Insight Analysis and
Research, LLC, SDC-Gadot, and Amit Forlit*

*Admitted pro hac vice*

## <u>TABLE OF CONTENTS</u>

**<u>Page(s)</u>**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES .......................................................................................... iii

PRELIMINARY STATEMENT ..................................................................................... 1

PLAINTIFFS' ALLEGATIONS .................................................................................... 4

   I.   The Parties and Background ................................................................................ 4

   II.   Plaintiffs' Hacking Allegations and the Settlement Agreement ......................... 6

   III.  Following the Alleged Hacking, Plaintiffs Allege Wrongdoing by Defendants in Other Litigations ....................................................................................................... 7

      A.   Parallel Actions in the U.K. and U.S. Arise from the Same Alleged Conduct and Involve the Same Parties Here ............................................................ 7

      B.   Plaintiffs' RICO Claims Depend Largely on Claims of an Alleged "Cover Up" in Other Litigations .......................................................................... 10

      C.   Plaintiffs Allege Harm to Reputation and Goodwill, Lost Business Opportunities, and Legal Expenses ....................................................... 13

STANDARD OF REVIEW ............................................................................................ 13

ARGUMENT .................................................................................................................. 14

   I.   Principles of Comity and the Prohibition on Claim-Splitting Require Dismissal ........... 14

      A.   International Comity Dictates Dismissal Because the Same Issues are Being Litigated in the U.K. Proceeding ........................................................... 14

          1.   This Case and the U.K. Proceeding are Parallel Proceedings.............................. 15

          2.   "Exceptional Circumstances" Warrant Abstention.............................. 17

      B.   The Doctrine of Claim-Splitting Dictates Dismissal Because the Same Issues are Being Litigated in the North Carolina Proceeding ..................................... 18

   II.   Plaintiffs' Claims are Barred by the Statute of Limitations.............................. 20

   III.  The Complaint Does Not Adequately Plead the Elements of a RICO Claim.................. 22

      A.   The Complaint Fails to Allege the Existence of a RICO Enterprise ........................ 23

B. The Complaint Fails to Allege a Pattern of Racketeering Activity ............................ 25

    1. The Complaint Does Not Allege an Open-Ended Scheme ................................ 26

    2. The Complaint Does Not Allege a Closed-Ended Scheme ................................. 27

C. The Complaint Does Not Allege Cognizable RICO Predicates ................................ 28

    1. Litigation Activities Are Not RICO Predicates ..................................................... 28

    2. Acts of Concealment Also Do Not Constitute RICO Predicates ......................... 30

    3. The Complaint Does Not Plead a Scheme to Obtain Money or Property ........... 31

IV. Plaintiffs Fail to Plead Cognizable Injury or Proximate Cause ........................................ 32

A. Azima Fails to Allege a Cognizable Injury .................................................................. 33

B. The Corporate Plaintiffs Fail to Allege Cognizable Injury ......................................... 35

C. The Complaint Fails to Establish Proximate Cause .................................................... 37

D. Injuries From a "Cover Up" Are Not Proximately Caused Under RICO as a Matter of Law ................................................................................................................................ 39

V. Because the Complaint Does Not Adequately Plead a § 1962(c) Claim, the § 1962(d) Claim also Fails ...................................................................................................................... 40

CONCLUSION ............................................................................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. Jacobs*,
    950 F.2d 89 (2d Cir. 1991) ............................................................................. 19

*American Home Mortg. Corp. v. UM Securities Corp.*,
    2007 WL 1074837 (S.D.N.Y. Apr. 9, 2007) ................................................... 34

*American Medical Ass'n v. United Healthcare Corp.*,
    588 F. Supp. 2d 432 (S.D.N.Y. 2008) .............................................. 32, 33, 34, 35

*Anderson v. Rochester–Genesee Reg'l Transp. Auth.*,
    337 F.3d 201 (2d Cir. 2003) ............................................................................. 7

*Angermeir v. Cohen*,
    14 F. Supp. 3d 134 (S.D.N.Y. 2014) ............................................................... 34

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 13

*Azima v. Del Rosso*,
    2021 WL 5861282 (M.D.N.C. Dec. 10, 2021) ......................................... *passim*

*Azima v. RAK Inv. Auth.*,
    926 F.3d 870 (D.C. Cir. 2019) ......................................................................... 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................... 13

*Bingham v. Zolt*,
    66 F.3d 553 (2d Cir. 1995) ............................................................................... 21

*Black v. Ganieva*,
    2022 WL 2374514 (S.D.N.Y. June 30, 2022) .......................................... 24, 30, 35

*Boyle v. United States*,
    556 U.S. 938 (2009) ......................................................................................... 23

*Brock v. Zuckerberg*,
    2021 WL 2650070 (S.D.N.Y. June 25, 2021) ................................................ 29

*Browning v. Flexsteel Indus., Inc.*,
    955 F. Supp. 2d 900 (N.D. Ind. 2013) ............................................................ 31

*Butcher v. Wendt*,
    975 F.3d 236 (2d Cir. 2020).................................................................... 3, 29

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001) ........................................................................................ 24

*Citadel Management, Inc. v. Telesis Trust, Inc.*,
    123 F. Supp. 2d 133 (S.D.N.Y. 2000)........................................ 16, 29, 39

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
    187 F.3d 229 (2d Cir. 1999)....................................................................... 25, 26

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976) ........................................................................................ 19

*Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*,
    758 F. Supp. 2d 153 (E.D.N.Y. 2010) ................................................. 28, 29

*Curtis v. Citibank, N.A.*,
    226 F.3d 133 (2d Cir. 2000)....................................................................... 19, 20

*D. Patrick Inc. v. Ford Motor Co.*,
    8 F.3d 455 (7th Cir. 1993) .......................................................................... 16

*D'Orange v. Feely*,
    877 F. Supp. 152 (S.D.N.Y. 1995) ......................................................... 29

*Daigneault v. Eaton Corp.*,
    2008 WL 2604929 (D. Conn. June 16, 2008)....................................... 25

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001)....................................................................... 23

*Democratic Nat'l Comm. v. Russian Fed'n*,
    392 F. Supp. 3d 410 (S.D.N.Y. 2019)....................................... 3, 24, 30, 31

*Denney v. Deutsche Bank, AG*,
    443 F.3d 253 (2d. Cir.2006)....................................................................... 32

*Empire Merchants v. Reliable Churchill LLLP*,
    2017 WL 5559030 (E.D.N.Y. Mar. 16, 2017) ...................................... 40

*Empire Merchants, LLC v. Reliable Churchill LLLP*,
    902 F.3d 132 (2d Cir. 2018)....................................................................... 33, 37

*Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*,
    2022 WL 901660 (S.D.N.Y. Mar. 28, 2022) ................................... 3, 23, 24

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)............................................................ 23, 25, 27, 40

*First City Nat'l Bank & Tr. Co. v. Simmons*,
  878 F.2d 76 (2d Cir. 1989)......................................................................... 19

*First Nationwide Bank v. Gelt Funding Corp.*,
  27 F.3d 763 (2d Cir. 1994)......................................................................... 35

*G-I Holdings, Inc. v. Baron & Budd*,
  238 F. Supp. 2d 521 (S.D.N.Y. 2002)........................................................ 36

*Goldfine v. Sichenzia*,
  118 F. Supp. 2d 392 (S.D.N.Y.2000).......................................................... 23

*Gompers v. United States*,
  233 U.S. 604 (1914).................................................................................. 16

*Grace Int'l Assembly of God v. Festa*,
  797 F. App'x 603 (2d Cir. 2019) ........................................................ 4, 25, 26, 28

*Gross v. Waywell*,
  628 F. Supp. 2d 475 (S.D.N.Y. 2009)................................................... 14, 23, 28

*Grunewald v. United States*,
  353 U.S. 391 (1957).................................................................................. 31

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990)......................................................................... 33

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010).......................................................................... 33, 36, 37, 38

*Hollander v. Flash Dancers Topless Club*,
  340 F. Supp. 2d 453 (S.D.N.Y. 2004)........................................................ 33

*In re American Express Co. S'holder Litig.*,
  39 F.3d 395 (2d Cir. 1994)......................................................................... 37

*In re Merrill Lynch Ltd. Partnerships Litig.*,
  154 F.3d 56 (2d Cir. 1998)......................................................................... 21

*J.T. v. de Blasio*,
  500 F. Supp. 3d 137 (S.D.N.Y. 2020)................................................... *passim*

*Kelly v. United States*,
  140 S. Ct. 1565 (2020)......................................................................... 31, 32

*Kerik v. Tacopina*,
　64 F. Supp. 3d 542 (S.D.N.Y. 2014), 64 F. Supp. 3d ................................................. 21, 33, 38

*Kim v. Kimm*,
　884 F.3d 98 (2d Cir. 2018)...................................................................................... 3, 29, 30

*Kingstown Cap. Mgmt., L.P. v. Vitek*,
　2020 WL 5350492 (S.D.N.Y. Sept. 4, 2020)........................................................ 15, 17, 18

*Koch v. Christie's Int'l PLC*,
　785 F. Supp. 2d 105 (S.D.N.Y. 2011)............................................................................. 20

*Kottler v. Deutsche Bank AG*,
　607 F. Supp. 2d 447 (S.D.N.Y. 2009)............................................................................. 13

*Kramer v. Time Warner Inc.*,
　937 F.2d 767 (2d Cir. 1991).............................................................................................. 7

*Lefkowitz v. Bank of New York*,
　2003 WL 22480049 (S.D.N.Y. Oct. 31, 2003) ............................................................... 27

*Leung v. Law*,
　387 F. Supp. 2d 105 (E.D.N.Y. 2005) ............................................................................ 39

*McCarthy v. Dun & Bradstreet Corp.*,
　482 F.3d 184 (2d Cir. 2007)............................................................................................... 4

*Motorola Credit Corp. v. Uzan*,
　322 F.3d 130 (2d Cir. 2003).............................................................................. 4, 32, 34

*Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*,
　165 F. Supp. 2d 514 (S.D.N.Y. 2001)............................................................................. 24

*Nygård v. Bacon*,
　2021 WL 3721347 (S.D.N.Y. Aug. 20, 2021) ................................................................ 35

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
　2022 WL 480475 (2d Cir. Feb. 17, 2022)................................................................. 36, 38

*Pharr v. Evergreen Gardens, Inc.*,
　2004 WL 42262 (S.D.N.Y. Jan. 7, 2004) ....................................................................... 21

*Preway Inc. v. Touche Ross & Co.*,
　1987 WL 109924 (W.D. Wis. Feb. 18, 1987)................................................................. 31

*Price v. Gast*,
　2000 WL 369381 (S.D.N.Y. Apr. 11, 2000).................................................................. 27

*Prichard v. 164 Ludlow Corp.*,
  390 F. Supp. 2d 408 (S.D.N.Y. 2005)................................................................. 33, 34

*Purchase Real Estate Grp., Inc. v. Jones*,
  2010 WL 3377504 (S.D.N.Y. Aug. 24, 2010) ......................................................... 22

*Rajaratnam v. Motley Rice, LLC*,
  449 F. Supp. 3d 45 (E.D.N.Y. 2020) ................................................................. 30, 32

*Red Ball Interior Demolition Corp. v. Palmadessa*,
  874 F. Supp. 576 (S.D.N.Y. 1995) .................................................................... 37, 39

*Reich v. Lopez*,
  858 F.3d 55 (2d Cir. 2017)..................................................................................... 26

*Rosendale v. Citibank, N.A.*,
  1996 WL 175089 (S.D.N.Y. Apr. 15, 1996).............................................................. 35

*Rosner v. Bank of China*,
  528 F. Supp. 2d 419 (S.D.N.Y. 2007)...................................................................... 40

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000)....................................................................................... 7

*Royal & Sun All. Ins. Co.of Can. v. Century Int'l Arms, Inc.*,
  466 F.3d 88 (2d Cir. 2006)..................................................................................... 14

*Saluzzo v. Greenbaum*,
  2011 WL 13234286 (N.D.N.Y. Feb. 4, 2011) .......................................................... 29

*Schenk v. Citibank/Citigroup/Citicorp*,
  2010 WL 5094360 (S.D.N.Y. Dec. 9, 2010) ......................................................... 1, 7

*Schlaifer Nance & Co. v. Est. of Warhol*,
  119 F.3d 91 (2d Cir. 1997)..................................................................................... 28

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S.479 (1985)................................................................................................ 23

*Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*,
  17 F. Supp. 3d 207 (E.D.N.Y. May 7, 2014) ............................................................ 34

*Speight v. Benedict*,
  2007 WL 951492 (N.D.N.Y. Mar. 28, 2007) ........................................................... 29

*Spool v. World Child Int'l Adoption Agency*,
  520 F.3d 178 (2d Cir. 2008)................................................................................... 26

*Stochastic Decisions, Inc. v. DiDomenico,*
    995 F.2d 1158 (2d Cir. 1993) ................................................................. 34

*Sykes v. Mel Harris & Assocs.*, LLC,
    757 F. Supp. 2d 413 (S.D.N.Y. 2010) ..................................................... 30

*Tarazi v. Truehope Inc.,*
    958 F. Supp. 2d 428 (S.D.N.Y. 2013) ............................................... 14, 18

*Tech. Opportunity Grp., Ltd. v. BCN Telecom, Inc.,*
    2019 WL 4688628 (S.D.N.Y. Sept. 25, 2019) ..................................... 4, 22

*Tera Grp., Inc. v. Citigroup, Inc.,*
    2019 WL 3457242 (S.D.N.Y. July 30, 2019) .......................................... 19

*Tymoshenko v. Firtash,*
    57 F. Supp. 3d 311 (S.D.N.Y. 2014) ...................................................... 36

*U1it4less, Inc. v. Fedex Corp.,*
    871 F.3d 199 (2d Cir. 2017) ................................................................... 25

*United States v. Aulicino,*
    44 F.3d 1102 (2d Cir. 1995) ................................................................... 26

*Vanover v. NCO Fin. Servs., Inc.,*
    857 F.3d 833 (11th Cir. 2017) ................................................................ 19

*von Spee v. von Spee,*
    514 F. Supp. 2d 302 (D. Conn. 2007) ........................................ 14, 17, 18

*Watral v. Silvernails Farm LLC,*
    51 F. App'x 62 (2d Cir. 2002) ................................................................ 27

*Weaver v. James,*
    2011 WL 4472062 (S.D.N.Y. Sept. 27, 2011) ........................................ 25

*Westchester Cnty. Indep. Party v. Astorino,*
    137 F. Supp. 3d 586 (S.D.N.Y. 2015) ..................................................... 32

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.,*
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) ............................................... 20, 22

*Wyler-Wittenberg v. MetLife Home Loans, Inc.,*
    899 F. Supp. 2d 235 (E.D.N.Y. 2012) ..................................................... 19

**Statutes**

18 U.S.C. § 1503(a) ............................................................................................... 28

18 U.S.C. § 1515(a)(1) ........................................................................................... 28

18 U.S.C. § 1962 ................................................................................... 13, 23, 24, 40

18 U.S.C. § 1964(c) ................................................................................................ 13

28 U.S.C. § 1782 .................................................................................................... 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 13, 14

**Other Authorities**

Complaint, *Azima v. Del Rosso*,
    No. 20-cv-954 (M.D.N.C. Oct. 15, 2020) ...................................................... 9

Complaint, *Azima v. RAK Inv. Auth.*,
    No. 16-cv-01948 (D.D.C. Sep 30, 2016) ...................................................... 20

Order, *Azima v. Handjani*,
    No. 21-MC-501 (S.D.N.Y. July 15, 2022) ...................................................... 3

Order, *Ras Al Khaimah Inv. Auth. v. Azima*,
    Case No. HC-2016-002798 (May 27, 2022) .................................................. 18

*Ras Al Khaimah Inv. Auth. v. Azima*,
    [2020] EWCH 1327 (Ch) ............................................................................... 1

*Ras Al Khaimah Inv. Auth. v. Azima*,
    [2021] EWCA Civ 349 ................................................................................... 1

*Ras Al Khaimah Inv. Auth. v. Azima*,
    [2022] EWHC 2727 (Ch) ............................................................................... 9

*Ras Al Khaimah Inv. Auth. v. Azima*,
    [2022] EWHC 2980 (Ch) ............................................................................... 9

Reply Brief of Petitioner, *Azima v. Handjani*,
    No. 21-MC-501 (S.D.N.Y. Aug. 4, 2021) ...................................................... 3

Re-Re-Re-Amended Counterclaim, *Ras Al Khaimah Inv. Auth. v. Azima*,
    Case No. HC-2016-002798 (Nov. 8, 2022) .................................................... 9

Defendants Dechert LLP ("Dechert"), David Neil Gerrard, David Graham Hughes, Nicholas Del Rosso, Vital Management Services, Inc. ("Vital"), Amit Forlit,  Insight Analysis and Research LLC ("Insight"), SDC-Gadot LLC ("SDC-Gadot"), Amir Handjani, Andrew Frank, and KARV Communications ("KARV") respectfully submit this joint memorandum of law in support of their motions to dismiss the Complaint filed by Plaintiffs on October 13, 2022.

## PRELIMINARY STATEMENT

Plaintiff Farhad Azima is a party in ongoing litigation in the United Kingdom and the Middle District of North Carolina.  In the U.K. litigation, the English High Court has found that Azima engaged in serious wrongdoing, including (i) backdating documents to manufacture a contractual dispute, (ii) fraudulently inducing his counterparty to settle that dispute for millions of dollars, and (iii) conspiring with others to misappropriate funds from the same counterparty and then concealing misappropriation through bribery and fraud.[1]

One of Azima's central strategies has been to argue that his misconduct came to light only through a campaign of hacking organized and then covered up by his litigation adversaries and their agents, and that their claims against him should be therefore dismissed on that basis.  He has also asserted affirmative claims against them for the hacking.  To date, Azima has not succeeded: the U.K. Court of Appeal found that "the hacked materials ought to have been disclosed by Mr[.] Azima anyway" during the discovery process, and that it would not have stricken the claims against him even if his adversaries were responsible for the hacking because that "would leave Mr. Azima with the benefit of his fraud."  Quinn Decl., Ex. 2 (*Ras Al Khaimah Inv. Auth. v. Azima* [2021] EWCA Civ 349) ¶ 62.  Meanwhile, in the Middle District of North Carolina, Azima brought

---

[1] *See* Declaration of John C. Quinn ("Quinn Decl."), Ex. 1 (*Ras Al Khaimah Inv. Auth. v. Azima* [2020] EWCH 1327 (Ch)) ¶¶ 91, 181, 189, 244.  As noted below in footnote 4, the Court can take judicial notice of filings in relevant litigation.  *See Schenk v. Citibank/Citigroup/Citicorp*, 2010 WL 5094360, at *2 (S.D.N.Y. Dec. 9, 2010).

a lawsuit alleging the same claim as in London, that he was the victim of hacking, but also that as a result of that hacking his trade secrets were publicly disclosed. *See Azima v. Del Rosso*, No. 20-cv-954 (M.D.N.C. Oct. 15, 2020).

And so, while he continues to press these theories in the U.K. and M.D.N.C. proceedings, Mr. Azima is also trying a new tactic:  he comes to this Court with a sprawling civil RICO complaint against his adversaries' lawyers and alleged agents, alleging yet again the same campaign of hacking and cover-up that he has raised in the U.K. and M.D.N.C. proceedings—and demanding treble damages.

This gambit fails at the gate for multiple independent reasons.  It is often said that "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 165 (S.D.N.Y. 2020).  That principle could not be more apt here.

As an initial matter, the Court should dismiss this case based on principles of comity and the prohibition of claim-splitting.  The claims here are repetitive of those raised in the U.K. and Middle District of North Carolina.  The trial and appellate courts involved in the U.K. proceeding, in particular, have been overseeing ongoing litigation based on Azima's allegations for several years, and were this case to proceed, it would simply tread over ground that has been or will be trod in the U.K. proceedings.

Azima posits a difference between the two proceedings, arguing that the U.K. case is about the *hacking*, and this case is about the *cover-up* of the hacking.  Even if Azima's position were accurate, comity would still weigh in favor of dismissing this case.  Allegations of a cover-up would be so intertwined with allegations of the alleged wrongdoing to be covered up (i.e., the hacking), that the allegations should be tried before the same tribunal, and at the same time.

Permitting Azima's civil RICO suit against counsel and alleged agents to proceed "would 'engender wasteful satellite litigation,'" *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018).

But Azima's position is simply not correct, as he previously told this Court the opposite. In 2021, Azima sought an order from this Court authorizing discovery for use in the U.K. Proceeding, and, in support of his request, Azima pointed out that the allegations in the U.K. Proceeding included claims seeking relief based on "efforts by the co-conspirators to *conceal their actions . . . through 2020*." Quinn Decl., Ex. 3 (Reply Brief of Petitioner, *Azima v. Handjani*, No. 21-MC-501, Dkt. 13 (S.D.N.Y. Aug. 4, 2021)) at 5 (emphasis added). This Court granted Azima's request, relying on his allegations of a post-2016 cover-up. *See* Quinn Decl., Ex. 4 (Order, *Azima v. Handjani*, No. 21-MC-501, Dkt. 26 (S.D.N.Y. July 15, 2022)) at 17–18 (citing allegations that U.K. defendant "allegedly hacked Azima . . . and covered-up the hacking conspiracy.").

Moreover, as set forth below, Azima's claims are untimely. Azima has not only been on notice of his claims since 2016—he has been actively litigating them in other courts since that time. He should not get yet another bite at the apple here.

Azima also falls short of stating a claim under civil RICO. *First*, alleged acts of concealment, like the purported cover up here, are not RICO predicates as a matter of law. *See Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 444 (S.D.N.Y. 2019). Further compounding that problem, litigation misconduct *also* cannot form RICO predicates. *See Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020). Thus, this is a racketeering case with no cognizable allegation of racketeering.

*Second*, Azima fails to plausibly allege the existence of an "enterprise" within the meaning of civil RICO, as his complaint fails to allege an association-in-fact with a common purpose or existence separate from the supposed racketeering itself. *See Festinger v. Snitow Kaminetsky*

*Rosner & Snitow, LLP*, 2022 WL 901660, at *20 (S.D.N.Y. Mar. 28, 2022) (Gardephe, J.). Alleged schemes, like this one, with a single victim and a singular purpose are outside the scope of civil RICO as a matter of law. *See Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 606 (2d Cir. 2019).

*Finally*, Azima fails to plead any cognizable injuries, which must be to business or property, instead pointing to supposed reputational harm and emotional anguish, and second-order consequences supposedly flowing therefrom. Even if those sorts of harms were cognizable (which they are not), Azima also does not articulate any plausible theory of proximate causation that connects them to the alleged RICO predicates. *See Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (per curiam). For these and other reasons outlined below, the complaint should be dismissed with prejudice. *See Tech. Opportunity Grp., Ltd. v. BCN Telecom, Inc.*, 2019 WL 4688628, at *12 (S.D.N.Y. Sept. 25, 2019) (dismissing RICO claim with prejudice as time-barred).

## PLAINTIFFS' ALLEGATIONS

### I.     The Parties and Background[2]

Azima is a self-described U.S.-based businessman who, from 2007 through 2016, engaged in various commercial ventures with non-party Emirate of Ras Al Khaimah ("RAK"), one of the seven emirates of the UAE, and its independent sovereign wealth fund, non-party Ras Al Khaimah Investment Authority ("RAKIA"). Compl. ¶¶ 4, 10, 26. Plaintiffs ALG Transportation, Inc., Main 3260 LLC, FFV W39 LLC, and FFV Development LLC (collectively, the "Corporate Plaintiffs") are businesses owned, in whole or in part, by Azima. *Id.* ¶¶ 11–14.

---

[2] On this motion, the well-pleaded allegations of the Complaint are assumed to be true. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Defendants reserve all rights to—and do—dispute many of the allegations summarized herein.

The Complaint alleges that Defendants are a group of individuals and entities who were engaged, directly or indirectly, by RAK to aid in its investigation of the former chief executive officer of RAKIA, Khater Massaad. *Id.* ¶¶ 2, 15–25.  In 2014, RAK hired Dechert—including two of its then-partners, Defendants David Neil Gerrard and David Graham Hughes—to conduct the investigation. *Id.* ¶¶ 26(a), 38.  The Complaint alleges that, as part of that investigation, a number of consultants acted to assist Dechert's legal representation of RAK—namely, Defendants Nicholas Del Rosso and his company, Vital, *id.* ¶¶ 8, 19; Defendant Amit Forlit and his companies, Defendants SDC-Gadot and Insight, *id.* ¶¶ 20–22; and Defendant KARV, a communications and lobbying firm, along with its principal Defendant Andrew Frank and consultant Defendant Amir Handjani, who participated in work concerning RAK and Azima, *id.* ¶¶ 23–25.  Plaintiffs allege that, through this investigation, these Defendants formed a RICO enterprise (the "Enterprise"), *id.* ¶¶ 15–25, which purportedly included additional non-party "individuals and business entities," *id.* ¶ 26.

The Complaint alleges that in the fall of 2014, Azima became a target of the Defendants' investigation into Massaad, *id.* ¶ 43, and that Defendants engaged in a variety of unlawful or tortious actions targeting Azima, in particular by hacking and publishing his emails.  However, because Azima has and continues to litigate those allegations in the U.K. and the Middle District of North Carolina, and presumably because he is aware of principles of comity and claim-splitting that bar him from relitigating—or simultaneously co-litigating—those claims here, Plaintiffs attempt to break their Complaint in two: first, by conceding that the hacking allegations and publication claims are being litigated elsewhere and are thus supposedly not the basis of their claims in this case; and, second, by attempting to separate out and distinguish from the supposed hacking scheme a purported cover-up, which Plaintiffs claim (incorrectly) is not at issue in the

U.K. and is at issue here.  *See id.* ¶ 5 n.2 ("[T]he UK case focuses on crimes that occurred in or about 2016, while this Complaint focuses on efforts to cover-up those crimes.").

## II.      Plaintiffs' Hacking Allegations and the Settlement Agreement

By Plaintiffs' own admission, the first 27 pages and 72 paragraphs of their Complaint are not what their case is actually about.  *See* Compl. ¶ 5 n.2.  In short, Plaintiffs allege that non-party Karam Al Sadeq, a former official of RAKIA, was unlawfully detained by RAK as part of the effort by Dechert, Gerrard, and Hughes to "expand Dechert's work for their new client," and that Defendants Gerrard and Hughes "interrogated" him in order to pressure him to pay Dechert's legal fees.  *Id.* ¶¶ 39–43.  When Azima "sought to end the mistreatment of Al Sadeq," his valiance supposedly put him in the Defendants' "crosshairs."  *Id.* ¶ 42–43.

By Plaintiffs' telling, the Enterprise targeted Azima by engaging in a "coordinated and concealed effort to hack him and steal his confidential and highly sensitive information."  *Id.* ¶ 45. This was allegedly done by sending "phishing" emails to "Azima and his associates," though said associates are not identified.  *Id.* ¶ 46.  Plaintiffs allege that this effort resulted in Azima's email accounts being accessed without his knowledge, including on at least one occasion in October 2015.  *Id.* ¶ 50.  Information obtained from Azima was allegedly shared with members of the "Enterprise" in reports prepared regularly between March 2015 and May 2020.  *Id.* ¶¶ 51–52. Plaintiffs allege that members of the Enterprise hid their involvement in the hacking through a complex series of activities and payments, and by "laundering" the hacked materials through the internet.  *Id.* ¶¶ 55–68.

For obvious tactical reasons, Azima does not make any allegations at all about the contents of any of the allegedly hacked emails even though he claims that it was the substance of the emails that caused him injuries.  *See id.* ¶ 179.

As the hacking scheme was allegedly underway, Azima entered into a written settlement agreement in 2016 with RAK (the "Settlement Agreement") to resolve certain business disputes that had arisen between them.  *Id*. ¶ 62.  As part of the Settlement Agreement, Azima was paid $2.6 million.  *Id.* ¶ 63.  Azima took the money, but now claims this Settlement Agreement was a "trap," because it represented he had acted in good faith and the Enterprise believed he had already violated that provision.  *See id.*

## III.   Following the Alleged Hacking, Plaintiffs Allege Wrongdoing by Defendants in Other Litigations

### A.   Parallel Actions in the U.K. and U.S. Arise from the Same Alleged Conduct and Involve the Same Parties Here

Plaintiffs allege that following the hacking, Defendants "deploy[ed] the hacked materials against Azima" by bringing suit against him, on September 23, 2016, in the English High Court on behalf of RAKIA for breach of the Settlement Agreement.  Compl. ¶ 69; *see also Ras Al Khaimah Inv. Auth. v. Azima*, Case No. HC-2016-002798 (the "U.K. Proceeding.").[3]

That same day, Azima sued RAKIA in the District Court for the District of Columbia, based on allegations related to the hacking of his data (the "D.C. Proceeding").  Compl. ¶ 72; *see also Azima v. Ras Al Khaimah Inv. Auth.*, No. 16-cv-1948 (D.D.C. Sept. 30, 2016).  Dechert represented RAKIA in that proceeding.  *See* Compl. ¶ 106 n.8.  The D.C. Proceeding was dismissed by D.C. Circuit, which held that Azima's claims should be litigated in the U.K. pursuant

---

[3] The Court may take judicial notice of the "status of other lawsuits in other courts and the substance of papers filed in those actions" and thus may consider the status of and filings in the related litigations referenced herein.  *Schenk*, 2010 WL 5094360, at *2; *see also Anderson v. Rochester–Genesee Reg'l Transp. Auth*., 337 F.3d 201, 205 (2d Cir. 2003) (taking judicial notice of district court opinion not in appellate record); *Rothman v. Gregor*, 220 F.3d 81, 92–93 (2d Cir. 2000) (taking judicial notice of complaint in another action).  Judicial notice is appropriate "not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

to the Settlement Agreement's forum-selection clause and the doctrine of *forum non conveniens*. *Id.* ¶¶ 83, 106 n.8; *see also Azima v. RAK Inv. Auth.*, 926 F.3d 870, 880 (D.C. Cir. 2019).

Azima reasserted the claims he had initially brought in the D.C. Proceeding as counterclaims in the U.K. Proceeding in 2019. Compl. ¶ 127. By that point, RAKIA was represented by Stewarts Law, the firm to which Hughes had transferred in 2017. *Id.* ¶ 106 n.8. The English High Court held a trial and entered a judgment in favor of RAKIA in May 2020. *Id.* ¶ 69 n.6; *see also* Quinn Decl., Ex. 1 ¶¶ 159, 246, 250, 381. At the outset, the court found that Azima and his close business associate and confidant were unreliable witnesses. Their testimony was "frequently inconsistent with the contemporaneous documents," "inherently implausible," and at times downright "untruthful." Quinn Decl. Ex. 1 ¶¶ 70–71, 127. The court went on to find that Azima had engaged in serious misconduct, including that he had backdated documents to fabricate a contractual dispute with RAKIA; fraudulently induced RAKIA to settle that dispute for millions of dollars; successfully conspired to misappropriate $1,500,000 from RAKIA funds in connection with the sale of a hotel in Georgia; and engaged in bribery and concocted a "sham" written agreement to "conceal that misappropriation." *Id.* ¶¶ 93, 117, 138–42, 189, 237, 247–50. The court also rejected Azima's assertions that RAKIA had been involved in the hacking. *Id.* at ¶ 381.

On appeal, the U.K. Court of Appeal upheld the judgment against Azima on RAKIA's claims and remitted the hacking claims for a retrial. *See* Quinn Decl., Ex. 2 ¶¶ 147–48. In doing so, the Court of Appeal held that even if alleged newly discovered evidence supporting his hacking claim was true, which would need to be determined at trial, it would not affect its judgment against Azima since "the hacked materials ought to have been disclosed by Mr. Azima anyway" during the discovery process, and that even *if* RAKIA were involved in the hack, it would not strike its claim against Azima because that "would leave Mr. Azima with the benefit of his fraud." *Id.* ¶ 62.

Back at the trial court, Azima filed revised counterclaims in July 2021, adding Dechert, Gerrard, and James Buchanan as defendants,[4] and he amended again in November 2022, adding a claim to set aside the May 2020 judgment on the ground that it was obtained by fraud.  *See* Quinn Decl., Ex. 5 (Re-Re-Re-Amended Counterclaim (the "RRRACC"), *Ras Al Khaimah Inv. Auth. v. Azima*, Case No. HC-2016-002798) at 2.  The English High Court permitted Azima to include this new set-aside claim; it also subsequently granted the U.K. Proceeding defendants permission to appeal that decision.  *See* Quinn Decl., Ex. 6 (*Ras Al Khaimah Inv. Auth. v. Azima* [2022] EWHC 2727 (Ch)) ¶ 148 (granting Azima permission to add counterclaim to set aside First Judgment); Quinn Decl., Ex. 7 (*Ras Al Khaimah Inv. Auth. v. Azima* [2022] EWHC 2980 (Ch)) ¶ 30 (granting U.K. Proceeding defendants permission to appeal decision permitting additional counterclaim). That appeal remains ongoing.  Compl. ¶ 69 n.6.

In October 2020, after Azima suffered his first defeat at trial in the U.K. Proceeding, he opened up another front, again on this side of the Atlantic.  More specifically, Azima brought additional claims against other Defendants here—this time, Del Rosso and Vital—in North Carolina (the "North Carolina Proceeding").  *Id.* ¶ 144; *see Azima v. Del Rosso*, No. 20-cv-954 (M.D.N.C. Oct. 15, 2020).  That suit alleged that Del Rosso's and Vital's role in the hacking and dissemination of Azima's data violated federal and state laws related to trade secrets, wiretapping, and privacy.  *See* Quinn Decl., Ex. 8 (Complaint, *Azima v. Del Rosso*, No. 20-cv-954, Dkt. 1 (M.D.N.C. Oct. 15, 2020)); Compl. ¶ 144.  Nine of Azima's eleven claims were dismissed, primarily on statute-of-limitations grounds, leaving only one count of state-law misappropriation of trade secrets and a related conspiracy claim.  *See Azima v. Del Rosso*, 2021 WL 5861282, at *9

---

[4] Stuart Page, an investigator who was engaged by RAK, was also added as a defendant, but he has since settled with Azima.  *See* Quinn Decl., Ex. 5 ¶ 3A; Compl. ¶ 26(a).

(M.D.N.C. Dec. 10, 2021), *reconsideration denied*, 2022 WL 837185 (M.D.N.C. Mar. 21, 2022).

That case, too, remains ongoing.  Compl. ¶ 178.  Indeed, Azima recently served a slate of non-

party discovery, which has precipitated extensive motion practice from numerous non-parties.  *See,*

*e.g.*, *Azima v. Del Rosso*, No. 20-cv-954, Dkts. 133, 136, 150 (motions to quash non-party

subpoenas).

### B.    Plaintiffs' RICO Claims Depend Largely on Claims of an Alleged "Cover Up" in Other Litigations

As noted above, Plaintiffs try to avoid the doctrines of comity and claim-splitting by

asserting at one point that none of the alleged hacking, nor even use of the hacked materials in any

proceeding, is the basis of Plaintiffs' RICO claims.  *See* Compl. ¶ 5 n.2.  Instead, Plaintiffs claim

that they are resting their civil RICO claims on alleged misconduct by Defendants in the parallel

proceedings, such as purportedly false statements of denial and other acts of concealment.  As

explained below, even if such conduct had occurred, it cannot form the basis of a RICO claim.

The bulk of Plaintiffs' allegations focus on conduct in the now-dismissed D.C. Proceeding,

in which they allege that "Gerrard and Hughes induced other Dechert partners" to make false

statements to the D.C. courts, such as statements that "Azima's documents were publicly available

on the internet," and that neither RAKIA nor Dechert "had anything whatsoever to do with hacking

[Azima's] documents."  Compl. ¶¶ 87, 94, 95.  Moreover, Plaintiffs allege, members of the

Enterprise concocted a scheme to provide the D.C. court with copies of the hacked materials—

specifically, an email chain from August 12, 2016, that Dechert purportedly wished to use in the

D.C. Proceeding without revealing its own role in obtaining the emails—by mailing a printed copy

of the chain from Lebanon.  *Id.* ¶¶ 120–26.

Plaintiffs allege that the Enterprise further obstructed the D.C. Proceeding by falsely

assuring Azima's U.S. counsel that evidence was being preserved when it either was not or had

already been destroyed.  *Id.* ¶¶ 113–19.  To support this allegation, Plaintiffs allege that Buchanan brought his iPhone to an Apple Store in 2016 where much of his email was allegedly deleted, and that the emails were incompletely restored.  *Id.* ¶ 115.  This exact same allegation is at issue in the U.K. Proceeding.  *See* Quinn Decl., Ex. 5 ¶¶ 86–87.  Plaintiffs' only other allegations of "destroyed evidence" consist of a single laptop that cannot be located, Compl. ¶ 116, and the allegation that Dechert provided Gerrard with multiple mobile devices over a six-year period, *id.* ¶ 117.

Plaintiffs also allege that Defendants attempted to obstruct the U.K Proceeding, namely by convening meetings to "rehearse and perfect false testimony" regarding the hacking, and by otherwise providing false denials to the English High Court.  *Id.* ¶¶ 101–11.  Again, this same allegation is at issue in the U.K. Proceeding.  *See* Quinn Decl., Ex. 5 ¶¶ 77–77AA.  Seemingly aware that RICO has no reach over obstruction of foreign proceedings however, Plaintiffs aver, without explanation, that such acts were "intended, at least in substantial part, to obstruct the D.C. District Court Proceeding, which was pending throughout the duration of the obstructive conduct." Compl. ¶ 111.

Back in the United States, Azima claimed that Del Rosso and Vital also allegedly obstructed the North Carolina Proceeding.  *Id.* ¶¶ 144–59.  The Complaint alleges that they intimidated and destroyed communications with a witness, Aditya Jain, who had allegedly played a role in the hacking.  *Id.* ¶¶ 145–55.  Plaintiffs also allege that Del Rosso and Vital participated in the pattern of racketeering at the heart of this case because, in a filing made by their lawyers, both Defendants falsely "categorically den[ied]" allegations that they had been involved in hacking Azima.  *Id.* ¶¶ 157–59.

Plaintiffs also point to additional allegedly false denials in other proceedings as constituting the basis for alleging the existence of a pattern of racketeering.  In this Court, Azima filed an

application under 28 U.S.C. § 1782 seeking discovery from Handjani, for use in the U.K. Proceeding (the "S.D.N.Y. § 1782 Proceeding"). *Id.* ¶ 129. In a filing opposing the discovery application, Handjani denied any role or knowledge of the hacking and stated that he had not become aware of it until August 16, 2016, and that he served only as a channel of communication between Azima and RAK. *Id.* The Complaint alleges that these statements were false and intended to obstruct the S.D.N.Y. § 1782 Proceeding "to thereby prevent discovery of facts that would have exposed the Enterprise's criminal activity." *Id.* ¶¶ 129–32.

In the same way, Plaintiffs allege that other Defendants similarly contributed to a pattern of racketeering by denying wrongdoing. For their part, Forlit, Insight, and SDC-Gadot allegedly obstructed a § 1782 proceeding filed by Azima in the Southern District of Florida (the "Florida § 1782 Proceeding") by making purportedly false statements in affidavits and depositions related to the alleged hacking. *Id.* ¶¶ 133–43. Specifically, Plaintiffs allege that Forlit stated that his company SDC-Gadot had not conducted business "in years" and denied being a hacker. *Id.* ¶¶ 134–41. Plaintiffs essentially allege that by failing to "admit" conduct which Forlit, Insight, and SDC-Gadot have sworn that they did not partake of, they thereby "obstructed justice" and participated in the alleged RICO conspiracy.

Finally, and presumably in an effort to ensure that some sliver of their Complaint does not rest solely on alleged litigation misconduct and acts of concealment, Plaintiffs tack on allegations of attempted hacking of entities associated with Al Sadeq and his separate and unrelated litigation relating to purported human rights abuses. *See* Compl. ¶¶ 161–78. Plaintiffs make no effort to demonstrate how this purported activity was directed at them, how they could have been injured by any such activity, or how an attempted hacking could form a RICO predicate, where even a completed hacking is not within the scope of the statute.

### C.     Plaintiffs Allege Harm to Reputation and Goodwill, Lost Business Opportunities, and Legal Expenses

As a result of the activities alleged above, Plaintiffs claim they have suffered damage to their "reputation, business, and property." *Id.* ¶ 179.   Azima claims harm to his "reputation and goodwill," that he has been deprived of "identifiable and quantifiable business opportunities," (though he does not identify or quantify them), and that he has been forced to incur an unspecified amount of legal fees. *Id.* ¶¶ 179, 229, 245.   The Corporate Plaintiffs similarly allege damage to their "reputation and good-will," along with other "damages stemming from the unlawful hacking and release of . . . business records, financial documents, and trade secrets," and attorneys' fees. *Id.* ¶¶ 258–61.   All of this allegedly resulted from "negative publicity" and the various lawsuits described above. *Id.* ¶¶ 179, 181.

Plaintiffs allege that Defendants' conduct described above constitutes a violation of civil RICO pursuant to 18 U.S.C. §§ 1962(c), 1964(c) (Count I) and a conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d) (Count II).

### <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "mere 'formulaic recitation of the elements of a cause of action' will not suffice; instead, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Kottler v. Deutsche Bank AG*, 607 F. Supp. 2d 447, 457 (S.D.N.Y. 2009) (quoting *Bell Atl. Corp.*, 550 U.S. at 545).   Nor will "lumping all defendants together . . . and providing no basis to distinguish their conduct" pass muster.   That is all the more true where, as here, the allegations involve

predicate acts of fraud, as to which Rule 9(b) "demands greater specificity in the pleadings." *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009).

## <u>ARGUMENT</u>

Plaintiffs bring two causes of action under RICO.  They should be dismissed pursuant to the doctrines of comity and claim-splitting; because they are untimely; and because they fail to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).

## I.      **Principles of Comity and the Prohibition on Claim-Splitting Require Dismissal**

This case is duplicative of other litigations in which Plaintiffs are already pursuing claims based on the same conduct at issue here.  Principles of comity and the prohibition of claim-splitting warrant dismissal.

### A.      **International Comity Dictates Dismissal Because the Same Issues are Being Litigated in the U.K. Proceeding**

Under the doctrine of international comity, courts may abstain from exercising jurisdiction over an action due to the existence of related proceedings in a foreign court.  *See von Spee v. von Spee*, 514 F. Supp. 2d 302, 317 (D. Conn. 2007) (citing *Royal & Sun All. Ins. Co. of Can. v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006)).  Guided by the principles of respect for the courts of a sovereign nation, fairness to litigants, and judicial efficiency, courts find abstention appropriate when two conditions are met: (1) the U.S. and foreign proceedings are "'parallel'— that is, proceedings in which 'substantially the same [parties are] litigating substantially the same issues' simultaneously in two fora," and (2) exceptional circumstances exist to justify abstention. *Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428, 433 (S.D.N.Y. 2013).  Both conditions are satisfied here.

1.     **This Case and the U.K. Proceeding are Parallel Proceedings**

The parties in the U.K. Proceeding and this action are "substantially the same," *Kingstown Cap. Mgmt., L.P. v. Vitek*, 2020 WL 5350492, at *5 (S.D.N.Y. Sept. 4, 2020), *aff'd*, 2022 WL 3970920 (2d Cir. Sept. 1, 2022), and the issues are nearly identical.  Both lawsuits "involve the same core parties," *id.*: Azima as Plaintiff and Dechert and Gerrard, along with other members of an alleged conspiracy, as defendants.  *See* Quinn Decl., Ex. 5 at 1 (listing RAKIA, Dechert, Gerrard, and Buchanan as counter-defendants).  That the other members of the alleged conspiracy differ across the actions is of no moment; "the addition of more defendants, who are essentially ancillary parties, does not alter the scope of the alleged misconduct for which [plaintiff] seeks recover[y] or the likelihood of [plaintiff] succeeding in that quest." *Kingstown*, 2020 WL 5350492, at *5.  So, too, for the addition of Azima's businesses as plaintiffs here.  *Id.* ("The existence of the additional [] plaintiffs does not expand the injury plaintiffs seek to redress.").

In addition, Azima alleged the same "cover up" in the U.K. Proceeding that he asserts here.  Azima's most recent counterclaim in the U.K. Proceeding includes allegations based on, among other things, the preparation of the same false testimony by the same Defendants at issue here, filings in the U.K. Proceeding which contained false statements, and the destruction of Buchanan's emails in the Apple Store.  *See* Quinn Decl., Ex. 5 ¶¶ 26D, 26E, 75–77AA, 82–87, 131(d)–(e), 134(e)–(g); *compare* Compl. ¶¶ 102–06, 109–10, 115.  That is to say nothing of Azima's set-aside counterclaim, which alleges that the initial decision in the U.K. Proceeding was obtained by fraud, echoing many more of Plaintiffs' allegations here, including that Gerrard, Buchanan, Forlit, and others conspired, including in a series of meetings in Cyprus and elsewhere, to present false evidence regarding the discovery of Azima's data, and that Gerrard, Buchanan, and others falsely denied their involvement in or knowledge of the hacking.  *See* Quinn Decl., Ex. 5 ¶¶ 181–200; *cf.* Compl. ¶¶ 101–07, 109–10.  Indeed, as noted above, Azima has previously told *this* Court that the

allegations in the U.K. Proceeding included "efforts by the co-conspirators to conceal their actions . . . through 2020," Quinn Decl., Ex. 3 at 5, and this Court relied upon that characterization of the U.K. Proceeding, *see* Quinn Decl., Ex. 4 at 17–18 (granting discovery request, citing allegations that "RAKIA allegedly hacked Azima . . . and covered-up the hacking conspiracy.").

Plaintiffs also have remedies available to them in other ongoing proceedings. In *Citadel Management, Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 153 (S.D.N.Y. 2000), the court rejected litigation misconduct in an English proceeding as the basis of a RICO claim, because "[v]iolation of the [] injunction, even if it compounded Citadel's previous injury, is an offense against the issuing court that is punishable with contempt and sanctions rather than an act that gives rise to an independent cause of action by Citadel." *Id.* at 153–54 (citing *Gompers v. United States*, 233 U.S. 604, 609 (1914) (discussing English courts' longstanding common law contempt power); *D. Patrick Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir. 1993) ("[T]here is no such thing as an independent cause of action for civil contempt.")). In other words, Azima's claims of misconduct belong in those proceedings where those courts are best situated to oversee their own proceedings.

Moreover, not only is the alleged concealment at issue in the U.K. Proceeding, the inverse is also true: the hacking is at issue here. Plaintiffs themselves refer to the hacking throughout the Complaint, as well as in the Exhibits alleged to detail the pattern of racketeering. *See, e.g.*, Compl. ¶¶ 44–58; *id.* Ex. A. The core of Plaintiffs' allegations here is that Defendants "falsely" denied the Enterprise's role in the hacking in various litigations. *See, e.g., id.* ¶¶ 91–100, 107–12, 129–39. But in order for the factfinder in *this* case to determine whether such denials were false—or that a "cover up" existed more broadly—it would first have to determine that members of the Enterprise did, in fact, take part in the hacking; otherwise, of course, the denials would be true. In

other words, even if one accepted Plaintiffs' incorrect characterization that one suit focuses on the alleged cover up and the other on the underlying wrongdoing, they still "describe the same . . . behavior and series of transactions," *Kingstown*, 2020 WL 5350492, at *6, and both courts would be overseeing the litigation of the same factual questions.

Nor does the fact that Azima's lawyers have devised different formulations of the legal theories change the analysis. "It is to be expected that cases filed in different jurisdictions plead different causes of action," *Id.* at *6. Indeed, Plaintiffs all but admit they are litigating in the U.S. *because* "UK law does not have a comparable statute to RICO," and therefore Azima cannot otherwise receive treble damages. Compl. ¶ 5 n.2. What matters is that "the proceedings raise the same issues." *Kingstown*, 2020 WL 5350492, at *6. These proceedings do.

### 2.      "Exceptional Circumstances" Warrant Abstention

In addition to parallel proceedings, there are also "exceptional circumstances" that support abstention here. *von Spee*, 514 F. Supp. 2d at 317. Courts assess whether exceptional circumstances exist by looking at the "totality of the circumstances," including "the similarity of the parties, the similarity of the issues, the order in which the actions were filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction." *Id.* Those factors counsel in favor of abstention.

The present action was filed three years after Azima brought claims based on the alleged hacking of his data as counterclaims in the U.K. Proceeding. *See* Compl. ¶ 127.[5] "Courts have traditionally accorded great weight to the first suit filed," and this factor weighs particularly

---

[5] As described above, Azima first asserted claims based on the hacking in 2016, in the District Court for the District of Columbia. *See* Compl. ¶ 72. He filed his claims in the U.K. after they were dismissed by the Court of Appeals for the D.C. Circuit.

strongly in favor of deference to the first-filed suit when discovery has already commenced. *Tarazi*, 958 F. Supp. 2d at 436 (finding this factor weighed strongly in favor of staying U.S. proceeding).  Not only has discovery commenced in the U.K. Proceeding, *see, e.g.*, Quinn Declaration, Ex. 9 (Order of May 27, 2022, *Ras Al Khaimah Inv. Auth. v. Azima*, Case No. HC-2016-002798) at 4, the U.K. courts have issued several decisions on the alleged hacking and Azima's claims of fraud against Gerrard and others.  *See* Quinn Decl., Exs. 1, 2, 6, 7; *see also von Spee*, 514 F. Supp. 2d at 318 (finding dismissal of U.S. action warranted, in part, because of multiple decisions from German courts in parallel proceeding).

In addition, this case has stronger connections to the U.K. than the U.S.  The alleged leader of the Enterprise was U.K.-based, Compl. ¶ 53, many meetings took place there, *id.* ¶¶ 101, 106, and, critically, the locus of much of the alleged misconduct was the U.K. Proceeding itself, *id.* ¶¶ 101–11.  There can be little question that the U.K. is an adequate alternate forum, and, given that the proceeding there is advanced well beyond this one, "[j]udicial efficiency will not be served in litigating issues [here] that do not have any tie or connection to this state."  *von Spee*, 514 F. Supp. 2d at 318.  Dismissal of this duplicative proceeding is thus warranted.  *See id.* (dismissing on basis of comity where parties were litigating similar issues in Germany); *Kingstown*, 2020 WL 5350492, at *7 (dismissing RICO action in S.D.N.Y. on basis of comity where similar parties were litigating similar issues in Luxembourg); *cf. Tarazi*, 958 F. Supp. 2d at 439 (granting motion to stay S.D.N.Y. action on basis of comity where similar parties litigating similar issues in Canada).

**B.     The Doctrine of Claim-Splitting Dictates Dismissal Because the Same Issues are Being Litigated in the North Carolina Proceeding**

Similar principles counsel in favor of dismissing this action because Azima is also pursuing similar claims in the Middle District of North Carolina against two of the Defendants here.  *See Azima v. Del Rosso*, No. 20-cv-954 (M.D.N.C. Oct. 15, 2020).  When two cases "involve[] the

same parties" and "arise from the same transaction or series of transactions," *Tera Grp., Inc. v. Citigroup, Inc.*, 2019 WL 3457242, at *9 (S.D.N.Y. July 30, 2019) (quoting *Vanover v. NCO Fin. Servs., Inc.*, 857 F.3d 833, 841–42 (11th Cir. 2017)), a court may "dismiss a suit [as] duplicative of another federal court suit," rather than allow a party to split its claims, *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000); *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . the general principle is to avoid duplicative litigation."). Such is the case here, where Azima's North Carolina claims were based on the same alleged hacking and cover-up.[6] *See* Quinn Decl., Ex. 8 ¶¶ 16, 19, 22, 24–26. The North Carolina case, moreover, was filed two years before this one, and it is well established that the first filed suit has priority where two are competing. *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (collecting cases); *see also Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F. Supp. 2d 235, 244 (E.D.N.Y. 2012) (noting that "first-filed rule" requires only "substantial overlap" between the parties and issues, and applying rule where "there is some degree of overlap that exists between the parties, claims, and the relief sought"). And where, as here, Defendants—including some who are not parties to the North Carolina case—are facing broad non-party discovery requests from Plaintiff on the same conduct at issue in this action, dismissal is appropriate to "protect parties from 'the vexation of concurrent litigation over the same subject matter.'" *Curtis*, 226 F.3d at 138 (quoting *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991)); *see Azima v. Del Rosso*, No. 20-cv-954, Dkts. 130, 136, 140, 144, 162 (discovery motions involving Del Rosso, Vital, and Dechert). For these reasons, and in the interest of "foster[ing]

---

[6] Most of Azima's North Carolina causes of action have been dismissed on statute of limitations grounds. *See infra* Section II. Two state-law claims, based on the alleged misappropriation of trade secrets relating to the 2018-2019 posting of Azima's data—remain. *See Azima v. Del Rosso*, 2021 WL 5861282, at *8–9 (limiting actionable claims to those arising from 2018–2019 online posting of Azima's data).

judicial economy," the Court should dismiss this suit.  *Id.* at 138, 141 (affirming dismissal of claims duplicative of those filed in separate action).

## II.   Plaintiffs' Claims are Barred by the Statute of Limitations

RICO claims are subject to a four-year statute of limitations that runs from the time at which Plaintiffs "discover[ed] or reasonably should have discovered the RICO injury."  *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011); *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 530 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (applying the same 4-year statute of limitations to § 1962(d) claim).

Plaintiffs' claims here accrued in 2016 at the latest, as the court in the Middle District of North Carolina specifically ruled in dismissing Azima's similar claims based on the same hacking allegations.  *See Azima v. Del Rosso*, 2021 WL 5861282, at *3 (finding that "Plaintiff's factual allegations in the 2016 D.C. Complaint—that he had been hacked and his hacked confidential business data published online, (e.g., 2016 D.C. Complaint (Doc. 31-5) ¶¶ 10, 18)—establish that by 2016 Plaintiff had discovered the conduct underlying [various counts in Complaint and that] . . . the statutes of limitations seemingly accrued in 2016").  Plaintiffs have offered nothing that would merit a different result here.

In September of 2016, Plaintiff Azima filed the D.C. Proceeding, asserting that the alleged hacking scheme had caused "irreparable harm to his person, reputation, and business."  Quinn Decl., Ex. 10 (Complaint, *Azima v. RAK Inv. Auth.*, No. 1:16-cv-01948, Dkt. 1 (D.D.C. Sep 30, 2016)) ¶¶ 33, 39, 45, 51, 57.  The injuries he now presses—namely, harm to reputation, legal fees incurred defending himself in litigation, and injuries to business in the form of lost financing and profits or disclosure of business documents—are essentially the same injuries, plus the costs of defending himself in that and other related litigations.  *See* Compl. ¶¶ 179–83, 245–49.  As the court in the Middle District of North Carolina found, the filing of that lawsuit establishes that

Plaintiff Azima knew of these injuries in 2016. *See Azima v. Del Rosso*, 2021 WL 5861282, at *3 (finding that D.C. Proceeding complaint established that Azima had knowledge of hacking in 2016 for statute-of-limitations purposes). As this lawsuit was not filed until nearly six years after Azima initiated the D.C. Proceeding, Plaintiffs' claims here are time-barred. *See Kerik v. Tacopina*, 64 F. Supp. 3d 542, 558 (S.D.N.Y. 2014), 64 F. Supp. 3d at 558 (dismissing RICO claim when injury was discovered more than four years before filing of complaint).

To be sure, under the Second Circuit's "separate accrual" rule, a plaintiff may, in certain cases, assert a RICO claim based on a pattern of racketeering activity that allegedly began outside of the four-year period. *Bingham v. Zolt*, 66 F.3d 553, 559 (2d Cir. 1995). That is only possible, however, when there is a "new and independent injury" caused by predicate RICO violations within the actionable window. *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998); *Bingham*, 66 F.3d at 559. Even then, a plaintiff may "win compensation only for injuries discovered or discoverable within the four-year 'window' before suit was filed." *Kerik*, 64 F. Supp. 3d at 558 (quoting *Bingham*, 66 F.3d at 560).

Plaintiffs' attempts to allege RICO predicate acts within the four-year window preceding the filing of this lawsuit—beginning on October 13, 2018—are not sufficient to invoke the separate accrual rule. As the Second Circuit held in *In re Merrill Lynch*, "continuing efforts to conceal the initial fraud," are not "separate and distinct fraudulent acts resulting in new and independent injuries." 154 F.3d at 59–60. Thus, because the alleged post-2018 actions are attempts to "cover up" the Enterprise's earlier wrongdoing, any injury they create, while "new," is not "independent." *Pharr v. Evergreen Gardens, Inc.*, 2004 WL 42262, at *1 (S.D.N.Y. Jan. 7, 2004), *aff'd*, 123 F. App'x 420 (2d Cir. 2005) ("[N]on-independent injuries will not cause a new limitations period to accrue."). For example, the Complaint alleges one specific injury after October 2018: a loan lost

by FFV Development ("FFV") in January 2019.  Compl. ¶ 180.  It alleges that FFV lost the financing "due to the negative publicity instigated by the Enterprise that the bank found when conducting its due diligence."  *Id.*  Even setting aside that this loss is not a cognizable injury for the reasons discussed below, *see infra* Section IV, FFV's injury is "derivative of the core injury sustained," *Tech. Opportunity Grp., Ltd. v. BCN Telecom, Inc.*, 2019 WL 4688628, at *6 (S.D.N.Y. Sept. 25, 2019): harm to Azima's reputation from the 2016 release of his hacked materials.  That is especially so since the Complaint does not allege that the negative publicity was generated after 2018.  Because this injury "merely involve[s] subsequent costs associated with the initial injury," it cannot "extend the life span" of Plaintiffs' injuries and claims.  *World Wrestling Ent., Inc.*, 530 F. Supp. 2d at 527 (dismissing complaint with prejudice as time-barred).[7]

In sum, Plaintiffs' claims are barred by the statute of limitations and should be dismissed. And dismissal should be with prejudice because any amendment would not change the fact of Plaintiff's knowledge of injury or plead cognizable, 'new and independent' injuries within the statute-of-limitations window, and therefore would be futile.  *See Tech. Opportunity Grp.,* 2019 WL 4688628, at *12 (dismissing RICO claim with prejudice as time-barred).

## III.    The Complaint Does Not Adequately Plead the Elements of a RICO Claim

The Complaint also fails to state a claim upon which relief may be granted.  "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early state of the litigation."  *J.T.*, 500 F. Supp. 3d at 165 (S.D.N.Y. 2020); *see also Purchase Real Estate Grp., Inc.*

---

[7] To the extent Plaintiffs' vague allegations of damages to his reputation and good will, loss of financing, and lost profits can be assumed to have been incurred during the actionable period, they fail to save the claims for the same reason.  Similarly, to the extent Plaintiffs' legal-fee injuries were incurred during the actionable window, they, too, do not restart the RICO clock because the conduct that allegedly caused that injury is not cognizable under RICO.  *See infra* Section III.C.1.

*v. Jones*, 2010 WL 3377504, at *6, at *17–18 (S.D.N.Y. Aug. 24, 2010) ("[C]ourts should look 'with particular scrutiny' at civil RICO claims to ensure that the RICO statute is used for the purposes intended by Congress.") (quoting *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 397 (S.D.N.Y.2000)).  That is particularly true because "plaintiffs asserting RICO frequently miss the mark." *J.T.*, 500 F. Supp. 3d at 165 (citing *Gross*, 628 F. Supp. 2d at 479–80 (noting that in a survey of 145 appellate decisions involving civil RICO actions, plaintiffs had achieved victory in only 3 instances)).

Count One asserts a violation of civil RICO pursuant to 18 U.S.C. § 1962(c).  *See* Compl. ¶¶ 204–51.  To state a claim under § 1962(c), Plaintiffs must show that each defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S.479, 496 (1985)).  The Complaint does not establish any of these elements as to any Defendant, let alone as to all.  We jointly address all but the conduct requirement here, which is addressed by several Defendants separately in the individual Defendant briefs.

### A.      The Complaint Fails to Allege the Existence of a RICO Enterprise

To adequately allege an association-in-fact enterprise, as Plaintiffs attempt to do here, *see* Compl. ¶ 210, the Complaint must describe "an ongoing organization . . . function[ing] as a continuing unit" with "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 945–46 (2009).  Doing so requires pleading plausible allegations that the alleged members "share a common purpose to engage in a particular fraudulent course of conduct," *First Cap. Asset Mgmt.*, *Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004), and that the enterprise has "an existence separate and apart from the racketeering activity itself," *Festinger v. Snitow Kaminetsky Rosner & Snitow, LLP*, 2022 WL

901660, at *20 (S.D.N.Y. Mar. 28, 2022) (Gardephe, J.) (quoting *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 439 (S.D.N.Y. 2019)).  The Complaint here does neither.

The alleged association-in-fact enterprise lacks a common purpose or existence separate from the alleged racketeering activity.  Plaintiffs allege that Defendants came together to "manufacture and prosecute claims against perceived enemies of RAK . . . [and] to cover up their unlawful conduct and obstruct Plaintiffs' efforts to seek a legal remedy."  Compl. ¶ 207.  But Plaintiffs "do[] not allege the existence of any entity, formal or informal, distinct from [those] alleged racketeering acts."  *Festinger*, 2022 WL 901660, at *21 (dismissing RICO claim in part because it alleged no enterprise between lawyers and their client that was distinct from the allegedly fraudulent actions committed throughout the course of divorce proceeding).  Moreover, Plaintiffs concede that the first part of that purpose, which alludes to the alleged hacking, is not even the basis of their claim here.  *See* Compl. ¶ 5 n.2.  That leaves Plaintiffs pointing to the ways that Defendants responded to Azima's allegations, in litigation, once he made them, but "RICO's common purpose requirement demands more than general synchronicity or shared enmity."  *Black v. Ganieva*, 2022 WL 2374514, at *13–15 (S.D.N.Y. June 30, 2022) (finding no common purpose and collecting cases).  Indeed, Plaintiffs cannot "simply str[i]ng together all of the defendants in this action and label[] the resulting group an association-in-fact enterprise."  *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 539 (S.D.N.Y. 2001).

The Complaint also fails RICO's "distinctness" requirement applicable to the purported "Enterprise."  A plaintiff bringing a claim under § 1962(c) "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  That requirement is not met when the alleged "enterprise" consists of a single entity and

its agents.  *See U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205–06 (2d Cir. 2017).  Such is the case here, where the entire purported enterprise consists of RAK and a group of lawyers, consultants, and contractors engaged to do work on its behalf.  *See* Compl. ¶¶ 15–26; *see also* Quinn Decl., Ex. 5 ¶ 35 (describing U.K. Proceeding defendants as "at all material times agents or servants of RAKIA").  Particularly because the Complaint does not allege that any Defendant acted outside the scope of their agency, it fails to allege the existence of an association-in-fact enterprise. *See Daigneault v. Eaton Corp.*, 2008 WL 2604929, at *3 (D. Conn. June 16, 2008) (finding that entity, its employees, and its attorneys did not constitute a distinct association-in-fact enterprise when "all of the employees and attorneys alleged to constitute the RICO enterprise were acting as employees or agents of [the corporation] when they allegedly committed" the predicates); *Weaver v. James*, 2011 WL 4472062, at *3 (S.D.N.Y. Sept. 27, 2011) (rejecting attorney-client "association in fact" for failing distinctness requirement).

### B.    The Complaint Fails to Allege a Pattern of Racketeering Activity

The Complaint also fails to allege a "pattern" of racketeering activity.  A pattern requires demonstrating that racketeering activities "amount to or pose a threat of *continued* criminal activity."  *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (emphasis added).  To meet this "so-called continuity requirement, a plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time.")  *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019).   Plaintiffs allege neither here.[8]

---

[8] While "in analyzing the issue of continuity, [the Second Circuit] evaluates the RICO allegations with respect to each defendant individually," *Satinwood, Inc.*, 385 F.3d at 180, the analysis below applies to all Defendants equally. (Individual Defendants raise defendant-specific arguments in the Individual Briefs.)

### 1.  The Complaint Does Not Allege an Open-Ended Scheme

There are two ways to demonstrate open-ended continuity: "(1) where the acts of the defendant or the enterprise are inherently unlawful, such as murder or obstruction of justice, and are in pursuit of inherently unlawful goals, such as narcotics trafficking," or "(2) where the enterprise primarily conducts a legitimate business but there is some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Grace Int'l*, 797 F. App'x at 606 (cleaned up) (citing *United States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995), and *Cofacredit*, 187 F.3d at 243).  The Complaint here does neither.

Defendants are a global law firm and several other legitimate businesses that Plaintiff does not (and cannot) plausibly allege are "inherently unlawful"—a characterization that "primarily targets organized crime," *Grace Int'l*, 797 F. App'x at 606—nor that they "regularly operate" through the commission of RICO predicate acts, *see id.* ("limited interactions" could not establish open-ended continuity); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 186 (2d Cir. 2008) (defendant adoption agency that had conducted over one thousand successful adoptions was not "inherently unlawful").  Indeed, open-ended continuity "does not exist when predicate acts are 'in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property.'" *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017).  Here, the alleged predicate acts were in furtherance of representation of a client and performance of consulting and other similar duties, which of course are not "inherently unlawful" endeavors.  *Id.*

Moreover, a scheme is not open-ended if it is "inherently terminable, [which] does not imply a threat of continued racketeering activity."  *Spool*, 520 F.3d at 186 (quoting *Cofacredit*, 187 F.3d at 244).  Here, the alleged scheme involves misconduct and false denials in litigation brought by Azima, and is therefore "inherently terminable"; it ends when the litigation ends.  *See*

*Lefkowitz v. Bank of New York*, 2003 WL 22480049, at *9 (S.D.N.Y. Oct. 31, 2003) ("There is no indication in Lefkowitz's RICO counts that Defendants will continue their alleged scheme once the probate proceedings in the Marshes' estates are completed."), *aff'd in part, rev'd in part on other grounds and remanded*, 528 F.3d 102 (2d Cir. 2007); *Watral v. Silvernails Farm LLC*, 51 F. App'x 62, 66 (2d Cir. 2002) (plaintiff failed to establish continuity where the scheme "has a natural ending point").  Plaintiff alleges that RAK has withdrawn from the U.K. Proceeding, and does not otherwise allege that Defendants have any remaining association with one another—thus it is unclear if Plaintiff even alleges that the purported enterprise still exists.  Compl. ¶ 201.

### 2.    The Complaint Does Not Allege a Closed-Ended Scheme

In considering whether a Complaint alleges "closed-ended continuity," courts consider whether the predicate acts extended over a "substantial period of time," as well as "the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes."  *Satinwood, Inc.*, 385 F.3d at 181.  Where, as here, a plaintiff alleges a "single scheme" and then acts to conceal that scheme, including making "the same misrepresentations" repeatedly, courts do not find closed-ended continuity.  *Id*. at 182; *see also Lefkowitz*, 2003 WL 22480049, at *8 ("Schemes involving a single, narrow purpose and one or few participants directed towards a single victim do not satisfy the RICO requirement of . . . continuity."); *see also Price v. Gast*, 2000 WL 369381, at *9 (S.D.N.Y. Apr. 11, 2000) (finding that schemes "with few criminal acts and few victims do not show a threat of continuity sufficient to plead a RICO pattern").

For all the Complaint's meandering, it alleges a single scheme directed at Azima, whereby the Defendants allegedly hacked his emails, used those emails in litigation, and then lied about it.  Indeed, because Plaintiffs attempt to plead around their comity problem by alleging that this case is solely about the "cover up" and not the underlying conduct, the only "scheme" at issue here involves the purported litigation misconduct.  *See* Compl. ¶ 5 n.2.  In other words, Plaintiffs allege

"one scheme with one clear victim," which is wholly insufficient to establish continuity. *Grace Int'l*, 797 F. App'x at 606 ("While [plaintiff] attempts to magnify the racketeering scheme by expanding the number of victims and predicate acts, in reality this is one scheme with one clear victim. That is clearly insufficient to establish a pattern for the purposes of RICO"); *Schlaifer Nance & Co. v. Est. of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997). Even if the Court considered Plaintiffs' unrelated allegations directed at Al Sadeq or Massaad, a "few victims" is still insufficient to establish a RICO enterprise. *See, e.g., Gross*, 628 Supp. 2d at 482, 497. In short, Plaintiffs fails to allege the necessary continuity to establish a "pattern" of racketeering activity.

## C.   The Complaint Does Not Allege Cognizable RICO Predicates

### 1.   Litigation Activities Are Not RICO Predicates

By their own admission, the heart of Plaintiffs' case is the alleged conduct of the Enterprise in various litigation proceedings regarding the alleged hacking scheme. For example, Plaintiffs' obstruction of justice allegations target "false declarations," Compl. ¶ 214, "false representations in various pending federal judicial proceedings," *id.* ¶ 216, and meetings with potential litigation witnesses, *see id.* ¶¶ 213–16.[9] Likewise, Plaintiffs' mail- and wire-fraud predicates rest almost exclusively on representations to courts and Azima's lawyers about the discovery of Azima's data and the negotiations of the Settlement Agreement. *See id.* ¶¶ 223–30; Compl., Ex. B.

In "a long line of cases," however, courts have found "as a matter of law, that the 'litigation activities' pleaded in the Complaint cannot constitute predicate acts for the purposes of RICO." *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010), *aff'd*, 443 F. App'x 582 (2d Cir. 2011) (collecting cases). Rather, claims of litigation

---

[9] Many of Plaintiffs' allegations are aimed at alleged false statements made or prepared for proceedings in the U.K. *See* Compl. ¶¶ 101-111; 171-174. However, the obstruction of justice and witness tampering statutes apply only to proceedings in U.S. courts, *see* 18 U.S.C. §§ 1503(a); 1515(a)(1).

misconduct should be "direct[ed] . . . to the . . . courts where these acts are allegedly occurring and where the underlying litigation is still pending." *Id.* at 173–74; *see also Citadel Mgmt., Inc.*, 123 F. Supp. 2d at 153 (finding no RICO cause of action where conduct could be addressed by court contempt and sanctions). Courts have reached this conclusion when faced with allegations of filing false court documents, communicating with counsel, submitting false statements in court filings or testimony, and suborning false testimony. For example, the Second Circuit held in *Butcher v. Wendt*, 975 F.3d 236 (2d Cir. 2020), that defendants' "false statements in their various filings and in the course of testifying" did not support a RICO violation. *Id.* at 241. Courts in this circuit have similarly concluded that attorneys' "legitimate conduct" of mailing letters to opposing counsel "on behalf of a client in the course of pending litigation" cannot sustain RICO predicates as a matter of law. *D'Orange v. Feely*, 877 F. Supp. 152, 156 (S.D.N.Y. 1995); *see also Curtis*, 758 F. Supp. 2d at 175–76 (mailing pleadings and other litigation documents could not constitute RICO predicate). So, too, when it comes to soliciting or presenting allegedly false information in other forms: "[S]uborning perjury, perjury, filing a court action, filing a false affidavit, and giving false testimony do not constitute predicate acts within the meaning of the RICO statute." *Saluzzo v. Greenbaum*, 2011 WL 13234286, at *3 (N.D.N.Y. Feb. 4, 2011) (quoting *Speight v. Benedict*, 2007 WL 951492, at *6 n.2 (N.D.N.Y. Mar. 28, 2007)). And courts have reached the same conclusion when the alleged predicate acts were mail fraud, wire fraud, and obstruction of justice. *See Kim v. Kimm*, 884 F.3d 98, 103–05 (2d Cir. 2018) (filing of false declarations alleged to support mail fraud, wire fraud, and obstruction of justice predicates was litigation activity that "cannot constitute a viable RICO predicate act"); *Brock v. Zuckerberg*, 2021 WL 2650070, at *5 (S.D.N.Y. June 25, 2021), *aff'd*, 2022 WL 1231044 (2d Cir. Apr. 27, 2022) (dismissing, among

others, mail fraud, wire fraud, and obstruction of justice claims stemming from defendants' motion to transfer "because they ar[o]se purely out of a litigation action").

On the rare occasions in which courts have sustained RICO claims predicated on litigation activities, the allegations have involved a far "more concerted abuse of the legal system." *Black*, 2022 WL 2374514, at *23 (noting that "rarely are such abusive litigation tactics or corruption successfully pled"). For example, in *Sykes v. Mel Harris & Assocs.*, LLC, 757 F. Supp. 2d 413, 418–20 (S.D.N.Y. 2010), which the Second Circuit in *Kim* cited as a possible example of litigation-related allegations that could sustain a RICO predicate, defendants purchased debt portfolios and pursued debt-collection actions against consumers in which they failed to serve the consumer, filed false affidavits of service with the court, and then moved for default judgment. *Id.* at 419–20. They did so at an average rate of 133 debt-collection actions a day. *Id.* at 419. The "'gravamen' of the alleged racketeering activity in *Sykes* 'was not so much litigation activities' . . . 'as it was the use of courts to obtain default judgments *en masse*.'" *Black*, 2022 WL 2374514, at *23 (quoting *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 71 (E.D.N.Y. 2020)). But here, the Complaint "assails [Defendants] for conduct intrinsic to the litigation itself." *Id.* at *24. It thus does not fall into the limited category of cases in which litigation activities can sustain a RICO predicate.

### 2.    Acts of Concealment Also Do Not Constitute RICO Predicates

The Complaint cannot sustain RICO claims for another reason: even outside the context of litigation misconduct, the alleged cover-up of unlawful acts cannot serve as RICO predicates.

This Court squarely addressed this issue in *Democratic National Comm. v. Russian Federation*, 392 F. Supp. 3d 410 (S.D.N.Y. 2019). In that case, the plaintiff alleged that an "enterprise" hacked and released its emails, *id.* at 417–18, and later "attempted to cover up" their activities "through criminal obstruction of justice and witness tampering," *id.* at 424–25. Noting

30

that "'acts of concealment done after the central objectives of the conspiracy have been attained, for the purpose of covering up after the crime,' are not considered part of the conspiracy," the Court held that the acts of concealment in that case "cannot be found to be predicate acts for the purposes of the DNC's RICO claim." *Id.* at 444 (quoting *Grunewald v. United States*, 353 U.S. 391, 405 (1957) and *Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 919 (N.D. Ind. 2013)).

Plaintiffs' allegations here mirror those in *Dem. Nat'l Comm.* Just as in that case, Plaintiffs allege that an "enterprise" acted to "cover up its role in the hacking of Azima." Compl. ¶ 6. And, just as in that case, the alleged theft and release of Azima's information—and thus the harm— "had already taken place before the alleged acts of concealment." *Dem. Nat'l Comm.*, 392 F. Supp. 3d at 444 n.29. The alleged acts of concealment were not "done in order to allow the defendants to continue stealing documents or to continue publishing documents" to achieve their central objective, *id.*, which by the Complaint's telling was some combination of intimidating Azima, discrediting him by publishing his data, and using the hacked data to embroil him in litigation, Compl. ¶ 44. Thus, just as in that case, "the alleged acts of concealment . . . cannot be considered predicate acts." *Dem. Nat'l Comm.*, 392 F. Supp. 3d at 444 n.29; *see also Preway Inc. v. Touche Ross & Co.*, 1987 WL 109924, at *9 (W.D. Wis. Feb. 18, 1987) ("[T]he concealment or cover-up itself merely protects the original fraudulent acts. A cover-up produces no distinct injuries and has no separate or distinguishable victims.")

### 3.   The Complaint Does Not Plead a Scheme to Obtain Money or Property

For the reasons set forth above, the Complaint's allegations of litigation misconduct and of concealment generally do not form the basis of a RICO claim. The Complaint's allegations of wire fraud and mail fraud fail for an additional reason that applies to all Defendants: they do not allege that Plaintiffs' money or property was the object of the fraudulent scheme. *See Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020). The mail- and wire-fraud predicates are largely

related to the alleged hacking, which, by Plaintiffs' own admission, is not at issue in this suit.  *See* Compl. ¶ 5 n.2; Compl, Exs. A, B.  As for the remaining allegations—which consist of attempts to conceal Defendants' alleged involvement in the hacking and litigation filings—Plaintiffs offer nothing to support a theory that money or property was somehow the object of Defendants' alleged scheme to defraud the courts.  Indeed, the object of these "cover-up" activities, as alleged in the Complaint, is protecting Defendants themselves from liability.  *See, e.g.*, Compl., Ex. B, ¶¶ 57, 68–69, 83.  To the extent Defendants' actions had an incidental impact on Plaintiffs' money or property, that is insufficient to allege mail or wire fraud.  *See Kelly*¸ 140 S. Ct. at 1574.  And to the extent Azima and his businesses were harmed by negative publicity resulting from the various litigation proceedings, that, too, cannot sustain a mail- or wire-fraud predicate for a RICO claim.  *See Rajaratnam*, 449 F. Supp. 3d at 73 (collecting cases in which courts have "routinely and soundly reject[ed]" attempts to "spin an alleged scheme to harm a plaintiff's [] reputation into a RICO claim" (internal quotation marks omitted)).

## IV.   Plaintiffs Fail to Plead Cognizable Injury or Proximate Cause

RICO standing "is a more rigorous matter than standing under Article III."  *American Medical Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 440 (S.D.N.Y. 2008) (quoting *Denney v. Deutsche Bank, AG*, 443 F.3d 253, 266 (2d. Cir.2006)).  To satisfy RICO's statutory standing requirements, a plaintiff must demonstrate, "(1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation."  *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (per curiam).  Even assuming the first prong can be satisfied, the Complaint falls short when it comes to the latter two.  A plaintiff "must allege *actual*, quantifiable injury"; in other words, "courts have required that the plaintiff show concrete financial loss in order to show injury under RICO."  *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 613 (S.D.N.Y. 2015) (emphasis in original).  And in order to establish proximate

cause, a plaintiff must establish a "direct relation" between the injury and the alleged conduct; "a link that is too remote, purely contingent, or indirect is insufficient." *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 141 (2d Cir. 2018) (citing *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 15 (2010)).  The Complaint fails on both counts.

### A.     Azima Fails to Allege a Cognizable Injury

Throughout the Complaint, Azima claims harm to his "reputation and goodwill," *see, e.g.*, Compl. ¶ 245, but it is black letter law that such personal injuries are not recognized under RICO. *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 459 (S.D.N.Y. 2004) ("[D]amages to plaintiff's 'business reputation and good will'… simply are not the type of injuries to 'business and property' that are actionable under RICO."), *aff'd*, 173 F. App'x 15 (2d Cir. 2006); *Kerik*, 64 F. Supp. 3d at 561 ("[R]eputational injuries are insufficient to support a civil RICO claim.").

Azima also claims that he has been deprived of "identifiable and quantifiable business opportunities," Compl. ¶ 229, though he fails to identify or quantify them.  Such allegations are plainly speculative, and fail to plead with particularity the "concrete financial loss" necessary to sustain a claim for RICO injury.  *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (holding that "injury in the form of lost business commissions . . . is too speculative to confer standing."); *Prichard v. 164 Ludlow Corp.*, 390 F. Supp. 2d 408, 411 n.5 (S.D.N.Y. 2005) (claim of "loss of business opportunity" failed because it was "not pleaded with the requisite particularity" under RICO).  Indeed, even where plaintiffs allege loss in estimated dollar amounts, courts reject the claims of injury.  *See American Medical Ass'n*, 588 F. Supp. 2d at 440 ("Plaintiffs refer to 'hundreds of millions of dollars or more' that Plaintiffs were allegedly deprived of.  This is obviously an estimate on Plaintiffs' part, and therefore neither clear nor definitive.").  Azima does not even attempt that insufficient effort here.

The same holds true for Azima's claim that he suffered the cancellation of vague "business financing" or the "refus[al] to provide Azima with such financing."  Compl. ¶ 229.  Azima makes no effort to provide any detail as to what "business financing" he otherwise would have received, from whom he would have received it, what it would have been for, nor the dollar amounts of damage he suffered because of it.  *See Prichard*, 390 F. Supp. 2d at 408, n.5; *American Home Mortg. Corp. v. UM Securities Corp.*, 2007 WL 1074837, at *4 (S.D.N.Y. Apr. 9, 2007) (plaintiff failed to allege injury where he "has not alleged the loan amount…, the sum by which defendants overstated the property value, or the amount of the loan-if any-that was unrecoverable through foreclosure.").  His vague claims that his "banks . . . close[d] accounts and cancel[led] credit cards" are just as deficient; he provides no detail as to what accounts or credit cards were supposedly canceled, nor any damages he suffered because of it.  Compl. ¶ 229; *see American Medical Ass'n*, 588 F. Supp. 2d at 441.  Moreover, "RICO damages are netted against recovery obtained by collateral and other sources." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 231 (E.D.N.Y. May 7, 2014) (quoting *Uzan*, 322 F.3d at 135).  Azima makes no effort to plead whether he did or did not have other credit cards, bank accounts or financing that offset or altogether eliminate these purported losses.

Azima also repeatedly claims that he suffered damages in the forms of legal fees and costs in the parallel proceedings.  Compl. ¶¶ 79, 179, 181.  While legal fees can, in certain circumstances, constitute cognizable injuries under RICO, it is only "so long as they were proximately caused by a RICO violation." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 152 (S.D.N.Y. 2014) (quoting *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993)).  Here, Plaintiffs' claims for legal fees stem from alleged litigation misconduct, *see, e.g.,* Compl. ¶¶ 160 and 179, and as set forth above, litigation misconduct does not form the basis of any RICO predicate.  *See*

34

*supra* Section III.C.1; *see Black*, 2022 WL 2374514, at *27 (where plaintiff's claims for legal fees stemmed from purportedly wrongful litigation activities, it could not form basis of RICO injury). Additionally, Plaintiff "fail[ed] to plead the amount of legal fees he has incurred," which also renders his claim insufficient. *See Rosendale v. Citibank, N.A.*, 1996 WL 175089, at *4 (S.D.N.Y. Apr. 15, 1996) (dismissing RICO claim).

### B. The Corporate Plaintiffs Fail to Allege Cognizable Injury

Nor do the Corporate Plaintiffs allege any cognizable injuries. As an initial matter, Azima cannot bring a RICO claim on his companies' behalf, even with an ownership interest in them. *See Nygård v. Bacon*, 2021 WL 3721347, at *4 (S.D.N.Y. Aug. 20, 2021). And for their part, the companies allege the same sort of vague and generalized harms that are insufficient to sustain a RICO claim, as outlined above. They allege damage to their "reputation and good will," unspecified "damages stemming from the unlawful hacking and release of . . . business records, financial damages, and trade secrets," as well as attorneys' fees. *See* Compl. ¶¶ 258–61. None of these are concrete, non-speculative, clear, or definite financial losses. *See, e.g.*, *American Medical Ass'n*, 588 F. Supp. 2d at 440*; First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768 (2d Cir. 1994).

Plaintiffs' single attempt in the 83-page Complaint to establish a quantifiable injury is made with respect to Plaintiff FFV Development, a Missouri company in which Azima holds a 50% stake, and which in turn wholly owns Plaintiff Main 3260. Compl. ¶¶ 14, 180. Plaintiff alleges that Main 3260 was "expecting to receive a loan of approximately $13.5 million"—without specifying from whom—but "as a result of the actions taken by the Enterprise against Azima detailed above, the financing was rejected in January 2019." *Id.* ¶ 180. This was supposedly "due to the negative publicity instigated by the Enterprise that the bank found when conducting its due diligence." *Id.*

As addressed in greater detail below, this allegation suffers from a failure to plead proximate causation, as it is wholly speculative and action by "third and even fourth parties," *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 15 (2010), namely the unnamed lender, broke the requisite causal chain. *See Petroff Amshen LLP v. Alfa Rehab PT PC*, 2022 WL 480475, at *3 (2d Cir. Feb. 17, 2022) ("The connection from Defendants' conduct to [plaintiff's] reputational harm to consequential damages in the form of lost business is too attenuated to satisfy the proximate cause requirement."). But this claim also fails, as do the claims of all the Corporate Plaintiffs, for a more fundamental reason: the Corporate Plaintiffs fail to plead that any of them were "targets" of the RICO predicate acts.

"To have standing, plaintiffs must show that they were the intended targets of the RICO violations." *J.T.*, 500 F. Supp. 3d at 166 (quoting *G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 549 (S.D.N.Y. 2002)); *see also Tymoshenko v. Firtash*, 57 F. Supp. 3d 311, 324 (S.D.N.Y. 2014) ("But Plaintiffs never adequately plead that Tymoshenko was the target, competitor or intended victim of the [] Enterprise's money laundering, as civil RICO requires."). Here, the Complaint focuses nearly exclusively on Azima, repeatedly describing the purported Enterprise's goal as one "of inflicting reputation [sic] harm and massive litigation costs on Azima." *See, e.g.,* Compl. ¶¶ 30–32, 35, 37. The Complaint nowhere alleges that Defendants had any interaction with Corporate Plaintiffs, nor that they were even aware of their existence, including Plaintiff FFV. The Complaint does not describe how the Enterprise could have or did actually target financing for a Missouri real estate project. Indeed, in describing the harm to FFV Development, Plaintiffs allege that "as a result of the actions taken by the Enterprise *against Azima* detailed above, the financing was rejected in January 2019." Compl. ¶ 180 (emphasis added). In other words, by Plaintiffs' own account, Azima was the purported target of the conduct that

36

allegedly caused FFV Development harm, but "[i]njury which results indirectly from the predicate acts does not confer standing under RICO." *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 587 (S.D.N.Y. 1995).[10]

### C.     The Complaint Fails to Establish Proximate Cause

As noted above, a RICO plaintiff must plausibly allege "that the RICO offense was the proximate cause of the plaintiff's injuries." *Empire Merchants, LLC,* 902 F.3d at 141.  Proximate cause requires "some direct relation between the injury asserted and the injurious conduct alleged," and "a link that is too remote, purely contingent, or indirect is insufficient." *Id.* (cleaned up) (citing *Hemi Grp.*, 559 U.S. at 9).  Therefore, courts "rarely 'go beyond the first step' when assessing causation under civil RICO." *Id.* (quoting *Hemi Grp.*, 559 U.S. at 10).  Courts will reject harms that "rest[] on the independent actions of third and even fourth parties." *Hemi Grp.*, 559 U.S. at 15.

This is precisely the case with Plaintiffs' alleged injuries.  Plaintiffs' causal argument—that but for Defendants' litigation misconduct, courts would have ruled a different way, which in turn would have resulted in a better business reputation for Azima, which in turn would have caused lenders and financiers to provide him with loans and business opportunities—relies on far too many independent actors to support a RICO claim.

As addressed above, Azima's damages largely consist of lost business opportunities that resulted from negative publicity from ongoing litigation which, in large part, *he initiated.*  But as

---

[10] To the extent Plaintiffs rely on the Complaint's broad allegation that "[o]ne of the objectives of the Enterprise's scheme to defraud was to cause economic damages to Azima and his businesses," Compl. ¶¶ 59, 181, this general claim fails to allege that the purported Enterprise or that any RICO predicate specifically targeted FFV Development or any of the Corporate Plaintiffs. *J.T.*, 500 F. Supp. 3d at 166; *In re American Express Co. S'holder Litig.*, 39 F.3d 395, 400 n.3 (2d Cir. 1994) (complaint must do more than "cursorily assert that [plaintiff] was a victim of the RICO defendants' acts").

the Second Circuit recently held, "[t]he connection from Defendants' conduct to [plaintiff's] reputational harm to consequential damages in the form of lost business is too attenuated to satisfy the proximate cause requirement." *Petroff Amshen LLP*, 2022 WL 480475, at \*3. Additionally, the decision to "cancel credit cards and lines of credit, and cancel business financing," Compl. ¶ 229, involve the decision-making of "third and even fourth parties," *Hemi Grp.*, 559 U.S. at 15, namely the credit card companies or financiers at issue, whose decision-making could have been guided by a wide variety of factors. *See Kerik*, 64 F. Supp. 3d at 561 ("[E]ven if any reputational injury suffered by the plaintiff as a result of these acts were cognizable, it would be difficult to discern how much of it was due to these acts and not to other factors.") (citation omitted).

The "third and fourth" parties involved in Plaintiffs' causal chain also include courts themselves. Plaintiffs allege that "but for [the Enterprise's] false statements . . . Azima could have demonstrated that the 2016 Agreement [] was a fraud; avoided a transfer of his case to the UK based on the Agreement's forum selection clause . . . and obtained a favorable judgment" in the D.C. and North Carolina Proceedings. Compl. ¶ 182. As an initial matter, a court is well-equipped to make independent decisions, thereby breaking Azima's attenuated causal nexus. In fact, the U.K. Court of Appeal said in no uncertain terms that it was making such an independent decision: presented with Azima's new allegations, it held that the hacked documents "ought to have been disclosed by Mr. Azima anyway," regardless of their provenance, *see* Quinn Decl., Ex. 2 ¶ 62, and to strike the fraud claims against him "would leave Mr. Azima with the benefit of his fraud." *Id.* Hacking cover-up or no, that court was going to hold Azima responsible for his fraudulent and unlawful conduct. To be sure, Azima is continuing to fight that outcome in the U.K., but that only underscores that this Court should dismiss in favor of those ongoing proceedings. *See supra* Section I.

**D.     Injuries From a "Cover Up" Are Not Proximately Caused Under RICO as a Matter of Law**

All of the injuries alleged in the Complaint fail for an additional reason: just as alleged acts of concealment cannot form RICO predicate acts, *see supra* Section III.C.2, injuries a plaintiff would have or could have suffered regardless of any concealment are not proximately caused by the concealment, but rather the underlying conduct. *See, e.g.*, *Citadel Mgmt, Inc.*, 123 F. Supp. 2d at 153 ("'[A]n act which proximately caused an injury is analytically distinct from one which… concealed an injury which happened or could have happened independently of the act,' [as] the former scenario properly forms the predicate for a RICO claim, whereas the latter does not.") (quoting *Palmadessa*, 874 F. Supp. at 587); *see also Leung v. Law*, 387 F. Supp. 2d 105, 122 (E.D.N.Y. 2005) (alleged acts that concealed injury did not proximately cause those injuries).

Here, the Complaint makes no effort to explain how Plaintiffs were injured by the alleged litigation misconduct at issue in this case—i.e., the "cover up"—as distinct from the underlying alleged conduct itself, i.e., the hacking and release of Azima's emails and the filing of the U.K. Proceeding. *See* Compl. ¶¶ 38–72 (describing hacking and "deploy[ing] the hacked materials against Azima" by bringing suit against him in the UK in reliance on the hacked documents as part of underlying allegations). Indeed, Azima explicitly attributes some of his injuries—the closure of his bank accounts and the denial of loans to him—to "the negative publicity brought on by the Enterprise's litigation against Azima in the UK *based on the hacked documents*," Compl. ¶ 179 (emphasis added); *i.e.*, the alleged underlying activity Plaintiffs say is not at issue in this case. *See* Compl. ¶ 5 n.2. Azima otherwise provides no explanation as to how damage to his reputation that, in turn, caused lost "business opportunities" and "business financing," was the result of false statements made by Defendants to cover up their role in the hacking in litigation proceedings, rather than the hacking and revelation of his emails themselves, likely because such an argument

would defy common sense.  Indeed, in the U.K. Proceeding, he asserts the same injuries as resulting from the hacking itself.  *See* Quinn Decl., Ex. 5 ¶ 128 (seeking "compensation for the financial loss and damage incurred in consequence upon the breach of confidence and/or misuse of private information"); ¶ 164 (alleging that the "hacking and dissemination of Mr. Azima's data" resulted in "the severance of business relationships and loss of business expectancy").

In short, Plaintiffs fail to allege that any of their injuries were proximately caused by the litigation misconduct at issue here, rather than the alleged underlying conduct.  *See Empire Merchants v. Reliable Churchill LLLP*, 2017 WL 5559030, at \*14 (E.D.N.Y. Mar. 16, 2017), *aff'd*, 902 F.3d 132 (2d Cir. 2018) ("Most courts in this Circuit have held that concealment of underlying illegal activity *cannot* be the proximate cause of a plaintiff's injury").

## V.     Because the Complaint Does Not Adequately Plead a § 1962(c) Claim, the § 1962(d) Claim also Fails

 "[A] complaint must adequately state a claim under §§ 1962(a), (b), or (c) in order for the Court to find a violation of § 1962(d)."  *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 428 (S.D.N.Y. 2007).  For all the reasons stated above, Plaintiffs have not done so, and so Count II, which alleges a RICO conspiracy in violation of 18 U.S.C. § 1962(d), must be dismissed as well. S*ee Satinwood, Inc.*, 385 F.3d at 182 (affirming district court dismissal of § 1962(d) claim where "Plaintiffs did not adequately allege a substantive violation of RICO").

## **CONCLUSION**

For the foregoing reasons, the Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: February 28, 2023
      New York, New York                              *[Signature blocks on following page.]*

/s/ David G. Barger
David G. Barger*
Michael R. Sklaire*
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
David.Barger@gtlaw.com
Michael.Sklaire@gtlaw.com

Daniel Filor
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-6758
Filord@gtlaw.com

*Counsel for Defendants Amir Handjani,
Andrew Frank and KARV Communications*

/s/ Andrew St. Laurent
Andrew St. Laurent
Evan W. Bolla
HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street, 53rd Floor
New York, NY 10005
Tel: (212) 397-3370
andrew@hs-law.com
ewbolla@hs-law.com

*Counsel for Defendant David Neil Gerrard*

/s/ Samuel Rosenthal
Samuel Rosenthal, Esq.
Lisa Herbert, Esq.
NELSON MULLINS RILEY & SCARBOROUGH LLP
330 Madison Avenue, 27th Floor
New York, New York 10017
Tel: (212) 413-9058
sam.rosenthal@nelsonmullins.com
lisa.herbert@nelsonmullins.com

*Counsel for Defendants Nicholas Del Rosso
and Vital Management Services, Inc.*

/s/ Sean Hecker
Sean Hecker
John C. Quinn
David Gopstein
Mark Weiner
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
shecker@kaplanhecker.com
jquinn@kaplanhecker.com
dgopstein@kaplanhecker.com
mweiner@kaplanhecker.com

*Counsel for Defendant Dechert LLP*

/s/ Helen Gredd
Helen Gredd
Michael Gerber
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, NY 10110
Tel: (212) 921-8399
hgredd@lswlaw.com
mgerber@lswlaw.com

*Counsel for Defendant David Graham Hughes*

/s/ Elan I. Baret
Elan I. Baret, Esq.*
BARET LAW GROUP, P.A.
3999 Sheridan Street, 2nd Floor
Hollywood, FL 33021
Tel: (954) 486-9966
elan@baretlawgroup.com

Christopher S. Salivar, Esquire*
CHRISTOPHER S. SALIVAR, P.L.L.C.
301 W. Atlantic Ave., Suite O-5
Delray Beach, FL 33444
Tel: (561) 628-8908
cssalivarattorney@gmail.com

*Counsel for Defendants Insight Analysis and
Research, LLC, SDC-Gadot, and Amit Forlit*

*Admitted pro hac vice*