**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FARHAD AZIMA,
ALG TRANSPORTATION, INC.,
MAIN 3260 LLC,
FFV W39 LLC, and
FFV DEVELOPMENT LLC,

                    Plaintiffs,

v.

DECHERT LLP,
DAVID NEIL GERRARD,
DAVID GRAHAM HUGHES,
NICHOLAS DEL ROSSO,
VITAL MANAGEMENT SERVICES, INC.,
AMIT FORLIT,
INSIGHT ANALYSIS AND RESEARCH LLC,
SDC-GADOT LLC,
AMIR HANDJANI,
ANDREW FRANK, and
KARV COMMUNICATIONS,

                    Defendants.

Case No. 1:22-cv-08728 (PGG) (JW)


**ORAL ARGUMENT REQUESTED**


**JOINT REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTIONS TO DISMISS**


*[Signature blocks on following page.]*


June 20, 2023

David G. Barger*
Michael R. Sklaire*
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
David.Barger@gtlaw.com
Michael.Sklaire@gtlaw.com

Daniel Filor
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-6758
Filord@gtlaw.com

*Counsel for Defendants Amir Handjani,
Andrew Frank and KARV Communications*

Andrew St. Laurent
Evan W. Bolla
HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street, 53rd Floor
New York, NY 10005
Tel: (212) 397-3370
andrew@hs-law.com
ewbolla@hs-law.com

*Counsel for Defendant David Neil Gerrard*

Samuel Rosenthal, Esq.
Lisa Herbert, Esq.
NELSON MULLINS RILEY & SCARBOROUGH LLP
330 Madison Avenue, 27th Floor
New York, New York 10017
Tel: (212) 413-9058
sam.rosenthal@nelsonmullins.com
lisa.herbert@nelsonmullins.com

*Counsel for Defendants Nicholas Del Rosso
and Vital Management Services, Inc.*

Sean Hecker
John C. Quinn
David Gopstein
Mark Weiner
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
shecker@kaplanhecker.com
jquinn@kaplanhecker.com
dgopstein@kaplanhecker.com
mweiner@kaplanhecker.com

*Counsel for Defendant Dechert LLP*

Helen Gredd
Brandon Davis
LANKLER SIFFERT & WOHL LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 921-8399
hgredd@lswlaw.com

*Counsel for Defendant David Graham Hughes*

Elan I. Baret, Esq.*
BARET LAW GROUP, P.A.
3999 Sheridan Street, 2nd Floor
Hollywood, FL 33021
Tel: (954) 486-9966
elan@baretlawgroup.com

Christopher S. Salivar, Esquire*
CHRISTOPHER S. SALIVAR, P.L.L.C.
301 W. Atlantic Ave., Suite O-5
Delray Beach, FL 33444
Tel: (561) 628-8908
cssalivarattorney@gmail.com

*Counsel for Defendants Insight Analysis and
Research, LLC, SDC-Gadot, and Amit Forlit*

*Admitted pro hac vice*

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I.  International Comity Dictates Dismissal Because the Same Issues are Being Litigated in the U.K. Proceeding .......................................................................................................... 3

A.  This Case and the U.K. Proceeding are Parallel Proceedings ...................................... 3

B.  "Exceptional Circumstances" Warrant Abstention ...................................................... 6

II.  The Prohibition on Claim-Splitting Warrants Dismissal Because Plaintiffs' Claims are Also Duplicative of Those in North Carolina ............................................................. 10

III.  Plaintiffs' Claims are Barred by the Statute of Limitations .............................................. 11

IV.  The Complaint Does Not Adequately Plead the Elements of a RICO Claim .................. 13

A.  The Complaint Fails to Allege the Existence of a RICO Enterprise ......................... 13

B.  The Complaint Fails to Allege a Pattern of Racketeering Activity ........................... 14

1.  Plaintiffs Fail to Allege a Closed-Ended Scheme ................................................. 14

2.  Plaintiffs Fail to Allege an Open-Ended Scheme ................................................. 18

C.  The Complaint Does Not Allege Any Cognizable RICO Predicates ......................... 20

1.  Litigation Activities Are Not RICO Predicates .................................................... 20

2.  Acts of Concealment Also Do Not Constitute RICO Predicates .......................... 22

3.  The Complaint Does Not Plead a Scheme to Obtain Money or Property ........... 24

V.  Plaintiffs Fail to Plead Cognizable Injury or Proximate Cause ....................................... 26

A.  The Complaint Fails to Establish Cognizable Injuries .............................................. 26

B.  The Complaint Fails to Establish Proximate Cause .................................................. 28

VI.  Because the Complaint Does Not Plead a § 1962(c) Claim, the § 1962(d) Claim Fails .. 31

CONCLUSION ........................................................................................................................ 31

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alix v. McKinsey & Co.*,
   23 F.4th 196 (2d Cir. 2022) ................................................................ 30

*Alphas Co. of N.Y., Inc. v. Hunts Point Term. Product Cooperative, Inc.*,
   2017 WL 1929506 (S.D.N.Y. May 9, 2017) ......................................... 27

*Amimon Inc. v. Shenzhen Hollyland Tech. Co.*,
   2021 WL 5605258 (S.D.N.Y. Nov. 30, 2021) ........................................ 8

*Angermeir v. Cohen*,
   14 F. Supp. 3d 134 (S.D.N.Y. 2014) .................................................... 26

*Aramony v. United Way of America*,
   969 F. Supp. 226 (S.D.N.Y. 1997) ...................................................... 12

*Bankers Trust Co. v. Rhoades*,
   859 F.2d 1096 (2d Cir. 1988) .............................................................. 12

*Bartlett v. Societe Generale de Banque au Liban SAL*,
   2021 WL 3706909 (E.D.N.Y. Aug. 6, 2021) .......................................... 8

*Bath Petrol. Storage, Inc. v. Market Hub Partners, L.P.*,
   229 F.3d 1135 (2d Cir. 2000) .............................................................. 15

*Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*,
   346 F. Supp. 3d 432 (S.D.N.Y. 2018) .................................................. 23

*Bilalov v. Gref*,
   2022 WL 4225968 (S.D.N.Y. Sept. 13, 2022) ....................................... 11

*Black v. Ganieva*,
   619 F. Supp. 3d 309 (S.D.N.Y. 2022) .............................. 13, 16, 17, 21

*Brock v. Zuckerberg*,
   2021 WL 2650070 (S.D.N.Y. June 25, 2021) ....................................... 20

*Cambridge Cap. LLC v. Ruby Has LLC*,
   565 F. Supp. 3d 420 (S.D.N.Y. 2021) .................................................. 15

*Chandradat v. Navillus Tile*,
   2004 WL 2186562 (S.D.N.Y. 2004) ..................................................... 29

*Chevron Corp. v. Donziger,*
   768 F. Supp. 2d 581 (S.D.N.Y. 2011)...................................................................... 21

*Chevron Corp. v. Donziger,*
   871 F. Supp. 2d 229 (S.D.N.Y. 2012)...................................................................... 21

*Chevron Corp. v. Donziger,*
   974 F. Supp. 2d 362 (S.D.N.Y. 2014)................................................................. 3, 13

*City of New York v. Venkataram,*
   396 F. App'x 722 (2d Cir. 2010) ............................................................................ 23

*Clune v. Barry,*
   2023 WL 2929388 (S.D.N.Y. Apr. 13, 2023)........................................................ 12

*Computer Assocs. Int'l, Inc. v. Altai, Inc.,*
   950 F. Supp. 48 (E.D.N.Y. 1996) ............................................................................ 5

*Com-Tech-Assocs. v. Computer Assocs. Int'l, Inc.,*
   753 F. Supp. 1078 (E.D.N.Y. 1990) ...................................................................... 17

*Crawford v. Franklin Credit Mgmt. Corp.,*
   758 F.3d 473 (2d Cir. 2014)............................................................................. 17, 18

*Cunard S.S. Co. v. Salen Reefer Servs. AB,*
   773 F.2d 4527 (2d Cir. 1985)................................................................................... 7

*Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.,*
   758 F. Supp. 2d 153 (E.D.N.Y. 2010) ............................................................ *passim*

*Curtis v. Citibank, N.A.,*
   226 F.3d 133 (2d Cir. 2000).................................................................................... 10

*Daigneault v. Eaton Corp.,*
   2008 WL 2604929 (D. Conn. June 16, 2008)........................................................ 14

*Davis v. Norwalk Econ. Opportunity Now, Inc.,*
   534 F. App'x 47 (2d Cir. 2013) .............................................................................. 10

*Democratic Nat'l Comm. v. Russian Federation,*
   392 F. Supp. 3d 410 (S.D.N.Y. 2019)................................................ 2, 22, 24, 26

*Eastman Kodak Co. v. Camarata,*
   2006 WL 3538944 (W.D.N.Y. Dec. 6, 2006)........................................................ 23

*Empire Merchants v. Reliable Churchill LLLP,*
   2017 WL 5559030 (E.D.N.Y. Mar. 16, 2017)....................................................... 30

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)............................................................... 14, 24, 31

*Frydman v. Verschlesier*,
  172 F. Supp. 3d 653 (S.D.N.Y. 2016)............................................................ 28

*Glob. Tech Indus. Grp., Inc. v. Go Fun Grp. Holdings, Ltd.*,
  2017 WL 5036665 (S.D.N.Y. Nov. 2, 2017)....................................................... 5

*Grace Int'l Assembly of God v. Festa*,
  797 F. App'x 603 (2d Cir. 2019) ........................................................... *passim*

*Gross v. Waywell*,
  628 F. Supp. 2d 475 (S.D.N.Y. 2009)............................................................ 16

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010).............................................................................. 30

*In re Merrill Lynch Ltd. P'ships Litig.*,
  154 F.3d 56 (2d Cir. 1998)..................................................................... 11

*J.T. v. de Blasio*,
  500 F. Supp. 3d 137 (S.D.N.Y. 2000)........................................................... 28

*Jota v. Texaco, Inc.*,
  157 F.3d 153 (2d Cir. 1998).................................................................... 9

*Kalimantano GmbH v. Motion in Time, Inc.*,
  939 F. Supp. 2d 392 (S.D.N.Y. 2013)........................................................... 18

*Kelly v. United States*,
  140 S. Ct. 1565 (2020)................................................................... 16, 24, 25

*Kerik v. Tacopina*,
  64 F. Supp. 3d 542 (S.D.N.Y. 2014)......................................................... 27, 30

*Kim v. Kimm*,
  884 F. 3d 98 (2d Cir. 2018)................................................................... 20

*Kingstown Cap. Mgmt., L.P. v. Vitek*,
  2020 WL 5350492 (S.D.N.Y. Sept. 4, 2020)................................................... 5, 6, 8

*Kitaru Innovations Inc. v. Chandaria*,
  698 F. Supp. 2d 386 (S.D.N.Y. 2010).......................................................... 7

*Knoll v. Schectman*,
  275 F. App'x 50 (2d Cir. 2008) ............................................................... 24

*Lefkowitz v. Bank of New York*,
   2003 WL 22480049 (S.D.N.Y. Oct. 31, 2003) ........................................................ 19

*Levine v. Torino Jewelers, Ltd.*,
   2006 WL 709098 (S.D.N.Y. Mar. 22, 2006) ........................................................ 23

*Marini v. Adamo*,
   812 F. Supp. 2d 243 (E.D.N.Y. 2011) ........................................................ 17

*MLC (Bermuda) Ltd. v. Credit Suisse First Bos. Corp.*,
   46 F. Supp. 2d 249 (S.D.N.Y. 1999) ........................................................ 5

*Norex Petrol. Ltd. v. Access Indus.*,
   416 F.3d 146 (2d Cir. 2005) ........................................................ 8

*Nygard v. Bacon*,
   2021 WL 3721347 (S.D.N.Y. Aug. 20, 2021) ........................................................ 27

*Percoco v. United States*,
   143 S. Ct. 1130 (2023) ........................................................ 25

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
   2022 WL 480475 (2d Cir. Feb. 17, 2022) ........................................................ 30

*Prichard v. 164 Ludlow Corp.*,
   390 F. Supp. 2d 408 (S.D.N.Y. 2005) ........................................................ 27

*Rajaratnam v. Motley Rice, LLC*,
   449 F. Supp. 3d 45 (E.D.N.Y. 2020) ........................................................ 16, 21, 22

*Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*,
   1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ........................................................ 24

*Reich v. Lopez*,
   38 F. Supp. 3d 436 (S.D.N.Y. 2014) ........................................................ 27

*Royal & Sun. All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*,
   466 F.3d 88 (2d Cir. 2006) ........................................................ 4, 5, 6

*Saluzzo v. Greenbaum*,
   2011 WL 13234286 (N.D.N.Y. Feb. 4, 2011) ........................................................ 20

*SKS Constructors, Inc. v. Drinkwine*,
   458 F. Supp. 2d 68 (E.D.N.Y. 2006) ........................................................ 17

*Snyder v. U.S. Equities Corp.*,
   2014 WL 317189 (W.D.N.Y. Jan. 28, 2014) ........................................................ 21

*Spool v. World Child Int'l Adoption Agency*,
    520 F.3d 178 (2d Cir. 2008) ........................................................................... 19

*Sykes v. Mel Harris & Assocs., LLC*,
    757 F. Supp. 2d 413 (S.D.N.Y. 2010) ............................................................ 21

*Tarazi v. Truehope*,
    958 F. Supp. 2d 428 (S.D.N.Y. 2013) ................................................... 3, 4, 6, 7

*Tech. Opportunity Grp., Ltd. v. BCN Telecom, Inc.*,
    2019 WL 4688628 (S.D.N.Y. Sept. 25, 2019) .............................................. 11

*United States v. Coiro*,
    922 F.2d 1008 (2d Cir. 1991) ........................................................................ 24

*von Spee v. von Spee*,
    514 F. Supp. 2d 302 (D. Conn. 2007) ................................................... 7, 8, 10

*Waldman v. Vill. of Kiryas Joel*,
    207 F.3d 105 (2d Cir. 2000) .......................................................................... 10

*Wells Fargo Century, Inc. v. Hanakis*,
    2005 WL 1523788 (E.D.N.Y. June 28, 2005) .............................................. 17

*West 79th Street Corp. v. Congregation Kahl Michas Chinuch*,
    2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004) ............................................. 25

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007) ........................................................... 22

*WTA Tour, Inc. v. Super Slam Ltd.*,
    339 F. Supp. 3d 390 (S.D.N.Y. 2018) ............................................................. 5

*Zahl v. Kosovsky*,
    2011 WL 779784 (S.D.N.Y. Mar. 3, 2011) .................................................. 12

**Statutes**

18 U.S.C. § 1503 ...................................................................................................... 9

18 U.S.C. § 1956(c)(7)(A) ...................................................................................... 25

18 U.S.C. § 1961(1) ........................................................................................... 15, 16

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................. 16

**Other Authorities**

Application Notice, *Ras al Khaimah Inv. Auth. v. Azima,*
 Case No. HC-2016-002798 (June 6, 2023)................................................................. 6

Consolidated Second Amended Complaint, *Frydman v. Verschlesier*,
 No. 14-cv-5903 (S.D.N.Y. July 15, 2015) ................................................................. 28

Hearing Transcript, *Ras al Khaimah Inv. Auth. v. Azima*,
 Case No. HC-2016-002798 (Oct. 17, 2022) .............................................................. 9

*Massey v Heynes & Co*,
 (1888) 21 QBD 330 .............................................................................................. 9, 10

*Petroleo Brasileiro SA v Mellitus Shipping Inc (The Baltic Flame)*,
 [2001] EWCA Civ 418 ............................................................................................. 10

*Ras al Khaimah Inv. Auth. v. Azima*,
 [2023] EWCA Civ 507 .............................................................................................. 1

Reply Brief of Petitioner, *Azima v. Handjani*,
 No. 21-MC-501 (S.D.N.Y. Aug. 4, 2021) ................................................................. 4

Re-Re-Re-Amended Counterclaim, *Ras Al Khaimah Inv. Auth. v. Azima*,
 Case No. HC-2016-002798 (Nov. 8, 2022) ............................................................... 4

U.K. Civ. P. R. Practice Direction 6B §3.1(3)(b) ........................................................ 9

Defendants Dechert LLP ("Dechert"), David Neil Gerrard, David Graham Hughes, Nicholas Del Rosso, Vital Management Services, Inc. ("Vital"), Amit Forlit, Insight Analysis and Research LLC ("Insight"), SDC-Gadot LLC ("SDC-Gadot"), Amir Handjani, Andrew Frank, and KARV Communications ("KARV") respectfully submit this joint reply memorandum of law in support of their motions to dismiss the Complaint (the "Motions").

## PRELIMINARY STATEMENT

Plaintiffs do not (and cannot) seriously dispute that this litigation is duplicative of ongoing litigation in the U.K.; they all but admit that they are pursuing this case because the U.S. offers the potential reward of treble damages. *See* Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss (the "Opposition" or "Opp.") at 49. That Plaintiffs do not address this threshold issue until the very end of their brief is telling, and while Plaintiffs strain to identify distinctions between the two litigations that either do not exist or are of no consequence, in the end this case is centrally premised on allegations already being litigated or more appropriately lodged in the U.K. Comity therefore dictates that this action be dismissed. Indeed, the case for comity has only grown stronger since the Motions were made, as the U.K. Court of Appeal recently allowed Azima to proceed with his claim to set aside the trial court's judgment on the basis that it was procured by fraud—the same alleged wrongdoing at issue here. *See* Second Declaration of John Quinn ("2d. Quinn Decl."), Ex. 1 (*Ras al Khaimah Inv. Auth. v. Azima* [2023] EWCA Civ 507) ¶¶ 131–32.

Even if the Court were to reach the sufficiency of Plaintiffs' Complaint, the Opposition fails to salvage Plaintiffs' RICO claims. At its core, Plaintiffs ask the Court to find that acts to "cover up" a hacking that "occurred in or about 2016," largely through denying that hacking in court documents, constitutes a pattern of racketeering activity. But this attempt to tactically split the baby—litigating the hacking in the U.K. while trying to use the "cover up" as a basis for an

independent RICO claim—infects the RICO claim with fatal flaws that the Opposition cannot overcome. For one thing, Plaintiffs do not plead a cognizable "enterprise" or "pattern"; their theory is about a group of persons and entities defending themselves with a single scheme against a single victim, which cannot form the basis of a RICO claim. *See Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 606 (2d Cir. 2019). Moreover, Plaintiffs' theory is fundamentally about acts of concealment and litigation misconduct, and courts have repeatedly held such acts do not constitute RICO predicates, *see* Joint Motion at 28–31 (citing, e.g., *Democratic Nat'l Comm. v. Russian Federation*, 392 F. Supp. 3d 410, 444 (S.D.N.Y. 2019) ("acts of concealment" not RICO predicates); *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010) (litigation misconduct not RICO predicates)). Plaintiffs also have not pleaded a cognizable RICO injury resulting from the alleged acts of concealment, let alone one proximately caused by those acts, rather than the underlying hacking.

The Opposition's attempt to plug these holes only confirms that Plaintiffs cannot state a RICO claim. The Opposition says that Plaintiffs' RICO claim involves conduct "well beyond the hacking of Azima, including a multi-prong campaign against multiple targets to instigate criminal exposure; an online disparagement campaign; obstruction of legal proceedings; and an additional, second round of hacking." Opp. at 23 (citations to Complaint omitted). But Plaintiffs nowhere explain how "instigat[ing] criminal exposure" by providing law enforcement with authentic documents, or an "online disparagement campaign," could possibly constitute one of the limited criminal acts that can serve as a RICO predicate. Nor are the tacked-on allegations about alleged hacking of a non-party's U.K. lawyers a cognizable predicate act. That leaves only Plaintiffs' narrow band of claims concerning "obstruction," by denying involvement in earlier hacking, which again, are not RICO predicate acts, and which, even if they were, constitute the type of "single

2

scheme with a single victim" that falls short of a pattern of racketeering activity. *See Grace Int'l*, 797 F. App'x at 606. In the end, Plaintiffs' RICO claim is all smoke but no substance.

Plaintiffs' last line of defense is their repeated insistence that this case is on all fours with *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014), *aff'd* 833 F.3d 74 (2d Cir. 2016). But that "extraordinary" case involved the corruption of the judicial function itself—not mere misconduct within a judicial proceeding. There, the plaintiffs in an Ecuadorian suit, led by attorney Steve Donziger, coerced a judge into appointing a "neutral" expert to make a damages assessment, secretly paid that expert to sign off on a report written by the plaintiffs themselves, and then ultimately bribed the judge overseeing the case to issue a multi-billion-dollar judgment against Chevron, again secretly written by the plaintiffs themselves. *See id*. at 384. That is a far cry from Plaintiffs' allegations here, which involve parties denying allegations against them before neutral arbiters (whose competence and integrity has not been questioned) and engaging in the type of purported "litigation misconduct" that judges are well-equipped to evaluate and sanction as appropriate. That sort of alleged misconduct has been repeatedly held to not constitute a RICO claim. *See Curtis & Assocs., P.C.*, 758 F. Supp. 2d at 174.

For these and other reasons outlined in the Motion and below—including that Plaintiffs' claims are untimely—the Complaint should be dismissed with prejudice.

## **ARGUMENT**

### I.     **International Comity Dictates Dismissal Because the Same Issues are Being Litigated in the U.K. Proceeding**

#### A.     **This Case and the U.K. Proceeding are Parallel Proceedings**

The Opposition does not dispute that proceedings are parallel and abstention on the basis of comity may be appropriate where "'substantially the same [parties are] litigating substantially the same issues' simultaneously in two fora." *Tarazi v. Truehope*, 958 F. Supp. 2d 428, 433

(S.D.N.Y. 2013) (quoting *Royal & Sun. All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006)). That is the case here: both this litigation and the U.K. Proceeding arise from the same alleged conduct and raise substantially the same issues.  Having brought claims in the U.K. Proceeding, Azima now seeks to break off a piece of it (the alleged cover-up) and argue that it is a separate case—even though his Complaint belies that claim and he previously told both this Court and the U.K. court the opposite.[1]  He does so to avail himself of RICO's treble damages provision.   But the principles of comity have no treble damages exception.

At bottom, both this litigation and the U.K. Proceeding arise from the alleged hacking of Azima by agents of RAK and later efforts to conceal that hacking. *Compare* Compl. *with* First Quinn Decl., Ex. 5.   Both allege that Defendant Gerrard masterminded the hacking, and both involve Gerrard; his employer, Dechert; and other RAK agents who participated in the alleged scheme. *Id.*  In other words, they involve "substantially the same issues." *Tarazi*, 958 F.Supp. 2d at 433.  A comparison of Azima's allegations in the two cases reveals the depth of the overlap:

| Allegations | S.D.N.Y. Complaint | U.K. Complaint (First Quinn Decl., Ex. 5) |
|---|---|---|
| Cover-up of the hacking | ¶¶ 44, 73–75, 101–11, 113–19, 170–74 | ¶¶ 48, 106(c), 107(m), 131(d)–(e), 134(e)–(g) |
| Litigation misconduct in U.K. proceedings | ¶ 98, 101–07, 109–11, 174 | ¶¶ 26E, 40A, 46–47B, 75–77AA, 108(c), 109(g), 110(j), 183–88, 192–99 |
| Evidence destruction | ¶¶ 115–16, 170–73 | ¶¶ 40C–D, 82–87, 107(s), 109(j) |
| Hacking | ¶¶ 44–58 | ¶¶ 28–40, 42–45E, 48B–D, 53–57, 77AB–81C, 101–11, 189–90; 193–95, 199 |
| Posting data online | ¶ 67, 70–71, 82 | ¶¶ 72–74, 99 |

---

[1] *See* First Declaration of John Quinn ("First Quinn Decl."), Ex. 3 (Reply Brief of Petitioner, *Azima v. Handjani*, No. 21-MC-501, Dkt. 13 (S.D.N.Y. Aug. 4, 2021)) at 5 (representing to this Court that Azima's U.K. allegations include "efforts by the co-conspirators to conceal their actions . . . through 2020"); Ex. 5 (Re-Re-Re-Amended Counterclaim (the "RRRACC"), *Ras Al Khaimah Inv. Auth. v. Azima*, Case No. HC-2016-002798) ¶¶ 106(c), 107(m), 131(d)–(e), 134(e)–(g) (alleging acts of concealment in UK Court).

The Opposition fails to meaningfully address the substance of its duplicative claims, and instead seeks to manufacture daylight between them. But contrary to Plaintiffs' contention, in order for a court to abstain based on comity, (1) the parties need not be exactly the same, *Royal & Sun All.*, 466 F.3d at 94[2]; (2) the issues need not be identical, *Kingstown Cap. Mgmt., L.P. v. Vitek*, 2020 WL 5350492, at *6 (S.D.N.Y. Sept. 4, 2020); and (3) the relief sought or available need not be equivalent, *see Glob. Tech Indus. Grp., Inc. v. Go Fun Grp. Holdings, Ltd.,* 2017 WL 5036665, at *4 (S.D.N.Y. Nov. 2, 2017) (difference in remedies relevant but not decisive).

That Azima here has named additional agents as defendants, and added a couple of businesses he owns as plaintiffs (because they allegedly suffered downstream harm due to the damage to Azima's reputation), does not disentangle the proceedings. *See Kingstown*, 2020 WL 5350492, at *5 (finding actions parallel where additional plaintiffs did not expand injury plaintiffs sought to redress and additional defendants did not alter scope of alleged misconduct or likelihood of success. Nor does Azima's tactical effort to paint this litigation as focused on Defendants' purported "cover up," and the U.K. litigation as focused on the hacking, *see* Compl. ¶ 5 n.2; *see also MLC (Bermuda) Ltd. v. Credit Suisse First Bos. Corp.*, 46 F. Supp. 2d 249, 252 (S.D.N.Y. 1999) (dismissal warranted where differences between actions were "of form and not of substance," "largely the product of [plaintiff]'s own choices," and the result of "artful pleading [that] cannot obscure the overwhelming identity of issues in the two actions"), or his request for different damages in the two proceedings, *see Kingstown*, 2020 WL 5350492, at *5–6 (similarity

---

[2] The cases Plaintiffs cite for the proposition that courts reject comity arguments when parties are not the same are inapposite. They involve courts confronting a different question than the one here: whether to enjoin a party from pursuing a foreign proceeding, not whether to abstain from hearing a domestic proceeding in favor of an earlier-filed (and ongoing) foreign one. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 950 F. Supp. 48, 53 (E.D.N.Y. 1996), *aff'd*, 126 F.3d 365 (2d Cir. 1997); *WTA Tour, Inc. v. Super Slam Ltd.*, 339 F. Supp. 3d 390, 402–06 (S.D.N.Y. 2018).

in relief sought weighed in favor of abstention, but noting that "[t]he salient factor is whether the proceedings raise the same issues"). Further, Plaintiffs in both actions are "substantially similar," *see Tarazi*, 958 F. Supp. 2d at 434 (parties "similar" for comity purposes when "one party has a substantial ownership interest in the other" (citation omitted)), and Defendants—all purported agents of RAKIA—here are "cast . . . as simply additional participants in a single conspiracy orchestrated by [Gerrard]," a defendant in both actions, *Kingstown*, 2020 WL 5350492, at *5.

Indeed, the similarities between this proceeding and the ongoing U.K. litigation have only grown since Defendants filed their Motion to Dismiss. On May 15, 2023—notably, before Plaintiffs' response was served, though they fail to mention it—the U.K. Court of Appeal affirmed a lower court's decision permitting Azima to pursue his set-aside counterclaim. *See* 2d. Quinn Decl., Ex. 1 ¶ 132. That claim alleges that the May 2020 decision of the U.K. court should be set aside because Gerrard, Forlit, and others conspired to present false evidence. First Quinn Decl., Ex. 5 ¶¶ 181–200. In other words, Azima's set-aside counterclaim alleges the same core of conduct at issue in this litigation. *Compare* First Quinn Decl., Ex. 5 ¶¶ 181–200 (describing alleged obtainment of fraudulent U.K. judgment through, among other things, denials of knowledge of hacking, false evidence regarding discovery of hacked data, and conspiracy to present the same) *with* Compl. ¶¶ 101–07, 109–10 (describing meetings to develop false testimony in U.K. litigation and presentation of the same).[3]

### B.  "Exceptional Circumstances" Warrant Abstention

This case presents the sort of "clearest of justifications [that] will warrant dismissal" on the basis of comity. *Royal & Sun All.*, 466 F.3d at 93. The parallel litigation here was not only filed

---

[3] On June 6, 2023, Azima issued an application seeking default judgment against RAKIA on the set-aside counterclaim. 2d. Quinn Decl., Ex. 2 (Application Notice, *Ras al Khaimah Inv. Auth. v. Azima,* Case No. HC-2016-002798), which only further underscores that Azima continues to progress and actively litigate the U.K. proceedings.

several years before this one, it is well into discovery—indeed, it is nearing trial. *See Tarazi*, 958 F. Supp. 2d at 436 (commencement of discovery in first-filed action weighed in favor of finding exceptional circumstances). Though Plaintiffs suggest that the advanced stage of the litigation weighs against abstention because it is too late to add new parties, the sequencing inquiry recognizes that courts "have traditionally accorded great weight to the first suit filed," *id.* (citation omitted), and "involves a comparison of how much progress has been made in the two actions," *Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 391 (S.D.N.Y. 2010) (citation omitted) (finding factor neutral where no evidence parallel action had progressed significantly). The progress in the U.K. Proceeding weighs in favor of abstention.

The parallel action here not only is deep in discovery, but also the U.K. courts have issued several decisions on questions that would be presented in this case. *See, e.g.*, First Quinn Decl., Exs. 1 (U.K. trial court decision finding Azima committed fraud), 2 (U.K. Court of Appeal decision upholding trial court decision finding that Azima committed fraud), 6 (U.K. trial court decision permitting Azima to add set-aside counterclaim), 7 (U.K. trial court decision permitting U.K. defendants to appeal addition of set-aside counterclaim); 2d. Quinn Decl, Ex. 1 (U.K. Court of Appeal decision permitting set-aside counterclaim to go forward). That, too, counsels in favor of abstention. *See von Spee v. von Spee*, 514 F. Supp. 2d 302, 318 (D. Conn. 2007) (finding multiple decisions by German courts in parallel proceeding counseled in favor of dismissal of U.S. action). In addition, judgments on issues yet to be resolved in the UK litigation may ultimately be entitled to preclusive effect in this litigation. *See Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 457 (2d Cir. 1985) (noting deference "will be granted to the decision or judgment of a foreign court if it is shown that the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated"). And so,

proceeding here on a parallel track risks conflicting decisions on, among other things, factual issues, questions of liability, and complicated privilege claims. Avoiding such duplicative rulings will serve the interest of judicial efficiency. *See von Spee*, 514 F. Supp. 2d at 318.

Plaintiffs' attempts to fight the similarities between these actions are to no avail. As noted above, comity does not require that the same cause of action and relief be available in the foreign proceeding. *See, e.g.*, *Kingstown*, 2020 WL 5350492, at *6 (recognizing comity may be appropriate even where "cases filed in different jurisdictions plead different causes of action"). And, in the related context of *forum non conveniens*, the Second Circuit has explicitly stated that the unavailability of a RICO cause of action or treble damages is not sufficient reason to find a foreign forum inadequate. *See Norex Petrol. Ltd. v. Access Indus.*, 416 F.3d 146, 158 (2d Cir. 2005) (finding that foreign fraud actions may be adequate to adjudicate disputes arising out of RICO violations even though "few foreign jurisdictions provide such an expansive civil vehicle for parties injured by ongoing criminal schemes," let alone treble damages). The cases Plaintiffs cite for the opposite proposition are readily distinguishable. *See Bartlett v. Societe Generale de Banque au Liban SAL*, 2021 WL 3706909, at *10 (E.D.N.Y. Aug. 6, 2021) (finding proceedings not sufficiently similar where U.S. claims for supporting terrorism could not be raised in foreign bankruptcy proceeding); *Amimon Inc. v. Shenzhen Hollyland Tech. Co.*, 2021 WL 5605258, at *8 (S.D.N.Y. Nov. 30, 2021) (finding no exceptional circumstances where only injunctive relief, and not monetary damages, was available in foreign action). Here, as described above, Plaintiffs "seek adjudication of substantially similar wrongdoing causing substantially similar injury." *Kingstown,* 2020 WL 5350492, at *6.[4]

---

[4] Indeed, Azima previously moved to amend his claim in the U.K. Proceeding to seek loss of business damages—the very injury he alleges here. *See* First Quinn Decl., Ex. 5 ¶ 168 (showing

Plaintiffs' contention that the U.K. courts lack jurisdiction over some of the claims and defendants present in this litigation is also unconvincing.[5] *See* Opp. at 52. Their primary argument that the U.K. court would not have jurisdiction over some claims appears to be that that court could not hear the obstruction-of-justice allegations, since the U.S. statute under which Plaintiffs lodge these claims requires obstruction of a U.S. proceeding. *See id.*; 18 U.S.C. § 1503. But Plaintiffs neglect to mention that many of their obstruction allegations involve conduct aimed at *obstructing the U.K. proceedings* and thus have a connection to the foreign jurisdiction. *See* Compl. ¶¶ 86, 98, 101–11 (describing conduct in U.K. proceeding allegedly "intended, at least in substantial part, to obstruct the D.C. District Court Proceeding"). And comity does not strictly require that the foreign forum have jurisdiction over all defendants sought to be sued in the U.S. *See Jota v. Texaco, Inc.*, 157 F.3d 153, 160 (2d Cir. 1998) (recognizing that circumstances could exist where "dismissal is warranted without regard to the defendant's amenability to suit in an adequate foreign forum"). In any event, Azima could have sought to add the U.S. defendants here as "necessary or proper part[ies]" to his U.K. proceeding. *See* U.K. Civ. P. R. Practice Direction 6B §3.1(3)(b), available at https://www.justice.gov.uk/courts/procedure-rules/civil/rules/part06/pd_part06b; *Massey v Heynes & Co* (1888) 21 QBD 330 [338] (foreign defendant may be served where co-defendant is within the jurisdiction and foreign defendant is a necessary or proper party (meaning alternative or cumulative liability "depends on one investigation"), there is a real issue to be tried, and the

---

earlier allegations of loss of business); 2d. Quinn Decl., Ex. 3 (*Ras al Khaimah Inv. Auth. v. Azima*, Transcript of Oct. 17, 2022, hearing on set-aside counterclaim) at 3:5–4:2 (noting Azima attempted to add damages claim for business losses associated with two property development projects in Kansas City but abandoned that amendment).

[5] Of course, U.K. courts are already exercising jurisdiction over a number of the Defendants here, who are also defendants in Azima's earlier-filed suit in that jurisdiction. *See, e.g.*, *Ras al Khaimah Inv. Auth. v. Azima*, Case No. HC-2016-002798 (defendants include Dechert, Neil Gerrard); *Al Sadeq v. Dechert LLP, et al.*, Case No. QB-2020-000322 (defendants include David Hughes).

court is satisfied that England is the proper place to bring the claim); *Petroleo Brasileiro SA v Mellitus Shipping Inc (The Baltic Flame)* [2001] EWCA Civ 418 [33] (citing *Massey*).

Finally, the Opposition's argument that this case has greater connections to the U.S. than to the U.K. is inconsistent with the actual allegations in the Complaint. *See* Opp. at 52. While the Complaint alleges that Gerrard and others conducted some Enterprise affairs from New York, it acknowledges that both Gerrard and Hughes were based in the U.K. *See* Compl. ¶¶ 17, 53. Many of the alleged meetings occurred abroad, *see, e.g.*, *id.* ¶¶ 101–09, and most of the purported litigation misconduct was allegedly directed at the U.K. Proceeding. *Id.* The Opposition tries to connect these meetings and purported litigation misconduct in the U.K. to the U.S. by noting that the D.C. case was pending at the time of the alleged misconduct. But the Opposition has it backwards: allegations about conduct in the U.K. and in U.K. proceedings belong in the U.K. *See von Spee*, 514 F. Supp. 2d at 318. The fact that Azima decided to bring a case in D.C. that should have been brought in the U.K. has no bearing on that analysis.

## II.     The Prohibition on Claim-Splitting Warrants Dismissal Because Plaintiffs' Claims are Also Duplicative of Those in North Carolina

The Opposition's response to Defendants' claim-splitting argument fares no better. While this action and the North Carolina action are not identical, the rule against duplicative litigation "does not require that all aspects of the new and prior suits be identical." *Davis v. Norwalk Econ. Opportunity Now, Inc.*, 534 F. App'x 47, 48 (2d Cir. 2013). "The complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the district court consider the equities of the situation when exercising its discretion." *Curtis v. Citibank*, *N.A.*, 226 F.3d 133, 138 (2d Cir.2000). Here, there are sufficient grounds to conclude that the two suits arise out of the same nucleus of operative fact; this Court can and should consider its own power to manage its docket and preserve judicial resources. *See Waldman v. Vill. of Kiryas*

*Joel*, 207 F.3d 105, 108–110 (2d Cir. 2000). And while Plaintiffs contend that they were unaware when filing the suit in North Carolina that jurisdiction might have existed there as to defendants other than Del Rosso and Vital, *see* Opp. at 54 n.28, that hardly explains why they nevertheless filed suits in both jurisdiction, and it offers no rejoinder to Defendants' broader point: this litigation should be dismissed because it is duplicative of ongoing suits elsewhere.

## III. Plaintiffs' Claims are Barred by the Statute of Limitations

Plaintiffs seek relief for Defendants' alleged "efforts to cover up" a hacking scheme that Plaintiffs have known about for nearly six years. Compl. ¶ 5 n.2. Because more than four years have passed since Plaintiffs discovered their "core injury," *i.e.*, the release of Azima's hacked emails, Plaintiffs' RICO claims are time-barred and should be dismissed. *Tech. Opportunity Grp., Ltd. v. BCN Telecom, Inc.*, 2019 WL 4688628, at *6 (S.D.N.Y. Sept. 25, 2019); Mot. at 22.

In response to this straightforward analysis, the Opposition points to two alleged injuries in the past four years, specifically (1) certain legal expenses that Azima "incurred as a result of obstructive acts" by Defendants in various U.K. and U.S. court proceedings, most of which were brought by Azima, and (2) FFV Development's loss of a $13.5 million loan as a result of "the negative publicity instigated by the Enterprise." Opp. at 44–45. Neither of these injuries is cognizable under RICO, as discussed in Section V.A below. On the timeliness front, they cannot trigger the separate accrual rule necessary to revive Plaintiffs' untimely RICO claims. Mot. at 21.

While the Opposition refuses to acknowledge it, the law is clear that new injuries that stem from efforts to "conceal an old injury" are necessarily derivative and not "independent." *Bilalov v. Gref*, 2022 WL 4225968, at *8 (S.D.N.Y. Sept. 13, 2022) (finding injuries stemming from defendants' "extortion and intimidation" to conceal a seven-year-old injury were not independent); *see also In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 59–60 (2d Cir. 1998) ("[C]ontinuing efforts to conceal the initial fraud" are not "separate and distinct fraudulent acts resulting in new

and independent injuries"); *Clune v. Barry*, 2023 WL 2929388, at *9 (S.D.N.Y. Apr. 13, 2023).
By Plaintiffs' own words, "the UK case focuses on crimes that occurred in or about 2016, while
this Complaint focuses on efforts to cover up those crimes." Compl. ¶ 5, n.2. The "new" injuries
are therefore not independent as a matter of law.

This is particularly true because the case on which Plaintiffs rely, *Bankers Trust Co. v.
Rhoades*, 859 F.2d 1096 (2d Cir. 1988), involved legal fees arising from frivolous lawsuits *against*
Plaintiffs. *Id.* at 1099. By contrast, Plaintiffs' claims for legal fees here arise largely from lawsuits
that Azima himself initiated. *See* Compl. ¶¶ 83, 129, 144; *Zahl v. Kosovsky*, 2011 WL 779784, at
*12 (S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 F. App'x 34 (2d Cir. 2012) (no separate accrual where
injuries were "direct results of the enforcement of, and compliance with, prior court orders and
decisions, many of which were the products of Plaintiff's own initiation of proceedings in state
court"). Plaintiffs cite to no authority for the proposition that a party can "re-start" their own injury
by initiating a lawsuit about it. *See Zahl*, 2011 WL 779784, at *2; *see also Aramony v. United
Way of America*, 969 F. Supp. 226, 232 (S.D.N.Y. 1997). Parties with untimely claims cannot
revive them simply by bringing new cases generating legal fees.[6]

As for FFV Development's lost financing, the Opposition tellingly does not even attempt
to explain how that injury is independent of the reputational harm Azima has suffered since the

---

[6] In the one suit brought against Azima, by non-party RAKIA, a trial has already been held (in the
U.K.) and Azima lost. First Quinn Decl., Ex. 2 ¶ 128. In that suit Azima raised, and the Court
considered, Azima's claims that RAKIA (and certain Defendants here) participated in the
purported hacking; the Court held that even if it were true, it would still hold Azima liable because
the hacked documents "ought to have been disclosed by Mr. Azima [in discovery] anyway," and
to strike the fraud claims against him "would leave Mr. Azima with the benefit of his fraud." *Id.*
¶ 62. Plaintiffs cite to no authority that a claim for legal fees can constitute a new and independent
injury where they were incurred in a fully litigated and meritorious action, particularly one they
lost. To be sure, Azima continues to challenge that decision via a set-aside claim in the United
Kingdom, which underscores why comity is appropriate here. As it stands, however, a trial
judgment has been awarded against him.

2016 release of his hacked materials. *See* Mot. at 21–22.  Indeed, by Plaintiffs' own admission, their reputational injury has been "continuous" and "ongoing."  Compl. ¶ 179.  The court should dismiss Plaintiffs' claims as time-barred.

## IV.   The Complaint Does Not Adequately Plead the Elements of a RICO Claim

### A.   The Complaint Fails to Allege the Existence of a RICO Enterprise

In response to Defendants' argument that the Complaint does not plead a RICO enterprise with a common purpose, the Opposition does no more than point to the Complaint's conclusory assertion of the Enterprise's goal.  *See* Opp. at 18–19 (quoting Compl. ¶ 207).  It offers no response to what Defendants point out in our opening brief—namely, that half of the Complaint (the alleged hack) is, by Plaintiffs' own concession, not the basis of the claims here, and that the other half (the alleged cover-up) describes the sort of "general synchronicity or shared enmity" that is not sufficient to establish a common purpose.  *See Black v. Ganieva*, 619 F. Supp. 3d 309, 333 (S.D.N.Y. 2022), *aff'd*, 2023 WL 2317173 (2d Cir. Mar. 2, 2023).

Plaintiffs' only response to the argument that the alleged Enterprise lacks a purpose separate and apart from the alleged fraudulent activity is to cite to *Chevron v. Donziger*, but in this respect too, that case is factually distinct in a critical way.  *See* Opp. at 19 (citing 974 F. Supp. 2d 362, 576).  *Chevron* involved an organized class of litigants, overseen in all respects by Donziger, operating in large part through formal non-profit organizations to support, fund, and execute the broad goals of the purported enterprise.  *See* 974 F. Supp. 2d at 395–405.  Here, by contrast, the Complaint describes a group of individuals and entities embroiled in litigation largely brought by Plaintiffs, allegedly working to conceal unlawful activity for which Plaintiffs and others sought to hold them liable.  *Cf.* Compl. ¶ 5 n.2.

As for the Complaint's failure to allege an enterprise that satisfies § 1962(c)'s distinctness requirement, the Opposition offers no meaningful response to the fact that the members of the

enterprise acted as agents of RAK.  *See* First Quinn Decl., Ex 5 ¶ 35.  While RAK later ceased participating in the U.K. litigation and criticized certain former advisors, the Complaint does not allege that RAK ever disclaimed its agency relationship with any Defendant.  *See* Compl. ¶¶ 69 n.6, 201.  RAK's position with respect to the *services* of its agents does not change the fact that the members of the alleged enterprise here were RAK and lawyers, consultants, and contractors engaged to do work on its behalf.  *See* Compl. ¶¶ 15–26; *see Daigneault v. Eaton Corp.*, 2008 WL 2604929, at *3 (D. Conn. June 16, 2008) (distinctiveness not shown where employees and attorneys acted as "agents of [the corporation] when they allegedly committed" predicate acts).

### B.     The Complaint Fails to Allege a Pattern of Racketeering Activity

As explained in our opening brief, the Complaint also fails to plead the requisite "pattern" of racketeering activity, whether via closed- or open-ended continuity.  *See* Mot. at 25–28.  The Opposition attempts to manufacture a "pattern" by first sweeping in allegations that are not conceivably RICO predicate offenses, and then ultimately by asking this Court to hold for the first time that concealment of prior acts could alone constitute a RICO pattern.  Neither gambit works.

### 1.     Plaintiffs Fail to Allege a Closed-Ended Scheme

The Opposition principally argues that the Complaint pleads a closed-ended scheme.  *See* Opp. at 22–24.  In evaluating an alleged close-ended scheme, courts consider not only whether the alleged acts extend over a "substantial period of time," but also "the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004).  The Opposition here points to allegations extending beyond two years to meet the temporal requirement, but, "while two years may be the *minimum* duration necessary to find closed-ended continuity, the mere fact that the acts span two years is insufficient, without more, to support a finding of a closed-ended pattern."  *Id.*

For all its inventive and wide-ranging allegations, the Complaint is limited in scope.  By Plaintiffs' own admission, this case is about "the cover-up" of the alleged earlier hacking.  Compl. ¶ 5, n.2.  It alleges a scheme of concealment beginning in 2018 of a hacking that was singularly targeted at Azima, and is thus the type of single "scheme with one clear victim" that is "insufficient to establish a pattern for the purposes of RICO."  *Grace Int'l*, 797 F. App'x. at 606.  Plaintiffs attempt to magnify the scope of the purported scheme by alleging that it actually included "conduct well beyond the hacking of Azima, including a multi-prong campaign against multiple targets to instigate criminal exposure, an online disparagement campaign, obstruction of legal proceedings, and an additional second round of hacking."  Opp. at 23.  But these additional allegations, beyond those related to the legal proceedings, are not even conceivably RICO predicate acts.

With respect to "instigat[ing] criminal exposure," apart from a reference to the Complaint's allegations that Defendants "manipulat[ed] U.S. law enforcement agencies into launching a criminal investigation of" Azima, Compl. ¶¶ 76–79, the Opposition makes no attempt to explain how providing U.S. federal law enforcement with Azima's (authentic) documents constitutes any RICO predicate act.[7]  *Compare* 18 U.S.C. § 1961(1) (delineating RICO predicates).  The same is true with respect to the purported "online disparagement campaign," *see* Compl. ¶¶ 80–82; again, Plaintiffs do not, and cannot, argue that providing even hacked documents to journalists constitutes

---

[7] Even if providing the government with documents could possibly constitute a RICO predicate act—and it cannot—petitioning the government is protected under the First Amendment pursuant to the *Noerr-Pennington* doctrine.  *See* Memorandum of Law in Support of Defendant Dechert LLP's Motion to Dismiss at 11–12; *Bath Petrol. Storage, Inc. v. Market Hub Partners, L.P.*, 229 F.3d 1135, at *1 (2d Cir. 2000).  While Plaintiffs half-heartedly respond that Dechert's "misconduct falls within the sham exception" to the *Noerr-Pennington* doctrine because it is "a pattern of baseless, repetitive claims," *see* Mem. in Opp. to Def. Dechert Individual Br. at 19, Plaintiffs make no attempt to explain how providing authentic documents to law enforcement could logically be "objectively baseless."  *See Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 476 (S.D.N.Y. 2021) (rejecting application of sham exception where "[t]here is no well-pleaded allegation that [the claims] are objectively baseless").

any RICO predicate act. *See Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 73–74 (E.D.N.Y. 2020) ("Plaintiff's attempt to spin an alleged scheme to harm a plaintiff's reputation into a RICO claim fails, and federal courts routinely and soundly reject such attempts.") (collecting cases). And finally, with respect to the "additional, second round of hacking"—allegedly an attempt to hack non-party Al Sadeq's U.K. lawyers with respect to a different litigation, *see* Compl. ¶¶ 162–69—hacking is also not a RICO predicate. *See* 18 U.S.C. § 1961(1).[8] That leaves only the reference to "obstruction"—which again, is not cognizable here. *See supra*, at 2–3.

The Opposition's attempt to establish a closed-ended scheme by expanding the purported number of victims beyond Azima fares no better. The Opposition asserts that "the Enterprise conspired to and did inflict harm on numerous victims, including Massaad, Al Sadeq, and others referenced but not named in the Complaint." Opp. at 23. But the Complaint never alleges a single act, RICO or otherwise, against Massaad. And even if the Court did consider the tacked-on hacking allegations related to Al Sadeq, a "few victims" (here, two) is still insufficient to establish a RICO enterprise. *See Grace Int'l*, 797 F. App'x at 605; *see also Black*, 619 F. Supp. at 346 ("RICO caselaw disfavors finding continuity where the alleged scheme targeted few victims"). Finally, Plaintiffs' last-ditch effort to sweep in "others referenced but not named in the complaint" fails because these are wholly undefined, unnamed "others" supported by no factual allegations whatsoever; they are thus dissimilar to the defined-but-unnamed parties the cases cited by

---

[8] Even if the Opposition had argued that the alleged Al Sadeq hacking constituted wire fraud—which they nowhere do—the Complaint fails to allege such fraud with the heightened particularity requirements of Fed. R. Civ. P. 9(b), as they must. *See Gross v. Waywell*, 628 F. Supp. 2d 475, 494–95 (S.D.N.Y. 2009) (in RICO context, wire fraud requires "information concerning where, when and by which defendant any representations involved in the alleged fraudulent scheme constituting deception of Plaintiffs were communicated"). Nor does the Complaint allege that such hacking was done to obtain money or property. *See Kelly v. United States*, 140 S. Ct. 1565, 1568 (2020).

Plaintiffs have considered in affirming a "pattern" of racketeering activity.  *Compare SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 80 (E.D.N.Y. 2006) (court considered home improvement company's other defrauded customers); *Wells Fargo Century, Inc. v. Hanakis*, 2005 WL 1523788, at *4 (E.D.N.Y. June 28, 2005) (court can consider non-party victims if plaintiff shows that "the other individuals considered were affected in a way qualitatively similar to that of the plaintiff.").  A vague gesture at "others" is woefully insufficient.

Plaintiffs alternatively argue that even if this case does involve a single scheme and single victim, that is sufficient to establish a pattern.  Opp. at 24.  The Opposition does not address, let alone attempt to distinguish, the line of Second Circuit decisions holding that where there "is one scheme with one clear victim . . . [it] is clearly insufficient to establish a pattern for the purposes of RICO."  *Grace Int'l*, 797 F. App'x at 606 (citing *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 488 (2d Cir. 2014)); *Black,* 619 F. Supp. 3d at 246.  Instead, Plaintiffs rely on older, non-binding authority from the Eastern District that found a (far longer) single scheme or single victim may, under certain circumstances, be sufficient.  *See* Opp. at 24 (citing *Com-Tech-Assocs. v. Computer Assocs. Int'l, Inc.*, 753 F. Supp. 1078, 1091 (E.D.N.Y. 1990) (ten years of defrauding eight partners in limited partnership sufficient for pattern) and *Marini v. Adamo*, 812 F. Supp. 2d 243, 262–64 (E.D.N.Y. 2011) (six years of fraud involving over 100 fraudulent transactions sufficient). But even if the Court credited those cases, Plaintiffs point to no case where the concealment of an earlier alleged crime alone could constitute a "pattern" for RICO purposes.  *Compare Com-Tech*, 753 F. Supp. at 1091 (scheme to defraud *and* concealment sufficient for pattern); *Marini*, 812 F. Supp. 2d at 262–64 (repeated scheme to defraud sufficient).  Plaintiffs ask the Court to significantly lower the bar required for establishing a pattern of racketeering activity by holding that a scheme to conceal alone, and targeted at only one or two people, is sufficient.

17

*See Crawford*, 758 F.3d at 488 (rejecting claim that one scheme/one victim was sufficient); *Grace Int'l*, 797 F. App'x at 606.  The Court should decline to expand civil RICO in such a fashion.  *See* Mot. at 22–23 (citing cases holding RICO claims should be examined with particular scrutiny).

### 2.   Plaintiffs Fail to Allege an Open-Ended Scheme

The Opposition spends less time on open-ended continuity, and for good reason.  Open-ended continuity requires either that the alleged enterprise is "inherently unlawful," or, where the enterprise "primarily conducts a legitimate business [, that] . . . there is some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity."  *Grace Int'l¸* 797 F. App'x at 606.

The Opposition fails to address these requirements.  *See* Opp. at 24–26. Plaintiffs do not, and cannot, assert that the operation of a major international law firm and other legitimate businesses are "inherently unlawful," a characterization "that primarily targets organized crime." *Grace Int'l*, 797 F. App'x at 606.  Nor do they assert that criminal acts are "the regular way of operating" the Defendants' businesses.  *Id.*  Instead, Plaintiffs argue that "[o]bstructing justice, tampering with witnesses, mail fraud, wire fraud, hacking, and laundering money are crimes, regardless of the occupation of the criminal."  Opp. at 25.  But that foot-stomping assertion does nothing to satisfy the continuity inquiry, which requires more than alleging that crimes were committed.  *See Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 392, 406 (S.D.N.Y. 2013) ("Such allegations, if true, may constitute violations of criminal statutes; they are not, however, sufficiently open-ended to support such a RICO claim.").

The Opposition suggests that the nature of the predicate acts implies a threat of continued criminal activity.  Opp. at 25. To support that suggestion, Plaintiffs, without a hint of irony, allege that Defendants "continue to *instigate* and impede" litigation to "attempt to destroy Azima's

reputation." Opp. at 26 (emphasis added).  Yet no litigation has ever been brought against Azima

by any Defendant at any time; the only related matter ever allegedly "instigated" against Azima

was brought in 2016 by RAKIA, whom Azima declined to name as a defendant here (for

transparently tactical reasons).  Otherwise it is Azima who continues to bring case after case, on

both sides of the Atlantic, and then, when Defendants defend those cases, Azima argues that they

constitute a RICO enterprise.[9]  Ultimately, because the purported RICO activity is tethered to

litigations, it is "inherently terminable," *Spool v. World Child Int'l Adoption Agency¸* 520 F.3d

178, 186 (2d Cir. 2008), and therefore cannot create open ended continuity; indeed, Plaintiffs

concede that "the litigation that is the basis of this Complaint will ultimately end."  Opp. at 26.

While Plaintiffs attempt to distinguish the authority holding litigation-related conduct is

inherently terminable on the grounds that it involved "the resolution of a single case," Opp. at 26

(citing *Lefkowitz v. Bank of New York*, 2003 WL 22480049, at *9 (S.D.N.Y. Oct. 31, 2003),

Plaintiffs cannot separate themselves simply by suing Defendants repeatedly (for the same

conduct).  And while Plaintiffs speculate that "the Enterprise's conduct suggests that the plan to

harm perceived enemies and obstruct justice will continue," *id.*, this sort of baseless conjecture

cannot support an assertion of a RICO "pattern."  *See Grace Int'l*, 797 F. App'x at 606

("[S]peculative claims regarding how long the fraud would continue do not, on their own, support

a showing of open-ended continuity.")

---

[9] Plaintiffs wrongly assert that "when RAK withdrew from the U.K. litigation, Dechert stepped
into their shoes to continue to bring the claims against Azima." Opp. at 25.  In fact, Dechert simply
defended itself against claims brought by Azima, including the set-aside counterclaim.

### C.     The Complaint Does Not Allege Any Cognizable RICO Predicates

#### 1.     Litigation Activities Are Not RICO Predicates

As noted above, the heart of the Complaint is the alleged conduct of the purported Enterprise in various litigation proceedings.  The Opposition tries to draw a line between "in-court" and out-of-court activities, *see* Opp. at 26, but that line is of Plaintiffs' own creation.  Courts have drawn no such distinction in holding that litigation activities cannot sustain RICO predicates. *See, e.g.*, *Curtis & Assocs., P.C.*, 758 F. Supp. 2d at 173 (collecting cases); *Saluzzo v. Greenbaum*, 2011 WL 13234286, at *3 (N.D.N.Y. Feb. 4, 2011) ("suborning perjury" and otherwise providing false testimony not RICO predicates); *Brock v. Zuckerberg*, 2021 WL 2650070, at *5 (S.D.N.Y. June 25, 2021), *aff'd* 2022 WL 1231044 (2d Cir. Apr. 27, 2022) (dismissing mail fraud, wire fraud, and obstruction of justice claims "because they ar[o]se purely out of a litigation action").

Indeed, the reasons that courts do not permit litigation activities to serve as RICO predicates apply equally to actions taken inside and outside of court: allowing unsuccessful parties to relitigate either set of activity intended to influence the outcome of litigations could "engender wasteful satellite litigation" and "inundate the federal courts with procedurally complex RICO proceedings." *Kim v. Kimm*, 884 F. 3d 98, 104 (2d Cir. 2018).  Allowing later reexamination of both "would erode the principles undergirding the doctrines of res judicata and collateral estoppel, as such claims frequently call into question the validity of documents presented in the underlying litigation as well as the judicial decisions that relied upon them." *Id.*  Accordingly, where, as here, "[t]he gravamen of the Complaint is . . . that defendants[] have violated RICO by defending against plaintiffs' . . . claims or initiating . . . actions against plaintiffs and thereby forcing plaintiffs to litigate allegedly 'phony' and 'frivolous' lawsuits . . . [the Complaint] fails to state a claim upon which relief may be granted." *Curtis & Assocs., P.C.*, 758 F. Supp. 2d at 171.

Plaintiffs point to two of the "rare example[s] of a complaint successfully alleging that litigation activity contributed to pleading a viable civil RICO predicate act." *Black*, 619 F. Supp. 3d at 343. But those cases are not like this one. As explained in the Motion, *see* Mot. at 30, *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010), involved a "concerted abuse of the legal system," *Black*, 619 F. Supp. 3d at 342, in which the defendant law firm initiated hundreds of actions with the intent not to serve defendants in order to fraudulently obtain default judgments. *Sykes*, 757 F. Supp. 2d at 419. They thus manufactured "industrial scale state court litigations filed for the exclusive purpose of obtaining default judgments" and affirmatively used the courts as a tool in their money-making scheme. *See Rajaratnam*, 449 F. Supp. 3d at 71. They were not, as here, merely reacting to allegations or discovery demands, or engaged in alleged misconduct readily addressable by the presiding judge or arbiter.

Plaintiffs also rely, here too, on *Chevron*, but that was a very different case. Opp. at 27–28 (citing *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229 (S.D.N.Y. 2012)). As an initial matter, *Chevron* nowhere confronts the question of whether the allegations of litigation activities can sustain RICO predicates, and thus has no direct bearing on the argument at issue here. *Cf. Snyder v. U.S. Equities Corp.*, 2014 WL 317189, at *9 (W.D.N.Y. Jan. 28, 2014) (noting *Sykes* offered no rationale for finding litigation activities RICO predicates because it did not address the line of cases holding litigation activities cannot qualify as such). Moreover, the *Chevron* defendants' scheme sought to extract billions of dollars from Chevron, *see Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581, 601–26 (S.D.N.Y. 2011); the primarily defensive actions of Defendants here, which allegedly caused injuries to Plaintiff's reputation, are simply not comparable. And, as noted above, *Chevron* involved the direct corruption of the judiciary itself, via coercion and bribery of judges, their appointed neutral experts, and the secret drafting of judicial opinions and reports by the

plaintiffs.  One reason litigation misconduct does not form RICO predicates is that such complaints are more appropriately addressed to the courts in which the alleged misconduct occurred.  *See, e.g.*, *Rajaratnam*, 449 F. Supp. 3d at 72 (noting more appropriate measures than a RICO claim are motions for Rule 11 sanctions, preclusion, or FRCP 60(b)(3) relief for fraud on the court).  Such relief is of course impossible when the judiciary itself is corrupted.  Plaintiffs' claims here fall within the heartland of litigation misconduct claims that courts have repeatedly rejected as providing for the basis of a RICO claim.  *See Curtis & Assocs., P.C.,* 758 F. Supp. 2d at 173.

## 2.   Acts of Concealment Also Do Not Constitute RICO Predicates

Plaintiffs' allegations fail for the additional and independent reason that they describe acts of concealment intended to cover up alleged crimes that had been completed.  *See Democratic National Comm.*, 392 F. Supp. 3d at 444 (holding that acts of concealment "cannot be found to be predicate acts for the purposes of the DNC's RICO claim").  The Opposition responds by noting that RICO covers acts that "by their nature involve concealment" and that acts of concealment can be predicate offenses when "'done in furtherance of the main criminal objectives' of the conspiracy." Opp. at 29.  But these general principles have no bearing here because the Complaint does not allege acts of concealment "done in furtherance of the main criminal objectives of the conspiracy."  *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 512 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).

The Opposition points to allegations that Defendants "fabricated and destroyed evidence in the D.C. District Court Proceeding," "submitted false statements in two Section 1782 Proceedings," "manufactured evidence, intimidated witnesses, and submitted false statements in the 2020 North Carolina Proceeding," and "bribed potential witnesses" and "submitted false testimony" in proceedings related to the Al Sadeq litigation.  Opp. at 32 (citing Compl. ¶¶ 83–126, 127–43, 144–60, 170–78).  All those allegations describe conduct undertaken to cover up the

Enterprise's alleged role in the earlier alleged hacking and release of Azima's data; none involve conduct allegedly undertaken to enable the Enterprise to *continue* engaging in such conduct. It is thus distinguishable from the cases Plaintiffs cite involving the use of concealment to enable *ongoing* criminal activity. *See Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 460 n.1 (S.D.N.Y. 2018) (concealment to aid continued stealing of funds could be RICO predicate); *City of New York v. Venkataram*, 396 F. App'x 722, 725 (2d Cir. 2010) (RICO predicate "also allow[ed] [defendant] to receive the money without being found out in the first place"); *Levine v. Torino Jewelers, Ltd.*, 2006 WL 709098, at *4 (S.D.N.Y. Mar. 22, 2006) (acts of concealment actionable where they "helped [defendant] steal more from plaintiff than she otherwise would have"); *Eastman Kodak Co. v. Camarata*, 2006 WL 3538944, at *11 (W.D.N.Y. Dec. 6, 2006) (collecting cases). And here the alleged concealment is even further removed from RICO's purview because the completed underlying conduct—hacking—itself is not a predicate. *Supra*, at 2–3.

Even accepting the Opposition's claim that one of the goals of the Enterprise's campaign was "to lodge baseless, costly litigation against Azima and others to bury the victims in legal fees," Opp. at 8 (citations to Complaint omitted), the alleged acts of concealment still do not further the Enterprise's alleged objectives. To begin with, the acts of concealment Plaintiffs identify occurred in or were allegedly intended to influence litigation *Azima or other parties initiated*, Opp. at 8, 32 (citing Compl. ¶¶ 83–143, 144–60, 170–78), distinguishing Defendants' defensive actions from cases in which litigation was found to have advanced a RICO scheme: a party defending itself against claims brought by another cannot be accused of "lodg[ing] baseless . . . litigation," Opp. at 8. In the one suit that was "lodge[d] . . . against Azima," *id.*, the U.K. litigation, Plaintiffs do not argue that any acts of concealment were intended to enable additional hacking, the filing of

additional litigations, or even the prolonging of that suit. *See* Opp. at 32 (asserting misrepresentations in U.K. litigation were intended to obstruct D.C. Proceeding (citing Compl. ¶¶ 83–126)).  The concealment activities Plaintiffs allege are thus not attempts to enable a continued pattern of the illegality they conceal, *see United States v. Coiro*, 922 F.2d 1008, 1017 (2d Cir. 1991), but rather "acts of concealment done after the central objectives of the conspiracy have been attained, for the purpose of covering up after the crime." *Democratic National Comm.*, 392 F. Supp. 3d at 444 (citations omitted).  They therefore do not constitute RICO predicates. *See Ray Larsen Assocs., Inc. v. Nikko Am., Inc.*, 1996 WL 442799, at *7 n.8 (S.D.N.Y. Aug. 6, 1996) ("[E]fforts by a defendant to cover up the underlying conduct are inadequate to satisfy the continuity requirement of the RICO statute").

### 3. The Complaint Does Not Plead a Scheme to Obtain Money or Property

Plaintiffs' mail and wire fraud allegations can stand only if "an object of their dishonesty was to obtain [another's] money or property." *Kelly*, 140 S. Ct. at 1568. The Opposition contends that an "objective of the Plan 'was to defraud Azima of money and property by harming his businesses and bankrupting him.'"  Opp. at 32 (quoting Compl. ¶ 61).  But the Complaint does not allege that the actions constituting mail and wire fraud had or furthered that objective.  The mail-and wire-fraud allegations primarily involve allegedly false statements to courts and attempts to conceal earlier wrongdoing.[10] *See* Compl. ¶ 224.  The Opposition does not explain how those actions furthered a scheme to deprive Plaintiffs of money or property.

---

[10] The Complaint also alleges communications and payments between members of the Enterprise, but provides no information about what they concerned or how they related to the broader scheme. *See, e.g.*, Compl. Ex. B ¶¶ 110–13. Those allegations do not meet the heightened pleading standards of Rule 9(b). *See Satinwood, Inc.*, 385 F.3d at 178–79; *Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008).

The best Plaintiffs can muster seems to be the idea that those actions forced Azima to incur legal fees or contributed to the destruction of his businesses. *See id.*; Opp. at 32–33. But that ignores that the allegedly fraudulent activities occurred largely *in response* to accusations from Azima.[11]  According to the Complaint, Defendants' objective was thus protecting themselves from liability.  *See, e.g.*, Compl., Ex. B ¶¶ 57, 68–69, 83.  Any financial impact on Plaintiffs was incidental and cannot support fraud predicates.  *See Kelly*, 140 S. Ct. at 1573 ("fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme."); *cf. Percoco v. United States*, 143 S. Ct. 1130, 1138 (2023) (narrowing scope of conduct covered by wire-fraud statute).

Likewise, Plaintiffs have not alleged that the mail- and wire-fraud here was intended to obtain RAK's money either. The Opposition offers the conclusory assertion that Defendants sought "great financial gain . . . through millions in fees for their criminal services" and that Gerrard sought to expand Dechert's work for RAK, *see* Compl. ¶¶ 39, 207, but it cannot explain how defending against Plaintiffs' accusations was intended to further those objectives.[12]

---

[11] To the extent Plaintiffs allege wire- and mail-fraud in connection with the U.K. litigation filed by RAKIA, those are not predicate RICO acts for the reasons stated above. *See supra*, at 20–22 (citing, among others, *Curtis & Assocs., P.C.*, 758 F. Supp. 2d at 171).

[12] Plaintiffs' allegations of money laundering, *see* Compl., Ex. A, likewise fail because they are dependent on proper pleading of a "specified unlawful activity," which in turn incorporate the delineated RICO predicate acts, *see* 18 U.S.C. § 1956(c)(7)(A); for the reasons stated above, Plaintiffs have failed to allege any.  *See West 79th Street Corp. v. Congregation Kahl Michas Chinuch*, 2004 WL 2187069, at *9 (S.D.N.Y. Sept. 29, 2004).

**V.      Plaintiffs Fail to Plead Cognizable Injury or Proximate Cause**

As detailed in the Motion, the Complaint fails to plead any cognizable injury, let alone one proximately caused by a RICO predicate act.  The Opposition only confirms those deficiencies.

**A.      The Complaint Fails to Establish Cognizable Injuries**

In the Opposition, Plaintiffs argue that four purported injuries are cognizable under RICO: Azima's legal fees, damage to Azima's "reputation and goodwill," the closure of Azima's bank accounts, and lost financing for Plaintiff FFV Development.  *See* Opp. at 35–37.  None pass muster.

The Opposition relies most heavily on the claim for legal fees as injury.  This argument fails for three reasons, all consistent with those set forth above.  First, as described in the Motion, Mot. at 34–35, legal fees can constitute cognizable injuries only if they stem from RICO predicate acts, and here the alleged predicates are all non-cognizable litigation misconduct.[13]   Second, Plaintiffs' arguments fall even further afield because the fees stem almost entirely from claims filed by Azima himself; Plaintiffs cite to no case where legal fees expended prosecuting a plaintiff's own case can form the basis for a RICO injury. Third, as described above, the purported acts of litigation misconduct were done for the purposes of concealment, and therefore cannot form the basis of RICO predicates for that independent reason.  *See Democratic National Comm.*, 392 F. Supp. 3d at 444.  In short, the legal fees do not flow from RICO predicates.

---

[13] The Opposition's reliance yet again on *Chevron* is therefore inapplicable because, as described above, *Chevron* involved RICO predicate acts not at issue here and, in any event, the litigation misconduct bar was not raised.  *See supra*, Section IV.C.1.  Nor is *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 153 (S.D.N.Y. 2014) applicable; there the plaintiffs, former lessees of the defendant company, were forced to pay legal fees in response to a slew of allegedly fraudulent lawsuits based on forged documents aimed at extorting the plaintiffs.

The Opposition's attempt to salvage its claim for "damages to reputation and goodwill" fares no better. Unable to dispute that "injury to [] reputation and goodwill . . . are [] not injuries within the meaning of RICO," *Alphas Co. of N.Y., Inc. v. Hunts Point Term. Product Cooperative, Inc.*, 2017 WL 1929506, at *4 (S.D.N.Y. May 9, 2017), the Opposition argues that such injuries are cognizable if they in turn result in other injuries to business or property. Opp. at 37. But unlike the case Plaintiffs rely on, *Reich v. Lopez¸* 38 F. Supp. 3d 436, 450 (S.D.N.Y. 2014), where two specific phone calls containing false information induced two clients to cease business with the plaintiffs, ending $40,000 per month contracts, Plaintiffs here fail to allege any non-speculative, concrete injuries that were proximately caused by the Defendants.

Next, the Opposition relies on Plaintiffs' vague allegation that unnamed "[b]anks have closed Azima's accounts and denied him loans[,]" citing the "negative publicity" brought on by the Enterprise. Opp. at 37 (citing Compl. ¶ 179). However, these type of unspecified claims fail to plead with particularity the "concrete financial loss" necessary to sustain a claim for RICO injury. *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 560 (S.D.N.Y. 2014) (claim of "lost business opportunity" was insufficient because it was "not pleaded with particularity" under RICO); *Prichard v. 164 Ludlow Corp.*, 390 F. Supp. 2d 408, 411 n.5 (S.D.N.Y. 2005). The Complaint alleges nothing about what banks closed what accounts, nor when such alleged closures occurred.

That leaves the sole specified injury related to any of the Plaintiffs,[14] that Plaintiff FFV Development purportedly lost financing due to "negative publicity" caused by the Enterprise.

---

[14] As stated in the Motion, Azima cannot bring a RICO claim on his companies' behalf. Mot. at 35 (citing *Nygard v. Bacon*, 2021 WL 3721347, at *4 (S.D.N.Y. Aug. 20, 2021)). Plaintiffs argue that *Nygard* is distinguishable because "Plaintiff Entities have sued on their own behalf." Opp. at 38. Plaintiffs misunderstand Defendants' argument; the point is that even if a Court found Plaintiff FFV had standing (which it does not), Azima could not get the benefit of that standing because he cannot bring a claim on his companies' behalf. *Nygard*, 2021 WL 3721347, at *4.

Compl. ¶ 180.  But this suffers from several fatal flaws, none of which are resolved by the Opposition.  For one thing, the alleged injury is far too attenuated to meet RICO's proximate cause standard, addressed below.  Even on its own, this theory of injury also cannot overcome the fact that Plaintiff FFV Development, like all the Corporate Plaintiffs, was not a "target" of the purported RICO enterprise.  *See J.T. v. de Blasio*, 500 F. Supp. 3d 137, 166 (S.D.N.Y. 2000) ("To have standing, plaintiffs must show that they were the intended targets of the RICO violations").  Plaintiffs point to their vague allegations that one of the "objectives" of the Enterprise's scheme "was to cause economic damages to Azima and his businesses."  Compl. ¶ 59.  But the concrete injury must be a "specifically-intended consequence of the RICO defendants acts," *J.T.*, 500 F. Supp. 3d at 166, and vague gestures at "harm" to an adversary's unnamed "businesses" falls well short of that requirement, particularly where there is no allegation that Defendants even knew of the existence of FFV Development, let alone the financing for a particular project.  The Opposition cites *Frydman v. Verschlesier*, 172 F. Supp. 3d 653, 669–71 (S.D.N.Y. 2016), as an example of a lost loan constituting a RICO injury, Opp. at 37, but *Frydman* only highlights Plaintiffs' deficiencies; there, the defendants sent hacked information directly to the plaintiff's potential lender to tank a specific mortgage loan.  *Id.* at 660, 671; *id.*, Consolidated Second Amended Complaint, Dkt. 71, ¶ 391 (defendants "used or disclosed said trade secrets to the detriment of Plaintiffs by sending 'anonymous emails' . . . to representatives of both Bancorp and Opera Real Estate").  No such allegations of targeted conduct are present here.

### B.    The Complaint Fails to Establish Proximate Cause

Finally, the Opposition attempts to manufacture a proximate causation claim by citing the U.K. judgment against Azima and lost "business contacts."  Neither works.

First, the Opposition contends that the U.K. foreign judgment was proximately caused by Defendants' actions, relying primarily again on *Chevron*.  Opp. at 39.  As addressed above,

*Chevron* is inapposite for several reasons, *supra* at 3, 13–14, 21–22.  But Plaintiffs go further here, asserting that Defendants obstructed the D.C. District Court Proceeding in order to "keep evidence of their misconduct from being brought to the attention of the courts to further their goal of obtaining a foreign judgment against Azima."  Opp. at 39.  The Opposition has no answer to the fact that the U.K. Court considered Plaintiffs' hacking allegations and decided that the hacked documents "ought to have been disclosed by Mr. Azima [in discovery] anyway," and to strike the fraud claims against him "would leave Mr. Azima with the benefit of his fraud."  First Quinn Decl., Ex. 2, ¶ 62.  In other words, misstatements to conceal the hacking in U.S. courts could not have proximately caused the foreign judgment in the U.K., as that court was aware of the alleged hacking and held that it would have awarded the judgment in any event.  *Id.*

Second, the Opposition contends that Defendants caused them to "lose business contacts," due to "negative publicity" resulting from (1) "the publication of Azima's stolen documents in 2018 and 2019"; "(2) instigation of a law enforcement investigation;" and "(3) the obstruction of U.S. proceedings designed to dupe the U.K. court . . .  in order to obtain a judgment against him."  Opp. at 39–40.  But a RICO injury must be proximately caused by a RICO predicate act, and none of the alleged acts are cognizable RICO predicates.  Moreover, as just stated, the alleged obstruction of U.S. proceedings was not a proximate cause of any U.K judgment.  Even if that were not the case, the purported injury is simply far too attenuated—it requires accepting that but for misstatements in the U.S., the U.K. Court would have ruled differently (which it said it would not have), which would have resulted in a better business reputation for Azima, which in turn would have caused lenders and financiers to provide him with loans and business opportunities.[15]

---

[15] Notably, the FFV Development loan was allegedly rejected in 2019, *before* the U.K. Judgment was issued in 2020 that determined Azima had committed fraud, and therefore Plaintiffs must rely solely on the vague "negative publicity" for that claim.

*Chandradat v. Navillus Tile*, 2004 WL 2186562, at \*5 (S.D.N.Y. 2004) ("The mere recitation of the chain of causation alleged by [plaintiff] is perhaps the best explanation of why he does not have standing based on defendants' RICO activity."). The Second Circuit has rejected just this sort of attenuated chain, *Petroff Amshen LLP v. Alfa Rehab PT PC*, 2022 WL 480475, at \*3 (2d Cir. Feb. 17, 2022) ("Reputational harm . . . in the form of lost business is too attenuated to satisfy the proximate cause requirement"), and involves the "independent actions of third and even fourth parties"—including lenders themselves—that break the chain of causation. *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 15 (2010).

Plaintiffs' reliance on *Alix v. McKinsey & Co.*, 23 F.4th 196, 204 (2d Cir. 2022) is unavailing. There, the Second Circuit held that the consulting firm McKinsey's unlawful failure to disclose its conflicts with potential clients to bankruptcy courts—which, if disclosed, would have prohibited McKinsey from having been awarded contracts—was adequately alleged to have proximately caused harm to the plaintiff. *Id.* at 206. However, the Court itself noted that its decision was based on its supervisory responsibilities over Bankruptcy Courts and therefore there was "little, if any, application to 'ordinary' RICO cases." *Id.* at 204. The Second Circuit further relied on allegations of a 24% historical award rate for contracts not received by McKinsey and those detailing finishing as the runner-up for a specific contract. *Id.* at 205–06. Here, by contrast, Plaintiffs ask the Court to engage in rank speculation that but for nebulous "negative publicity"— again, not a RICO predicate—an unnamed lender would have otherwise provided Plaintiff FFV Development with a \$13.5 million loan. Compl. ¶ 180; *see Kerik*, 64 F. Supp. 3d at 561. This is far beyond the specified and bounded proximate cause determination in *Alix*.

Moreover, Plaintiffs have still not overcome the fact that the alleged acts of concealment cannot proximately cause RICO injury. *See Empire Merchants v. Reliable Churchill LLLP*, 2017

WL 5559030, at *14 (E.D.N.Y. Mar. 16, 2017), *aff'd*, 902 F.3d 132 (2d Cir. 2018) ("Most courts in this Circuit have held that concealment of underlying illegal activity cannot be the proximate cause of a plaintiff's injury"). Plaintiffs assert that *Empire Merchants* is inapplicable because they have suffered "new injuries as a result of Defendants' obstructive conduct," Opp. at 42, n. 21, but fail to explain how lost business opportunities were the result of allegedly false litigation statements rather than the disclosure of hacked emails, nor respond to the fact that Azima alleged that the same injuries resulted from the hacking itself in the U.K. Proceeding. *See* Mot. at 40.

## VI. Because the Complaint Does Not Plead a § 1962(c) Claim, the § 1962(d) Claim Fails

As Plaintiffs acknowledge, the § 1962(d) claim rises and falls with their § 1962(c) claim. Since they have not adequately stated a claim under § 1962(c), Count II must be dismissed as well. *See Satinwood, Inc.*, 385 F.3d at 182.

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: June 20, 2023
New York, New York                    *[Signature blocks on following page.]*

/s/ David G. Barger
David G. Barger*
Michael R. Sklaire*
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
David.Barger@gtlaw.com
Michael.Sklaire@gtlaw.com

Daniel Filor
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-6758
Filord@gtlaw.com

*Counsel for Defendants Amir Handjani,
Andrew Frank and KARV Communications*

/s/ Andrew St. Laurent
Andrew St. Laurent
Evan W. Bolla
HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street, 53rd Floor
New York, NY 10005
Tel: (212) 397-3370
andrew@hs-law.com
ewbolla@hs-law.com

*Counsel for Defendant David Neil Gerrard*

/s/ Samuel Rosenthal
Samuel Rosenthal, Esq.
Lisa Herbert, Esq.
NELSON MULLINS RILEY & SCARBOROUGH LLP
330 Madison Avenue, 27th Floor
New York, New York 10017
Tel: (212) 413-9058
sam.rosenthal@nelsonmullins.com
lisa.herbert@nelsonmullins.com

*Counsel for Defendants Nicholas Del Rosso
and Vital Management Services, Inc.*

/s/ Sean Hecker
Sean Hecker
John C. Quinn
David Gopstein
Mark Weiner
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, NY 10118
Tel: (212) 763-0883
shecker@kaplanhecker.com
jquinn@kaplanhecker.com
dgopstein@kaplanhecker.com
mweiner@kaplanhecker.com

*Counsel for Defendant Dechert LLP*

/s/ Helen Gredd
Helen Gredd
Brandon Davis
LANKLER SIFFERT & WOHL LLP
500 Fifth Avenue
New York, NY 10110
Tel: (212) 921-8399
hgredd@lswlaw.com

*Counsel for Defendant David Graham Hughes*

/s/ Elan I. Baret
Elan I. Baret, Esq.*
BARET LAW GROUP, P.A.
3999 Sheridan Street, 2nd Floor
Hollywood, FL 33021
Tel: (954) 486-9966
elan@baretlawgroup.com

Christopher S. Salivar, Esquire*
CHRISTOPHER S. SALIVAR, P.L.L.C.
301 W. Atlantic Ave., Suite O-5
Delray Beach, FL 33444
Tel: (561) 628-8908
cssalivarattorney@gmail.com

*Counsel for Defendants Insight Analysis and
Research, LLC, SDC-Gadot, and Amit Forlit*

*\*Admitted pro hac vice*