UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FARHAD AZIMA,<br>ALG TRANSPORTATION, INC.,<br>MAIN 3260 LLC,<br>FFV W39 LLC, and<br>FFV DEVELOPMENT LLC,<br><br>         Plaintiffs,<br><br>- against -<br><br>DECHERT LLP,<br>DAVID NEIL GERRARD,<br>DAVID GRAHAM HUGHES,<br>NICHOLAS DEL ROSSO,<br>VITAL MANAGEMENT SERVICES, INC.,<br>AMIT FORLIT,<br>INSIGHT ANALYSIS AND RESEARCH LLC,<br>SDC-GADOT LLC,<br>AMIR HANDJANI,<br>ANDREW FRANK, and<br>KARV COMMUNICATIONS,<br><br>         Defendants. | 22 Civ. 8728 (PGG) (JW)<br><br><br>**MEMORANDUM OF LAW IN OPPOSITION TO NICHOLAS DEL ROSSO AND VITAL MANAGEMENT SERVICES, INC.'S MOTIONS TO DISMISS** |

Harry H. Rimm
Womble Bond Dickinson (US) LLP
950 Third Avenue
New York, New York 10022
Tel. (332) 258-8400
Fax (332) 258-8949
harry.rimm@wbd-us.com

Christopher W. Jones
Ripley E. Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Tel. (919) 755-2100
Fax (919) 755-2150
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Kirby D. Behre
Timothy P. O'Toole
Lauren E. Briggerman
Ian A. Herbert
Cody F. Marden
Calvin Lee
Miller & Chevalier Chartered
900 Sixteenth Street NW
Washington, D.C. 20006
Tel. (202) 626-5800
Fax (202) 626-5801
kbehre@milchev.com
totoole@milchev.com
lbriggerman@milchev.com
iherbert@milchev.com
cmarden@milchev.com
clee@milchev.com

*Attorneys for Plaintiffs Farhad Azima, ALG Transportation, Inc.,
Main 3260 LLC, FFV W39 LLC and FFV Development LLC*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

SUMMARY OF PLAINTIFFS' ALLEGATIONS .................................................................. 1

    I.    THE DEL ROSSO DEFENDANTS' LEADING ROLE IN THE ENTERPRISE ............................................................................................................. 1

    II.    THE 2020 NORTH CAROLINA PROCEEDING .................................................. 2

    III.    THE DEL ROSSO DEFENDANTS' OBSTRUCTED U.S. LEGAL PROCEEDINGS ....................................................................................... 3

ARGUMENT ............................................................................................................................ 3

    I.    THE DEL ROSSO DEFENDANTS PARTICIPATED IN THE RICO ENTERPRISE. ................................................................................................ 3

    II.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY COLLATERAL ESTOPPEL OR RES JUDICATA ................................................. 6

        A.    The Del Rosso Defendants Bear the Burden of Showing That the Affirmative Defenses of Collateral Estoppel and Res Judicata Apply. ........................................................................................ 6

        B.    Collateral Estoppel Does Not Bar Plaintiffs' Claims. ................................ 7

        C.    Res Judicata Does Not Bar Plaintiffs' Claims. ......................................... 10

CONCLUSION ....................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Austin v. Fischer*,
    453 F. App'x 80 (2d Cir. 2011) ...................................................................................7, 11

*Azima v. Del Rosso*,
    1:20CV954, 2021 WL 5861282 (M.D.N.C. Dec. 10, 2021)...................................................10

*Azima v. Del Rosso*,
    No. 20 Civ. 954, 2021 WL 6755013 (M.D.N.C. Aug. 9, 2021) .............................................10

*Azima v. Del Rosso*,
    No. 20-cv-954 (M.D.N.C. Oct. 15, 2020), ECF No. 206................................................12, 13

*Baisch v. Gallina*,
    346 F.3d 366 (2d Cir. 2003).....................................................................................................4

*Bin Saud v. Bank of New York*,
    734 F. Supp. 628 (S.D.N.Y. 1990) .........................................................................................12

*Cepeda v. Coughlin*,
    785 F. Supp. 385 (S.D.N.Y. 1992) ...........................................................................................8

*Chevron Corp. v. Donziger*,
    974 F. Supp. 2d 362 (S.D.N.Y. 2014).......................................................................................4

*D'Addario v. D'Addario*,
    901 F.3d 80 (2d Cir. 2018)........................................................................................................4

*Deswal v. U.S. Nat'l Ass'n*,
    603 F. App'x 22 (2d Cir. 2015) ................................................................................................7

*Epperson v. Ent. Express, Inc.*,
    242 F.3d 100 (2d Cir. 2001).................................................................................................7, 10

*Feirstein v. Nanbar Realty Corp.*,
    963 F. Supp. 254 (S.D.N.Y. 1997) ...........................................................................................5

*Garcia v. Does*,
    779 F.3d 84 (2d Cir. 2015).......................................................................................................7

*Goren v. New Vision Int'l, Inc.*,
    156 F.3d 721 (7th Cir. 1998) ....................................................................................................5

*Horti Americas, LLC v. Jacob's Vill. Farm Corp.*,
   No. 21-915-CV, 2022 WL 38719 (2d Cir. Jan. 5, 2022) ...................................................... 10, 12

*Interoceanica Corp. v. Sound Pilots, Inc.*,
   107 F.3d 86 (2d Cir. 1997) .......................................................................................................... 12

*Jones v. Meridian Towers Apartments, Inc.*,
   816 F. Supp. 762 (D.D.C. 1993) ................................................................................................ 4

*LaFluer v. Whitman*,
   300 F.3d 256 (2d. Cir. 2002) ............................................................................................... 8, 10

*Leather v. Eyck*,
   180 F.3d 420 (2d Cir. 1999) ...................................................................................................... 8

*Magi XXI, Inc. v. Stato Della Città Del Vaticano*,
   22 F. Supp. 3d 195 (E.D.N.Y. 2014) ......................................................................................... 7

*N.L.R.B. v. United Techs. Corp.*,
   706 F.2d 1254 (2d Cir. 1983) .................................................................................................. 12

*Nastasi & Assocs., Inc. v. Bloomberg, L.P.*,
   No. 20-CV-5428, 2022 WL 4448621 (S.D.N.Y. Sept. 23, 2022) ........................................... 10

*Pinaud v. Cnty. of Suffolk*,
   52 F.3d 1139 (2d Cir. 1995) (Section 1983) ........................................................................... 10

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ................................................................................................................... 4

*S.E.C. v. First Jersey Securities Inc.*,
   101 F.3d 1450 (2d Cir. 1996) .................................................................................................. 11

*Sacerdote v. Cammack Larhette Advisors, LLC*,
   939 F.3d 498 (2d Cir. 2019) .................................................................................................... 13

*Saud v. Bank of New York*,
   929 F.2d 916 (2d Cir. 1991) .................................................................................................... 12

*St. Pierre v. Dyer*,
   208 F.3d 394 (2d Cir. 2000) .................................................................................................... 11

*Storey v. Cello Holdings, L.L.C.*,
   347 F.3d 370 (2d Cir. 2003) ............................................................................................... 11, 12

*Victorinox AG v. B&F Sys., Inc.*,
   709 F. App'x 44 (2d Cir. 2017) ................................................................................................. 9

*Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Loc. Union 639*, 913 F.2d 948 (D.C. Cir. 1990) ............................................................................................... 4

**Statutes**

18 U.S.C. § 1782 ............................................................................................................................. 3

**Other Authorities**

Fed. R. Civ. P. 8 ............................................................................................................................. 7

**PRELIMINARY STATEMENT**

Nicholas Del Rosso and Vital Management Services, Inc. (the "Del Rosso Defendants") played a leadership role in planning and orchestrating the Enterprise's[1] criminal scheme and received millions of dollars for their work. *See, e.g.*, Compl. ¶¶ 18, 47, 236. They repeatedly obstructed justice by creating false documents, destroying evidence, pressuring witnesses, and paying witnesses for false testimony, all of which sought to, and achieved, the Enterprise's goal of harming Azima and his businesses through litigation. In seeking dismissal, they distort the Complaint's detailed allegations and attempt to repackage this dispute as a hacking case foreclosed by other litigation, but they ignore the Complaint's allegations of fresh criminal conduct that resulted in new injuries within the statute of limitations period. The motion should be denied.

**SUMMARY OF PLAINTIFFS' ALLEGATIONS**

**I.    THE DEL ROSSO DEFENDANTS' LEADING ROLE IN THE ENTERPRISE**

Plaintiffs are the victims of a sprawling conspiracy to manufacture and prosecute legal claims against them and to obstruct justice as part of an effort to obtain a financially ruinous judgment against them. *Id.* ¶ 207. Del Rosso, individually and through his one-man company, Vital, played a leadership role in developing and implementing the plan to attack the Enterprise's enemies through a multi-year campaign of computer hacking, illegal surveillance, witness tampering and intimidation, obstruction of justice, perjury, money laundering, bank fraud, and wire fraud. *Id.* ¶¶ 47–48, 121–23, 151–52, 207, 241. Dechert hired Del Rosso to steal data, including by hacking, and to disseminate the stolen materials, obstruct U.S. court proceedings, and manipulate U.S. law enforcement into investigating Azima to harm him and his businesses. *Id.* ¶¶

---

[1] Plaintiffs adopt the definitions used in their Omnibus Opposition and Complaint for any capitalized term.

18–19.[2] Del Rosso also recruited, directed, and led a team of co-conspirators who executed the Enterprise's Plan. *Id.* ¶¶ 48, 209. They included Aditya Jain and his companies, the hacking company CyberRoot, Paul Robinson, and Patrick Grayson—whom Del Rosso collectively paid substantial sums of money through Vital and their lawyers. *Id.* ¶¶ 26(g), 26(i), 48, 166.

The Complaint alleges that the Del Rosso Defendants committed predicate acts of obstruction of justice, *id.* ¶¶ 213–16, witness tampering, *id.* ¶¶ 218–19, money laundering, *id.* ¶¶ 221–22, mail and wire fraud, *id.* ¶¶ 223–30, and bank fraud, *id.* ¶ 236. Del Rosso met regularly with other Enterprise members to plan attacks on Azima, including deploying false statements in the U.S. and U.K. courts and to U.S. law enforcement agencies in order to further the Enterprise's goal of inflicting financial and reputational harm on Azima. *Id.* ¶¶ 32, 35, 54, 78, 153.

## II.    THE 2020 NORTH CAROLINA PROCEEDING[3]

In October 2020, Azima sued Del Rosso and Vital in North Carolina for the 2015–2016 hacking and subsequent publication of his stolen data. *Id.* ¶ 144. Other than the fact that Azima, Del Rosso, and Vital are parties in both cases, that litigation is different. None of the other 13 parties here is involved in the North Carolina litigation (the "2020 North Carolina Proceeding"), nor do any of those 13 parties have known connections to North Carolina. The claims presently at issue there—a claim for misappropriation of trade secrets and a conspiracy claim connected to hacking Azima and leaking his data—do not cover the Del Rosso Defendants' significant misdeeds after that suit was filed (*i.e.*, obstruction, widespread fraud on the U.S. court system, and harming

---

[2] Del Rosso testified at the U.K. trial regarding his work and involvement with the investigation of Azima. Dechert's Gerrard also testified about Del Rosso's work. As such, to the extent his work for Dechert was somehow privileged, that privilege has been waived.

[3] The 2020 North Carolina Proceeding is further described in the Omnibus Opposition, Summary of Plaintiffs' Key Allegations. *See* Omnibus Opp'n at 8-13.

Azima through the media, litigation, and law enforcement investigations). The relief requested in there also cannot remedy the fraud on the courts or economic damage to Azima's businesses.

## III. THE DEL ROSSO DEFENDANTS' OBSTRUCTED U.S. LEGAL PROCEEDINGS

The Del Rosso Defendants conspired to obstruct pending U.S. litigation—to drive up Plaintiffs' litigation costs and impede their ability to seek a remedy for the Enterprise's misconduct. In 2019, Del Rosso, Gerrard, and Grayson agreed to anonymously send some of Azima's stolen data directly to a federal judge in Washington, D.C. to improperly influence that case. *Id.* ¶ 122. In November 2020, Del Rosso created false evidence, destroyed documents, and threatened a witness to obstruct the 2020 North Carolina Proceeding. *Id.* ¶¶ 147–53, 173, 241. He and Grayson conspired to hack lawyers who threatened to expose the Enterprise. *Id.* ¶¶ 165–69. Del Rosso also impeded Azima's efforts to obtain discovery by submitting false statements in an 18 U.S.C. § 1782 proceeding in North Carolina. *Id.* ¶ 176–77. As a result of these obstructive acts, Plaintiffs suffered losses in the millions of dollars, including attorneys' fees and other litigation costs. *Id.* ¶ 181. The Del Rosso Defendants' actions also directly caused banks to deny loans to the Plaintiff Entities, including the 2019 denial of a $13.5 million loan to finance multi-unit apartment complexes in Kansas City. *Id.* ¶ 180. When the loan was denied and Azima could not secure alternative financing, he and his companies suffered approximately $15 million in lost profits. *Id.*

## ARGUMENT[4]

### I. THE DEL ROSSO DEFENDANTS PARTICIPATED IN THE RICO ENTERPRISE.

The Del Rosso Defendants deny that the Complaint alleges that they participated in the operation and management of the Enterprise. The Complaint says otherwise. The Second Circuit

---

[4] Plaintiffs incorporate their Opposition to Defendants' Omnibus Motion to Dismiss (Omnibus Opp'n). Accordingly, the standard of review is not repeated. *See* Omnibus Opp'n at 14-16.

3

has held that the "operation or management" test adopted in *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) is a "relatively low hurdle for plaintiffs to clear." Plaintiffs need only show that a defendant played "*some* part in directing the enterprise's affairs." *D'Addario v. D'Addario*, 901 F.3d 80, 103–04 (2d Cir. 2018). "[D]iscretionary authority in carrying out the instructions of the [enterprise's] principals" alone is sufficient to satisfy the "operation or management" requirement. *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 576 (S.D.N.Y. 2014). A defendant's active assistance in carrying out schemes devised by the Enterprise's mastermind also meets the test. *See id.* (defendants participated in mastermind-defendant's operation and management by actively helping him loot estate); *see also Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003) (defendant participated in the operation and management of enterprise by, *inter alia*, recruiting financing, issuing fraudulent insurance certificates, and concealing deceptive payroll practices).[5]

The Complaint alleges in detail[6] that Del Rosso exercised significant discretionary authority over the Enterprise and used Vital to fund the operation. Dechert hired Del Rosso to conduct illegal hacking operations, disseminate the stolen materials, obstruct U.S. court proceedings, and manipulate U.S. law enforcement into investigating Azima. Compl. ¶¶ 18–19. Del Rosso oversaw those who executed the Enterprise's plan. *Id.* ¶¶ 26(g), 26(i), 48, 166. He

---

[5] Rather than focus on the Second Circuit standard, the Del Rosso Defendants rely on out-of-circuit cases that impose a different legal standard. They point to *Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union* 639, 913 F.2d 948, 954 (D.C. Cir. 1990) to argue Plaintiffs must allege that a defendant engaged in "guidance, management, direction or other exercise of control" over the Enterprise's activities and must have participated, to some extent, in "running the show." *See* Mem. of Law in Supp. of Mot. to Dismiss ("Del Rosso Br.") at 11 (Feb. 28, 2023). And they cite *Jones v. Meridian Towers Apartments, Inc.*, 816 F. Supp. 762, 771-772 (D.D.C. 1993), to suggest that "mere participation" is insufficient. *See* Del Rosso Br. at 11. Because those cases employ a different standard, they are entirely inapt.

[6] The Del Rosso Defendants argue the Complaint is conclusory, and yet they cite only three paragraphs of a more than 200 paragraph Complaint that mentions Del Rosso 170 times.

4

participated in regular meetings in New York with other Enterprise members to plan attacks on Azima, including false statements in the U.S. and U.K. courts, and with U.S. law enforcement agencies in order to inflict harm on Azima. *Id.* ¶¶ 32, 54. He directed the obstruction of U.S. proceedings, including directing Jain to destroy documents and create a false contract for use in litigation, anonymously mailing hacked documents to the D.C. court, and hacking lawyers representing a victim of the Enterprise. *Id.* ¶¶ 121–22; 148–51; 165–66, 241. And he received millions for this work, reflecting that he was a central figure in the Enterprise. *See* Compl. ¶¶ 47, 236.

The Del Rosso Defendants ignore the Complaint's allegations and claim that they simply performed services for Dechert in return for payment and hired third parties to do their work for them. *See* Del Rosso Br. at 11–12.[7] The Complaint clearly alleges, however, that the Del Rosso Defendants (1) actively participated in and (2) directed third party co-conspirators to engage in the illicit conduct. *Id.* ¶ 26(i) (Jain and Cyber Defense acted at the direction of Del Rosso to hack Azima and others); *id.* ¶ 26(g) (Paul Robinson was paid to hack and steal victims' data and reported to Del Rosso); *id.* ¶ 48 (Del Rosso directed a co-conspirator to pay CyberRoot $450,000); *id.* ¶ 122 (Del Rosso created a complicated scheme to anonymously mailing stolen documents to court); *id.* ¶ 146 (Del Rosso hired Jain on behalf of the Enterprise to hack Azima); *id.* ¶ 149 (Del Rosso deleted an account containing communications with co-conspirators relevant to a U.S. proceeding); *id.* ¶¶ 157, 159 (Del Rosso submitted false statements to U.S. courts denying

---

[7] The Del Rosso Defendants' reliance on *Feirstein v. Nanbar Realty Corp.*, 963 F. Supp. 254, 258 (S.D.N.Y. 1997), *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998), and other, out-of-circuit cases for the sweeping conclusion that performance of, and payments for, services do not meet the management or operation test is unconvincing. *See* Del Rosso Br. at 11. They were not just unwitting instruments of the Enterprise's scheme, as in *Feirstein*. The Complaint alleges they colluded to create and execute the Enterprise's Plan, participated in regular strategy meetings, and hired and directed co-conspirators to carry out the Plan. Compl. ¶¶ 18, 19, 32, 54, 145-60.

5

involvement in the hacking of Azima); *id.* ¶ 165 (Del Rosso directed hackers to obtain information about Azima's litigation funding); *id.* ¶ 166 (Patrick Grayson admitted to hacking Al Sadeq's lawyers at Del Rosso's direction); *id.* ¶ 177 (Del Rosso falsely denied hacking Al Sadeq's attorneys in a U.S. court proceeding); *id.* ¶ 209 (Del Rosso engaged hackers to execute the Enterprise's affairs); *id.* ¶¶ 218–19 (Del Rosso knowingly fabricated false evidence); *id.* ¶ 236 (Del Rosso Defendants used PNC Bank to pay hackers more than $1 million for their illegal conduct); *id.* ¶ 19 (Vital received and transferred funds to promote the Enterprise's illegal activities).[8] Thus, Plaintiffs have sufficiently alleged the Del Rosso Defendants' participated in the RICO Enterprise.[9]

## II. PLAINTIFFS' CLAIMS ARE NOT BARRED BY COLLATERAL ESTOPPEL OR RES JUDICATA.

### A. The Del Rosso Defendants Bear the Burden of Showing That the Affirmative Defenses of Collateral Estoppel and Res Judicata Apply.

Res judicata and collateral estoppel are affirmative defenses a defendant must plead and prove. *See* Fed. R. Civ. P. 8(c) (listing estoppel as an affirmative defense); *Austin v. Fischer,* 453 F. App'x 80, 82 (2d Cir. 2011). Dismissal of a claim based on affirmative defenses is a "difficult road." *Garcia v. Does*, 779 F.3d 84, 96–97 (2d Cir. 2015); *see Magi XXI, Inc. v. Stato Della Città*

---

[8] The Del Rosso Defendants once again attempt to reduce the Complaint's substantial obstruction allegations down to mere "litigation activities" or "concealment" to shield them from RICO liability. *See* Del Rosso Br. at 10, 12. The allegations against the Del Rosso Defendants—which include destruction of documents, threatening witnesses, bribing witnesses, creating fake evidence, and hacking lawyers, Compl. ¶¶ 83-160, 177, 218-19, go well beyond ordinary litigation activities and demonstrate their role in the operation and maintenance of the Enterprise. *See also* Omnibus Opp'n at 26-32 (explaining why Defendants' obstruction-related activities are RICO predicates and not mere "litigation activities" or "concealment.")

[9] In one sentence, the Del Rosso Defendants argue that Plaintiffs have failed to allege their conspiracy claim. *See* Del Rosso Br. at 12-13. As explained above and in their Omnibus Opposition, Plaintiffs have adequately pled a RICO cause of action, and therefore, their conspiracy claim is well-pled. *See* Omnibus Opp'n at 58.

*Del Vaticano,* 22 F. Supp. 3d 195, 201 (E.D.N.Y. 2014) ("[N]either [res judicata nor collateral estoppel] will typically serve as the basis for a . . . motion to dismiss."). Dismissal based on these doctrines is only warranted if "it is clear from the face of the complaint" that the affirmative defense applies. *See*, *e.g.*, *Austin*, 453 F. App'x at 82–83; *see also Deswal v. U.S. Nat'l Ass'n*, 603 F. App'x 22, 23–24 (2d Cir. 2015). The Del Rosso Defendants have not met that heavy burden.[10]

### B.     Collateral Estoppel Does Not Bar Plaintiffs' Claims.

The Del Rosso Defendants attempt to invoke the doctrine of collateral estoppel based upon an *inapposite* ruling on a *different* issue, on *unrelated* claims, with *different* limitation periods, in an *ongoing* case in North Carolina. Their attempt necessarily fails.

"Collateral estoppel only 'applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.'" *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001) (quoting *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999)). "Collateral estoppel does not prevent a litigant from raising, in a later proceeding, an issue that he could have, but did not, raise in the first proceeding. . . . preclusion based on collateral estoppel grounds does not lie unless the issue was indeed actually litigated." *Leather v. Eyck*, 180 F.3d 420, 426 (2d Cir. 1999). New York courts generally do "not accord collateral estoppel effect to a statute of limitations dismissal." *Cepeda v. Coughlin*, 785 F. Supp. 385, 390 (S.D.N.Y. 1992) (denying motion to dismiss on collateral estoppel grounds because the prior claims dismissed on statute of limitations grounds were not actually litigated).

---

[10] To the extent that the Del Rosso Defendants claim that Plaintiffs' causes of action are also time-barred, *see* Del Rosso Br. at 4, those arguments likewise fail for the reasons explained in the Omnibus Opposition at 43-46.

7

The Del Rosso Defendants argue that the North Carolina court already decided "whether Azima had sufficient knowledge of the injuries to trigger the statute, but they claim that the Complaint concerns hacking and/or concealment of hacking. Del Rosso Br. at 5–6. The Complaint does not seek relief for the hacking Azima suffered seven years ago; it seeks relief for Defendants' subsequent criminal activity, including their efforts to embroil Azima in costly litigation to drive up legal fees, ruin his businesses, obtain a judgment against him, and prevent him from litigating his claims. *See*, *e.g.*, Compl. ¶ 207. Plaintiffs' RICO claims accrued on the dates their injuries occurred, without regard to the date of the initial hacking or when Azima became aware of it. *See*, *e.g.*, *id.* ¶ 180–81.

Because this case is about different claims, different conduct and different injuries, the North Carolina court could not, and did not, "actually decide" any issue that is "identical" to an issue in the RICO case, and there was no "full and fair opportunity to litigate" any of *this* Complaint's allegations before the North Carolina court. *LaFluer v. Whitman*, 300 F.3d 256, 274 (2d. Cir. 2002). In fact, much of the conduct alleged here against the Del Rosso Defendants arose *after* Azima filed the 2020 North Carolina Proceeding. *See* Compl. ¶¶ 151–52 (alleging that in November 2020, Del Rosso created false evidence to cover up the Enterprise's misconduct); *id*. ¶¶ 147–50, 153 (alleging that Del Rosso destroyed evidence and threatened a witness in the 2020 North Carolina Proceeding); *id*. ¶¶ 165–69 (alleging that in 2020, Del Rosso conspired with Grayson to hack lawyers who threatened to expose the Enterprise); *id*. ¶¶ 172–74 (alleging in 2020 that Del Rosso paid a witness for false testimony via his lawyers, with the specific intention of obstructing U.S. litigation and fabricated and destroyed evidence to avoid detection). Thus, Azima could not have litigated those issues in the 2020 North Carolina Proceeding.

Furthermore, the Plaintiff Entities in this case are not parties to the 2020 North Carolina Proceeding and have had no opportunity to litigate any issue there. Where a defendant seeks to collaterally estop a plaintiff (who was not a party to the first proceeding) from "relitigating" an issue in a second proceeding, the defendant must demonstrate that the plaintiff in the second action "directed, controlled, or participated in" the previous cases or was in privity with a party in the first case. *Victorinox AG v. B&F Sys., Inc.*, 709 F. App'x 44, 50 (2d Cir. 2017). Here, the Plaintiff Entities did not "direct[], control[], or participate[] in" the 2020 North Carolina Proceeding, and the Del Rosso Defendants make no attempt to establish as much.

The Del Rosso Defendants also mischaracterize the Complaint's obstruction-related claims as fraudulent concealment of the prior hacking of Azima, arguing that the North Carolina court already ruled that the statute of limitations for Azima's hacking claim could not be extended by allegations of fraudulent concealment.[11] *See* Del Rosso Br. at 7. This argument misstates both the Complaint's allegations and the North Carolina court's ruling. The North Carolina court considered whether the Del Rosso Defendants' concealment of their *hacking* of Azima could toll the statute of limitations for the *hacking* claim. *See Azima v. Del Rosso*, No. 20 Civ. 954, 2021 WL 6755013, at *6 (M.D.N.C. Aug. 9, 2021). Again, this case is not about a hacking claim; it is about a fraud on the U.S. courts that was intended to (and did) harm Azima. The obstruction alleged in this Complaint—much of which occurred after the 2020 North Carolina Proceeding was filed—furthered the scheme to harm Azima through litigation; it did not merely conceal the Defendants' prior hacking. *See* Compl. ¶¶ 147–53, 165–69, 172–74.[12] Accordingly, a statute of limitations

---

[11] The Del Rosso Defendants also argue their obstructive acts do not constitute predicate acts under RICO, but they are incorrect. The RICO statute explicitly lists as predicate acts witness tampering and obstruction of justice, of the kinds alleged here. *See* Omnibus Opp'n at 29-34.

[12] The North Carolina court ruling had nothing to do with RICO and was based on the law of equitable tolling, which required Azima to have relied upon Defendants' concealment in order for

9

ruling based on different claims and different facts, many of which had not yet come to light, cannot be an "identical" issue that has been "actually litigated and decided" and that Plaintiffs had a "full and fair opportunity to litigate" under the collateral estoppel doctrine. *See Epperson*, 242 F.3d at 108; *LaFluer v. Whitman*, 300 F.3d at 274.

### C. Res Judicata Does Not Bar Plaintiffs' Claims.

For the doctrine of res judicata to bar a claim in this case, the Del Rosso Defendants must satisfy four requirements: "(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *Horti Americas, LLC v. Jacob's Vill. Farm Corp.*, No. 21-915-CV, 2022 WL 38719, at *2 (2d Cir. Jan. 5, 2022) (quoting *Cho v. Blackberry Ltd.*, 991 F.3d 155, 168 (2d Cir. 2021)). "[T]he fact that both suits involved essentially the same course of wrongful conduct is not decisive . . . nor is it dispositive that the two proceedings involved the same parties, similar or overlapping facts, and similar legal issues." *S.E.C. v. First Jersey Sec. Inc.*, 101 F.3d 1450, 1463–64 (2d Cir. 1996) (citations omitted). A prior judgment has preclusive effect "only where the transaction . . . at issue in both suits is the same, that is 'whe[re] the same evidence is needed to support both claims, and whe[re] the facts essential to the second were present in the first.'" *Id.* (citations and quotations omitted).

The Del Rosso Defendants repackage their collateral estoppel argument as res judicata. They baldly claim that the facts in the 2020 North Carolina Proceeding and this case are identical.

---

the statute of limitations related to his 2015 hacking-related claims to be tolled. *Azima v. Del Rosso*, 1:20CV954, 2021 WL 5861282, at *5 (M.D.N.C. Dec. 10, 2021). Here, Plaintiffs do not need to meet the legal standard for equitable tolling based on fraudulent concealment, which applies outside the RICO context. *See, e.g., Nastasi & Assocs., Inc. v. Bloomberg, L.P.*, No. 20-CV-5428, 2022 WL 4448621, at *6 (S.D.N.Y. Sept. 23, 2022) (antitrust and negligence); *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) (Section 1983).

Del Rosso Br. at 8. They do not even attempt to apply the facts to the law—likely because they cannot meet their burden to show that the affirmative defense applies. *Austin*, 453 F. App'x at 82–83. This rhetoric is emblematic of the collective Defendants' repeated distortions.[13]

As a preliminary matter, the Complaint alleges a significant fraud on the U.S. court system, much of which occurred *after* the 2020 North Carolina Proceeding was filed. Claims arising subsequent to a prior action are not barred by res judicata, "regardless of whether they are premised on facts representing a continuance of the same 'course of conduct.'" *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 383 (2d Cir. 2003); *St. Pierre v. Dyer*, 208 F.3d 394, 400 (2d Cir. 2000) (a previous judgment "'cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon.'") (quoting *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955)). Here, it is primarily the Del Rosso Defendants misconduct *after* the 2020 North Carolina Proceeding was filed that exposes them to liability, *see* Compl. ¶¶ 147–53, 165–69, 172–74, and res judicata does not provide grounds for dismissal. *See Storey,* 347 F.3d at 383; *Bin Saud v. Bank of New York,* 734 F. Supp. 628, 634 (S.D.N.Y. 1990).

Furthermore, the Del Rosso Defendants cannot meet the res judicata requirements. First, this RICO case and the 2020 North Carolina Proceeding do not involve the "same cause of action." *See Horti Americas, LLC*, 2022 WL 38719, at *2. To meet this element, "[i]t must first be determined that the second suit involves the same 'claim'—or 'nucleus of operative fact'—as the first suit." *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997) (citation omitted). "Whether or not the first judgment will have preclusive effect depends in part on whether

---

[13] The Del Rosso Defendants also make the sweeping statement, with no legal support, that a party cannot avoid the statute of limitations by changing its legal theory. Del Rosso Br. at 8. Plaintiffs have not changed their theory. Put simply, their RICO case and the 2020 North Carolina Proceeding are two different actions based on different legal theories stemming from different facts, seeking different relief, involving different parties, and requiring different proof.

11

the same transaction or connected series of transactions is at issue, [and] whether the same evidence is needed to support both claims." *N.L.R.B. v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983); *see also Saud v. Bank of New York*, 929 F.2d 916, 919 (2d Cir. 1991). Here, the RICO action and the 2020 North Carolina Proceeding allege different causes of action that will rely on different evidence to prove different facts. The Complaint alleges a broad campaign of fraud and obstruction by the Del Rosso Defendants and their co-conspirators to ruin Plaintiffs financially and reputationally. Compl. ¶¶ 61, 181. The 2020 North Carolina Proceeding, by contrast, relates narrowly to the misappropriation of trade secrets and a related conspiracy.[14]

The two cases also do not involve the same parties or their privies. This case was brought by five plaintiffs against 11 Defendants. *See* Compl. ¶¶ 15–25. Azima and the Del Rosso Defendants are the only parties to the 2020 North Carolina Proceeding. *See* Complaint ¶¶ 15–17; 20–25, *Azima v. Del Rosso*, No. 20-cv-954, (M.D.N.C. Oct. 15, 2020), ECF No. 1. The privity rule only applies in six limited circumstances, none of which is relevant here. *See Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 506 (2d Cir. 2019). The Del Rosso Defendants do not even attempt to argue that they are in privity with any of the other Defendants. Finally, Plaintiffs arguably could not have joined many of the other Defendants to the 2020 North Carolina Proceeding, as they arguably lacked constitutionally adequate contacts with North Carolina.

## **CONCLUSION**

Plaintiffs respectfully request that the Court deny the Motion to Dismiss in its entirety.

---

[14] The Del Rosso Defendants have admitted in the 2020 North Carolina Proceeding that Plaintiffs' RICO action "involve[s] a broader range of conduct" than the North Carolina lawsuit. *See* Defs.' Mot. To Stay Disc., *Azima v. Del Rosso*, No. 20-cv-954, (M.D.N.C. Oct. 15, 2020), ECF No. 206 at 6. They also previously objected to introducing evidence of obstruction in North Carolina as irrelevant to Azima's claims. *Id*. at ECF No. 62 at 2, 5, 6.

12

Dated: May 22, 2023
      New York, New York

| | |
|---|---|
| */s/ Harry H. Rimm* | */s/ Kirby D. Behre* |
| Harry H. Rimm | Kirby D. Behre |
| Womble Bond Dickinson (US) LLP | Timothy P. O'Toole |
| 950 Third Avenue | Lauren E. Briggerman |
| New York, New York 10022 | Ian A. Herbert |
| Tel. (332) 258-8400 | Cody F. Marden |
| Fax (332) 258-8949 | Calvin Lee |
| harry.rimm@wbd-us.com | Miller & Chevalier Chartered |
| | 900 Sixteenth Street NW |
| */s/ Christopher W. Jones* | Washington, D.C. 20006 |
| Christopher W. Jones | Tel. (202) 626-5800 |
| Ripley E. Rand | Fax (202) 626-5801 |
| Womble Bond Dickinson (US) LLP | kbehre@milchev.com |
| 555 Fayetteville Street, Suite 1100 | totoole@milchev.com |
| Raleigh, North Carolina 27601 | lbriggerman@milchev.com |
| Tel. (919) 755-2100 | iherbert@milchev.com |
| Fax (919) 755-2150 | cmarden@milchev.com |
| chris.jones@wbd-us.com | clee@milchev.com |
| ripley.rand@wbd-us.com | |

*Attorneys for Plaintiffs Farhad Azima, ALG Transportation, Inc., Main 3260 LLC, FFV W39 LLC and FFV Development LLC*