UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FARHAD AZIMA,<br>ALG TRANSPORTATION, INC.,<br>MAIN 3260 LLC,<br>FFV W39 LLC, and<br>FFV DEVELOPMENT LLC,<br><br>    Plaintiffs,<br><br>   - against -<br><br>DECHERT LLP,<br>DAVID NEIL GERRARD,<br>DAVID GRAHAM HUGHES,<br>NICHOLAS DEL ROSSO,<br>VITAL MANAGEMENT SERVICES, INC.,<br>AMIT FORLIT,<br>INSIGHT ANALYSIS AND RESEARCH LLC,<br>SDC-GADOT LLC,<br>AMIR HANDJANI,<br>ANDREW FRANK, and<br>KARV COMMUNICATIONS,<br><br>    Defendants. | 22 Civ. 8728 (PGG) (JW)<br><br><br>**MEMORANDUM OF LAW IN<br>OPPOSITION TO DAVID GRAHAM<br>HUGHES' MOTION TO DISMISS** |

Harry H. Rimm
Womble Bond Dickinson (US) LLP
950 Third Avenue
New York, New York 10022
Tel. (332) 258-8400
Fax (332) 258-8949
harry.rimm@wbd-us.com

Christopher W. Jones
Ripley E. Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Tel. (919) 755-2100
Fax (919) 755-2150
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Kirby D. Behre
Timothy P. O'Toole
Lauren E. Briggerman
Ian A. Herbert
Cody F. Marden
Calvin Lee
Miller & Chevalier Chartered
900 Sixteenth Street NW
Washington, D.C. 20006
Tel. (202) 626-5800
Fax (202) 626-5801
kbehre@milchev.com
totoole@milchev.com
lbriggerman@milchev.com
iherbert@milchev.com
cmarden@milchev.com
clee@milchev.com

*Attorneys for Plaintiffs Farhad Azima, ALG Transportation, Inc.,*
*Main 3260 LLC, FFV W39 LLC and FFV Development LLC*

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

PRELIMINARY STATEMENT ...................................................................................................1

SUMMARY OF PLAINTIFFS' ALLEGATIONS .....................................................................1

ARGUMENT ..............................................................................................................................2

I.      THIS COURT HAS PERSONAL JURISDICTION OVER HUGHES. ............................2

        A.      Hughes Is Subject to Jurisdiction under New York's Long-Arm Statute...............2

                1.      Section 302(a)(1) Applies Because Hughes Transacted Business in
                        New York.....................................................................................................3

                2.      Section 302(a)(2) Applies Because, Through Goldstein, Hughes
                        Committed a Tortious Act in New York........................................................7

                3.      Due Process Is Satisfied...............................................................................7

                        a.      Hughes Has Minimum Contacts with New York. ...........................8

                        b.      The Assertion of Personal Jurisdiction over Hughes Would
                                Be Reasonable.................................................................................8

        B.      Hughes Is Subject to Jurisdiction under the Federal Rules. ...................................9

II.     THE COMPLAINT STATES RICO CLAIMS AGAINST HUGHES. ...........................10

        A.      Hughes Committed RICO Predicate Acts.............................................................10

                1.      Hughes' Predicate Acts Were Not Mere Litigation Activity.....................11

                2.      Hughes' Predicate Acts Were Directed Toward the U.S. ..........................11

                3.      Hughes' Predicate Acts Are Actionable. ...................................................12

        B.      Hughes Participated in the Operation and Management of the Enterprise............14

CONCLUSION..........................................................................................................................15

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Al Thani v. Hanke,*
   No. 20-cv-4765, 2021 WL 1895033 (S.D.N.Y. May 11, 2021) ........................................4, 5, 7

*Baisch v. Gallina,*
   346 F.3d 366 (2d Cir. 2003)...............................................................................................14

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
   171 F.3d 779 (2d Cir. 1999)..................................................................................................6

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
   305 F.3d 120 (2d Cir. 2002)...............................................................................................8, 9

*Bd. of Mgrs. of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo,*
   346 F. Supp. 3d 432 (S.D.N.Y. 2018)..............................................................................12, 13

*Bensusan Rest. Corp. v. King,*
   126 F.3d 25 (2d Cir. 1997)...................................................................................................3

*Best Van Lines, Inc. v. Walker,*
   490 F.3d 239 (2d Cir. 2007).................................................................................................3

*Bloomgarden v. Lanza,*
   40 N.Y.S.3d 142 (N.Y. App. Div. 2016) ................................................................................6

*Butcher v. Wendt,*
   975 F.3d 236 (2d Cir. 2020)................................................................................................11

*Chevron Corp. v. Donziger,*
   871 F. Supp. 2d 229 (S.D.N.Y. 2012)..........................................................................11, 13, 14

*Chloe v. Queen of Beverly Hills, LLC,*
   616 F.3d 158 (2d Cir. 2010)...........................................................................................7, 8, 9

*D'Addario v. D'Addario,*
   901 F.3d 80 (2d Cir. 2018)...............................................................................................14, 15

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)...........................................................................................................3

*Elsevier, Inc. v. Grossman,*
   77 F. Supp. 3d 331 (S.D.N.Y. 2015)...........................................................................2, 3, 7, 8

*Funk v. Belneftekhim*,
   No. 14-cv-0376, 2017 WL 5592676 (E.D.N.Y. Nov. 20, 2017) ...........................................7

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
   No. 11-cv-3673, 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012) ...............................................5

*Kernan v. Kurz–Hastings., Inc.*,
   175 F.3d 236 (2d Cir. 1999)..............................................................................................9

*LaChapelle v. Torres*,
   1 F. Supp. 3d 163 (S.D.N.Y. 2014) ..................................................................................7

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013)........................................................................................2, 10

*Moore v. PaineWebber, Inc.*,
   189 F.3d 165 (2d Cir. 1999).............................................................................................14

*O'Mahoney v. Susser*,
   531 F. App'x 39 (2d Cir. 2013) ........................................................................................3

*Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments Ltd.*,
   147 A.D.2d 327 (N.Y. App. Div. 1989) ..........................................................................6

*Parke-Bernet Galleries, Inc. v. Franklyn*,
   26 N.Y.2d 13 (N.Y. 1970) ................................................................................................5

*Pincione v. D'Alfonso*,
   No. 10-cv-3618, 2011 WL 4089885 (S.D.N.Y. Sept. 13, 2011) ........................................6

*Piotrowicz v. Techtronic Indus. N. Am., Inc.*,
   No. 19-cv-11522, 2021 WL 1721709 (S.D.N.Y. Apr. 30, 2021) ......................................9

*Porina v. Marward Shipping Co., Ltd.*,
   521 F.3d 122 (2d Cir. 2008)...........................................................................................10

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993)........................................................................................................14

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
   450 F.3d 100 (2d Cir. 2006)..............................................................................................3

*United States v. Coiro*,
   922 F.2d 1009 (2d Cir. 1991)..........................................................................................12

*Viasystems Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*,
   646 F.3d 589 (8th Cir. 2011) ............................................................................................5

**Statutes**

The Racketeer Influenced and Corrupt Organizations Act (RICO)
    18 U.S.C. §§ 1961 - 1968 ........................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 4 ...................................................................................................................3, 9

Fed. R. Civ. P. 8 ......................................................................................................................3

Fed R. Civ. P.  9 ....................................................................................................................13

N.Y.C.P.L.R. § 302 ............................................................................................................3, 7

## PRELIMINARY STATEMENT

Hughes is incorrect when he asserts that this Court lacks personal jurisdiction over him and that his alleged racketeering conduct does not state a claim because he was simply acting as "an attorney litigating on behalf of his client." Mem. of Law in Supp. of Def. David Graham Hughes' Mot. to Dismiss ("Hughes Br.") at 1 (Feb. 28, 2023). But he is right when he says this is not a close case: the Court has specific jurisdiction pursuant to both New York's long-arm statute and the Federal Rules of Civil Procedure. And the Complaint's allegations are more than sufficient to state a RICO claim against him. The Court should deny Hughes' motion.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

In 2014, Hughes and his co-defendant Neil Gerrard were among the three Dechert attorneys accused of violating the human rights of Karam Al Sadeq, who was detained as a target of Dechert's investigation for its client, the Emirate of Ras Al Khaimah ("RAK"). *See* Compl. ¶¶ 3, 39-40, 189.[1] Thus, Hughes and Gerrard also had the most to lose when Plaintiff Farhad Azima threatened to expose the abuse. *Id.* ¶¶ 4, 41-42, 189.

The Complaint makes clear that Hughes and the Enterprise fully intended to silence Azima by ruining him financially and reputationally. *Id.* ¶¶ 5, 74, 223. Beginning in 2015, sensitive data was stolen from Azima through the Enterprise—a directed hacking campaign meant to intimidate him. *Id.* ¶¶ 5, 18, 20, 44-58. The Enterprise published the data on the internet, *id.* ¶¶ 67-68, and set the wheels in motion for Azima to be disparaged in the press. *Id.* ¶¶ 80-82.

Hughes took on a senior role in the Enterprise, working as a high-level deputy to Gerrard, its mastermind. *Id.* ¶¶ 16-17, 106 & n.8. In September 2016, Hughes authored a demand letter—

---

[1] "RAK" also refers to any other RAK-related entities including the Ras Al Khaimah Investment Authority ("RAKIA"). As with "RAK," all other capitalized terms used herein have the same meaning as in Plaintiffs' Omnibus Opposition.

written on Dechert letterhead and sent via U.S. mail and wires—threatening to sue Azima on behalf of RAK; he attached to that letter documents clearly stolen from Azima and housed on Dechert's servers. *Id.* ¶¶ 69-71, Ex. B at line 48. When the Enterprise sued Azima in the U.K. on behalf of RAKIA, Hughes was running the show. *See id*. ¶¶ 69, 98, 103, 105-06 & n.8, 110.

And when Azima sued RAKIA in the United States seeking compensation for the data theft (the "D.C. Proceedings"), *id.* ¶¶ 72, 83, Hughes not only teamed with Dechert's New York lawyers to defend RAK, *id.* ¶¶ 87, 91, 93, but, from at least 2018 to 2019, he also guided Dechert's efforts to obstruct those proceedings. Acting as Hughes' agent, Linda Goldstein, then a New-York-based partner at Dechert, presented false facts to the D.C. courts. *Id.* ¶¶ 94-96, 98, Ex. B at lines 57, 83, 87, 88. Hughes and Goldstein also fabricated testimony for Majdi El Halabi, who testified, falsely, that he had innocently discovered Azima's hacked data on the internet. *See id*. ¶¶ 91, 102-06, 192, Ex. B at lines 87, 92, 119. And Hughes played a role in anonymously mailing hacked documents to the media, including several journalists in New York, and to the D.C. court, making Azima's documents public, without revealing the Enterprise's role in the disclosure. *Id*. ¶¶ 81, 120-24.

## ARGUMENT[2]

## I.   THIS COURT HAS PERSONAL JURISDICTION OVER HUGHES.

### A.   Hughes Is Subject to Jurisdiction under New York's Long-Arm Statute.

Determining personal jurisdiction over a foreign defendant through the courts' traditional contacts-based inquiry requires two steps. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). "First, the court must establish whether there is a statutory basis for exercising personal jurisdiction." *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 341

---

[2] Plaintiffs incorporate by reference their Opposition to Defendants' Omnibus Motion to Dismiss (Omnibus Opp'n). Thus, they do not repeat the standard of review. *See* Omnibus Opp'n at 14-16.

(S.D.N.Y. 2015) (cleaned up). "[S]econd, the court must decide whether the exercise of jurisdiction comports with due process." *Id.* (citing *Sonera Holding B.V. v. Çukurova Holding A. S.*, 750 F.3d 221, 224 (2d Cir. 2014)). Both factors are met here.[3]

> 1.   *Section 302(a)(1) Applies Because Hughes Transacted Business in New York.*

In relevant part, New York's long-arm statute, N.Y.C.P.L.R. § 302(a)(1), confers jurisdiction when (1) a defendant "transacted business within the state," and (2) "the claim asserted . . . arise[s] from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). Section 302 is a "single act" statute and proof of one transaction in New York is sufficient to invoke jurisdiction—even if the defendant never stepped foot in the state. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 248 (2d Cir. 2007).

*First*, although the Complaint cites 18 U.S.C. § 1965(b) as the statutory basis for jurisdiction over Hughes, *cf.* Hughes Br. at 4, a plaintiff is not obligated to cite a particular jurisdiction-conferring statute in his complaint. *See* Fed. R. Civ. P. 8(a)(1) (requiring "a short and plain statement of the grounds for the court's jurisdiction"). In any event, Plaintiffs relied on §§ 302(a)(1) and (a)(2) in their pre-motion letter (ECF No. 100); in federal question cases, "the court must look . . . to the long-arm statute of the forum state" (*Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)); and any omission in the Complaint could be resolved by amendment.

*Second*, Hughes projected himself into New York by transacting business with Enterprise members present in New York through calls, emails, and video conferences. *See O'Mahoney v. Susser*, 531 F. App'x 39, 42 (2d Cir. 2013); Compl. ¶¶ 36, 98-99, 102-06, Ex. B at lines 85, 92,

---

[3] Personal jurisdiction over a defendant may be general or specific. Because Hughes is domiciled in the United Kingdom, he is not amenable to general jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Specific jurisdiction exists, however.

119. Those extensive activities go well beyond the "single act" required by § 302(a)(1). From the United Kingdom, Hughes "organiz[ed] and structur[ed] the Enterprise, coordinat[ed] and carr[ied] out its affairs, and direct[ed] and execut[ed] its illegal acts," *id.* ¶¶ 15, 17, when the Enterprise's center of gravity was New York. *Id.* ¶¶ 15 ("Gerrard and others carried on the affairs of the Enterprise out of Dechert's New York office"); *see id.* ¶¶ 18, 23-24, 29-32, 37, 54, 60, 77, 104. Hughes led the obstruction scheme and, in that role, he worked closely with Dechert's attorneys in New York to marshal the "facts," create the false narrative concerning the hacking, and present obstructive statements to the courts. *Id.* ¶¶ 69-71, 91, 98-99, 102-06, 118-19, 185.

*Third*, Hughes *also* effectuated business in New York through others, namely Linda Goldstein, to further the Enterprise's scheme of inflicting reputational harm and ruinous litigation costs on Azima. Section § 302(a)(1) allows for jurisdiction if, "through an agent," a non-domiciliary "transacts any business within the state"; New York law provides that a co-conspirator can be an agent. *Al Thani v. Hanke*, No. 20-cv-4765, 2021 WL 1895033, at \*10 (S.D.N.Y. May 11, 2021). To establish co-conspirator jurisdiction, a plaintiff must (1) make a prima facie case of conspiracy, (2) allege facts warranting an inference that the defendant was a member of the conspiracy, (3) show the in-state agent's transaction of business in New York, and (4) demonstrate an agency relationship between the defendant and the agent. *See id*.

Here, Plaintiffs have established a *prima facie* case of conspiracy. *See* Compl. ¶¶ 252-62; Omnibus Opp'n at 58. Plaintiffs have also alleged facts warranting an inference that Hughes was a member of that conspiracy. *See infra* pp. 10-15. Goldstein, Hughes' New-York-based law partner, worked in Dechert's New York office and conducted business out of New York, including with respect to the D.C. Proceedings. *See supra* p. 2. And the Complaint alleges facts showing that Hughes and Goldstein had the requisite agency relationship—*i.e.*, the Court can reasonably infer

that (1) Hughes was aware of the effects of his activity in New York, (2) the activity of Dechert and Goldstein benefitted him, and (3) Goldstein acted at the request of or on behalf of Hughes. *See Al Thani*, 2021 WL 1895033, at *11.

Hughes addresses only the third element of the agency-relationship test, challenging the sufficiency of Plaintiffs' allegations that he directed or controlled Goldstein. Hughes Br. at 8. The Complaint, however, meets all three requirements. Hughes was aware that his instructions to Dechert's New York lawyers would result in Goldstein and Dechert filing obstructive statements. Compl. ¶ 36, Ex. B at lines 57, 83-84, 86-88. Indeed, Hughes fed false information to Goldstein in New York *intending* for her to make false submissions to the courts. *Id.* ¶¶ 91, 94-96, 98-99, 102-06, 111, 118-19, 124, 192. Those false statements sought to advance the interests of the Enterprise and RAKIA, and therefore ensured that the Enterprise's conduct and the assault on Azima could continue unabated. *Id.* ¶ 62. And Goldstein's electronic communications with Hughes confirm that she was acting at his direction and on his behalf. *Id.* ¶¶ 98-99, Ex. B at line 85. Goldstein relied on Hughes to marshal the "facts," *id.* ¶¶ 93, 98-99, 114, 118-19, and, akin to the open phone line in *Parke-Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 16 (N.Y. 1970), Hughes used Goldstein to keep abreast of the U.S. judicial proceedings that he and his co-conspirators were intent on obstructing. Compl. ¶¶ 98-99, 118-19, Ex. B at line 84; *see Parke-Bernet Galleries, Inc.*, 26 N.Y.2d at 17 (although never physically present, defendant "receiv[ed] and transmit[ted] bids over an open telephone line and was an active participant in an auction held" in New York).[4]

---

[4] To be sure, remote communications alone "are generally insufficient to confer personal jurisdiction." *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11-cv-3673, 2012 WL 123989, at *4 (S.D.N.Y. Jan. 3, 2012); *cf.* Hughes Br. at 11 (citing *Viasystems Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011)). When such communications "effectuate some purposeful business in New York," however, "personal jurisdiction will be found." *Golden Archer*, 2012 WL 123989, at *4; *see Viasystems Inc.*, 646 F.3d at 594 (a "deliberate" and "substantial connection" with the state confers jurisdiction).

*Fourth*, Azima's claims arise from these activities. Hughes purposefully worked in concert with others in New York, including Goldstein, as part of his "active . . . immersion" in the Enterprise. *Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments Ltd.*, 147 A.D.2d 327, 333 (N.Y. App. Div. 1989). Surely, Hughes cannot use Dechert's New York lawyers, including Goldstein, to bring about a particular result stemming from the Enterprise's business in New York without purposefully availing himself of the jurisdiction of the State.

Aside from disavowing co-conspirator jurisdiction through Goldstein, Hughes says that he cannot be subject to personal jurisdiction in New York because, he claims, he was acting as a humble out-of-state attorney advocating on behalf of RAK. Hughes Br. at 6. But the Complaint does not allege that Hughes projected himself into New York on behalf of RAK; he did so in the interests *of the Enterprise*, by serving as one of Gerrard's key lieutenants, propagating false information, and facilitating the creation of false testimony. *See* Compl. ¶¶ 17, 62, 70, 91, 93, 98-99, 102-06, 118-19. RAK itself has described Gerrard and other Enterprise co-conspirators as "dishonest and unscrupulous third-party advisers who . . . advance[d] their own interests for their own gains" (*id.* ¶ 201)—not mere unassuming lawyers advocating on behalf of their client.

The very nature of this litigation also renders the cases cited by Hughes, involving run-of-the-mill legal activities, inapposite. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 788 (2d Cir. 1999) ("*BBL I*") (Sotomayor, J.) (no jurisdiction over Puerto Rico firm that analyzed a New York bank transaction); *Bloomgarden v. Lanza*, 40 N.Y.S.3d 142, 144 (N.Y. App. Div. 2016) (no jurisdiction in over Florida attorneys who represented plaintiffs in Florida). In the only RICO case cited by Hughes, *Pincione v. D'Alfonso*, No. 10-cv-3618, 2011 WL 4089885, at *4 (S.D.N.Y. Sept. 13, 2011), the court lacked personal jurisdiction because, unlike here, the defendants *had no agents in New York*.

2. *Section 302(a)(2) Applies Because, Through Goldstein, Hughes Committed a Tortious Act in New York.*

Hughes is also subject to jurisdiction under N.Y.C.P.L.R. § 302(a)(2), which applies when a defendant "commits a tortious act within the state" through an agent. It is enough for the Complaint to allege that, from New York, Goldstein disseminated false statements, at Hughes' direction, to Azima's detriment. *See Al Thani*, 2021 WL 1895033, at *8 (section 302(a)(2) applied when defendant made false statements in New York that proximately harmed plaintiff); *Funk v. Belneftekhim*, No. 14-cv-0376, 2017 WL 5592676, at *10 (E.D.N.Y. Nov. 20, 2017) (similar).

Normally, "[a] defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)." *Elsevier, Inc.*, 77 F. Supp. 3d at 345. But Goldstein's conduct—filing, from New York, intentionally false statements in the D.C. Proceedings at Hughes' direction (Compl. ¶¶ 26, 62, 93, 102-06, Ex. B at lines 57, 84)—can be imputed to Hughes "exactly as it was in the context of the § 302(a)(1) analysis." *See Elsevier, Inc.*, 77 F. Supp. 3d at 345; *LaChapelle v. Torres*, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014) (section 302(a)(2) jurisdiction extends to out-of-state individual who "can be deemed responsible for [an in-state] tort based upon theories of agency or conspiracy").[5]

3. *Due Process Is Satisfied.*

The due process analysis has "two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe v. Queen of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). First, the court "must determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* (citing *Int'l Shoe Co. v. State*

---

[5] Hughes incorporates Dechert's argument that the Court lacks jurisdiction based on a forum selection clause. Hughes Br. at 1 & n.1. Since Hughes makes no new arguments, Plaintiffs simply incorporate their response. *See* Dechert Br. at 8-16. Hughes cannot escape jurisdiction based on a fraudulently induced agreement—with different subject matter—to which he was not a party.

*of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)). The court then "ask[s] whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—[i.e.,] whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316).

> a.    Hughes Has Minimum Contacts with New York.

The "assertion of personal jurisdiction over [Hughes] comports with due process for the same reasons that it satisfies New York's long-arm statute"—he has "purposefully availed himself of the privilege of conducting activities within [New York]." *Chloe*, 616 F.3d at 171 (cleaned up). Far from merely being copied on an email and attending a couple of meetings, Hughes Br. at 11, Hughes "organiz[ed] and structur[ed]" the New-York-centered Enterprise, coordinated and carried out its affairs, directed and executed its illegal acts, Compl. ¶¶ 15, 17, and fed false information to Goldstein in New York. *Id.* ¶¶ 91, 98-99, 102-06. "[T]here can be no doubt that [Hughes's] conduct was 'purposefully directed toward the forum State.'" *Chloe*, 616 F.3d at 171 (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987)). If that were not enough, Goldstein's suit-related contacts can be imputed to Hughes for due process purposes. *Elsevier, Inc.*, 77 F. Supp. 3d at 347. Either way, Hughes has sufficient contacts with New York.

> b.    The Assertion of Personal Jurisdiction over Hughes Would Be
>       Reasonable.

Next, the burden shifts to *the defendant*, who "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) ("*BBL II*") (internal quotation marks omitted). The Supreme Court has set forth five factors that the courts must consider "when determining the reasonableness of a particular exercise of jurisdiction":

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in

> obtaining convenient and effective relief; (4) the interstate judicial system's interest
> in obtaining the most efficient resolution of the controversy; and (5) the shared
> interest of the states in furthering substantive social policies.

*Chloe*, 616 F.3d 158 at 164 (quoting *Asahi*, 480 U.S. at 113).

Hughes has not met his burden. He addresses the first factor only and, even then, he merely indicates that he might be inconvenienced if required to travel to New York for trial. Hughes Br. at 11. "[T]he conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago," however. *BBL II*, 305 F.3d at 129-30.[6] The second factor favors a forum in New York, which was the nerve center of the RICO Enterprise. *See id.* at 130. The third and fourth factors "both implicate the ease of access to evidence and the convenience of witnesses," *id.*, "an issue which both supports and undermines [Hughes'] position" given that both New York and the UK "are marked with the traces" of the Enterprise. *Id*. And, fifth, "holding [Hughes] subject to jurisdiction in New York does not appear likely to erode any shared social policies." *Id*. Jurisdiction over Hughes is consistent with due process.[7]

## B.     Hughes Is Subject to Jurisdiction under the Federal Rules.

Even if New York's long-arm statute does not apply, Federal Rule of Civil Procedure 4(k)(2) provides an alternative basis for jurisdiction over Hughes. Rule 4(k)(2) provides jurisdiction when a plaintiff demonstrates that (1) the claim arises under federal law; (2) the defendant is not "subject to jurisdiction in any state's courts of general jurisdiction"; and (3) the

---

[6] *See Kernan v. Kurz–Hastings., Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) (burden on Japanese defendant to defend suit in the United States was insufficient to overcome its minimum contacts, particularly in light of the ease of modern travel and communication).

[7] If the Court believes that jurisdictional discovery could clarify the scope of Hughes' interactions with New York, Plaintiffs' allegations indicate that they "'may be able to establish jurisdiction if given the opportunity to develop a full factual record.'" *Piotrowicz v. Techtronic Indus. N. Am., Inc.*, No. 19-cv-11522, 2021 WL 1721709, at *3 (S.D.N.Y. Apr. 30, 2021) (citation omitted).

exercise of jurisdiction is "consistent with the United States Constitution and laws"—*e.g.*, it comports with due process. *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008)). A plaintiff need only make a *prima facie* case. *Licci*, 732 F.3d at 167.

The first element is readily satisfied here as this case arises under RICO. Second, if the Court concludes that New York's long-arm statute does not apply, there is no indication that Hughes, who was properly served "at his home in England" (*see* ECF No. 96 at 2), is subject to jurisdiction in any state's courts of general jurisdiction. And, third, the exercise of jurisdiction would comport with due process. The question under Rule 4(k)(2) is whether the defendant has the requisite aggregate contacts with the United States as a whole. *Porina*, 521 F.3d at 127. Hughes does not deny having such contacts, nor could he: the Enterprise of which he was a part was aimed at inflicting reputational harm and ruinous costs on Azima (a U.S. citizen) and his U.S.-based entities, in the United States. *See* Compl. ¶¶ 9-14, 102-06, 110, 120-26, Ex. B at line 115.

## II.     THE COMPLAINT STATES RICO CLAIMS AGAINST HUGHES.

The Complaint alleges that Hughes committed numerous predicate acts: obstruction, witness tampering, mail and wire fraud, and money laundering. Hughes, however, claims he is somehow shielded from scrutiny because he was purportedly acting as an English solicitor in an English legal proceeding. Hughes Brief at 1, 12-13. To the contrary, Hughes actively assisted Gerrard in operating and managing the Enterprise.

### A.     Hughes Committed RICO Predicate Acts.

Hughes tries to minimize the Complaint's allegations as solely extraterritorial litigation conduct. In reality, however, Plaintiffs allege that he played a crucial role in crafting the Enterprise's false story that was deployed to obstruct the D.C. Proceedings and harm Azima.

1.      *Hughes' Predicate Acts Were Not Mere Litigation Activity.*

Citing *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020), Hughes tries to minimize the predicate acts alleged against him as mere litigation activities. Hughes Br. at 12. *Butcher*, however, is inapt. Hughes engaged in out-of-court criminal conduct and engaged in litigation in a broader, sophisticated, and well-documented scheme. *See Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 249-50 (S.D.N.Y. 2012) (RICO scheme included "not only" litigation but also fabricating evidence). As the court noted in *Chevron*, the fabrication of evidence is not protected litigation activity. But that is exactly what the Complaint alleges that Hughes did here:  he caused Dechert and Goldstein (in New York) to make false statements in court and then, he, Goldstein, and others fabricated Halabi's false testimony to cover their tracks. Compl. ¶¶ 102-06, 110; *id.* Ex. B at lines 57, 86, 87. Hughes was also involved in anonymously mailing previously unreleased stolen Azima emails to the D.C. court. *Id.* ¶¶ 123-24. An enclosed mailing list, which indicated that Hughes and Gerrard were mere recipients, was intended to deceive the D.C. court by masking their role as the source of the anonymous package so that the Enterprise could inject the hacked documents into the public domain and influence the press. *Id.* ¶¶ 120-24. Fraudulent anonymous mailings in bids to corruptly influence a court cannot constitute protected litigation activity.

2.      *Hughes' Predicate Acts Were Directed Toward the U.S.*

Hughes argues that his predicate acts of obstruction—particularly the Cyprus and London meetings—were directed at the U.K., not the United States. Hughes Br. at 13. Yet, the Complaint alleges that those meetings were designed in part to obstruct the U.S. litigation:  from New York, Goldstein remotely joined the meetings where the Enterprise crafted Halabi's perjurious testimony (that he stumbled upon Azima's hacked documents on the internet). Compl. ¶¶ 102-06, 110. Goldstein's attendance shows that developing Halabi's perjury was relevant to the D.C. Proceedings—for which she was lead counsel for Dechert. Indeed, by the time the Defendants met

in Cyprus and London, Goldstein had already introduced into the D.C. record many of the

falsehoods that would eventually form the basis of Halabi's perjury.[8] Subsequent meetings with

Halabi in 2018 and 2019—while the D.C. Proceedings were pending—were an effort by Hughes

and the Enterprise to make "real" the lies fed to the D.C. court through Goldstein.

### 3.      *Hughes' Predicate Acts Are Actionable.*

Hughes distorts and attempts to minimize the wire fraud and obstruction allegations against

him as "just" concealment of hacking, which he argues is exempt as a RICO predicate. RICO

clearly contemplates, however, obstruction of justice and witness tampering as RICO predicates.

18 U.S.C. § 1961(1). Hughes' predicate acts furthered the Enterprise's ultimate purpose to threaten

and instigate litigation against, and impede litigation brought by, perceived opponents of RAK.

*See, e.g.*, Compl. ¶ 207. Those acts are, therefore, predicate offenses. *See United States v. Coiro*,

922 F.2d 1009, 1017 (2d Cir. 1991) ("activities designed to prevent detection and prosecution of

the organization's illegal activities were part of a consistent pattern that was likely to continue for

the indefinite future" and therefore part of the RICO conspiracy); *see also Bd. of Mgrs. of Trump

Tower at City Ctr. Condo. by Neiditch v. Palazzolo*, 346 F. Supp. 3d 432, 460 n.1 (S.D.N.Y. 2018)

(knowingly withholding information was an act of concealment allegedly "designed to prevent

detection and prosecution of the organization's illegal activities, and [was] part of a "consistent

pattern, such that [it was] done in furtherance of the main criminal objectives of conspiracy").

As described above, *see supra* pp. 2-6, 11-12, Hughes' acts of wire fraud and obstruction

were designed to launch a new offensive against Plaintiffs in order to further embroil them in

---

[8] *See id.* Ex. B at line 57 (in the D.C. Proceedings, Goldstein representing that Hughes "attached
the [hacked] documents" to demand letter and said that "they had been 'obtained . . . via publically
[sic] available internet sources.'"); *id.* Ex. B at line 86 (Goldstein representing that Azima's stolen
documents were on "publically available links"), *id.* Ex. B at line 87 (Goldstein representing that a
"consultant" had "identified . . . Azima's documents that were available for download").

litigation and drive up legal fees, as well as to protect the Enterprise. Compl. ¶ 84. Just as in *Chevron*, obstruction of the D.C. Proceedings permitted the Enterprise to further damage Azima and to obtain a multi-million-dollar U.K. judgment against him. *Id*. ¶ 89.

Hughes relies primarily on *Democratic National Committee v. Russian Federation* ("*DNC*"), which holds that acts of concealment may constitute predicate offenses for a civil RICO claim. 392 F. Supp. 3d 410, 443-44 (S.D.N.Y. 2023) (quoting *Grunewald v. United States*, 353 U.S. 391, 405 (1957), for the proposition that "acts of concealment done in furtherance of the main criminal objectives of the conspiracy" are part of the conspiracy.). *DNC* is inapposite because the acts of concealment there were completed *after* the central objectives of the conspiracy had been attained, for the sole purpose of covering up the crime, and were not therefore part of the pattern of racketeering activity. *Id.* at 444 n.29. Here, the obstruction was part of the Enterprise's plan to harm Plaintiffs.[9]

In addition, the wire fraud predicates satisfy the particularity requirements of Rule 9(b). *Cf.* Hughes Br. at 14. The Complaint alleges that Hughes used the U.S. wires to: transmit to Azima a fraudulent demand letter attached to which were Azima's own stolen documents (Compl. ¶¶ 69-71); communicate false statements to Goldstein, who, also using the U.S. wires, transmitted those false statements to the courts (*id.* ¶¶ 94-96, 98); and meet virtually with Goldstein to develop Halabi's perjurious testimony (*id*. ¶¶ 91, 102-06, 192). And, as in the case cited by Hughes, the Complaint here "contains a chart listing [hundreds of] different mailings [and wires] said to contain

---

[9] Hughes' assertion that "the money laundering claim against Mr. Hughes is non-existent," Hughes Br. at 14, is incorrect. Hughes used his position controlling the RAK representation (and its funds) to supervise co-conspirators who laundered millions to finance hacking and obstruction of justice. *See* Compl. ¶¶ 17, 55-56, 106 & n.8, 185, 240, Ex. B at line 90. The payments represent the proceeds of unlawful activity transferred with the intent to promote the carrying on of that unlawful activity. *See* 18 U.S.C. §§ 1956(a)(1)(A), (a)(2)(A).

fraudulent representations, along with the dates of these mailings and cross-references to the paragraphs of the complaint in which the mailings are further discussed." *Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999); *see* Compl. Ex. B at lines 48-51, 57, 83, 87, 88, 92, 119.[10]

**B.    Hughes Participated in the Operation and Management of the Enterprise.**

The Second Circuit has held that the "operation and management" test adopted by the Supreme Court in *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993), the key case upon which Hughes relies, *see* Hughes Br. at 15, is a "relatively low hurdle for plaintiffs to clear, . . . especially at the pleading stage"; plaintiffs need only show that a defendant played "*some* part in directing the enterprise's affairs." *D'Addario v. D'Addario*, 901 F.3d 80, 103-04 (2d Cir. 2018) (citation omitted). "[D]iscretionary authority in carrying out the instructions of the [enterprise's] principals" alone is sufficient to satisfy the "operation or management" requirement. *Chevron*, 974 F. Supp. 2d at 576. And a defendant's active assistance in carrying out schemes devised by the enterprise's mastermind also meets the test. *See D'Addario*, 901 F.3d at 104 (individual defendants participated in mastermind-defendant's operation and management of enterprise by actively helping him loot estate); *see also Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003) (defendant participated in the operation and management of enterprise by, *inter alia*, recruiting financing for enterprise, issuing fraudulent insurance certificates, and concealing deceptive payroll practices).

The Complaint alleges that Hughes held a leadership role in the Enterprise, particularly its scheme of obstruction. The Complaint alleges that Hughes was the first to deploy the false story of "discovering" Azima's stolen records on the internet as part of his effort to seek a large payment

---

[10] Hughes repeats Defendants' argument from their Omnibus Motion to Dismiss that dismissal of substantive RICO violations requires that the RICO conspiracy claims against him be dismissed as well. As Plaintiffs argue in the Omnibus Opposition this is wrong as a matter of law.  Omnibus Opp'n at 58.

from Azima. *See* Compl. Ex. B at line 57. Hughes then directed Goldstein and others in repeating the false story throughout the D.C. Proceedings. *See id.* Ex. B at line 50 (Dechert partner taking direction from Hughes in correspondence with Azima's counsel on the Enterprise's false story); *id.* ¶ 99 (Goldstein taking direction from and copying Hughes in correspondence with Azima's counsel on the Enterprise's false story); *id.* ¶ 98 (coordinating with Goldstein to file false witness statements about Azima's stolen documents and the status of the D.C. Proceedings). Hughes also gave commands to the Enterprise's hacking co-conspirators during the creation of Halabi's false testimony. *See id.* Ex. B at line 90 (instructing co-conspirator Stuart Page to provide documents to co-conspirator Eitan Arusy for use at meeting in Cyprus to craft Halabi's perjury).

Hughes argues that a lawyer's knowing concealment of an enterprise's fraud is not "operation or management." *See* Hughes' Br. at 15 (citing *Madanes v. Madanes*, 981 F. Supp. 241, 256 (S.D.N.Y. 1997)). But the Complaint alleges Hughes actively crafted perjury to deploy in the D.C. Proceedings through Goldstein in New York—among other affirmative acts of fraud. Compl. ¶¶ 102, 104, 106. Even under Hughes' view that suborning and conspiring to suborn perjury is merely "concealment," the Second Circuit has held that any assistance necessary for *another* RICO defendant's own operation and management of the enterprise is sufficient to find that the assisting party has also operated and managed the Enterprise. *D'Addario*, 901 F.3d at 104. Hughes directly assisted Gerrard's operation and management of the Enterprise's obstruction of the D.C. Proceedings by helping Gerrard manage false statements being injected into the proceedings by co-conspirators like Goldstein. *See* Compl. ¶¶ 93, 99, 114, 118-19 (Goldstein copying both Gerrard and Hughes on fraud-laden emails to inject the false discovery story into D.C. Proceedings).

## **CONCLUSION**

Plaintiffs respectfully request that the Court deny this Motion to Dismiss in its entirety.

Dated:  May 22, 2023
         New York, New York

*/s/ Harry H. Rimm*
Harry H. Rimm
Womble Bond Dickinson (US) LLP
950 Third Avenue
New York, New York 10022
Tel. (332) 258-8400
Fax (332) 258-8949
harry.rimm@wbd-us.com

*/s/ Christopher W. Jones*
Christopher W. Jones
Ripley E. Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Tel. (919) 755-2100
Fax (919) 755-2150
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

*/s/ Kirby D. Behre*
Kirby D. Behre
Timothy P. O'Toole
Lauren E. Briggerman
Ian A. Herbert
Cody F. Marden
Calvin Lee
Miller & Chevalier Chartered
900 Sixteenth Street NW
Washington, D.C. 20006
Tel. (202) 626-5800
Fax (202) 626-5801
kbehre@milchev.com
totoole@milchev.com
lbriggerman@milchev.com
iherbert@milchev.com
cmarden@milchev.com
clee@milchev.com

*Attorneys for Plaintiffs Farhad Azima, ALG Transportation, Inc.,*
*Main 3260 LLC, FFV W39 LLC and FFV Development LLC*