UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FARHAD AZIMA,
ALG TRANSPORTATION, INC.,
MAIN 3260 LLC,
FFV W39 LLC, and
FFV DEVELOPMENT LLC,

        Plaintiffs,

        - against -

DECHERT LLP,
DAVID NEIL GERRARD,
DAVID GRAHAM HUGHES,
NICHOLAS DEL ROSSO,
VITAL MANAGEMENT SERVICES, INC.,
AMIT FORLIT,
INSIGHT ANALYSIS AND RESEARCH LLC,
SDC-GADOT LLC,
AMIR HANDJANI,
ANDREW FRANK, and
KARV COMMUNICATIONS,

        Defendants.

22 Civ. 8728 (PGG) (JW)

**MOTIONS TO DISMISS
MEMORANDUM OF LAW IN
OPPOSITION TO DAVID NEIL
GERRARD'S
MOTION TO DISMISS**

Harry H. Rimm
Womble Bond Dickinson (US) LLP
950 Third Avenue
New York, New York 10022
Tel. (332) 258-8400
Fax (332) 258-8949
harry.rimm@wbd-us.com

Christopher W. Jones
Ripley E. Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Tel. (919) 755-2100
Fax (919) 755-2150
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Kirby D. Behre
Timothy P. O'Toole
Lauren E. Briggerman
Ian A. Herbert
Cody F. Marden
Calvin Lee
Miller & Chevalier Chartered
900 Sixteenth Street NW
Washington, D.C. 20006
Tel. (202) 626-5800
Fax (202) 626-5801
kbehre@milchev.com
totoole@milchev.com
lbriggerman@milchev.com
iherbert@milchev.com
cmarden@milchev.com
clee@milchev.com

*Attorneys for Plaintiffs Farhad Azima, ALG Transportation, Inc.,
Main 3260 LLC, FFV W39 LLC and FFV Development LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

RELEVANT ALLEGATIONS AGAINST GERRARD ...............................................................2

ARGUMENT ...............................................................................................................................3

I.       PLAINTIFFS' RICO CLAIMS BELONG BEFORE THIS COURT. ................................3

       A.      Gerrard is Not a Party to the Agreement and Cannot Enforce the FSC. ................4

       B.      The Complaint Is Not Covered by the Agreement's Forum Selection Clause..........................................................................................................................5

       C.      Collateral Estoppel Does Not Apply.......................................................................5

       D.      The Agreement Is Unenforceable Because It Was Obtained By Fraud..................7

II.      THIS COURT HAS PERSONAL JURISDICTION OVER GERRARD .........................7

       A.      Gerrard Is Subject to Jurisdiction under New York's Long-Arm Statute. ..............7

              1.      Gerrard Repeatedly Transacted Business in New York. ............................8

              2.      Gerrard Committed Tortious Acts in New York. .....................................10

              3.      Due Process Is Satisfied...........................................................................11

       B.      Gerrard Is Subject to Jurisdiction under the Federal Rules. .................................12

III.     THE COMPLAINT STATES RICO OFFENSES AGAINST GERRARD.....................13

       A.      The Complaint Alleges That Gerrard Committed Numerous Predicate Acts. ......................................................................................................................14

       B.      Gerrard Committed Predicate Acts of Obstruction of Justice. .............................15

CONCLUSION...........................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Al Thani v. Hanke*,
    No. 20 Civ. 4765, 2021 WL 1895033 (S.D.N.Y. May 11, 2021)..................................9, 10, 11

*Azima v. RAK Inv. Auth.*,
    926 F.3d 870 (D.C. Cir. 2019) ..........................................................................................5, 6

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
    305 F.3d 120 (2d Cir. 2002)..................................................................................................12

*Bascunan v. Elsaca*,
    927 F.3d 108 (2d Cir. 2019)..................................................................................................15

*Chevron Corp. v. Donziger*,
    871 F. Supp. 2d 229 (S.D.N.Y. 2012).................................................................................16

*Chloe v. Queen Bee of Beverly Hills, LLC*,
    616 F.3d 158 (2d Cir. 2010)...........................................................................................11, 12

*De Sole v. Knoedler Gallery, LLC*,
    974 F. Supp. 2d 274 (S.D.N.Y. 2013)............................................................................15, 16

*Elsevier, Inc. v. Grossman*,
    77 F. Supp. 3d 331 (S.D.N.Y. 2015).........................................................................8, 11, 12

*Epperson v. Ent. Express, Inc.*,
    242 F.3d 100 (2d Cir. 2001)................................................................................................6, 7

*Funk v. Belneftekhim*,
    No. 14-cv-0376, 2017 WL 5592676 (E.D.N.Y. Nov. 20, 2017) ...........................................11

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
    No. 11 Civ. 3673, 2012 WL 123989 (S.D.N.Y. Jan. 3, 2012)..................................................9

*LaChapelle v. Torres*,
    1 F. Supp. 3d 163 (S.D.N.Y. 2014) .......................................................................................11

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
    732 F.3d 161 (2d Cir. 2013)....................................................................................................8

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014)................................................................................................4, 5

*NuMSP, LLC v. St. Etienne*,
    462 F. Supp. 3d 330 (S.D.N.Y. 2020)....................................................................................5

*Peterson v. Islamic Republic of Iran*,
No. 10CIV-4518, 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) ...........................13

*Pickett v. Migos Touring, Inc.*,
420 F. Supp. 3d 197 (S.D.N.Y. 2019)........................................................................8

*Rep. of Guat. v. IC Power Asia Dev. Ltd.*,
619 F. Supp. 3d 421 (S.D.N.Y. 2022)........................................................................8

*Rio Tinto PLC v. Vale S.A.*,
No. 14 Civ 3042, 2014 WL 7191250 (S.D.N.Y. Dec. 17, 2014)...........................4, 5

*Tex. Int'l. Magnetics, Inc. v. BASF AG*,
31 F. App'x 738 (2d Cir. 2002) ...............................................................................12

*United States v. Hawit*,
No. 15-cr-252, 2017 WL 663542 (E.D.N.Y. Feb. 17, 2017)...................................15

*Van Orden v. City of Port Jervis*,
No. 20-cv-07207, 2022 WL 1667024 (S.D.N.Y. May 25, 2022) ........................7, 11

*Victorinox AG v. B&F Sys., Inc.*,
709 Fed. App'x 44 (2d Cir. 2017).............................................................................7

*Zanghi v. Ritella*,
No. 19 CIV 5830, 2021 WL 4392756 (S.D.N.Y. Sept. 24, 2021)............................5

## Statutes

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§
1961-1968 ......................................................................................... *passim*

## Other Authorities

Fed. R. of Civ. P. 4.........................................................................................................13

N.Y.C.P.L.R. § 302....................................................................................................8, 11

## PRELIMINARY STATEMENT

Dechert's Neil Gerrard led the RICO Enterprise[1] at the center of this case, and he oversaw an extensive scheme of fraud and obstruction involving baseless litigation, a negative media campaign, and a manufactured law enforcement investigation, all of which harmed Plaintiffs financially and reputationally. This sprawling criminal Enterprise successfully targeted Azima, his companies, and many other enemies. Compl. ¶¶ 38-39, 186. Gerrard did so to advance his own financial interests, as well as those of Dechert and the other members of the Enterprise.

Dechert and Gerrard not only defrauded the Enterprise's targets, but they also betrayed their own client. RAK now disavows Gerrard's and Dechert's conduct relating to a suit that it filed against Azima and has accused Dechert of performing unauthorized work for RAK. *Id.* ¶¶ 69 & n.6, 183, 187, 201. RAK says Gerrard is a "dishonest and unscrupulous third-party adviser[]," who "engaged in serious wrongdoing and ethical violations." *Id.* ¶ 201. RAK says that Gerrard and his co-conspirators acted *not* in RAK's interests, but instead "[took] steps to advance their own interests for their own gains," including teaching now-admitted perjurers to lie in court. *Id.*

Gerrard asks the Court to dismiss the Complaint based on a series of half-baked legal theories and jurisdictional challenges. He cannot, however, escape liability by brushing past the law and ignoring the allegations against him in the Complaint.

*First*, Gerrard seeks cover under a forum selection clause in a seven-year-old settlement agreement between Azima and RAK (the "2016 Settlement Agreement" or the "Agreement") to which he is not even a party. Gerrard cannot take advantage of the Agreement; U.K. law, which governs the Agreement, is clear on this point and yet Gerrard does not even address it. Moreover, this case is about conduct that occurred after the Agreement was signed and includes allegations

---

[1] Plaintiffs adopt the definition used in their Omnibus Opposition for any capitalized term.

about years' worth of criminal conduct; it is not connected to the formation or subject of a commercial settlement agreement. And Gerrard ignores the Complaint allegations that the Agreement was procured by fraud, which makes the Agreement unenforceable.

*Second*, Gerrard challenges personal jurisdiction, acting as if substantial portions of the Complaint simply do not exist. The Complaint alleges that Gerrard was the leader of the New York-centric Enterprise, frequented New York on behalf of the Enterprise, and directed individuals in New York to act on the Enterprise's behalf. Jurisdiction is plainly proper.

*Third*, Gerrard argues in scattershot fashion that the Complaint fails to allege that he committed any predicate offenses. He does not dispute that the Complaint, which mentions him by name more than 200 times, focuses substantially on his rampant misconduct; rather, he attempts to knock out the predicate acts through incorrect legal analysis and distortion of the Complaint.

## RELEVANT ALLEGATIONS AGAINST GERRARD

Gerrard successfully engaged in a campaign to financially destroy claimed enemies, including Plaintiffs. Compl. ¶¶ 1-2, 8, 15-16, 26(a), 35, 38-39, 185, 208. For years, he oversaw the Enterprise's wrongdoing (though Defendant Handjani and others also played leadership roles). *Id.* ¶¶ 26(c), 159, 209, 233, 238; *see also id.* ¶¶ 31, 130. He was the ringleader for the Enterprise's many crimes against Plaintiffs and others. His misconduct is described in detail in the Opposition to Dechert's Motion to Dismiss ("Dechert Opp'n"), as well as the Omnibus Opposition ("Omnibus Opp'n"). The key conduct relevant to Gerrard's Motion includes the following:

- **Obstruction of the D.C. District Court Proceeding**: The D.C. District Court Proceeding, which was pending from 2016 up to and including 2020, threatened to put an end to the Enterprise's misconduct, so Gerrard and Dechert invented and disseminated false narratives regarding Azima's stolen data, *id.* ¶¶ 87, 91-100; manufactured false testimony, *id.* ¶¶ 26(j), 101-02, 104, 106, 107, 109-12, 192, 194-95; destroyed evidence then lied about it, *id.* ¶¶ 114, 117-19, 193, 196-97, 184; and mailed stolen documents to the D.C. court via Lebanon to hide their involvement, *id.* ¶¶ 120-24. Through this obstructive conduct, the Enterprise continued its efforts to harm Azima. *Id.* ¶¶ 125-26.

2

- **Fraudulent Criminal Investigations Based upon Stolen and False Information**: Between 2016 and 2019, while the D.C. District Court Proceeding was pending, Gerrard, Dechert and others created and provided U.S. federal law enforcement agencies with false information about Azima to create a criminal investigation that would prove to be very costly for Azima. Dechert and Gerrard provided law enforcement an extensive false dossier based upon documents stolen from Azima. *Id.* ¶¶ 76-79. Of course, Dechert and Gerrard did not tell the criminal authorities that they had stolen the data. *Id.* ¶ 61.

- **Harmful Media Campaign**: Beginning in approximately 2017, at the same time the D.C. District Court Proceeding was pending, Gerrard and his co-conspirators, including the Handjani Defendants, fed the media in the U.S. and elsewhere false and disparaging tales about how Azima supposedly defrauded RAK and violated international sanctions laws. To generate more negative press, Gerrard "anonymously" sent additional hacked documents to journalists. *Id.* ¶¶ 80-82, 120-23. To encourage these press stories, the Enterprise posted Azima's stolen data on WeTransfer. *Id.* ¶¶ 71, 82.

- **More Hacking**: After Azima brought counterclaims against RAK in the U.K. Proceedings, and while the D.C. District Court Proceedings were pending, Gerrard conspired with Amir Handjani and Stuart Page to determine who was funding Azima's and Al Sadeq's litigation efforts against RAK. Gerrard and Handjani knew that Page would engage hackers to learn this information. *Id.* ¶¶ 162-69. Indeed, Page hired hacking experts to steal information from Al Sadeq's lawyers in an effort to learn the source of the litigation funding. *Id.* at ¶¶ 166-168. Once this hacking activity came to light and Al Sadeq's lawyers brought a civil action against members of the Enterprise, Gerrard's U.S.-based RICO co-conspirator Nicholas Del Rosso bribed the hackers in exchange for their silence. *Id.* ¶¶ at 170-176.[2]

Rather than address these remarkable allegations of crimes and betrayal, Gerrard simply ignores them.

## ARGUMENT[3]

### I.   PLAINTIFFS' RICO CLAIMS BELONG BEFORE THIS COURT.

---

[2] Gerrard was also integral to the initial 2015 hack of Azima, in which the Enterprise stole Azima's data through hacking and other means. *Id.* ¶¶ 5, 8, 18, 20, 26(e), 35, 44-45, 51, 53-54, 62. Gerrard used the stolen data to develop the years-long strategic Plan to defraud Plaintiffs. *Id.* ¶¶ 51-54, 59-61. After the hack, Dechert and Gerrard induced Azima to enter into the Settlement Agreement. *Id.* ¶¶ 62-64.

[3] Plaintiffs incorporate the Omnibus Opp'n. Accordingly, the standard of review is not repeated. *See* Omnibus Opp'n at 14-15. Given the overlap between Gerrard's and Dechert's arguments, Plaintiffs also incorporate their Opposition to Dechert's Motion.

Gerrard seeks to dismiss this case based upon a 2016 Settlement Agreement to which he is not even a party. But Gerrard cannot avoid liability for his leading role in a years-long criminal Enterprise by pointing to *a fraud-induced settlement agreement* relating to a *contract dispute* between Azima and RAK, *to which Gerrard was not even a party*.

### A.      Gerrard is Not a Party to the Agreement and Cannot Enforce the FSC.

"[C]ourts must apply the law contractually chosen by the parties to interpret the clause," which, here, is U.K. law. *Martinez v. Bloomberg LP*, 740 F.3d 211, 220 (2d Cir. 2014); *see also Rio Tinto PLC v. Vale S.A.*, No. 14 Civ 3042, 2014 WL 7191250, at *1 (S.D.N.Y. Dec. 17, 2014) (applying U.K. law); Gopstein Decl., Ex. 1 ¶ 7 ("This Settlement Agreement . . . is governed by and shall be construed in accordance with English law"); *see also* Dechert Opp'n at 9-10.

Under U.K. law, "a person who is not a party to a contract . . . cannot assert a claim to any benefit by virtue of that contract." *See* Dechert's Mot. to Dismiss ("Dechert Br."), Ex. 1 ¶ 8 (Declaration of Lord Hoffmann, hereafter the "Hoffmann Decl."). There must be privity of contract. *Id.* Otherwise, a third party can seek to enforce a clause only when it expressly names the purported beneficiary. *Id.* (contract itself must "purport[] to confer a benefit on him"); *see also* Contracts (Rights of Third Parties) Act 1999, c. 31 §1(1)(b) (Eng.), https://bit.ly/3MjErro. A U.K. legal expert concludes that "[t]he narrowness of this exception . . . plainly does not apply to any of the Defendants," including Gerrard. Hoffmann Decl. ¶ 9. Gerrard is not named in the Agreement, and the Agreement includes no benefits directed toward him.

Relying solely on U.S. law, which does not apply here, Gerrard claims that he can invoke the FSC because he had a "close and direct relationship" with RAK. Even if U.S. law applied (it does not), Gerrard still must show that he was "closely related" enough to one of the Agreements' signatories that it would be "foreseeable" he would be able to enforce the FSC. *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 350 (S.D.N.Y. 2020). That is not the case here for the same

reasons described in the Dechert Opposition. *See* Dechert Opp'n at 10-11. Gerrard cannot carry his burden simply because he represented a client in connection with a contract. *See Zanghi v. Ritella*, No. 19 CIV 5830, 2021 WL 4392756, at *6 (S.D.N.Y. Sept. 24, 2021).

**B.      The Complaint Is Not Covered by the Agreement's Forum Selection Clause.**

Because the FSC is governed by U.K. law, the Court also must look to U.K. law to determine its scope. *See Rio Tinto*, 2014 WL 7191250, at *1 (applying *Martinez*, 740 F.3d at 217–18). Although U.K. courts "have on occasion concluded that statutory and tort claims fall within a contract's forum selection clause . . . such a result . . . [is] limited to situations . . . in which a party's statutory or tort claim depends upon 'the validity or enforceability of the contract.'" *Rio Tinto*, 2014 WL 7191250, at *11. This is not such a situation, given that "[n]one of [RICO's] elements relate[s] in a meaningful way to the terms, validity, or enforceability" of the 2016 Settlement Agreement. *Id.* A U.K. legal expert agrees. *See* Hoffmann Decl. ¶ 11.

Even under U.S. law, the Agreement's FSC is "not unlimited." *Azima v. RAK Inv. Auth.*, 926 F.3d 870, 879 (D.C. Cir. 2019). Whether a claim is covered by a clause depends on the language of the contracting parties' agreement—and, here, the FSC covers only those "dispute[s] or claim[s] arising out of, or in connection with, [***the 2016 Settlement Agreement***] or ***its*** subject matter or formation." Gopstein Decl., Ex. 1 ¶ 7 (emphasis added). Plaintiffs' RICO claims are not sufficiently connected because they post-date the Agreement and are based on conduct that does not implicate the rights, duties, and obligations under the Agreement. Gerrard cannot use the Agreement governing a commercial dispute to permanently immunize himself from any litigation involving Azima. *See generally* Dechert Opp'n at 11-15; *infra* at 6-7.

**C.      Collateral Estoppel Does Not Apply.**

Gerrard also argues that the D.C. Circuit's 2019 decision in *Azima v. RAK Inv. Auth.* bars Plaintiffs from litigating the scope of the FSC based on the doctrine of collateral estoppel. Gerrard

Br. at 5-6. Gerrard is wrong. That doctrine '"applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.'" *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001) (quotation omitted). Here, Gerrard fails at the outset—the issues here are not "identical" to what the D.C. Circuit considered.

In its decision, the D.C. Circuit applied U.S. law, not U.K. law. That alone sets this case apart. But the D.C. Circuit also held that the "origin" of Azima's dispute with RAK was related to the 2016 Settlement Agreement. *Azima*, 926 F.3d at 877-78. It found Azima's hacking claims against RAK arose of out of the "formation" of the Agreement; the hack was connected to Azima's service as a mediator between RAK and its former CEO, Khater Massaad:

> If Azima had not been involved in the Massaad negotiation, the parties may not have executed the Settlement Agreement, RAKIA could not have 'blamed [him] for the lack of a settlement' with Massaad, and RAKIA would not have needed to make Azima 'collateral damage.' These allegations adequately link the negotiation (and thus the Agreement) to Azima's . . . claims[.]

*Id.* at 878; *see also* Compl. ¶¶ 41-42. That is not the case here. Plaintiffs' RICO claims extend far beyond the 2015 hack and seek redress for schemes to defraud Plaintiffs from 2018 to 2022. *See supra* at 2-3; Dechert Opp'n. at 13-15. The thrust of the Complaint is that the Enterprise employed a multi-faceted attack to damage its targets that resulted in new injuries that are independent of the 2015 hack. *Id.* ¶¶ 178-83; *cf. Azima*, 926 F.3d at 873.

Even if the issues were identical and had actually been litigated and decided (they have not), the Plaintiff Entities have not had a "full and fair opportunity" to litigate the scope of the FSC, as they were not parties to the D.C. proceeding. *See Epperson*, 242 F.3d at 108. As a result, Defendants must demonstrate that the Plaintiff Entities here were "directed, controlled, or participated in" the D.C. District Court Proceeding or were in privity with a party there. *Victorinox*

*AG v. B&F Sys., Inc.*, 709 Fed. App'x 44, 50 (2d Cir. 2017). Plaintiff Entities did not "direct[], control[], or participate[] in" the D.C. proceeding, and Gerrard makes no attempt to so establish.

      **D.**      **The Agreement Is Unenforceable Because It Was Obtained By Fraud.**

While in some circumstances not relevant here an FSC may be considered presumptively enforceable, *cf.* Gerrard Br. at 2, no such presumption exists when the clause was procured by fraud. *See id.* at 2 n.3. Here, the Complaint's allegations—which must be accepted as true— overwhelming demonstrate that the Agreement was procured by fraud, Compl. ¶¶ 45-58, 62-65, 112, 201, rendering it null. *See Phillips*, 494 F.3d at 383-84 (cleaned up) (an FSC will not be enforced if the complaint sufficiently alleges it is "invalid for such reasons as fraud or overreaching"). Accordingly, for the reasons set forth in Plaintiffs' Opposition to Dechert's Motion to Dismiss, the FSC on which Gerrard relies cannot be enforced. Dechert Opp'n at 15-16.

Gerrard only says that he "will address any attempts by Plaintiffs to carry [their] burden [on this issue] in reply." Gerrard Br. at 2 & n.3. This ignores the Complaint's allegations that the Agreement was procured by fraud, *see* Compl. ¶¶ 59-72, and waives the argument by improperly holding it back for a reply. A party may not lie in wait for a reply brief to raise a new argument. *See Van Orden v. City of Port Jervis*, No. 20-cv-07207, 2022 WL 1667024, at *4 (S.D.N.Y. May 25, 2022) (noting that arguments not briefed in opening motion will not be considered). The Complaint plainly alleges that the Agreement and its FSC were fraudulently induced.

**II.**      **THIS COURT HAS PERSONAL JURISDICTION OVER GERRARD**

      **A.**      **Gerrard Is Subject to Jurisdiction under New York's Long-Arm Statute.**

Determining personal jurisdiction over a foreign defendant through a contacts-based inquiry requires two steps. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). First, "whether there is a statutory basis for exercising personal jurisdiction." *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quotation omitted). Second,

"whether the exercise of jurisdiction comports with due process." *Id.* (citing *Sonera Holding B.V. v. Çukurova Holding A.*, 750 F.3d 221, 224 (2d Cir. 2014)). Both factors are met here.

### 1. *Gerrard Repeatedly Transacted Business in New York.*

New York's long-arm statute, N.Y. C.P.L.R. § 302(a)(1), confers jurisdiction when (1) a defendant "transacts any business within the state," and (2) "the claim asserted . . . arise[s] from that business activity." *Rep. of Guat. v. IC Power Asia Dev. Ltd.*, 619 F. Supp. 3d 421, 430 (S.D.N.Y. 2022). "Section 302(a) is a single act statute" and "proof of one transaction in New York is sufficient," even if a defendant never enters the state, provided his activities were "purposeful and there is a substantial relationship between the transaction and the claim." *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 203 (S.D.N.Y. 2019) (cleaned up).

*First*, Gerrard is wrong that the Complaint alleges only that he met with his co-conspirators "on unspecified dates between 2014 and 2020 at Dechert's New York offices." Gerrard Br. at 9. The Complaint alleges that he regularly transacted business in New York. He was a prominent Dechert lawyer, Compl. ¶ 16; Dechert's largest office and decisionmakers (and attorneys he oversaw) were located in New York, *id.* ¶ 29; and he attended in-person Enterprise meetings and "carried on the affairs of the Enterprise out of Dechert's New York office," *id.* ¶ 15. *See also id.* ¶¶ 23-24 (hacker reports commissioned by Gerrard were discussed at regular "high-level Enterprise meetings at Dechert's New York offices"); *id.* ¶¶ 29-32 ("Enterprise meetings were regularly held at Dechert's offices in New York, and were attended by Dechert leaders, partners, and others"); *id.* ¶¶ 37, 54, 60, 77, 104 ("Forlit met with Gerrard at least a dozen times . . . , including at Dechert's offices in New York."); *id.* ¶¶ 35, 54, 59-60 (meetings in New York with Handjani, Frank, Del Rosso, and other Dechert lawyers to coordinate the Enterprise's attacks); *id.* ¶¶ 35, 76-78 (meetings with co-conspirators Buchanan, Page, and others in New York to instigate fraudulent investigations). This goes well beyond the "single act" required by § 302(a)(1).

In any event, Gerrard regularly transacted business in New York through telephone calls, video conferences, and emails to further the Enterprise's misconduct. *See*, *e.g.*, *id.* ¶ 45 (directing communications into New-York "via email and over the phone regarding how to 'target' Azima, through a 'coordinate[d] . . . attack"); *see also id.* ¶¶ 104-05 (meeting with a New-York-based lawyer to discuss false testimony); *id.* ¶¶ 91-93 (providing false assurances to New York lawyers); *id.* ¶¶ 122-25 (mailing hacked documents to New York). While remote communications alone "are generally insufficient to confer personal jurisdiction." *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, No. 11 Civ. 3673, 2012 WL 123989, at *4 (S.D.N.Y. Jan. 3, 2012), when such communications "effectuate some purposeful business in New York," "personal jurisdiction will be found." *Id.* Here, that is exactly the case.

*Second*, Gerrard also conducted business in New York through others, namely his Dechert partners and other RICO co-conspirators, to further the Enterprise's scheme. Section § 302(a)(1) allows for jurisdiction if, "through an agent," a non-domiciliary "transacts any business within the state"; New York law provides that a co-conspirator can be an agent. *Al Thani v. Hanke*, No. 20 Civ. 4765, 2021 WL 1895033, at *5 (S.D.N.Y. May 11, 2021). To establish co-conspirator jurisdiction, a plaintiff must (1) make a *prima facie* case of conspiracy, (2) allege facts warranting an inference that the defendant was a member of the conspiracy, (3) show the in-state agent's transaction of business in New York, and (4) demonstrate an agency relationship. *See id*. Plaintiffs have established a *prima facie* case of conspiracy. *See* Omnibus Opp'n at 58.[4]

---

[4] Gerrard was not just a member of, but the leader of, the Enterprise. *See supra* at 2; *see also* Compl. ¶ 1. And the Complaint alleges that Gerrard and his underlings had the requisite agency relationship—*i.e.*, the Court can reasonably infer that (1) Gerrard was aware of the effects of his activity in New York, (2) the activity of his co-conspirators benefitted him, and (3) his co-conspirators acted at his request or on his behalf. *See Al Thani*, 2021 WL 1895033, at *11.

Gerrard claims the Complaint fails to allege that his co-conspirators acted in New York for his benefit, with his knowledge and consent, or under his control. Gerrard Br. at 12. This argument ignores the express language of the Complaint. Gerrard was the ringleader of the Enterprise that operated out of New York, so everything its members (its agents) did in New York is attributable to him. Gerrard directed Hughes, his Dechert partner, Compl. ¶ 17, and Hughes directed substantial activities through Dechert's New York lawyers. *See id.* ¶¶ 36, 93, 86 102-06; *id.* Ex. B at lines 57, 84-85. Similarly, Gerrard directed Defendants KARV, Frank, and Handjani in New York. *See, e.g.*, *id.* ¶ 59 ("The [P]lan . . . was drafted at least in part by Frank and KARV (for whom Handjani serves as a senior advisor) with direction from Gerrard"). Dechert's New York-based partner Linda Goldstein made false statements "with the knowledge and approval of Gerrard" and Gerrard "caused [her] to make these false statements in order to obstruct [U.S.] discovery." *Id.* ¶¶ 118-19. Gerrard was obviously aware of these actions *because he directed them*. Gerrard, remarkably, falls back on arguing that these actions were undertaken for RAK's, not the Enterprise. But RAK has *explicitly* indicated that was not the case. *See id.* ¶¶ 69 & n.6, ¶ 201. Gerrard ordered these actions to churn legal fees for himself and Dechert, *id.* ¶¶ 8, 15, and damage Plaintiffs. *Id.* ¶ 61.

2.    *Gerrard Committed Tortious Acts in New York.*

Gerrard is additionally subject to jurisdiction under N.Y. C.P.L.R. § 302(a)(2). Normally, "a defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)." *Elsevier, Inc.*, 77 F. Supp. 3d at 345 (cleaned up). But § 302(a)(2) applies when a defendant "commits a tortious act within the state" through an agent. The Complaint alleges just that: Members of the Enterprise met in New York to make significant strategic decisions and execute the Enterprise's Plan. *See, e.g.*, Compl. ¶¶ 23, 26(e), 29, 32, 37, 118-19, 130; *see also Al Thani*, 2021 WL 1895033, at *8 (jurisdiction existed when defendant made false statements in New York

that proximately harmed plaintiff); *Funk v. Belneftekhim*, No. 14-cv-0376, 2017 WL 5592676, at *10 (E.D.N.Y. Nov. 20, 2017).

That tortious conduct committed by others in New York can be imputed to Gerrard "exactly as it was in the context of the § 302(a)(1) analysis." *Elsevier, Inc.*, 77 F. Supp. 3d at 345; *LaChapelle v. Torres*, 1 F. Supp. 3d 163, 169 (S.D.N.Y. 2014) (section 302(a)(2) jurisdiction extends to out-of-state individual who "can be deemed responsible for such a tort based upon theories of agency or conspiracy"). Gerrard argues, however, that the only tortious acts alleged against him are focused on the 2015 hack of Azima and the resulting U.K. litigation. Gerrard MTD at 11. While those events are relevant, *see* Omnibus Opp'n at 53, the Complaint's allegations against Gerrard focus on later-occurring misconduct. Compl. ¶¶ 76-78, 91-93, 102-06, 118-19 122-25. The clear and express language of the Complaint dooms this argument as well.

### 3.    *Due Process Is Satisfied.*

The due process analysis has "two related components:  the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). Gerrard fails to address and analyze each of the elements of the due process inquiry, which waives any would-be arguments, *see Van Orden*, , 2022 WL 1667024, at *4  (noting that arguments not briefed in opening motion will not be considered), but regardless, both components are met here.

Gerrard has "purposefully availed himself of . . . the forum State." *Chloe*, 616 F.3d 158 at 171 (cleaned up). He "directed and oversaw" the New-York-centered Enterprise, coordinated and carried out its affairs, and directed and executed its illegal acts. Compl. ¶¶ 1, 16. "[T]here can be no doubt that [his] conduct was purposefully directed toward [New York]." *Chloe*, 616 F.3d at 171 (quotation omitted). Gerrard also directed other members of the Enterprise, whose New-York-

related contacts can be imputed to Gerrard for due process purposes. *Elsevier, Inc.*, 77 F. Supp. 3d at 347; *see* Compl. ¶¶ 17, 59. Either way, Gerrard has sufficient contacts with New York.

Gerrard has not even attempted to meet his burden to "present a compelling case that . . . some other considerations would render jurisdiction unreasonable." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (internal quotation marks omitted). First, "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago." *Id.* at 129-30. The second factor favors a New York forum because it was the center of a RICO Enterprise. *See id.* at 130. The third and fourth factors "both implicate the ease of access to evidence and the convenience of witnesses, *id.*, an issue which both supports and undermines [Gerrard's] position" given that both New York and the UK "are marked with traces" of the Enterprise. *Id.* And, fifth, "holding [Gerrard] subject to jurisdiction in New York does not appear likely to erode any shared social policies." *Id.* (finding jurisdiction proper on similar facts). Jurisdiction over Gerrard is thus consistent with due process.[5]

### B.      Gerrard Is Subject to Jurisdiction under the Federal Rules.

Federal Rule of Civil Procedure 4(k)(2) provides yet another basis for jurisdiction over Gerrard. Jurisdiction exists where a plaintiff "demonstrates that (1) the claim arises under federal law; (2) the defendant is not 'subject to jurisdiction in any state's courts of general jurisdiction'; and (3) the exercise of jurisdiction . . . comports with due process." *Peterson v. Islamic Republic of Iran*, No. 10CIV-4518 (KBF), 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013), *aff'd*, 758 F.3d 185 (2d Cir. 2014), *aff'd sub. nom.*, *Bank Markazi v. Peterson*, 578 U.S. 212 (2016) (quoting

---

[5] The Complaint properly alleges Gerrard's New York contacts. If the Court disagrees, Plaintiffs respectfully request that the Court order jurisdictional discovery and allow them to further develop a factual record—through, *e.g.*, production of Gerrard's billing, calendar, and travel records, and/or a deposition on these topics. *See Tex. Int'l. Magnetics, Inc. v. BASF AG*, 31 F. App'x 738, 739 (2d Cir. 2002) (reversing district court's refusal to allow jurisdictional discovery).

*Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008)). Again, a plaintiff need only make a *prima facie* case. *See supra* at 9-10.

The first element is readily satisfied here. This case arises under RICO. Second, there is jurisdiction in New York for the reasons described above, but if the Court were to decide otherwise, there is no indication that Gerrard, a U.K. resident who was properly served in England, ECF No. 89 (return of service), would be subject to jurisdiction in any other state's court of general jurisdiction. And, third, the exercise of jurisdiction would comport with due process. *See supra* at 11-12. Under Rule 4(k)(2), the question is "whether the defendant has . . . aggregate contacts with the United States as a whole." *Peterson*, 2013 WL 1155576, at *15 (quotation marks omitted). Gerrard has minimum contacts with the United States: the Enterprise he led was aimed at inflicting harm on Azima (a U.S. citizen) and the (U.S. based) Plaintiff Entities.

## III. THE COMPLAINT STATES RICO OFFENSES AGAINST GERRARD.

Gerrard again ignores the plain and express language in the Complaint when he argues that the Complaint fails to allege that he committed at least two racketeering offenses. *See* 18 U.S.C. § 1962(c). Indeed, the Complaint alleges that Gerrard was the leader of the Enterprise and directed nearly every action of the Enterprise. Compl. ¶¶ 1, 16.[6] Gerrard developed the scheme to harm Azima. Gerrard oversaw the obstruction of justice scheme: He developed the false witness testimony, *id.* ¶¶ 101-06; served as headmaster of the "perjury school," *id.* ¶¶ 109-11; directed the mailing of stolen documents to the D.C. court, *id.* ¶¶ 120-23; caused the filing of multiple false statements, *id.* ¶¶ 107, 111-12, 118-19; and directed hacking of lawyers as part of the obstruction

---

[6] Gerrard fails to address witness tampering, even though it is specifically alleged that "Gerrard engaged in witness tampering by secretly coaching witnesses to commit perjury directed at least in part toward the U.S. litigation." Compl. ¶ 238; *see also id.* ¶¶ 101-11 (describing the Enterprise's "perjury school" which was taught by Gerrard).

scheme to determine how Azima was funding his litigation efforts, *id*. ¶¶ 162-64. He oversaw Dechert lawyers who prepared a dossier that was provided to law enforcement. *Id*. ¶¶ 76-79. And he was involved in the plan to generate negative press about Azima, including through mailing of stolen documents to members of the press. *Id*. ¶¶ 80-81.

### A. The Complaint Alleges That Gerrard Committed Numerous Predicate Acts.

*First*, Gerrard asserts the Complaint's Exhibit A—listing the details of 413 specific money laundering transactions—fails to allege that he sent or received any transactions. Yet, Dechert received millions in fees from the Enterprise's racketeering, which benefited Gerrard. Compl. ¶¶ 8, 15, 38-39, 207. Dechert and Gerrard also paid co-conspirators to hack Azima under the guise of legitimate transactions. *Id.* ¶¶ 47, 159. These transactions represent both the proceeds of unlawful activity, 18 U.S.C. § 1956(a)(1)(A), and also transfers of funds in which the defendants intended to promote the carrying on of unlawful activity by paying for that unlawful activity, 18 U.S.C. § 1956(a)(2)(A); *see also* Compl., Ex. A. at lines 370, 374, 375, 381, 386, 388-89, 393, 395, 400, 405 (payments for unlawful activity involving Gerrard). Gerrard was the Enterprise's leader and a prominent partner at Dechert; it is reasonable to infer he was personally involved in directing these funds. *See De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 312 (S.D.N.Y. 2013).

*Second*, Gerrard argues that Plaintiffs' 173 wire and mail fraud allegations fail because they lack particularity. Gerrard addresses only the Complaint's Exhibit B—which lists specific wire and mail fraud predicates—while ignoring the rest of the Complaint. This is inappropriate. *See id.* (analyzing whole complaint when considering particularity). For example, Gerrard argues Exhibit B only alleges "Page called [] Gerrard to discuss the scheme to defraud," without "providing any particulars." Gerrard Br. at 13. The Complaint explains the context for the mail and wire fraud communications. *Compare, e.g.*, Compl., Ex. B ¶¶ 93-97 (alleging communications

between Gerrard and Page in November 2018) *with* Compl. ¶¶ 102-11 (alleging that Page and Gerrard, among others, conspired in November 2018 regarding false testimony).

Next, he asserts the wire fraud statute, 18 U.S.C. § 1343, does not apply extraterritoriality,[7] but a case he cites explains that the statute can "apply [to] schemes to defraud, *even if those schemes also involve foreign conduct.*" *United States v. Hawit*, No. 15-cr-252, 2017 WL 663542, at *4 (E.D.N.Y. Feb. 17, 2017) (emphasis added) (upholding wire fraud conspiracy even though "significant conduct related to [the] scheme occurred outside the [U.S.]"); *see also Bascunan v. Elsaca*, 927 F.3d 108, 122-25 (2d Cir. 2019). Here, the Complaint alleges Gerrard sent or received wires from within the U.S., *see, e.g.*, Compl., Ex. B at lines 85, 92, 115, and from outside the U.S., *see, e.g.*, *id.*, Ex. B at line 45, in order to target victims in the U.S.[8] Gerrard also argues the Complaint fails to allege that money or property was the object of his scheme, but part of the Enterprise's objective was to obtain RAK's money or property. *See* Omnibus Br. at 32-34.

### B.  Gerrard Committed Predicate Acts of Obstruction of Justice.

Gerrard tries to hide behind his crimes by arguing they were protected "litigation activities" or mere acts to cover up the initial hack. But his acts were intentionally obstructive, they were illegal, and therefore, they are actionable under RICO. *See, e.g.*, *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 250-51 (S.D.N.Y. 2012). Regardless, this argument is misplaced for the reasons discussed in Plaintiffs' other oppositions. *See* Dechert Opp'n at 20-21; Omnibus Opp'n. at 29-32.

---

[7] Gerrard also argues that "Plaintiffs fail to identify the location of the relevant acts," Gerrard MTD at 14, but Exhibit B specifies the sender and receipt's location for each act.

[8] In addition, as Gerrard's case law highlights, a "co-conspirator's use of U.S. wires in furtherance of the scheme" can be ascribed to a defendant if they [were] "reasonably foreseeable." *Hawit*, 2017 WL 663542, at *7. Here, the payments made in furtherance of Gerrard's schemes were foreseeable. *See, e.g.*, Compl., Ex. A ¶¶ 118, 130 (wires by Dechert defending Gerrard).

Gerrard next implies that the Complaint fails to allege that he committed obstruction of a U.S. proceeding. This is plainly incorrect. The Complaint alleges Gerrard played a key role in obstructing the D.C. Proceeding. *See generally* Compl. ¶¶ 83-126. Gerrard, in particular, promoted the lie Azima's documents had been "found" online, *id.* ¶¶ 86-100; received at least fifteen burner phones from Dechert, which he regularly wiped or "misplaced" to prevent discovery of the evidence contained therein, *id.* ¶¶ 117-19; engaged in a sophomoric scheme to mail stolen documents to the D.C. court to hide his own involvement, *id.* ¶¶ 120-26; and held and led "perjury school" to develop and rehears false testimony. *Id.*

Gerrard argues that these last allegations must fail because his "perjury school" was for the U.K. Proceeding, but the Complaint clearly alleges that Gerrard's "classes" were specifically "intended . . . to obstruct the D.C. [] Proceeding[s]." Compl. ¶¶ 101–11. This is supported by other allegations. The D.C. District Court Proceeding was active during the perjury school, *id.* ¶ 102, and Goldstein, the New York Dechert partner responsible for the D.C. District Court Proceeding, attended meetings leading up the perjury school. *Id.* ¶ 104. The Court must "draw all reasonable inferences in favor of the plaintiff." *De Sole*, 974 F. Supp. 2d at 294. It is more than reasonable to infer Goldstein attended because the false testimony was relevant to both proceedings. *See also* Dechert Opp'n at 20-21.

## CONCLUSION

Plaintiffs respectfully request that the Court deny this Motion to Dismiss in its entirety.

Dated:  May 22, 2023
        New York, New York

*/s/ Harry H. Rimm*
Harry H. Rimm
Womble Bond Dickinson (US) LLP
950 Third Avenue
New York, New York 10022

*/s/ Kirby D. Behre*
Kirby D. Behre
Timothy P. O'Toole
Lauren E. Briggerman
Ian A. Herbert

Tel. (332) 258-8400
Fax (332) 258-8949
harry.rimm@wbd-us.com


*/s/ Christopher W. Jones*
Christopher W. Jones
Ripley E. Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Tel. (919) 755-2100
Fax (919) 755-2150
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Cody F. Marden
Calvin Lee
Miller & Chevalier Chartered
900 Sixteenth Street NW
Black Lives Matter Plaza
Washington, D.C. 20006
Tel. (202) 626-5800
Fax (202) 626-5801
kbehre@milchev.com
totoole@milchev.com
lbriggerman@milchev.com
iherbert@milchev.com
cmarden@milchev.com
clee@milchev.com


*Attorneys for Plaintiffs Farhad Azima, ALG Transportation, Inc.,*
*Main 3260 LLC, FFV W39 LLC and FFV Development LLC*