UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FARHAD AZIMA,
ALG TRANSPORTATION, INC.,
MAIN 3260 LLC,
FFV W39 LLC, and
FFV DEVELOPMENT LLC,

        Plaintiffs,

- against -

DECHERT LLP,
DAVID NEIL GERRARD,
DAVID GRAHAM HUGHES,
NICHOLAS DEL ROSSO,
VITAL MANAGEMENT SERVICES, INC.,
AMIT FORLIT,
INSIGHT ANALYSIS AND RESEARCH LLC,
SDC-GADOT LLC,
AMIR HANDJANI,
ANDREW FRANK, and
KARV COMMUNICATIONS,

        Defendants.

22 Civ. 8728 (PGG) (JW)

**MEMORANDUM OF LAW IN OPPOSITION TO AMIT FORLIT, INSIGHT ANALYSIS AND RESEARCH LLC, AND SDC-GADOT LLC MOTION TO DISMISS**

Harry H. Rimm
Womble Bond Dickinson (US) LLP
950 Third Avenue
New York, New York 10022
Tel. (332) 258-8400
Fax (332) 258-8949
harry.rimm@wbd-us.com

Christopher W. Jones
Ripley E. Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Tel. (919) 755-2100
Fax (919) 755-2150
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Kirby D. Behre
Timothy P. O'Toole
Lauren E. Briggerman
Ian A. Herbert
Cody F. Marden
Calvin Lee
Miller & Chevalier Chartered
900 Sixteenth Street NW
Washington, D.C. 20006
Tel. (202) 626-5800
Fax (202) 626-5801
kbehre@milchev.com
totoole@milchev.com
lbriggerman@milchev.com
iherbert@milchev.com
cmarden@milchev.com
clee@milchev.com

*Attorneys for Plaintiffs Farhad Azima, ALG Transportation, Inc., Main 3260 LLC, FFV W39 LLC and FFV Development LLC*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii
SUMMARY OF PLAINTIFFS' ALLEGATIONS .....................................................................1
ARGUMENT .................................................................................................................................3
I. THIS COURT HAS PERSONAL JURISDICTION OVER FORLIT AND HIS U.S. COMPANIES. ..............................................................................................................3
    A. The Court Has Personal Jurisdiction Over Forlit Under New York's Long-Arm Statute. .................................................................................4
        1. Forlit Transacted Business in New York. ...................................................4
        2. Forlit Committed Tortious Acts of Money Laundering, Bank Fraud, and Wire Fraud in New York. .........................................................6
        3. Due Process Is Satisfied. ..............................................................................7
    B. The Court Has Personal Jurisdiction Over Forlit Under the Federal Rules of Civil Procedure. .........................................................................................8
    C. The Court Has Personal Jurisdiction Over Forlit as an Alter Ego of Defendants Insight and Gadot. ...............................................................................9
II. THE FORLIT DEFENDANTS COMMITTED RICO PREDICATE ACTS. ...................10
III. THE FORLIT DEFENDANTS PROXIMATELY CAUSED PLAINTIFFS' INJURIES. ........................................................................................................................12
CONCLUSION ............................................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alix v. McKinsey & Co.*,
   23 F.4th 196 (2d Cir. 2022) .................................................................................................12

*Antetokounmpo v. Inverso*,
   No. 21 Civ. 8731, 2022 WL 463310 (S.D.N.Y. Feb. 15, 2022) (Gardephe, J.) ........................5

*Azima v. Insight Analysis & Research, LLC*,
   No. 22-207007-MC-Martinez (S.D. Fla. June 1, 2022), ECF No. 17.........................................6

*Banco Nacional Ultramarino, S.A. v. Chan*,
   641 N.Y.S.2d 1006 (N.Y. Sup. Ct. 1996) ................................................................................7

*Beck v. Prupis*,
   529 U.S. 494 (2000)...............................................................................................................12

*Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*,
   No. 05 Civ. 9994, 2007 WL 747807 (S.D.N.Y. Mar. 9, 2007) ................................................6

*Chevron Corp. v. Donziger*,
   871 F. Supp. 2d 229 (S.D.N.Y. 2012).....................................................................................11

*Chloe v. Queen Bee of Beverly Hills, LLC*,
   616 F.3d 158 (2d Cir. 2010).................................................................................................7, 8

*Elsevier, Inc., v. Grossman*,
   77 F. Supp. 3d 331 (S.D.N.Y. 2015).......................................................................................4

*Guzman v. Hecht*,
   18-cv-3947, 2019 WL 1315888 (S.D.N.Y. Mar. 22, 2019).....................................................12

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018).....................................................................................................11

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013).....................................................................................................4

*Marine Midland Bank, N.A. v. Miller*,
   664 F.2d 899 (2d Cir. 1981).....................................................................................................9

*New York v. Vayu*,
   39 N.Y.3d 330 (N.Y. App. Div. 2023) ....................................................................................6

*Peterson v. Islamic Republic of Iran*,
   No. 10 Civ. 4518, 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) ............................................8

*Pickett v. Migos Touring, Inc.*,
   420 F. Supp. 3d 197 (S.D.N.Y. 2019)...................................................................................5

*Piotrowicz v. Techtronic Indus. N. Am., Inc.*,
   No. 19-cv 11522, 2021 WL 1721709 (S.D.N.Y. Apr. 30, 2021)............................................10

*In re Platinum & Palladium Antitrust Litig.*,
   61 F.4th 242 (2d Cir. 2023) ...................................................................................................9

*Rich v. Fox News Network LLC*,
   No. 18 Civ. 2223, 2020 WL 6276026 (S.D.N.Y. Sept. 15, 2020) ......................................4, 5

*S. New England Tel. Co. v. Glob. NAPs Inc.*,
   624 F.3d 123 (2d Cir. 2010)...................................................................................................9

*Sterling Nat'l Bank & Tr. Co. of New York v. Fid. Mortg. Invs.*,
   510 F.2d 870 (2d Cir. 1975)...................................................................................................5

*Stone v. Patchett*,
   No. 08 Civ. 5171, 2009 WL 1108596 (S.D.N.Y. Apr. 23, 2009).............................................7

*Van Orden v. City of Port Jervis*,
   No. 20 Civ. 07207, 2022 WL 1667024 (S.D.N.Y. May 25, 2022)....................................4, 12

*Yih v. Taiwan Semiconductor Mfg. Co.*,
   815 Fed. App'x. 571 (2d Cir. 2020).......................................................................................5

**Statutes**

The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§
   1961-1968 ................................................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 4 ......................................................................................................8

N.Y. C.P.L.R. § 302................................................................................................................4, 5, 6, 7

Defendant Forlit and his U.S. companies, defendants Insight Analysis and Research LLC ("Insight") and SDC-Gadot LLC ("Gadot") (collectively, the "Forlit Defendants")[1] were heavily involved for years in the illegal collection, analysis, and weaponization of stolen data from Plaintiffs and others and the Enterprise's scheme to provide false testimony to a U.S. court. For his work between 2017 and 2020, Forlit received approximately $3 million per year, and he laundered those funds (in U.S. dollars) through the U.S. banking system, using his U.S. companies.

Forlit argues that he is immune from suit because he is an Israeli national living in Israel, seemingly ignoring the fact that he owns and operates two U.S. companies with U.S. bank accounts. Those companies are nothing more than alter egos of Forlit. One of those companies has a New York address. Forlit personally filed U.S. corporate documents for those companies and was recently a Rule 30(b)(6) deposition witness for each. Because Forlit transacted business in New York—including moving millions of dollars through the U.S. banking system for the purpose of facilitating unlawful activity—and committed tortious conduct in New York, he is subject to personal jurisdiction here. The rest of the Forlit Defendants' arguments—that the Complaint does not sufficiently allege RICO predicate acts and proximate causation—are derivative of the arguments made in the Omnibus Motion and fail for the same reasons.

## SUMMARY OF PLAINTIFFS' ALLEGATIONS

The Complaint alleges that, from 2017 through 2021, the Forlit Defendants committed bank fraud, money laundering, and wire fraud in the United States. Compl. ¶¶ 56, 135, 142, 232. Forlit incorporated Insight and Gadot in Florida. *Id.* ¶¶ 21–22. Gadot's principal place of business is New York, and it uses the address "210 West 89th Street, Apt 1K, New York, New York,

---

[1] Plaintiffs adopt the definitions of any capitalized terms here as used in their Opposition to Defendants' Omnibus Motion to Dismiss (the "Omnibus Opp'n").

10024," including on invoices sent to his RICO co-conspirators. *Id.* ¶ 22. Forlit personally opened U.S. bank accounts for Insight and Gadot and laundered millions in payments for his involvement in the RICO Enterprise and its war against Azima. *Id.* ¶¶ 20–22, 33–34, 56, 232-33, 235. In many instances, those payments were wired to Forlit's Israeli company, Gadot Information Services ("Gadot Israel"). *Id.* ¶¶ 232–34. The Forlit Defendants gave falsified invoices and retainer agreements to U.S. banks to "pacify" them into allowing suspicious transactions. *Id.* ¶¶ 135, 234.

From 2017 through 2021, Forlit was paid more than $12 million—more than $3 million per year—for his crimes. *Id.* ¶¶ 26(a), 51, 55–56, 235 (alleging Enterprise conspirator Page paid Forlit $250,000 per month). The Enterprise sent those payments to the U.S. bank accounts belonging to Insight and Gadot. *Id.* Forlit was paid to write regular "Hacking Reports" containing stolen data that included plainly confidential business records and privileged communications.[2] *Id.* ¶¶ 51–52, 138. Given the sensitive nature of the reports, Forlit delivered them to Page through covert means, including a dead letter box and self-deleting messaging applications. *Id.* ¶ 53.

Forlit admitted that he was paid roughly $250,000 per month by Page for these reports through at least May 2020. *Id.* ¶¶ 55–56, 138–39. Page paid Forlit through U.S. bank accounts at JP Morgan Chase, Citibank, and Bank of America in the names of Forlit's U.S.-based companies. *Id.* ¶ 56. Forlit admits that he wired substantial sums of those alleged ill-gotten gains to Gadot Israel. *See* Forlit Defendants' Brief in Support, dated Feb. 28, 2023 ("Forlit Br.") at 3. In addition,

---

[2] Though Forlit points to his own prior testimony to dispute hacking Azima, Forlit Br. at 3, the Complaint alleges that Forlit prepared reports filled with Azima's stolen documents. Compl. ¶ 52. The Forlit Defendants also complain that the Complaint does not allege where the hacking occurred. This is nonsense. First, the Complaint alleges that Azima's accounts were illegally accessed from "computers located in Florida and New York," Compl. ¶ 50, both states affiliated with Forlit's U.S. companies. The hackers obtained "real-time access to Azima's computers" for a year, *id.*, and Azima is a U.S. resident. Regardless, as Plaintiffs have explained repeatedly, this case is not about the 2015 hacking, but is instead about the subsequent efforts to harm Plaintiffs through further hacking, litigation, law enforcement scrutiny, and negative press.

he paid two known hackers, including one who has pled guilty in federal court in New York to hacking charges. Compl. ¶¶ 57–58; *see also id.* ¶ 26(e).

In addition to hacking, Forlit helped direct the Enterprise's obstruction of justice scheme. *Id.* ¶¶ 26(j), 102, 104, 106, 109-10, 242. He helped craft the perjurious testimony of Majdi Halabi, who was a critical witness in the U.K. litigation against Azima. *Id.* ¶¶ 110, 242. Halabi falsely claimed at the 2020 U.K. trial that he had innocently "discovered" Azima's stolen documents on the internet. *Id.* ¶¶ 102-04. Before that false testimony, Forlit met with Gerrard, Page, Halabi, and others—in Cyprus, London, and at the Moosegg hotel outside of Bern, Switzerland—to rehearse Halabi's perjury. *Id.* ¶¶ 102–09. Page and Halabi have since admitted that their testimony was false. *Id.* ¶ 110. And Forlit also admits that he met with co-conspirator Jamie Buchanan in New York in furtherance of the Enterprise. *See* Forlit Br. at 4. Then, in early February 2020, while a U.S. proceeding was pending, Defendants Gerrard and Handjani instructed Page and Forlit to hack yet again to determine how Azima and others were funding their litigation efforts, with Forlit creating a series of reports documenting his work. Compl. ¶¶ 49, 53–54, 86, 131, 163–64.[3]

## ARGUMENT[4]

**I.     THIS COURT HAS PERSONAL JURISDICTION OVER FORLIT AND HIS U.S. COMPANIES.**

Notably, the Forlit Defendants do not dispute that the Court has personal jurisdiction over defendants Insight and Gadot. Those entities had the opportunity in their motion to contest

---

[3] The Forlit Defendants attached to their motion two days of deposition transcripts in which Forlit (testifying as the corporate representative for Insight and Gadot) denied hacking Azima. The time for denials will come at trial—and for now the allegations in the Complaint control—but in any event, the deposition transcripts corroborate many of the Complaint allegations discussed below.

[4] Plaintiffs incorporate by reference the Omnibus Opp'n. Accordingly, Plaintiffs do not repeat the standard of review. *See* Omnibus Opp'n at 14–16.

3

jurisdiction and failed to do so. They have, as a result, waived the issue and cannot raise it in their reply brief. *See Van Orden v. City of Port Jervis*, No. 20 Civ. 07207, 2022 WL 1667024, at *4 (S.D.N.Y. May 25, 2022) (argument not briefed in opening motion will not be considered) (citing *United States v. Pepin*, 514 F.3d 193, 203 n.13 (2d Cir. 2008)); *see also* Forlit Br. at 7 (asking the Court to dismiss Complaint as to Amit Forlit only).

As for Forlit, he abused the U.S. financial and legal systems, directly and through his companies, to perpetuate an ongoing RICO conspiracy, targeting victims that included multiple U.S. persons, including the Plaintiffs in this case. Forlit used his alter ego entities, Insight and Gadot, to launder money and defraud banks in New York and Florida. He conducted business in New York, including through Gadot, and committed tortious acts in New York. Those acts subject Forlit to personal jurisdiction before this Court.

### A. The Court Has Personal Jurisdiction Over Forlit Under New York's Long-Arm Statute.

Determining personal jurisdiction over a foreign defendant through a traditional contacts-based inquiry requires two steps. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013). First, "the court must establish . . . 'a statutory basis for exercising personal jurisdiction.'" *Elsevier, Inc., v. Grossman*, 77 F. Supp. 3d 331, 341 (S.D.N.Y. 2015) (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013)). "[S]econd, the court must decide whether the exercise of jurisdiction comports with due process." *Id.* (citing *Sonera Holding B.V. v. Çukurova Holding A.*, 750 F.3d 221, 224 (2d Cir. 2014)). Both steps are met here.

#### 1. Forlit Transacted Business in New York.

Under N.Y. C.P.L.R. § 302(a)(1), a defendant transacts business in New York if he purposefully avails himself of the privilege of conducting activities in New York, invoking the benefits of New York law. *See Rich v. Fox News Network LLC*, No. 18 Civ. 2223, 2020 WL

4

6276026, at *3 (S.D.N.Y. Sept. 15, 2020). Maintaining a business relationship with a New York entity or collaborating with New York individuals satisfies this test. *See id.* at *5. Courts generally examine the "totality of the defendant's [forum] activities," *Sterling National Bank & Trust Co. of New York v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir. 1975), but "a single transaction" may subject a defendant to jurisdiction under C.P.L.R. §§302(a)(1)). *See Antetokounmpo v. Inverso*, No. 21 Civ. 8731, 2022 WL 463310, at *2 (S.D.N.Y. Feb. 15, 2022) (Gardephe, J.). Personal jurisdiction can be found "even if a defendant never actually entered the state." *Rich,* 2020 WL 6276026, at *3. *See also Yih v. Taiwan Semiconductor Mfg. Co.*, 815 Fed. App'x. 571 (2d Cir. 2020); *Pickett v. Migos Touring, Inc.*, 420 F. Supp. 3d 197, 204 (S.D.N.Y. 2019).

Forlit claims that the Complaint lacks "any specific allegation of Mr. Forlit conducting business in, or directed to, the State of New York." Forlit Br. at 4. Like other defendants, Forlit simply ignores the plain language of the Complaint. The Complaint clearly alleges that Forlit conducted business in New York through New York-based Gadot and by personally attending multiple meetings with his RICO co-conspirators in New York. Compl. ¶¶ 26(e), 37. Forlit used Gadot's New York address on fabricated hacking invoices. *Id.* ¶ 51. Forlit opened a Gadot bank account in New York. *Id.* ¶¶ 232, 235. Forlit cannot create a New York company, use a New York address, move money through New York, and avoid consequences.

Remarkably, the Court need look no further than Forlit's own brief to find sufficient grounds for personal jurisdiction over him. Forlit *concedes* that he met with Buchanan in New York in 2018. Forlit Br. at 4. This single (admitted) meeting with Buchanan, which was part of a long-standing relationship with Buchanan, is sufficient to establish personal jurisdiction. *See Antetokounmpo*, 2022 WL 463310, at *2; *see also* Compl. ¶¶ 102, 106 (additional meetings with

5

Buchanan to further obstruction scheme). Forlit argues that the meeting was unrelated to the Enterprise, *see* Forlit Br. at 4, but his denials cannot trump the Complaint allegations at this stage. *See Big Apple Pyrotechnics & Multimedia Inc. v. Sparktacular Inc.*, No. 05 Civ. 9994, 2007 WL 747807, at *1 (S.D.N.Y. Mar. 9, 2007).[5]

Forlit also claims that the Complaint does not identify any fund transfers paid to or by any New York entity. Forlit Br. at 3. But *every* fund transfer listed in Exhibit A of the Complaint that passed through defendant Gadot was paid into and out of New York because Gadot is a New York-based entity with New York bank accounts. Compl. ¶¶ 232, 235.[6] Between his physical presence in New York and his operation of a New York entity, Forlit transacted business in this State.

### 2. Forlit Committed Tortious Acts of Money Laundering, Bank Fraud, and Wire Fraud in New York.

Under N.Y. C.P.L.R. § 302(a)(2), New York courts have jurisdiction over foreign defendants who commit tortious acts in New York, either personally or through an agent. A defendant's New York acts need only create an "articulable nexus or substantial relationship" with alleged tortious conduct. *New York v. Vayu*, 39 N.Y.3d 330 (N.Y. App. Div. 2023). Connections between out-of-state defendants and in-state partners committing tortious acts are sufficient. *See Stone v. Patchett*, No. 08 Civ. 5171, 2009 WL 1108596, at *9 (S.D.N.Y. Apr. 23, 2009).

---

[5] Forlit has elsewhere admitted to traveling to New York in 2019, as well. *See* Non-Party's Suppl. to Mot. to Quash Subpoena and Service of Subpoena, and Mot. for Protective Order, and Resp. to Pet.'s Cross-Mot. to Compel ¶ 17(d), *Azima v. Insight Analysis & Research, LLC*, No. 22-207007-MC-Martinez, (S.D. Fla. June 1, 2022), ECF No. 17 ("[Forlit] was last in the United States in 2019 when he travelled to New York.").

[6] *See also* Compl. Ex. A at lines 102, 113, 115–120, 122, 124–25, 127–30, 133, 136–39, 141–45, 147, 155, 157–62, 164–69, 172, 178-81, 183, 186–91, 193–200, 203–04, 206–17, 220, 226–29, 239–41, 243, 246–47, 256–57, 262, 266, 269–70, 278, 282–84, 286–88, 292, 308–09, 312, 315–17, 323, 325, 333, 335, 338, 341, 344, 348–49, 352–53, 358–60, 371, 379, 390, 402 (alleging that Gadot received $4,042,500 and sent $5,112,496 in transactions).

Directly and through his business entities, Forlit obstructed justice and engaged in money laundering, bank fraud, and wire fraud in New York. *See, e.g.*, *Banco Nacional Ultramarino, S.A. v. Chan*, 641 N.Y.S.2d 1006, 1009–10 (N.Y. Sup. Ct. 1996) (finding that torts of money laundering through New York banks satisfy C.P.L.R. § 302(a)(2). The Complaint alleges that Forlit created Gadot precisely to be a "conduit" to send and receive the proceeds of unlawful activity. Compl. ¶ 232. The Complaint also alleges that Forlit opened bank accounts for Gadot by defrauding the bank. *Id.* ¶¶ 232–35. And Forlit personally committed tortious and criminal acts—including wire fraud and obstruction of justice—by teleconferencing with then New-York-based Dechert partner Linda Goldstein on November 21, 2018 to craft Halabi's perjury for a U.S. case. *Id.* ¶¶ 94, 96, 104.

   3.  *Due Process Is Satisfied.*

The due process analysis has "two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). First, the court determines "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* (citing *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. and Placement*, 326 U.S. 310, 316 (1945)). The court then "ask[s] whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—[*i.e.*,] whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 316).

Forlit aimed his misconduct at New York. He operated Gadot out of New York and gave Gadot the New York address it used to commit crimes. Compl. ¶¶ 22, 232. He directed Page to send the criminal proceeds to New York. *Id.* ¶ 51. He transferred millions of dollars through Gadot in New York to further the Enterprise's activity. *Id.* ¶¶ 22, 56–58, 135, 140, 235. And he met with co-conspirators in New York to further the Enterprise's scheme. *Id.* ¶¶ 37, 54; *see also* Forlit Br. at 4. "[T]here can be no doubt that [Forlit's] conduct was 'purposefully directed toward the forum

7

State.'" *Chloe*, 616 F.3d 158 at 171. (quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987)).

      **B.**    **The Court Has Personal Jurisdiction Over Forlit Under the Federal Rules of Civil Procedure.**

Even if New York's long-arm statute does not apply, Federal Rule of Civil Procedure 4(k)(2) provides an alternative basis for jurisdiction over Forlit. Rule 4(k)(2) provides jurisdiction when a plaintiff "demonstrates that (1) the claim arises under federal law; (2) the defendant is not 'subject to jurisdiction in any state's courts of general jurisdiction;' and (3) the exercise of jurisdiction is 'consistent with the United States Constitution and laws'—*e.g.*, it comports with due process." *Peterson v. Islamic Republic of Iran*, No. 10 Civ. 4518, 2013 WL 1155576 (S.D.N.Y. Mar. 13, 2013) (quoting *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008)). Again, a plaintiff need only make a *prima facie* case. *See supra* n.2.

The first element is readily satisfied here as this case arises under RICO. Second, New York has jurisdiction for the reasons stated above, but if the Court concludes that New York's long-arm statute does not apply, there is no indication that Forlit, who was served in Israel pursuant to the Hague convention (*see* ECF No. 116 at 1), is subject to jurisdiction in any state court of general jurisdiction. And third, exercising jurisdiction comports with due process. Under Rule 4(k)(2), the question is "whether the defendant has the requisite aggregate contacts with the United States as a whole." *Peterson*, 2013 WL 1155576, at *15 (internal quotation marks omitted). Forlit does not contest that he has minimum United States contacts, nor could he: the Enterprise of which he was a part was aimed at inflicting reputational harm and ruinous litigation costs on Azima (a U.S. citizen) and his co-Plaintiffs (U.S.-based entities) in the United States, and Forlit created U.S. entities to fund that unlawful activity. Compl. ¶¶ 5 n.2, 9–14; *see also supra* n.6.

8

### C. The Court Has Personal Jurisdiction Over Forlit as an Alter Ego of Defendants Insight and Gadot.

Finally, the Second Circuit has long held that courts have personal jurisdiction over a defendant if the court has personal jurisdiction over the defendant's alter ego corporations. *See Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 903 (2d Cir. 1981) (finding personal jurisdiction because the court had jurisdiction over defendant's company, which was merely a "shell" and "alter ego" for defendant); *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (it is "well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process"). The ultimate question is whether the complaint's factual allegations show that the corporate entities in question "operate as a single economic unit" and the owner "dominates and controls" those entities, *id.*, an inquiry comparable to piercing the corporate veil, *In re Platinum & Palladium Antitrust Litig.*, 61 F.4th 242 (2d Cir. 2023).

Alter ego jurisdiction is appropriate here. First, Forlit used Insight and Gadot to commit bank fraud and wire fraud in furtherance of the Enterprise's money laundering operation, as discussed above. Compl. ¶¶ 232, 235; *supra,* Section I.A.2. Second, Forlit dominated Insight and Gadot. Forlit was the Rule 30(b)(6) witness for both companies, and testified that the companies had "no business activity other than to serve as a conduit to transfer money" to another company owned by Forlit (Gadot Israel), leaving the companies entirely beholden to Forlit and lacking any independent profit center. *Id.* ¶ 232. Forlit also created, owns, and controls both Insight and Gadot. *Id.* ¶¶ 20–22. Forlit admits as much in the attachments to his motion because the companies lacked formal titles for employees and that "it was [Forlit] who was running the company," and admits in his motion that he "directed the fund transfers" through Insight and Gadot. Forlit Br. at 3, Ex. 2 at 55:23-56:4; *see also* Compl. ¶¶ 21–22, 33–34, 140. Forlit's counsel also represented that "Gadot SDC did not have any employees." Forlit Br. Ex. 1 at 26:3-4; *see also* Compl. ¶¶ 140, 242. Forlit's

9

sole argument that Insight and Gadot are not his alter egos is that they were "wallet companies" serving Gadot Israel, and not Forlit. Forlit Br. at 3. But because Forlit also owns Gadot Israel and admits to directing all of the Insight and Gadot fund transfers to Gadot Israel, Forlit's argument is a distinction without a difference. Accordingly, Forlit dominated Insight and Gadot to the point that the two companies were and are functionally indistinguishable from Forlit.[7]

## II.  THE FORLIT DEFENDANTS COMMITTED RICO PREDICATE ACTS.

The Forlit Defendants' argument that the RICO predicate acts alleged in the Complaint are not actionable is entirely derivative of arguments made in the Omnibus Motion and should be rejected for the same reasons. *First*, the Forlit Defendants claim that the alleged predicate acts of obstruction did not occur in an "official" proceeding, but rather were before "a foreign court or tribunal." Forlit Br. at 7–8. They ignore, however, the allegations in the Complaint that the Enterprise's obstructive conduct—such as the November 2018 and December 2019 meetings to create and rehearse perjury—was intended to obstruct U.S. litigation. Compl. ¶¶ 101–11. That allegation is supported by substantial facts, including that Dechert partner Linda Goldstein, who was responsible for the ongoing U.S. litigation, attended the November 2018 meeting and had previously propagated a version of the false story before the U.S. courts. *Id.* ¶¶ 96, 102–04; *see generally id.* ¶¶ 83–126; *see also* Omnibus Opp'n at 9-12.[8]

---

[7] If the Court believes that jurisdictional discovery might help clarify the scope of Forlit's interactions with New York, Plaintiffs would be willing to engage in such discovery. The Complaint allegations are more than adequate to indicate that they "'may be able to establish jurisdiction if given the opportunity to develop a full factual record.'" *Piotrowicz v. Techtronic Indus. N. Am., Inc.*, No. 19-cv 11522, 2021 WL 1721709, at *3 (S.D.N.Y. Apr. 30, 2021) (citation omitted).

[8] The Forlit Defendants also characterize the alleged February 2020 hacking scheme as extraterritorial. Forlit Br. at 9. The D.C. Proceedings were still pending, however, until July 2020, and the Complaint alleges that "all steps by the RICO Conspirators until then to cover up their involvement in the hacking were taken, at least in part, to obstruct those proceedings." Compl. ¶¶

*Second*, the Forlit Defendants argue that the alleged predicate acts of obstruction were mere litigation activity. Forlit Br. at 9. Litigation misconduct that is part of a broader scheme is actionable under RICO. *See* Omnibus Opp'n at 26-29. The Complaint alleges that Forlit's obstruction was part of a written plan to abuse litigation to harm Azima and his businesses. Compl. ¶¶ 59–61. Forlit committed multiple obstructive acts in furtherance of that scheme, including the development of false evidence, *id.* ¶¶ 102–09, and false statements to U.S. courts, *id.* ¶¶ 134–43. This obstruction was not "merely" false statements in litigation but was part of a plan to harm Azima and was coupled with "out-of-court [criminal] actions." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). It is the type of obstructive conduct that courts in this District have found actionable under RICO. *See*, *e.g.*, *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 254 (S.D.N.Y. 2012).

*Finally*, the Forlit Defendants argue that they committed no predicate acts of wire fraud because the Complaint does not allege that the laundered hacking payments or obstruction related to any "scheme to defraud to get money or property." Forlit Br. at 10–11. Plaintiffs' money need not be the only object of the scheme to properly plead a RICO claim, and Forlit's actions against Plaintiffs were designed to curry favor with RAK in order to drive up the millions of dollars of fees that Forlit earned from RAK; this objective alone is sufficient to establish a scheme to defraud. *See Guzman v. Hecht*, 18-cv-3947, 2019 WL 1315888, at *5 (S.D.N.Y. Mar. 22, 2019) (citing *United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016); *see also* Omnibus Opp'n at 32-34. Regardless, Forlit's 2020 hacking scheme sought to obtain Plaintiffs' property because he sought to obtain documents and information that belonged to Azima. Compl. ¶ 163–64, 169.

---

83–86; *see also id.* ¶¶ 23, 164, 169 (alleging that hacking report prepared by Forlit was provided to New York-based defendant Handjani).

11

### III. THE FORLIT DEFENDANTS PROXIMATELY CAUSED PLAINTIFFS' INJURIES.

The Forlit Defendants' final two arguments are variations on the causation arguments in the Omnibus Motion and should be rejected for the same reasons. The Forlit Defendants assert that Plaintiffs were not injured by their predicate acts because those acts were directed at third parties. Forlit Br. at 11–12. However, the Second Circuit has held that Plaintiffs' injuries can be directly and proximately caused by the Enterprise's frauds, even if its misrepresentations were directed to a third party like a court. *See Alix v. McKinsey & Co.*, 23 F.4th 196, 204 (2d Cir. 2022); *see also* Omnibus Opp'n at 39-43.[9] And the Forlit Defendants failed to address the obstruction of justice that directly led to legal fees and other litigation costs, nor can they do so on reply. *See Van Orden v. City of Port Jervis*, No. 20-cv-7207, 2022 WL 1667024, at *4 (S.D.N.Y. May 25, 2022).

Their long quotation of *Beck v. Prupis*, 529 U.S. 494, 507 (2000) does not help their argument. *See* Forlit Br. at 13–14. In Beck, the Supreme Court held that an injury caused by an overt act that is not a RICO predicate does not give rise to a RICO violation, but Plaintiffs are not suing the banks that closed accounts. Plaintiffs are suing the members of the Enterprise who directly harmed Azima and his businesses through fraudulent litigation and other predicate acts.

### CONCLUSION

Plaintiffs respectfully request that the Court deny this Motion to Dismiss in its entirety.

---

[9] The Forlit Defendants argue that their actions were not directed at the Plaintiff Entities. Forlit Br. at 12. The Complaint, however, alleges repeatedly that the Enterprise targeted Azima's companies (*i.e.* Plaintiff Entities). Compl. ¶¶ 59, 61, 74, 82, 90, 223–25.

Dated: May 22, 2023
      New York, New York

/s/ Harry H. Rimm
Harry H. Rimm
Womble Bond Dickinson (US) LLP
950 Third Avenue
New York, New York 10022
Tel. (332) 258-8400
Fax (332) 258-8949
harry.rimm@wbd-us.com

/s/ Christopher W. Jones
Christopher W. Jones
Ripley E. Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Tel. (919) 755-2100
Fax (919) 755-2150
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

/s/ Kirby D. Behre
Kirby D. Behre
Timothy P. O'Toole
Lauren E. Briggerman
Ian A. Herbert
Cody F. Marden
Calvin Lee
Miller & Chevalier Chartered
900 Sixteenth Street NW
Black Lives Matter Plaza
Washington, D.C. 20006
Tel. (202) 626-5800
Fax (202) 626-5801
kbehre@milchev.com
totoole@milchev.com
lbriggerman@milchev.com
iherbert@milchev.com
cmarden@milchev.com
clee@milchev.com

*Attorneys for Plaintiffs Farhad Azima, ALG Transportation, Inc., Main 3260 LLC, FFV W39 LLC and FFV Development LLC*