UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FARHAD AZIMA,<br>ALG TRANSPORTATION, INC.,<br>MAIN 3260 LLC,<br>FFV W39 LLC, and<br>FFV DEVELOPMENT LLC,<br><br>    Plaintiffs,<br><br> - against -<br><br>DECHERT LLP,<br>DAVID NEIL GERRARD,<br>DAVID GRAHAM HUGHES,<br>NICHOLAS DEL ROSSO,<br>VITAL MANAGEMENT SERVICES, INC.,<br>AMIT FORLIT,<br>INSIGHT ANALYSIS AND RESEARCH LLC,<br>SDC-GADOT LLC,<br>AMIR HANDJANI,<br>ANDREW FRANK, and<br>KARV COMMUNICATIONS,<br><br>    Defendants. | 22 Civ. 8728 (PGG) (JW)<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO AMIR HANDJANI, ANDREW FRANK, AND KARV COMMUNICATIONS' MOTIONS TO DISMISS** |

Harry H. Rimm
Womble Bond Dickinson (US) LLP
950 Third Avenue
New York, New York 10022
Tel. (332) 258-8400
Fax (332) 258-8949
harry.rimm@wbd-us.com

Christopher W. Jones
Ripley E. Rand
Womble Bond Dickinson (US) LLP
555 Fayetteville Street, Suite 1100
Raleigh, North Carolina 27601
Tel. (919) 755-2100
Fax (919) 755-2150
chris.jones@wbd-us.com
ripley.rand@wbd-us.com

Kirby D. Behre
Timothy P. O'Toole
Lauren E. Briggerman
Ian A. Herbert
Cody F. Marden
Calvin Lee
Miller & Chevalier Chartered
900 Sixteenth Street NW
Washington, D.C. 20006
Tel. (202) 626-5800
Fax (202) 626-5801
kbehre@milchev.com
totoole@milchev.com
lbriggerman@milchev.com
iherbert@milchev.com
cmarden@milchev.com
clee@milchev.com

*Attorneys for Plaintiffs Farhad Azima, ALG Transportation, Inc.,
Main 3260 LLC, FFV W39 LLC and FFV Development LLC*

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................................ 1

STATEMENT OF RELEVANT FACTS ........................................................................................ 2

ARGUMENT ................................................................................................................................... 5

I. PLAINTIFF'S CLAIMS ARE NOT TIME BARRED. ...................................................... 5

II. THE COMPLAINT ALLEGES NUMEROUS COGNIZABLE RICO ACTS. ................. 6

    A. The Complaint Adequately Pleads Mail and Wire Fraud ....................................... 6

    B. The Handjani Defendants' Acts Were Not Mere Litigation Activities. ................. 8

    C. The Complaint Sufficiently Pleads Money Laundering. ........................................ 9

III. THE HANDJANI DEFENDANTS PARTICIPATED IN THE OPERATION AND MAINTENANCE RICO ENTERPRISE. ................................................................ 10

IV. THE COMPLAINT SUFFICIENTLY ALLEGES PATTERN AND CONTINUITY. ................................................................................................................. 11

V. PLAINTIFFS HAVE ADEQUATELY PLED COGNIZABLE RICO INJURIES PROXIMATELY CAUSED BY DEFENDANTS. ........................................................... 12

VI. PLAINTIFFS PLEAD A CONSPIRACY UNDER 18 § U.S.C. 1962(d). ....................... 14

CONCLUSION .............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alix v. McKinsey & Co.*,
23 F.4th 196 (2d Cir. 2022) ...................................................................................................14

*Angermeir v. Cohen*,
14 F.Supp.3d 134 (S.D.N.Y. 2014) ......................................................................................6, 7

*Baisch v. Gallina*,
346 F.3d 366. (2d Cir. 2003) .................................................................................................11

*Bankers Tr. Co. v. Rhoades*,
859 F.2d 1096 (2d Cir. 1988) ..................................................................................................5

*Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*,
346 F.Supp.3d 432 (S.D.N.Y. 2018) .....................................................................................12

*Bingham v. Zolt*,
66 F.3d 553 (2d Cir. 1995) ..................................................................................................5, 6

*Chevron Corp. v. Donziger*,
871 F. Supp. 2d 229 (S.D.N.Y. 2012) ................................................................................8, 14

*City of New York v. Pollock*,
No. 03 Civ. 0253, 2006 WL 522462 (S.D.N.Y. Mar. 3, 2006) .............................................12

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018) ...............................................................................................10, 11

*De Sole v. Knoedler Gallery, LLC*,
974 F.Supp.2d 274 (S.D.N.Y. 2013) (Gardephe, J.) .............................................................11

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001) ..................................................................................................11

*Eastman Kodak Co. v. Camarata*,
No. 05 Civ. 6384, 2006 WL 3538944 (W.D.N.Y. Dec. 6, 2006) ............................................9

*H.J. Inc. v. Northwestern Bell Telephone Co.*,
492 U.S. 229 (1989) ..............................................................................................................11

*Kelly v. United States*,
140 S. CT. 1565 (2020) ...........................................................................................................7

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018) ........................................................................................................9

*Kimm v. Chang Hoon Lee & Champ, Inc.*,
    196 F. App'x 14 (2d Cir. 2006) ..............................................................................................13

*Leung v. Law*,
    387 F.Supp.2d 105 (E.D.N.Y. 2005) ......................................................................................10

*Levine v. Torino Jewelers, Ltd.*,
    No. 05 Civ. 3159, 2006 WL 709098 (S.D.N.Y. Mar. 22, 2006) ...............................................9

*In re Merrill Lynch Ltd. Partnerships Litig.*,
    154 F.3d 56 (2d Cir. 1998) ..................................................................................................5, 6

*Reich v. Lopez*,
    38 F. Supp. 3d 436 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017) .................................13

*Stochastic Decisions, Inc. v. DiDomenico*,
    995 F.2d 1158 (2d Cir. 1993) .................................................................................................12

**Statutes**

18 U.S.C. § 1503 ..............................................................................................................................9

18 U.S.C. § 1782 ..............................................................................................................................4

18 U.S.C. § 1956 ............................................................................................................................10

18 U.S.C. § 1961 ............................................................................................................................12

18 U.S.C. § 1962 ............................................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 8 .............................................................................................................................10

Fed. R. Civ. P. 9 ..........................................................................................................................6, 9

## INTRODUCTION

New York-based Defendants Handjani, Frank, and KARV Communications (the "Handjani Defendants") developed and played a key role in executing the Enterprise's[1] plan to harm Plaintiffs through a campaign of fraud and obstruction. Frank, who owns and founded KARV, was instrumental in the decision to "target" Azima for financial and reputational ruin. Compl. ¶ 45. Frank worked directly with the Enterprise's leader former Dechert partner Neil Gerrard, to develop a detailed plan to harm Azima. *Id*. ¶¶ 59–60. Frank was involved every step of the way in effectuating that plan over the course of many years. *Id*. ¶ 130. Frank also played a key role in the distribution of stolen data and false information to reporters to harm Azima and his businesses. *Id*. ¶ 24. KARV's Handjani was the "front man" for the Enterprise, *id.* ¶ 23, who "assisted the Enterprise in defrauding Azima, causing the filing of false statements in U.S. and UK courts in service of the Enterprise's goal of inflicting reputation harm and massive litigation costs on Azima, and tampering with witnesses," *id.* ¶ 31.

Collectively, Handjani, Frank and KARV are mentioned more than 300 times in the Complaint and appendices.[2] To address these overwhelming allegations, the Handjani Defendants distort the Complaint to minimize their roles in the hopes of dismissing this case. The allegations in the Complaint are serious and justify the filing of this suit against them. Their mischaracterization of what the Complaint actually alleges are repeated and flagrant. For example:

---

[1] Plaintiffs adopt the definitions used in their Omnibus Opposition and Complaint for any capitalized term.

[2] Handjani and Frank are both senior officers at KARV, which was paid handsomely for its work for the Enterprise. As such, it is a reasonable inference that they worked closely on all aspects of their work related to Azima, and the conduct of one should be imputable to the other. All three defendants opted to file a joint brief, admitting that their interests are aligned. They opted for the shorthand "KARV Defendants" which is a strong indication that Handjani is both aligned with and responsible for acts of KARV and Frank. Mem. of Law in Supp. of Mot. to Dismiss ("Handjani Br.") at 1 (Feb. 28, 2023).

1

- They say the complaint alleges that they simply "[a]ttended litigation strategy meetings in 2020," Handjani Br. at 4, when the Complaint actually alleges that they attended "regular meetings every four to six weeks with Gerrard, Frank, and Buchanan to discuss and implement the plan <u>to attack and harm Azima</u>," Compl. ¶ 130 (emphasis added);

- They also attempt to water down what the Complaint says by claiming they were just "[attempt[ing] to determine who was funding Azima's litigation," Handjani Br. at 4-5, when the Complaint actually alleges that Handjani directed a co-conspirator whom "Handjani knew and intended . . . would engage hackers . . . because [he] had been providing them for years with regular Hacking Reports that contained information obviously obtained through hacking," Compl. ¶¶ 163–64; and

- They also attempt to paint a benign, paternalistic picture of Handjani as simply "reassuring a witness . . . that his legal fees would be fully paid," Handjani Br. at 5, when the Complaint actually alleges that Handjani agreed to make a payment "in exchange for [the witness's] silence concerning Del Rosso's role in the hacking of [a law firm involved in exposing the Enterprise]," Compl. ¶ 174.

The Handjani Defendants also misstate the law on several issues, including the statute of limitations, predicate acts, damages, and causation to further their arguments. The Complaint's express language clearly demonstrates that the Handjani Defendants committed actionable predicate acts that directly caused the harm Plaintiffs allege, and their Motion should be denied.

## STATEMENT OF RELEVANT FACTS

The Complaint alleges that the Handjani Defendants designed the Enterprise's scheme of fraud and obstruction that caused financial and reputational harm to Plaintiffs and others since 2018. Compl. at ¶¶ 59–61, 207. KARV's Handjani, was the "front man" for the Enterprise, tasked with befriending and deceiving Azima as to the Enterprise's role in the hacking and theft of his confidential information. *Id.* ¶ 23. Meanwhile, Frank was creating and implementing a "global strategic plan" against Azima and others to cause great harm. *See id.* ¶ 24, 61, 130. Frank weaponized Azima's stolen materials and disseminated it to the press in order to assault Azima's reputation as part of the "global strategic plan." *See id.* ¶¶ 24–25.

Handjani implemented the plan by obstructing legal proceedings, bribing witnesses to provide their false testimony, denying Enterprise members' role in hacking Azima, and submitting

2

false statements to U.S. courts and law enforcement agencies. *Id.* ¶ 23, 31, 35. KARV received over 90 payments from co-conspirator Emirate of Ras Al Khaimah ("RAK") from at least May 2014 through 2022 for its role in furthering this fraud scheme. *Id.* at Ex. A.

Beginning in April 2015, Handjani, Frank, and other Enterprise members decided to "target" Azima through a "coordinate[d] . . . attack" that included bringing lawsuits against Azima. *Id.* ¶ 45. The Complaint specifically identifies some of these conspiratorial discussions by date, method (email or phone), and participants. *Id*. ¶ 45; Ex. B at 1 (April 4, 2015 email from co-conspirator Buchanan to Handjani discussing how to "target" Azima), 44 (August 15, 2016 email from co-conspirator Buchanan to Frank and Handjani falsely stating that he had been informed by co-conspirator Page "last night that there is an internet site that is carrying a huge amount of material relating to FA"). In December 2015, New York resident Frank met with Enterprise ringleader Gerrard to outline the plan to harm Azima, which he distilled to writing in a skeleton document entitled "View from the Window." *Id.* ¶ 60.

In January 2016, Frank and KARV worked with Gerrard and others to further develop the Handjani Defendants' plan into an exhaustive Comprehensive Action Plan (the "Plan"), that established a five-pronged strategy to decimate the Enterprise's victims (including Azima) financially and reputationally. *Id.* ¶¶ 59–61.[3]

Frank and Handjani met every four to six weeks with the other leaders of the Enterprise "to discuss and implement the [P]lan to attack and harm Azima." *Id*. ¶ 130; *see also id*. ¶ 45. They

---

[3] The five prongs of the Plan included: (1) stealing data belonging to and relating to the targets; (2) implementing a negative media campaign targeting those enemies, which was implemented by Frank, Handjani and KARV; (3) orchestrating baseless, costly litigation against Azima and others and obstructing the victims' efforts to seek legal redress; (4) creating a honeypot to lure Azima into providing the Enterprise with information about his business dealings; and (5) manufacturing a criminal investigation into Azima to silence him. *Id*. ¶¶ 59–61 (describing the Plan).

3

also "repeatedly met" with co-Defendants Gerrard and Del Rosso and others to plan and make the false statements to courts and law enforcement used to harm Azima. *Id*. ¶ 35.

Frank led the effort to disseminate stolen data and false information to the press to damage Azima's public reputation, as part of the Plan. *See id.* ¶¶ 24–25. In October 2019, Handjani also directed Dechert to send a letter with false statements to a Washington newspaper falsely denying its role in the hacking of Azima to further harm Azima. *Id*. ¶ 108.

Handjani was intimately involved in the Enterprise's efforts to harm Azima through litigation. In February 2020, while a D.C. District Court proceeding that Azima had filed seeking damages for the hacking and theft of his data was still pending, *id*. ¶ 86, Handjani and Gerrard directed the hacking of Azima to determine the source of his and Al Sadeq's litigation funding, *id*. ¶ 165. Handjani soon received the results of the hacking he commissioned concerning potential litigation funding, in a "Hacking Report" prepared by Defendant Forlit. *Id*. ¶ 169. The report contained obviously hacked material. *Id*.

Then, in July 2020, in a series of texts and phone calls, Handjani attempted to bribe a witness and promised to have the witness's legal fees covered if he submitted a false statement to the court denying co-Defendant Del Rosso's role in the hacking of Al Sadeq. *See id.* ¶ 174. He also instructed the witness to destroy evidence of the hacking. *Id.* ¶ 219.

One year later, Handjani obstructed a U.S. court case in New York[4] when he lied under oath regarding the hacking of Azima and the publication of the stolen material online. *Id*. ¶¶ 129–32. Handjani admitted that he was a "channel of communication" between Azima and RAK and was "intermittently involved in the parties' settlement discussions," *id.*, and his statements are

---

[4] The proceeding was related to his claims in the U.K. an action that Azima filed under 18 U.S.C. § 1782 in New York seeking discovery from Handjani.

4

contradicted by the confessions of three co-conspirators and the Hacking Reports, as well his later admissions that he regularly attended meetings with Enterprise members to plan attacks on Azima, *id.* ¶ 130.

## ARGUMENT[5]

### I. PLAINTIFF'S CLAIMS ARE NOT TIME BARRED.

The Handjani Defendants spend nearly a third of their Motion arguing for dismissal on statute of limitations grounds, but they fail to apply the correct legal standard. Under RICO, "a plaintiff may sue for any injury he discovers or should have discovered within four years of the commencement of his suit, regardless [of] when the RICO violation causing such injury occurred." *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988). The Complaint more than sufficiently alleges facts within this timeframe.

The *injuries that Plaintiffs suffered* during the statutory period are described in detail and are the relevant starting point for the analysis. *See id.*; *see also Bingham v. Zolt*, 66 F.3d 553, 559 (2d Cir. 1995) (discussing the Second Circuit's "separate accrual" rule, which provides that a new limitations period begins each time a RICO violation causes a new and independent injury).

The Handjani Defendants argue that Plaintiffs' injuries are not "new and independent" from the 2015 hacking, Handjani Br. at 6, but the case they rely upon involves one continuous scheme of the same misconduct, *see In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 59–60 (2d Cir. 1998) ("collection of annual fees [] in each year of the life of [allegedly fraudulent] partnerships"). Here, the Complaint alleges a wide variety of criminal conduct—hacking, mail and wire fraud, witness tampering, and obstruction of justice—over a long period of time. It is

---

[5] Plaintiffs incorporate by reference the Opposition to Defendants' Omnibus Motion to Dismiss (Omnibus Opp'n). Accordingly, the standard of review is not repeated. *See* Omnibus Opp'n at 14–16.

5

controlled by *Bingham*, which held that the separate accrual rule applies when a plaintiff's new injuries are "caused by a variety of schemes which were related only in their ultimate goal." *Merrill Lynch*, 154 F.3d at 59 (citing *Bingham*, 66 F.3d at 561).

The Handjani Defendants argue that Plaintiffs' claims are time-barred because Azima first became aware of the hacking against him in 2016. Handjani Br. at 5–6. The Complaint, however, does not seek relief for the hacking; it seeks relief for the damage the Enterprise caused to the Plaintiffs through subsequent litigation, interactions with law enforcement, and medial outreach, which occurred and caused damages since October 2018. *See, e.g.*, Compl. ¶¶ 101–11, 120–26, 129–44; s*ee generally* Omnibus Opp'n at 34-38, 39-43 (regarding damages and causation).

## II.     THE COMPLAINT ALLEGES NUMEROUS COGNIZABLE RICO ACTS.

The Complaint alleges with specificity that the Handjani Defendants committed numerous predicate acts sufficient to sustain a RICO claim: obstruction, witness tampering, mail and wire fraud, bank fraud, and money laundering. Compl. ¶¶ 213–36; 243.

### A.     The Complaint Adequately Pleads Mail and Wire Fraud

The Handjani Defendants attempt to minimize the numerous and specific mail and wire fraud allegations against them as mere series of emails, calls, and messages that do not meet the requisite pleading standard, Handjani Br. at 10–11, but the Complaint sufficiently pleads allegations of mail and wire fraud with particularly under Federal Rule of Civil Procedure 9(b).[6]

The Complaint alleges mail and wire fraud to further the Enterprise's Plan to defraud Azima and harm him financially by: embroiling him in litigation, making false statements to U.S.

---

[6] Under Rule 9(b), Plaintiffs must plead mail or wire fraud with "'particularity, and establish that the [communications] were in furtherance of a fraudulent scheme.'" *Angermeir v. Cohen*, 14 F.Supp.3d 134, 145 (S.D.N.Y. 2014). This simply requires that the allegations "state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent," which is what is contained in Exhibit B to the Complaint. *Id.*

6

courts to further their goal of using litigation to harm Azima and prevent him from seeking legal redress, manufacturing a negative publicity campaign to harm Azima, and attempting to hack Azima and others to obstruct litigation, driving up litigation costs. Compl. ¶¶ 181, 223–226. Because Plaintiffs allege an overarching scheme to defraud Azima and others, *see id*. ¶ 61, Plaintiffs need not allege a "specific connection between fraudulent representations . . . and particular defendants," *Angermeir,* 14 F.Supp.3d at 147. The Complaint documents more than a half-dozen texts, emails, and phone calls by Handjani within the limitations period in furtherance of the Enterprise's scheme and alleges with whom Handjani communicated, when, and about what. *See* Compl. Ex. B at Lines 130, 138–39, 141–42, 153–54. The Complaint also describes more than a dozen meetings that the Handjani Defendants attended in New York and London to plot how to defraud Azima and ruin him financially, which are supported by the wire and mail fraud chart attached to the Complaint. *See id.* ¶¶ 23–24, 54, 163; Ex. B. The Handjani Defendants' attempt to downplay these sessions in which they plotted "the attacks against Azima" as passive meetings is unavailing. *See* Handjani Br. at 10.

The Handjani Defendants also argue that Plaintiffs fail to identify how they sought to obtain Azima's money or property through their fraudulent scheme.[7] Handjani Br. at 11. But this argument ignores the Complaint's clear allegations that Handjani and Frank executed the Plan "to defraud Azima of money and property by harming his businesses and bankrupting him." Compl. ¶ 61. The Plan's objectives included "coercing Azima to pay RAK significant sums of money that

---

[7] The Handjani Defendants rely on *Kelly v. United States*, where the Supreme Court explained that wire and mail fraud claims "cannot stand when the loss to the victim is only an incidental byproduct of the scheme." 140 S. Ct. 1565, 1573 (2020). In other words, the loss "must play more than some bit part in a scheme: It must be an 'object of the fraud.'" *Id.* Here, that standard is met. Plaintiffs' loss was at the center of the Enterprise's scheme to bury Azima and other RAK opponents financially and reputationally. *See* Compl. ¶¶ 60–61.

7

would benefit the RICO Defendants, by forcing him to incur substantial fees and costs associated with litigation, [and] by causing substantial damage to his business." *Id.* ¶ 224; *see also id.* ¶ 225 (alleging the object of the scheme was to "force him to invest both energy and funds defending himself, and slowly to fade away."). The Complaint further alleges that the Handjani Defendants and their co-conspirators achieved the objective to harm Azima and his businesses financially. *See id.* ¶¶ 179–80 (alleging, for example, lost financing of $13.5 million and lost profits of $15 million in 2019), *id.* ¶¶ 181–83 (alleging legal fees and litigation costs); *see also* Omnibus Opp'n at 32-34 (explaining that obtaining money from RAK is sufficient to establish a scheme to defraud).

### B. The Handjani Defendants' Acts Were Not Mere Litigation Activities.

The Handjani Defendants attempt to minimize the Complaint's substantial obstruction of justice allegations as mere "litigation activities" in an attempt to shield them from RICO liability. *See* Handjani Br. at 6, 8, 9. As further explained in Section I(C)(1) of Plaintiffs' Omnibus Opposition, this argument mischaracterizes the law. The allegations against the Handjani Defendants include submission of false testimony to courts, ordering the destruction of documents, bribing witnesses, and hacking Azima and lawyers who represent a victim of the Enterprise, Compl. ¶¶ 119, 129–30, 163–64, 169, 174, 213–16, 219, 223–27, Ex. A, Ex. B. Thus, the allegations are not of ordinary litigation activities but concern criminal conduct. Defendants cannot hide behind litigation to shield them from liability. Courts in this District have routinely upheld RICO complaints based on exactly the kind of scheme involving litigation misconduct that Plaintiffs allege here. *See Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 249–50 (S.D.N.Y. 2012) (finding RICO scheme included "not only" litigation but also included fabricating evidence through crafting a false expert report).[8]

---

[8] As explained further in Section I(C)(2) of Plaintiffs' Omnibus Opposition, the very cases to which the Handjani Defendants cite for the proposition of a "litigation bar" make clear that

8

The Handjani Defendants also argue that the obstruction-related predicate offenses relate only to foreign proceedings and are not actionable under RICO. Handjani Br. at 8, 9. However, they ignore the ties between the obstructive conduct and the U.S. proceedings. *See* Compl. ¶¶ 83–126. The Complaint specifically alleges that Handjani bribed a witness in return for his false testimony denying involvement in the hacking of Azima in connection with a proceeding *in North Carolina*. *Id.* ¶ 174. That obstruction resulted in millions of dollars in attorneys' fees, and prevented a U.K. judgment against Azima from being overturned. *See id.* ¶ 181. Accordingly, the conduct fits squarely within the obstruction of justice statutory predicate (18 U.S.C. § 1503).

C.    **The Complaint Sufficiently Pleads Money Laundering.**

The Complaint sufficiently pleads money laundering allegations.[9] To survive a motion to dismiss, a complaint need not plead money laundering allegations with particularity and need only meet the general pleading standard under Rule 8(a)(2). *Leung v. Law*, 387 F.Supp.2d 105, 119 (E.D.N.Y. 2005) (citations omitted).

The money exchanged between members of the Enterprise was both the proceeds of unlawful activity, *see* 18 U.S.C. § 1956(a)(1)(A), and also transfers of funds in which the

---

Plaintiffs' claims are properly pled. *See* Handjani Br. at 8–9. In *Kim v. Kimm,* for example, the Second Circuit held that RICO extends to the combination of litigation activities with "out-of-court [criminal] actions" such as those alleged here. 884 F.3d 98, 105 (2d Cir. 2018). In contrast, what courts have disallowed are claims that attempt to convert a single piece of litigation into a RICO predicate. *Id.* (declining "to reach the issue of whether all RICO actions based on litigation activity are categorically meritless"). *Kim* carefully limited its holding to this narrow point. *Id.* ("We conclude only that where . . . a plaintiff alleges that a defendant engaged in a ***single*** frivolous, fraudulent, or baseless lawsuit, such litigation activity ***alone*** cannot constitute a viable RICO predicate act.") (emphasis added).

[9] "The heightened pleading requirements of Rule 9(b) do not apply to claims of money laundering; they apply 'only to claims of fraud or mistake.'" *Levine v. Torino Jewelers, Ltd.*, No. 05 Civ. 3159, 2006 WL 709098, at *4, n.3 (S.D.N.Y. Mar. 22, 2006) (quoting *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992)); *see also Eastman Kodak Co. v. Camarata*, No. 05 Civ. 6384, 2006 WL 3538944, at *7 (W.D.N.Y. Dec. 6, 2006).

9

defendants intended to promote the carrying on of unlawful activity by paying for that activity, *see* 18 U.S.C. § 1956(a)(2)(A); Compl. ¶ 244, and therefore relate to the wire fraud and obstruction of justice schemes detailed in the Complaint. The Handjani Defendants argue that the money that they were paid was not concealed, but that is irrelevant because it was for the purpose of carrying on unlawful activity. In furtherance of that activity, KARV and Frank engaged in approximately 40 money laundering transactions from the United Arab Emirates through RAK to the U.S. within the limitations period to fund the Enterprise's criminal activity. Ex. A.[10] The Complaint specifies with whom the Handjani Defendants transacted, when each transaction occurred, the amount of the transaction, and the purpose, therefore meeting the pleading standard. Compl. ¶¶ 227, 244.

### III.   THE HANDJANI DEFENDANTS PARTICIPATED IN THE OPERATION AND MAINTENANCE OF THE RICO ENTERPRISE.

The Handjani Defendants ignore the Complaint's detailed allegations that they created the overarching Plan and then directed co-conspirators to obstruct U.S. court proceedings in furtherance of the Plan. *Id.* ¶¶ 23–24, 54, 169, 219. The Second Circuit has held that the "operation or management" is a "relatively low hurdle for plaintiffs to clear . . . . especially at the pleading stage" because plaintiffs only need to show that a defendant played "*some* part in directing the enterprise's affairs." *D'Addario v. D'Addario*, 901 F.3d 80, 103–04 (2d Cir. 2018). Indeed, a defendant who "actively assist[s]" the mastermind's schemes are also participants in the operation and management of the enterprise. *See id.* at 104; see also *Baisch v. Gallina*, 346 F.3d 366, 376 (2d Cir. 2003) ("discretionary authority and direction of the enterprise" shows participation).

The Handjani Defendants designed and implemented over several years the five-prong Plan to ruin Plaintiffs financially and reputationally through a campaign of fraud and obstruction.

---

[10] *See* Lines 242, 244, 254, 258, 263, 274, 281, 293, 298, 305, 310, 318, 320, 329, 334, 340, 345, 351, 362, 367–69, 372, 377, 383, 385, 387, 392, 396–97, 399, 403–04, 406, 408–413.

Compl. ¶¶ 59–61, 207. In furtherance of that Plan, Frank and Handjani met regularly with their co-conspirators in New York and abroad to direct and execute attacks on Azima and others. *Id.* ¶¶ 23–24, 54. When the Plan entered a "new and decisive phase" to launch "wide-scale legal action" against Azima, *id.* ¶ 61, in 2020, Handjani instructed a co-conspirator to hack Azima and others to determine his source of litigation funding, *id.* ¶ 169. Handjani also directed a witness to destroy evidence of the hacking of Al Sadeq and bribed that witness to make a false statement to a North Carolina court denying Del Rosso's role in that hacking, in accordance with the Plan. *Id.* ¶ 219. *See generally supra* at 2-5 (describing the factual allegations). Thus, the Complaint adequately pleads the Handjani Defendants' participation in the operation and maintenance of the enterprise.

IV.     **THE COMPLAINT SUFFICIENTLY ALLEGES PATTERN AND CONTINUITY.**

Plaintiffs' claims sufficiently meet the pattern and continuity requirements of RICO. *See* Omnibus Opp'n at 21-26. The Complaint alleges predicate acts over at least the four-year period prior to the Complaint's filing—far in excess of the minimum required to establish closed-ended continuity. *See DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001) (two years constitutes a "substantial period of time" sufficient to establish closed-ended continuity).[11] The Handjani Defendants attempt to paint the RICO scheme as a single-incident, single-victim hacking crime followed by continued efforts to deny or conceal involvement in the hacking.[12] Handjani Br. at 11.

---

[11] The Complaint also establishes open-ended continuity because "the predicates establish a *threat* of long-term racketeering activity," *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 230 (1989); *De Sole v. Knoedler Gallery, LLC*, 974 F.Supp.2d 274, 306 (S.D.N.Y. 2013) (Gardephe, J.), and are not "inherently terminable," Handjani Br. at 12. The Defendants continue to instigate litigation against, and impede ongoing litigation brought by, Azima in accordance with the Plan that the Handjani Defendants hatched. *See generally* Omnibus Opp'n at 24-26.

[12] The Handjani Defendants argue that acts of concealment cannot constitute RICO predicate offenses, citing *Democratic National Committee v. Russian Federation,* 392 F.Supp.3d 410, 443–44 (S.D.N.Y. 2019), and then attempt to force all sorts of misconduct into the category of "concealment." As explained in Plaintiffs' Omnibus Opposition at Section I(C)(2), the RICO statute specifically contemplates certain acts that by their nature involve concealment, such as

11

The Handjani Defendants and their co-conspirators concocted and executed a multi-prong Plan to attack Azima, his businesses, and others that went well beyond the hacking of Azima to include obstruction of legal proceedings, Compl. ¶¶ 127–43, 170–78, instigation of a law enforcement investigation, *id.* ¶¶ 76–79, launching of a media smear campaign, *id.* ¶¶ 80–82, and additional hacking, *id.* ¶¶ 161–69.

## V. PLAINTIFFS HAVE ADEQUATELY PLED COGNIZABLE RICO INJURIES PROXIMATELY CAUSED BY DEFENDANTS.

The Handjani Defendants (like other Defendants) do not dispute that the legal fees Azima incurred are cognizable. *See* Omnibus Opp'n at 35-38; *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1166 (2d Cir. 1993). Yet they nevertheless alleged injuries are not cognizable.[13] They focus only on the business losses and damages to reputation and goodwill.

Damages to reputation and goodwill are cognizable under RICO when they result in injury to business or property, as was the case here. "Courts commonly differentiate in this fashion between insufficient claims of general reputational injury and sufficient claims of actual economic

---

witness tampering and obstruction of justice. *See* 18 U.S.C. § 1961(1). Courts in this Circuit have held that acts of concealment constitute predicate offenses under RICO where they are "done in furtherance of the main criminal objectives" of the conspiracy. *See Bd. of Managers of Trump Tower at City Ctr. Condo. by Neiditch v. Palazzolo*, 346 F.Supp.3d 432, 460 n.1 (S.D.N.Y. 2018).

[13] The Handjani Defendants seemingly make one independent argument outside the Omnibus Motion: that their specific actions (as opposed to the actions of the Enterprise as a whole) did not cause the harm to Azima. Handjani Br. at 13. If this is their argument, it is wrong on the law and the facts, and it ignores the fact that Handjani directed other members of the Enterprise to take predicate acts. The Handjani Defendants were not peripheral players; they were architects of the Plan to harm Azima and his businesses, and they participated in regular meetings to execute that Plan. Compl. ¶¶ 23–24, 45, 54, 59–61, 130. These actions set in motion the entire attack on Azima. Also, the Handjani Defendants are jointly and severally liable for the actions of the Enterprise. *City of New York v. Pollock*, No. 03 Civ. 0253, 2006 WL 522462, at *17 (S.D.N.Y. Mar. 3, 2006) ("[E]very circuit in the country that has addressed the issue has concluded that the nature of . . . civil . . . RICO offenses requires imposition of joint and several liability because all defendants participate in the enterprise responsible for the RICO violations.") (quoting *United States v. Phillip Morris USA, Inc.*, 316 F. Supp. 2d 19, 27 (D.D.C. 2004) (collecting cases)) (alterations in original).

losses stemming from a harmed reputation." *Reich v. Lopez*, 38 F. Supp. 3d 436, 450 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017). *See generally* Omnibus Opp'n at 36-38 (distinguishing *Hollander* and discussing cases regarding damages to reputation and goodwill). Here the Complaint alleges reputational harm resulting in quantifiable, non-speculative business losses that courts have consistently held to be cognizable under RICO. It alleges that banks closed Azima's accounts, citing the negative publicity brought on by the Enterprise's litigation against Azima, Compl. ¶ 179, and a lender denied Azima $13.5 million in financing for a development project because of the negative publicity instigated by the Enterprise, *id.* ¶ 180. These allegations go well beyond "generalized reputational harm," *Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14, 16 (2d Cir. 2006), and are more than sufficient to survive a motion to dismiss.

The Handjani Defendants also argue that the Complaint "conclusorily asserts" that the Plaintiff Entities suffered harm. Handjani Br. at 14. But the Complaint alleges that "[b]anks have closed Azima's accounts and denied him loans citing the negative publicity brought on by the Enterprise's litigation against Azima." Compl. ¶¶ 179–80 (also alleging specific loans that were affected by the negative publicity). The Enterprise's objectives were to cause damages, not only to Azima but to his businesses. *See* Compl. ¶¶ 59, 61, 74, 82, 90, 179–83, 223, 225; *see also* Omnibus Opp'n at 35-38. Thus, the Plaintiff Entities have sufficiently pled independent claims of injury for their business losses.

The Handjani Defendants also argue that the alleged damages were not proximately caused by the Enterprise's actions because of actions taken by third parties such as courts or banks. But Plaintiffs' injuries were proximately caused by the Enterprise's misconduct even if its misrepresentations were directed to a third party. *See Alix v. McKinsey & Co.*, 23 F.4th 196, 204 (2d Cir. 2022); *see generally* Omnibus Opp'n at 35-38. Azima's legal expenses and the Plaintiff

13

Entities' business losses were part of the Enterprise's "new and decisive phase" to launch "wide-scale legal action" designed to bankrupt Azima and his businesses. Compl. ¶ 61. As in *Chevron*, "the purposes of the alleged obstruction and witness tampering were to keep evidence of the RICO Defendants' misconduct from being brought to the attention of the [foreign] courts and other tribunals in service of the alleged overall goal of obtaining a baseless [foreign] judgment for use in obtaining money from [the plaintiff]." *Chevron*, 871 F. Supp. at 252. The Handjani Defendants cannot set out to cause harm to Azima through litigation, successfully cause that harm, obstruct litigation to protect that foreign judgment and further harm Azima, and then blame Azima for causing the harm they intended all along.

## VI. PLAINTIFFS PLEAD A CONSPIRACY UNDER 18 § U.S.C. 1962(d).

Plaintiffs' Complaint sufficiently pleads a conspiracy claim under 18 U.S.C. § 1962(d) ("Section 1962(d)")). For the reasons stated above, Plaintiffs have adequately pled the underlying substantive RICO claims, and therefore, the argument for dismissing the conspiracy claim for failure to plead the underlying RICO violations fails. *See* Omnibus Opp'n at 58 (citing cases). The Handjani Defendants separately argue that the Complaint does not allege that the Handjani Defendants entered into an agreement to violate the RICO statute. *See* Handjani Br. at 15. Here, the Complaint alleges that the Handjani Defendants designed the multi-prong Plan to attack Azima through litigation, manufactured law enforcement investigations, hackings, and a negative media campaign, which they distilled to writing and then executed in earnest. Compl. ¶¶ 59–61, 207. Plaintiffs have clearly pled that the Handjani Defendants knew about and agreed to the underlying scheme.

## **CONCLUSION**

Plaintiffs respectfully request that the Court deny this Motion to Dismiss in its entirety.

Dated: May 22, 2023
New York, New York

| | |
|---|---|
| */s/ Harry H. Rimm* | */s/ Kirby D. Behre* |
| Harry H. Rimm | Kirby D. Behre |
| Womble Bond Dickinson (US) LLP | Timothy P. O'Toole |
| 950 Third Avenue | Lauren E. Briggerman |
| New York, New York 10022 | Ian A. Herbert |
| Tel. (332) 258-8400 | Cody F. Marden |
| Fax (332) 258-8949 | Calvin Lee |
| harry.rimm@wbd-us.com | Miller & Chevalier Chartered |
| | 900 Sixteenth Street NW |
| */s/ Christopher W. Jones* | Washington, D.C. 20006 |
| Christopher W. Jones | Tel. (202) 626-5800 |
| Ripley E. Rand | Fax (202) 626-5801 |
| Womble Bond Dickinson (US) LLP | kbehre@milchev.com |
| 555 Fayetteville Street, Suite 1100 | totoole@milchev.com |
| Raleigh, North Carolina 27601 | lbriggerman@milchev.com |
| Tel. (919) 755-2100 | iherbert@milchev.com |
| Fax (919) 755-2150 | cmarden@milchev.com |
| chris.jones@wbd-us.com | clee@milchev.com |
| ripley.rand@wbd-us.com | |

*Attorneys for Plaintiffs Farhad Azima, ALG Transportation, Inc., Main 3260 LLC, FFV W39 LLC and FFV Development LLC*

15