KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL      212.763.0889
DIRECT EMAIL    shecker@kaplanhecker.com

February 6, 2024

BY CM/ECF

The Honorable Jennifer E. Willis
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

          Re:    *Farhad Azima, et al. v. Dechert LLP, et al.*, No. 22-cv-8728-PGG-JW

Dear Magistrate Judge Willis:

    We represent Defendant Dechert LLP ("Dechert") in the above-referenced matter. We submit this letter on behalf of all Defendants in response to Plaintiffs' "Notice of Supplemental Authority and Notice of Recent Development" (the "Notice") dated February 5, 2024, ECF No. 174.

    Plaintiffs' letter misrepresents recent developments in *RAKIA v. Azima*, No. HC-2016-002798 (the "U.K. litigation"), attempts to keep important context from the Court, and distorts the Supreme Court's holding seven months ago in a case that has no relevance to the disputed issues here.

### Developments in the U.K. Litigation

    As the Court knows, Plaintiff Azima has for years litigated claims in the U.K. courts that relate to alleged hacking. In that proceeding, which remains ongoing, Azima recently accepted a Part 36 Offer—essentially the equivalent of an offer of judgment—at a sum of about three million pounds. In a bid to keep a RICO case here going as well, Plaintiff misrepresents the nature of his own agreement, and seeks to silence Defendants from raising the U.K. court's finding that Plaintiff engaged in fraud and bribery with the Court. Both efforts fail.

    *First*, Azima accepted Dechert's and Defendant Neil Gerrard's Part 36 Offer to settle the portion of the U.K. litigation known as Azima's "hacking counterclaim." Dechert and Gerrard did

*not* agree to pay more than $15 million to Azima. Instead, as the Part 36 Offer makes clear, Dechert and Gerrard agreed to pay Azima £3 million to settle his claims related to the alleged hacking, the same core allegation that underlies his claims before this Court. *See* ECF No. 174-2 at ¶ 6(1). The uncited $15 million number that Plaintiffs reference in the Notice would appear to be based on an assumption that Dechert will also pay Azima some amount of costs, on top of the £3 million he has accepted to settle his claims.

But in reality, the costs issue in the U.K. remains uncertain. This is because: (1) the U.K. litigation is a multi-party litigation in which defendant RAKIA has already been directed to pay approximately £8.44 million in respect of Azima's costs, (2) the proceedings continue against defendant James Buchanan and so it remains uncertain whether he will be directed to discharge some of Azima's costs, and (3) under the applicable U.K. rules relating to Part 36 offers, while Dechert and Gerrard are liable to Azima for costs incurred up to October 25, 2023 (21 days after the transmission of the Part 36 offer), Azima is liable for Dechert's and Gerrard's costs incurred between October 25, 2023 and his acceptance of the Part 36 offer on January 17, 2024. As such, Azima has accepted in the U.K. that there is a possibility that Dechert and Gerrard will not have to contribute anything at all to Azima's costs, and that Azima will instead have to pay Dechert and Gerrard. It is therefore highly misleading for Plaintiffs' counsel here to claim that "Dechert is set to pay in excess of $15 million to Azima." And it is telling, on the eve of argument, that Plaintiffs feel the need to distort and misrepresent Azima's own settlement agreement to try to create a misimpression that this case is worth more than it is.

*Second*, the Notice is also inaccurate in suggesting that the recent settlement has left Azima's application to set aside the 2020 U.K. judgment finding him liable for various acts of fraud, bribery, and dishonesty unopposed. To the contrary, to the best of Defendants' knowledge, James Buchanan, a remaining defendant in the U.K. litigation, continues to oppose that application. Moreover, even if Azima's application were unopposed, it still has not been granted, and the U.K. judgment remains good authority. Indeed, Plaintiffs' effort to mischaracterize it and then silence anyone else from addressing it reflects a recognition that the factual findings underlying the U.K. judgment—i.e., that Mr. Azima committed both fraud and bribery—gut his purported reputational damages claims here.

**Notice of Supplemental Authority**

Four days before oral argument, Plaintiff submits as supplemental authority an inapposite case decided by the Supreme Court in June. *See Yegiazaryan v. Smagin*, 599 U.S. 533 (2023) (decided June 22, 2023). *Yegiazaryan* has zero bearing on the issues raised in the Motions. The sole issue raised in *Yegiazaryan* was whether a foreign domiciliary who suffers an economic injury has met the "domestic-injury" requirement for private civil RICO suits, an issue not raised by any party here. *Id.* at 537.

And Plaintiffs manage to wholly mischaracterize *Yegiazaryan* by arguing that the Supreme Court "approv[ed] of a RICO claim premised on obstructive litigation tactics in federal court." Notice at 1. The Supreme Court did no such thing—the litigation misconduct bar simply was not a question before the Court, and the Court did not "approve" of the RICO claim. In the district court, one defendant (Yegiazaryan) raised the argument that "[i]mproper submissions to Courts of the United States" are not "predicate acts subject to civil RICO claims," i.e., the litigation

**KAPLAN HECKER & FINK LLP**

misconduct bar, *see* Motion to Dismiss, *Smagin v. Compagnie Monegasque De Banque*, No. 20-cv-11236, ECF No. 76 at 8 (C.D. Cal. March 29, 2021), but even the district court declined to reach that issue, instead expressly holding that "[b]ecause the Court determines that [plaintiff] has failed to allege a domestic injury, and therefore lacks standing to pursue his RICO claims, the Court does not reach Yegiazaryan's other arguments." *Smagin v. Compagnie Monegasque De Banque*, 2021 WL 2124254, at *2 (C.D. Cal. May 5, 2021). The question was therefore not before the Supreme Court. Indeed, after the Supreme Court remanded the case, the district court did reach several of the defendants' other arguments (while Yegiazaryan defaulted) and dismissed the RICO claim. Minutes (In Chambers) Order, *Smagin,* No. 20-cv-11236, ECF No. 205 (C.D. Cal. Jan. 25, 2024). In other words, the Supreme Court did not "approv[e]" of the RICO claim, let alone rule on the litigation misconduct bar—it simply held that the complaint should not be dismissed on the single basis before it, i.e., the domestic injury bar. Plaintiffs' mischaracterization of this case speaks volumes about the weakness of their legal theories.

Thus, the reality remains that the allegations of litigation misconduct that Plaintiff makes here—largely based on purportedly false denials of Defendants' role in an alleged hacking in litigations brought by Plaintiff himself—have been dismissed time and again by cases that remain undisturbed by *Yegiazaryan*'s inapposite holding. *See, e.g.*, *Kim v. Kimm*, 884 F.3d 98, 103–05 (2d Cir. 2018); *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 173–75 (E.D.N.Y. 2010), *aff'd*, 443 F. App'x 582 (2d Cir. 2011) (collecting cases).

For the foregoing reasons, the Court should disregard Plaintiffs' supplemental authority.

Respectfully submitted,

*Sean Hecker*

Sean Hecker