# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63ᴿᴰ FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL        212.763.0889
DIRECT EMAIL    shecker@kaplanhecker.com

March 19, 2024

**BY CM/ECF**

Honorable Jennifer E. Willis
United States District Court for the Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

Re:     *Azima, et al. v. Dechert LLP, et al.*, 1:22-CV-08728-PGG-JW;

Dear Judge Willis:

We write on behalf of all Defendants in response to Plaintiffs' March 13, 2024 Notice of Supplemental Authority (the "Notice"), *see* ECF No. 184. As described at the March 11, 2024 oral argument before Your Honor (the "Oral Argument"), Plaintiffs' case hinges on a novel legal theory: that efforts to "conceal" Defendants' alleged role in hacking Plaintiff Azima through denials of responsibility in litigations *brought by Plaintiff Azima* can give rise to a RICO claim. While the flaws in this theory fatally infect every aspect of Plaintiffs' claim, the Notice focuses on the RICO standing requirement of injury—in particular, legal fees as cognizable injury. The Notice, and the cases attached thereto, fail to salvage any of Plaintiffs' legal fee claims.

While Plaintiffs' shotgun pleading does not clarify precisely what legal fees they are seeking, the Complaint refers to (1) the civil cases brought by Azima in the District of Columbia and Middle District of North Carolina alleging he was hacked by purported co-conspirator RAKIA and Defendant Del Rosso, respectively, *see* ECF No. 1 ("Compl.") ¶¶ 83, 160; (2) the Section 1782 proceedings brought in support of Azima's counterclaims in the United Kingdom, *id.* ¶¶ 129, 133; (3) fees incurred in "responding to document requests and subpoenas" related to an FBI investigation into Azima's criminal activity, *id.* ¶ 79; and (4) fees and costs "defending himself in the litigation in the UK," *id.* ¶ 181.[1]

---

[1] The third and fourth category of legal fees can be dispensed with for obvious reasons. The legal fees Azima incurred in responding to the FBI's investigation were not caused by any RICO predicate act; Azima alleges that Defendants merely "did not disclose to U.S. law enforcement that they had obtained Azima's data illegally" and somehow thereby engaged in "obstruction of justice." Compl. ¶¶ 76, 239. But Azima has not, and cannot, explain how failing to disclose Defendants' alleged role in obtaining the documents has the "natural and probable effect of interfering with" the investigation, let alone judicial or grand jury proceedings, and therefore failed to establish obstruction of justice. *United States v. Aguilar*, 515 U.S. 593, 599 (1995). And the legal fees Azima incurred in the U.K. are not cognizable because RICO "does not allow recovery for foreign injuries." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 354 (2016).

KAPLAN HECKER & FINK LLP                                                          2

The civil cases in D.C. and M.D.N.C. were, of course, undoubtedly brought by Plaintiff Azima. Plaintiffs have attempted to paint the Section 1782 proceedings that Azima brought in the United States against Defendants Handjani and Forlit (the "1782 Proceedings") as defensive in nature, suggesting that they were in support of claims brought *against* Plaintiff in the U.K. *See* Tr. 94:13-19. But that is false: Azima's own 1782 applications make clear they were made in support of his hacking-related *counterclaims* in the U.K., and the Court can and should take judicial notice of those facts. *See Schenk v. Citibank*, 2010 WL 5094360, at *2 (S.D.N.Y. 2010).

In the first Section 1782 application, directed at Mr. Handjani, Azima states that "[i]n the case before the UK Court, Azima seeks to hold the defendants accountable [] for the unlawful hacking of Mr. Azima's computers and e-mail accounts," and he is "engaged in the process of seeking information and documents to support **his Claims**." *See* Ex. A (*Azima v. Handjani*, No. 1:21-mc-00501, ECF No. 1 (S.D.N.Y. Jun 29, 2021)) at 1, 6 (emphasis added). In the second 1782 application, directed at Defendant Amit Forlit, Azima states in the instant Complaint itself that he sought discovery "relevant to **Azima's claims** in the U.K. Proceeding," Compl. ¶ 133, and the § 1782 application states that the discovery sought was relevant to "key issues in the **Amended Counterclaim** and . . . issues at trial." *See* Ex. B (*Azima v. Insight Analysis and Research LLC et al.*, No. 1:22-cv-20707, ECF No. 1-2 (S.D. Fla. March 08, 2022)) at 13-14.[2]

In view of these facts, **every dollar** of the legal fees Azima now seeks to rely on as cognizable RICO damages was expended on suits and claims that he brought. Recognizing that this fact presents a hurdle to his novel RICO claim, Plaintiff submits five cases to the Court with the Notice, asserting that the cases "provide support for the proposition that a plaintiff in a RICO lawsuit can recover legal fees resulting from racketeering acts that obstructed or interfered with litigation initiated by the plaintiff." Notice at 1. But that is simply false. Not a single one of the five cases Plaintiff submits involved "obstruct[ion] or interfere[nce] with litigation initiated by the plaintiff." *Id.* Rather, those cases involve legal fees incurred by the plaintiffs to collect money owed to them by defendants who committed *independent* RICO predicate acts. In three of the five cases, the independent RICO acts had nothing at all to do with conduct in the litigation, but rather attempts to hide or expend money to avoid judgments or other financial obligations. *See D'Addario v. D'Addario*, 901 F.3d 80 (2d. Cir. 2018) (allowing recovery of legal fees expended in state court proceeding to remove defendants as executor of estate he was plundering via RICO predicate acts); *NYKCool A.B. v. Pac. Int'l Servs., Inc.*, 2012 WL 5462611 (S.D.N.Y. Nov. 9, 2012) (permitting recovery of legal fees expended to collect on judgment where alleged RICO predicates were money transfers out of defendant corporation to avoid debt); *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158 (2d Cir. 1993) (allowing recovery of legal fees incurred in effort to collect judgment where RICO predicates were fraud after judgment to prevent collection of amounts owed).

The only two cases cited in Plaintiffs' Notice that even arguably involve recoverable legal fees resulting from litigation misconduct are *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir.

---

[2] Even if Plaintiffs now try to argue that his second counterclaim for recission in the U.K. is not a new, affirmative claim but rather some sort of defense or appeal, the U.K. Court of Appeal has already rejected that view, holding that it is a new affirmative claim, rather than an attempt to re-open the appeal of the 2020 judgment against Azima. *See* Ex. C (*Ras Al Khaimah Inv. Auth. v. Azima* [2023] EWCA Civ 507) ¶¶ 7, 131 (describing recission claim as additional counterclaim, not attempt to relitigate or reopen appeal).

KAPLAN HECKER & FINK LLP                                                      5

1988) and *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229 (S.D.N.Y. 2012), but in both cases, legal fees were expended in *defense* of litigation.  In *Bankers Trust*, the legal fees were expended in defending against frivolous lawsuits, including one in which the defendants had bribed the judge, and incurred in filing a motion before the bankruptcy court to revoke a confirmation plan and as to which no litigation misconduct was alleged.  *Id.* at 1099.  And in *Chevron*, upon which Plaintiffs so heavily and repetitively rely, the litigation misconduct occurred in Ecuadorian proceedings brought *against* Chevron, in Section 1782 proceedings filed by Chevron in defense of that action, and in an S.D.N.Y. proceeding similarly brought against Chevron.[3]  871 F. Supp. 2d at 251.  Neither case involved, as Plaintiff characterizes it, "obstruct[ion] or interfere[nce] with litigation initiated by the plaintiff."  Notice at 1.[4]

The upshot is that none of the cases cited in the Notice stands for the proposition that a plaintiff can bring litigation against a defendant, and then, when the defendant denies the allegations, haul them before a separate court on a RICO claim and seek to recover the plaintiff's legal fees in the first action (and then treble them).  Nor do any of the cases involve Plaintiffs' novel attempt to cleave off the underlying alleged bad act—here, hacking—and focus instead on efforts solely to conceal that act.  Nor can Plaintiffs "re-start" the limitations clock by repeatedly initiating lawsuits and claiming the last case's fees as damages in each new one.  *See* ECF No. 158 (Defs.' Joint Reply) at 12 (citing *Zahl v. Kosovsky*, 2011 WL 7799784, at *12 (S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 F. App'x 34 (2d Cir. 2012)).  Otherwise, such an endless cycle would eradicate the function of the limitations period.

Finally, Plaintiffs' Notice admits that Plaintiffs can locate no authority to support their convoluted theory that Defendants' scheme had as its object "money or property," *see Kelly v. United States*, 140 S. Ct. 1565, 1568 (2020), because Defendants were defrauding "their own clients."  Notice at 2.  As addressed at the Oral Argument, the Complaint explicitly alleges that the client—RAKIA—was one of Defendants' co-conspirators.  *See* Compl. ¶ 26(a).  It is unsurprising that Plaintiffs can point to no case—and Defendants are surely aware of none—holding that a plaintiff can state a wire fraud claim by alleging the object of its fraud was the money or property of one of defendant's own co-conspirators, or remotely suggesting that an outsider like Azima would have standing to bring such a claim in any event.  The theory is at odds with the Complaint, common sense, and all available precedent, and like the other flagging theories Plaintiffs have spun out in an effort to avoid dismissal, it should be rejected.

---

[3] Where Judge Kaplan refers to litigation misconduct before the S.D.N.Y, *see Chevron Corp.*, 872 F. Supp. 2d at 251 (referencing "a declaration submitted by Mark Quarles to this Court in 2007"), His Honor is referring to *Republic of Ecuador v. ChevronTexaco Corp.*, No. 04-cv-8378 (LBS) (S.D.N.Y. 2007) before Judge Sand; i.e., another case brought *against* Chevron.  *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 595 (S.D.N.Y. 2014).

[4] It also bears emphasis that the U.K. proceedings are subject to "cost shifting," whereby typically the losing party pays, and "cost management," whereby the attorneys submit to the Court for pre-approval their recoverable costs related to the litigation.  Here, Azima has already sought, and the U.K. Court has pre-approved in principle, the recovery of his U.S. legal fees in connection with the 1782 Proceedings.  *See* Ex. D (*Ras Al Khaimah Inv. Auth. v. Azima* [2023] EWHC 1923 (Ch)) ¶¶ 20, 22 (providing for estimated "US lawyer fees of £300,000 for the ongoing section 1782 process").  Of course, "[a] plaintiff may not recover twice for the same injury."  *Phelan v. Local 305 of United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Canada*, 973 F.2d 1050, 1063 (2d Cir. 1992).

KAPLAN HECKER & FINK LLP

Respectfully submitted,

Sean Hecker