

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
ATTORNEYS AND COUNSELORS AT LAW

Samuel Rosenthal
T: 202.689.2915
sam.rosenthal@nelsonmullins.com

330 Madison Avenue, 27th Floor
New York, NY 10017
T 212.413.9000  F 646.428.2610
nelsonmullins.com

September 23, 2024

Via ECF

The Honorable Jennifer E. Willis, U.S.M.J.
United States District Court
Southern District of New York
40 Foley Square,
New York, NY 10007

Re:   Azima v. Dechert et al., Case No. 22-cv-08728 (PGG)(JW)

Dear Magistrate Judge Willis:

We write on behalf of Defendants Del Rosso and Vital Management (the "Vital Defendants") to invite the Court's attention to recent developments bearing on the claims filed in the above-referenced case. As explained below, the Vital Defendants respectfully invite the Court's attention to rulings by a Special Master appointed by the District Court in the case filed by Plaintiff in the Middle District of North Carolina, *see* Case 1:20-cv-00954-WO-JLW Doc. 355, filed 05/31/24) (attached as Exhibit A), as well as comments by the District Judge presiding over that case (excerpts attached as Exhibit B).  We respectfully submit that these findings further demonstrate that dismissal is appropriate for the reasons stated in our pending motion to dismiss.

First, the claims pending in this District rest on allegations that the Vital Defendants made a series of payments through counsel, the SLG law firm, to subcontractors of Defendants which, in large part, reflected the "pattern of racketeering" giving rise to the RICO counts.  By way of example, see, e.g., Complaint, para. 173 ("Del Rosso instructed Robinson to contact his U.S. lawyer, . . ., who would facilitate the payment" to a subcontractor of Defendants); Ex. B. to Complaint, Predicate Act Number 148-52 (alleging that Defendants' counsel prepared a retainer agreement and made payments as part of the pattern of racketeering).

The Special Master found that such payments could not support a claim even that any crime or fraud had been committed.  The Special Master ruled that there was no evidence that:

> "the opposing party was committing or intending to commit a crime or fraud." . . . Even if [Plaintiff] had carried that prong, he has not proven by a preponderance of the evidence that the communications between SLG [the law firm previously

The Honorable Magistrate Judge Willis
September 23, 2024
Page 2

> representing Defendants] and its client were "used in furtherance of the alleged crime or fraud." . . . All that is shown is that SLG, through its trust account, paid third party service providers on behalf of its client, an event which occurs with frequency in law firms. . . . This is insufficient evidence to support the exception.

*Ex. B* at 28 (footnote and citations omitted).  The Special Master added: "Plaintiff notes the statement by Grayson [one of the Vital Defendants' subcontractors paid by the Vital Defendants] that he did not provide any services to SLG. This proves nothing as law firms frequently pay third-party providers on behalf of their clients." *Id.*, at 28, n. 19.

Although it has yet to issue a formal opinion, the District Court conducted a hearing on Plaintiff's appeal from the Special Master's Ruling.  See Ex. B.  At that time, the Court recognized that there was some uncertainty as to the correct standard used to determine whether a crime or fraud existed for purposes of its evidentiary rulings, but then opined:

> The problem with it is, I don't care what standard you apply. The crime fraud exception on the evidence presented is pure speculation. You don't make it by either standard.
>
> And so, I mean, you've got payments. You have some nebulous allegations made by way of affidavit in the UK proceeding, and I don't think it comes close, close, to establishing that the crime fraud exception occurs under whatever standard gets applied.

Ex. B, at 74-75.

Second, Plaintiff alleges here that the Vital Defendants tried to silence one of their subcontractors, Mr. Robinson by engaging in conduct that constituted further acts forming a "pattern of racketeering."  See, e.g., Complaint, paras. 172-74 (alleging, *inter alia*, that "Del Rosso instructed Robinson not to mention Del Rosso . . . [and in] return for Robinson's silence, Del Rosso offered to pay him. Del Rosso instructed Robinson to contact his U.S. lawyer, . . . who would facilitate the payment.").

The Vital Defendants invite the Court's attention to the Special Master ruling where she found specifically that allegations relating to Mr. Robinson, even when supported by a Declaration from Mr. Robinson himself, similarly failed to satisfy Plaintiff's burden of demonstrating that a crime or fraud had occurred:

> Plaintiff concludes in his motion that the deal between Robinson and Del Rosso to keep Del Rosso's name out of the proceedings was an effort to "conceal Del Rosso's involvement in illegal conduct." … But the evidence in the Robinson Declaration could just as easily support legal conduct (e.g., Del Rosso did not want to become involved with a UK court proceeding, even though his involvement in the underlying facts was not fraudulent or unlawful). Nowhere in the Robinson

> Declaration, does Robinson state or suggest that the services provided to Del Rosso that are related to this lawsuit were criminal or fraudulent. Indeed, in Paragraph 9 of the statement he refers to "open source research investigations concerning Mr. Azima." Open-source information is just that and requires no hacking or other fraudulent conduct to obtain. Finally, there is no evidence in the Robinson Declaration to show that any attorney-client communications were used in furtherance of an alleged crime or fraud.

Ex. A, at 29-30.

Third, Plaintiff has alleged in this case that the pattern of racketeering is based, in part on communications with the FBI. See Compl., para. 76 ("the Enterprise's Action Plan to ruin Azima financially included using the data it hacked and stole from him to manipulate U.S. law enforcement agencies into launching a criminal investigation of him. From 2016 through at least 2019, the Enterprise, through Dechert and others, provided U.S. federal law enforcement agencies with a selection of documents stolen from Azima through hacking and an extensive dossier prepared by Dechert lawyers."); see also para. 77 (alleging, *inter alia*, that "[a]s part of this scheme, the Enterprise sought to arrange multiple meetings with U.S. law enforcement authorities.").

Once again, the Special Master rejected such arguments. In her opinion, she found:

> Plaintiff points to Swecker's communications with the FBI to argue that he and Defendants pressured law enforcement to investigate Plaintiff and used Plaintiff's stolen data and reports of the same to "ensnare" Plaintiff in a criminal investigation. Plaintiff also argues that Swecker and Defendants lied to law enforcement as to the origins of that data, presumably by not revealing it was hacked. Plaintiff provides several exhibits in support of his conclusions. These exhibits show that Swecker met with certain law enforcement agents and others (including Dechert attorneys) to discuss certain activities of Plaintiff and provided certain documents to law enforcement. However, ***nothing in the exhibits suggests that Swecker knew any of the Plaintiff's data he was providing, or any reports analyzing the data, had been hacked or that he was lying to law enforcement about the origin of the data. It is not per se criminal or fraudulent to provide law enforcement with truthful information, whether in response to a subpoena or not.***

*Id.*, at 30 (emphasis added).

Finally, Plaintiff alleged that statements by RAK and by the Court in litigation pending in London, in which neither VMS nor Del Rosso were even parties, demonstrated that a crime or fraud had occurred involving the hacking of Plaintiff's documents. See Compl., para. 201 ("On June 23, 2022, RAK took the remarkable step of withdrawing from the UK proceeding, claiming it had been misled and lied to by Gerrard and Dechert."). The Court in London thereafter entered a default judgment against RAK, which failed to appear in the litigation.

The Honorable Magistrate Judge Willis
September 23, 2024
Page 4

      We invite the Court's attention to the ruling of the Special Master, which found yet again that Plaintiff had failed to establish that such evidence supported a finding that a crime or fraud had occurred:

> Plaintiff's reliance on a UK court's entry of default judgment against RAK in August 2023, does not support his argument that Defendants' communications with Dechert or RAK are not privileged. As Dechert and Defendants correctly note, the judgment was not on the merits.

*Id.* at 33. The Court also rejected the notion that comments by RAK explaining its decision to withdraw from the litigation supported the conclusion that a crime or fraud had occurred. See i*d.* at 33, n. 27 (noting that the language relied upon by Plaintiff "does not provide evidence that Defendants engaged in any fraud or crime to support Plaintiff's motion.").

                        Respectfully submitted,

                        NELSON MULLINS RILEY &
                        SCARBOROUGH, LLP

                        By:  /s/ Samuel Rosenthal
                        Samuel Rosenthal
                        Counsel for Del Rosso and Vital
                        Management

cc: All counsel of record (by ECF)