# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FARHAD AZIMA, *et al.*,<br><br>                               Plaintiffs,<br><br>v.<br><br>DECHERT LLP, *et al.*,<br><br>                              Defendants. | Case No. 1:22-cv-08728 (PGG) (JW)<br><br><br>**ORAL ARGUMENT REQUESTED** |

### DEFENDANTS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' OBJECTIONS TO REPORT & RECOMMENDATION

David G. Barger (admitted pro hac vice)
Michael R. Sklaire (admitted pro hac vice)
**GREENBERG TRAURIG, LLP**
1750 Tysons Boulevard, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
David.Barger@gtlaw.com
Michael.Sklaire@gtlaw.com

Daniel Filor, Esq.
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-6758
Fax: (212) 801-6400
Filord@gtlaw.com

*Counsel for Defendants Amir Handjani,
Andrew Frank and KARV Communications*

Samuel Rosenthal, Esq.
Lisa Herbert, Esq.
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
330 Madison Avenue, 27th Floor
New York, New York 10017
sam.rosenthal@nelsonmullins.com
lisa.herbert@nelsonmullins.com
Tel: 202-689-2915
Fax: 202-689-2860

*Counsel for Nicholas Del Rosso and Vital
Management*

December 6, 2024

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

LEGAL STANDARD............................................................................................................... 4

ARGUMENT ........................................................................................................................... 5

I.      Plaintiffs' Claims Should Be Dismissed as Untimely........................................................ 5

II.     The Complaint Does Not Adequately Plead Critical Elements of a RICO Claim.............. 7

       A.      The Complaint Fails to Allege Cognizable Predicate Acts ...................................... 8

          1.      Litigation Activities Are Not Cognizable RICO Predicate Acts ................... 8

          2.      The Alleged Acts of Concealment Are Not RICO Predicate Acts............... 10

          3.      The Alleged Acts of Witness Tampering Are Not Predicates ...................... 11

          4.      The Provision of Authentic Documents and Accurate Information to Law
               Enforcement Is Not Cognizable under RICO ............................................... 13

          5.      Post-2016 Money Laundering Did Not Cause New Injury .......................... 14

          6.      The Allegations Do Not Constitute Wire and Mail Fraud Predicates .......... 15

       B.      Plaintiffs Fail to Allege a Pattern of Racketeering Activity ................................... 17

III.    Plaintiffs Do Not Allege a Cognizable RICO Injury or Proximate Cause....................... 19

       A.      Plaintiffs Insufficiently Allege Injury Due To Reputational Harm ........................ 20

       B.      Plaintiffs' Legal Fees Are Not Cognizable RICO Injuries ..................................... 22

IV.     Because Any Amendment Would Be Futile, The Court Should Deny
       Leave To Amend ............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re American Express Co. S'holder Litig.*,
  39 F.3d 395 (2d Cir. 1994)...................................................................................22

*Angermeir v. Cohen*,
  14 F. Supp. 3d 134 (S.D.N.Y. 2014)...................................................................22

*Arthur Andersen LLP v. United States*,
  544 U.S. 696 (2005)...........................................................................................12

*Azima v. Del Rosso*,
  2021 WL 5861282 (M.D.N.C. Dec. 10, 2021) .....................................................6

*Bank v. Spark Energy, LLC*,
  2020 U.S. Dist. LEXIS 219352 (E.D.N.Y. Nov. 23, 2020)................................25

*Barker v. Rokosz*,
  2021 WL 1062246 (E.D.N.Y. Mar. 18, 2021) .....................................................24

*Bingham v. Zolt*,
  66 F.3d 553 (2d Cir. 1995)...............................................................................6, 7

*Black v. Ganieva*,
  2022 WL 2374514 (S.D.N.Y. June 30, 2022) .....................................................10

*Black v. Ganieva*,
  619 F. Supp. 3d 309 (S.D.N.Y. 2022), *aff'd*, No. 22-1524-CV, 2023 WL
  2317173 (2d Cir. Mar. 2, 2023) ........................................................................22

*Bridge v. Phoenix Bond & Indem. Co.*,
  553 U.S. 639 (2008)...........................................................................................21

*Butcher v. Wendt*,
  975 F.3d 236 (2d Cir. 2020)..................................................................................9

*Carroll v. U.S. Equities Corp.*,
  2020 WL 11563716 (N.D.N.Y. Nov. 30, 2020) .................................................10

*Chevron Corp. v. Donziger*,
  768 F. Supp. 2d 581 (S.D.N.Y. 2011).................................................................9

*Chevron Corp. v. Donziger*,
  974 F. Supp. 2d 362 (S.D.N.Y. 2014)...............................................9, 13, 14, 23

*City of New York v. Venkataram*,
   396 F. App'x 722 (2d Cir. 2010) ...............................................................10, 11, 13

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
   187 F.3d 229 (2d Cir. 1999)...................................................................................18

*Dees v. Zurlo*,
   2024 WL 2291701 (N.D.N.Y. May 21, 2024)....................................................9, 10

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir. 2001).....................................................................................7

*Democratic Nat'l Comm. v. Russian Fed'n*,
   392 F. Supp. 3d 410 (S.D.N.Y. 2019)..............................................................11, 14

*El Omari v. Buchanan*,
   2021 U.S. Dist. LEXIS 236933 (S.D.N.Y. Dec. 10, 2021), *aff'd*, 2022 U.S.
   App. LEXIS 26799 (2d Cir. Sept. 26, 2022) .........................................................16

*Empire Merchants, LLC v. Reliable Churchill LLP*,
   902 F.3d 132 (2d Cir. 2018)..............................................................................19, 21

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)................................................................................3, 17

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994)......................................................................................21

*Forman v. Artuz*,
   211 F. Supp. 2d 415 (S.D.N.Y. 2000).......................................................................5

*Grace Int'l Assembly of God v. Festa*,
   797 F. App'x 603 (2d Cir. 2019) ............................................................................18

*Guzman v. Hecht*,
   No. 18-cv-3947, 2019 WL 1315888 (S.D.N.Y. Mar. 22, 2019)............................17

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010)....................................................................................................21

*J.T. v. de Blasio*,
   500 F. Supp. 3d 137 (S.D.N.Y. 2020)...............................................................21, 22

*Kelly v. United States*,
   590 U.S. 391 (2020)...........................................................................................16, 17

*Kerik v. Tacopina*,
   64 F. Supp. 3d 542 (S.D.N.Y. 2014).......................................................................20

*Kim v. Kimm*,
    884 F.3d 98 (2d Cir. 2018).......................................................................8, 9, 10, 25

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012)..................................................................................5, 6

*Lewis v. Zon*,
    573 F. Supp. 2d 804 (S.D.N.Y. 2008)................................................................5, 18

*In re Merrill Lynch Ltd. Partnerships Litig.*,
    154 F.3d 56 (2d Cir. 1998)..................................................................6, 7, 8, 10, 14

*Motorola Credit Corp. v. Uzan*,
    322 F.3d 130 (2d Cir. 2003)......................................................................................19

*Nat.-Immunogenics Corp. v. Newport Trial Grp.*,
    2020 WL 7263544 (C.D. Cal. Nov. 23, 2020)..........................................................22

*Ortiz v. Barkley*,
    558 F. Supp. 2d 444 (S.D.N.Y. 2008)..................................................................5, 7

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
    2022 WL 480475 (2d Cir. Feb. 17, 2022)..................................................................21

*Prichard v. 164 Ludlow Corp.*,
    390 F. Supp. 2d 408 (S.D.N.Y. 2005)........................................................................21

*Rajaratnam v. Motley Rice, LLC*,
    449 F. Supp. 3d 45 (E.D.N.Y. 2020) ....................................................................9, 10

*Reece v. Marc Ecko Unltd.*,
    2011 WL 4069637 (S.D.N.Y. Sept. 9, 2011)............................................................24

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017)................................................................................14, 20

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
    2024 U.S. App. LEXIS 26888 (2d Cir. Oct. 24, 2024)..............................................10

*Stochastic Decisions, Inc. v. DiDomenico*,
    995 F.2d 1158 (2d Cir. 1993)......................................................................................23

*Sykes v. Mel Harris & Assocs.*,
    757 F. Supp. 2d 413 (S.D.N.Y. 2010)................................................................10, 23

*Tech. Opportunity Grp. v. BCN Telecom, Inc.*,
    No. 16-CV-9576 (KMK), 2019 WL 4688628 (S.D.N.Y. Sept. 25, 2019)..........................6, 7

*United States v. Greenberg,*
   835 F.3d 295 (2d Cir. 2016) ................................................................................ 17

*United States v. Ivezaj,*
   568 F.3d 88 (2d Cir. 2009) .................................................................................. 18

*United States v. Minicone,*
   960 F.2d 1099 (2d Cir. 1992) .............................................................................. 19

*United States v. Ng,*
   578 F. App'x 38 (2d Cir. 2014) ........................................................................... 17

*United States v. Scott,*
   681 F. App'x 89 (2d Cir. 2017) ........................................................................... 18

*Williams v. Citigroup Inc.,*
   659 F.3d 208 (2d Cir. 2011) ................................................................................ 24

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.,*
   530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd,* 328 F. App'x 695 (2d Cir. 2009) ....................... 5

*Zahl v. Kosovsky,*
   2011 WL 779784 (S.D.N.Y. Mar. 3, 2011), *aff'd,* 471 F. App'x 34 (2d Cir. 2012) ........................................................................................................... 7

*Zahra v. Town of Southold,*
   48 F.3d 674 (2d Cir. 1995) .................................................................................. 25

**Statutes**

28 U.S.C. § 636(b)(1)(C) ...................................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 72(b)(3) ........................................................................................ 4

Defendants submit this joint memorandum in opposition to Plaintiffs' Objections to Magistrate Judge Willis's Report and Recommendation (ECF No. 204) ("Obj.").[1]  The Court should adopt the Report and Recommendation (ECF No. 201) ("R&R"), which correctly recommends that the Complaint be dismissed with prejudice.

## PRELIMINARY STATEMENT

After considering several hundred pages of briefing and two days of oral argument, Magistrate Judge Willis correctly issued a well-reasoned, 113-page R&R dismissing Plaintiffs' sprawling, 250-paragraph RICO complaint on six independent grounds. The R&R should be adopted.  The R&R exhaustively analyzed the allegations and concluded that Plaintiffs failed to adequately allege RICO predicates, that their claims were untimely, and that they failed to allege proximate causation for any injuries.  Nothing presented in Plaintiffs' Objections should disturb those findings.

The R&R detailed how this action is the latest iteration of sprawling, multi-year and multi-jurisdiction litigation prosecuted by Plaintiff Farhad Azima, who alleged that his emails and confidential business information were hacked and posted on the internet starting in 2016.  The foundation of the outlandish Complaint is that Defendants—a group of attorneys and investigative and public relations consultants representing their client, foreign government Ras Al Khaimah and its related entities ("RAK")—tricked Azima into signing a settlement agreement in which Azima received millions of dollars so that RAK could then sue Azima in London for breaching that agreement, relying on Azima's hacked emails.  *See* ECF No. 1 ("Compl.") ¶ 5.  Since 2016, Azima has commenced several legal proceedings in the United States and pursued claims abroad against

---

[1] On September 19, 2024, Plaintiffs voluntarily dismissed the claims against Defendants Dechert LLP, David Gerrard, and David Hughes.  Dkt. No. 197.  Prior to its dismissal, Dechert filed joint briefing in support of the motion to dismiss that all Defendants joined. Dkt. Nos. 156 and 158.

Defendants seeking redress for purported injuries suffered as a result of the alleged hacking.

Plaintiffs' string of lawsuits began in 2016, when Azima sued RAK in federal court in the District of Columbia (the "D.C. Case") "seeking compensation for the hacking of his accounts and theft of his emails, documents, and other information." *Id.* ¶¶ 72, 83. In 2019, the D.C. Circuit found the action had been improperly filed in D.C., as opposed to the U.K. where litigation already was pending between Azima and RAK (the "U.K. Case"). Azima then reasserted these hacking allegations there as a counterclaim. *Id.* ¶¶ 88, 127. In 2020, Azima commenced another action against Defendants Nicholas Del Rosso and Vital Management Systems ("Vital") in federal court in the Middle District of North Carolina (the "North Carolina Case"), yet again asserting a hacking conspiracy, as well as theft of trade secrets, wiretapping, and privacy violations related to those Defendants' alleged role in the hacking and dissemination of Azima's data. *Id.* ¶ 144. Beginning in 2021, Azima filed several actions against Defendants in New York, Florida, and North Carolina pursuant to 28 U.S.C. § 1782 (the "§ 1782 Proceedings") seeking discovery for use in his hacking-related counterclaim in the U.K. Case. *E.g., id.* ¶¶ 127, 129.

Plaintiffs commenced the instant matter on October 13, 2022. Recognizing the obvious timeliness and comity concerns inherent in seeking redress for alleged wrongs that have been the subject of ongoing litigation since 2016, Plaintiffs explicitly stylized the Complaint as concerning *only* an alleged "cover-up" of the hacking:

> The UK case seeks damages for the 2016 hacking of Azima. *This Complaint seeks damages for conduct that postdates the 2016 hacking.* In effect, the UK case focuses on crimes that occurred in or about 2016, while *this Complaint focuses on efforts to cover-up those crimes.*

*Id.* ¶ 5 n.2 (emphasis added). Thus, by Plaintiffs' own admission, the gravamen of their civil RICO complaint is concealment. Judge Willis properly held Plaintiffs to that distinction and concluded that the alleged racketeering activities, particularly when consisting of concealment of untimely,

hacking-related predicate acts, do not state a cognizable RICO claim as a matter of law.

Unhappy with this result, Plaintiffs now disavow their theory and argue that Judge Willis erred by characterizing the allegations as mere "efforts to conceal the hacking scheme," *see* Obj. at 4, objecting to virtually every aspect of the R&R. Their objections are meritless. *First*, the R&R correctly determined that Plaintiffs' claims are untimely under RICO's four-year statute of limitations because Plaintiffs indisputably were aware of the hacking by 2016—and even brought claims in connection with the hacking that same year. The alleged racketeering activities within the limitations period amount to nothing more than purported acts of concealment and, thus, any resulting injuries are simply derivative of the alleged hacking.

*Second*, Judge Willis carefully and correctly determined that Plaintiffs failed to allege cognizable RICO predicate acts for multiple and often overlapping reasons. At their core, the alleged obstruction, witness tampering, and money laundering conduct alleged to have occurred within the limitations period are correctly categorized as litigation activities—most in response to lawsuits that Plaintiff Azima brought against Defendants—and/or acts of alleged concealment tied to the original hacking, neither of which are actionable under RICO. The alleged mail and wire fraud predicates fail for the separate reasons that the allegations lack specificity and do not evince an intent to obtain any of the victims' "money or property." And the allegations of manipulation of law enforcement investigations fail because the Complaint nowhere alleges that the information about Plaintiffs purportedly furnished to law enforcement was false or inaccurate.

*Third*, in the R&R, Judge Willis correctly determined that Plaintiffs failed to adequately plead a "pattern" of racketeering activity, because the Complaint does not allege a threat of continued criminal activity or that the predicate acts were sufficiently related.

*Finally*, Judge Willis correctly determined that Plaintiffs failed to allege any cognizable

RICO injury/damages proximately caused by the alleged racketeering activities. The Complaint seeks recovery of legal fees stemming from litigation activities in suits that *Plaintiffs* brought against Defendants, which the R&R fully analyzed and concluded are not actionable under RICO. The sole remaining alleged injuries—closed accounts, terminated credit cards, denied loans, and lost financing—are pleaded inadequately and, in any event, were not proximately caused by Defendants in light of the independent and intervening actions of third parties.

Judge Willis also correctly found that amendment should be denied as futile, and any belated and transparent attempt by Plaintiffs to reframe and rescue the Complaint by highlighting "new" evidence through their Opposition brief should be denied as well. Contrary to Plaintiffs' supposed "renewed request" to amend, *see* Obj. at 2, 23-25, they *never* sought leave to amend in their underlying papers, as they were required to do under Rule 15. Indeed, Plaintiffs disclaimed the need for amendment at oral argument before Judge Willis. Even if they had complied with their Rule 15 obligations, Plaintiffs' allegedly "new" allegations simply highlight more of the same predicate acts the R&R properly rejected.[2]

Defendants respectfully request that the Court adopt in full the carefully and thoroughly reasoned R&R and put to rest this latest iteration of Plaintiffs' litigation against Defendants.

## LEGAL STANDARD[3]

A district court reviews *de novo* that part of a report and recommendation "that has been properly objected to," Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C), but should adopt any other part of the disposition, "provided no clear error is apparent from the face of the record."

---

[2] Moreover, Plaintiffs rely on a 2023 Declaration by one of the trial counsel from the North Carolina Case while failing to disclose that two opposing declarations were also filed rejecting those assertions.

[3] Defendants rely on the R&R's Background section, which was "taken from [the] Complaint, Dkt. No. 1, and presumed true for the purposes of [Plaintiffs'] motion to dismiss." R&R at 7 n.5.

*Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).  Where a party's objections are "merely perfunctory responses" intended to "engage the district court in a rehashing of the same arguments set forth in the original petition," the clear error standard also applies.  *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (cleaned up).  Under either the de novo standard or review for "clear error," Plaintiffs' objections lack merit and should be rejected.  Moreover, many of the arguments raised by Plaintiffs are being advanced for the first time to this Court and are therefore waived.  *See Forman v. Artuz*, 211 F. Supp. 2d 415, 419 n.8 (S.D.N.Y. 2000).

## ARGUMENT

### I.    Plaintiffs' Claims Should Be Dismissed as Untimely

To be timely under RICO's four-year statute of limitations, Plaintiffs' claims must have accrued on or after October 13, 2018.  Judge Willis properly found untimely all of Plaintiffs' claims.  R&R at 88-95.

"The first step in the statute of limitations analysis is to determine when a plaintiff sustained the alleged injuries for which it seeks redress[ and, f]rom there, the Court is to determine when a plaintiff discovered or should have discovered each injury, which establishes when the four-year statute of limitations period begins."  *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 524 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009).  Notably, the RICO statute of limitations begins to run "even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 151-52 (2d Cir. 2012) (citing *Jakks*, 328 F. App'x at 697).

Judge Willis found it "***beyond dispute***" that Plaintiffs knew of their injuries in September 2016 when Azima "filed his own suit" (the D.C. Case) "seeking compensation for the hacking of his accounts and theft of his emails, documents, and other information."  R&R at 90 (emphasis added).  She further found that alleged injuries after 2016 were untimely because "there were

certainly sufficient 'storm warnings' that such injuries would flow from the earlier hack." *Id*.

The R&R's finding that Plaintiffs' claims accrued *at the latest* in 2016 is consistent with the finding of the only other court to address the issue. In the North Carolina Case, similar hacking-based claims brought by Azima were dismissed as untimely. *See Azima v. Del Rosso*, 2021 WL 5861282, at *3 (M.D.N.C. Dec. 10, 2021) (finding that complaint in the D.C. Case established Azima had knowledge of injuries in 2016). Plaintiffs' purported injuries here—harm to reputation, legal fees, and injuries to business in the form of lost financing and profits or disclosure of business documents—are the same as Azima pleaded in the D.C. Case. *Compare* Compl. ¶¶ 179–83, with D.C. Case Compl. (Ex. 10 to ECF No. 156) ¶¶ 33, 39, 45, 51, 57 (claiming "harm to [Azima's] person, reputation and business" from alleged hack).

Plaintiffs attempt to rescue these stale claims by invoking the "separate accrual" rule and alleging that "the hacking continued from 2015 and caused harm until at least into 2020," and that Plaintiffs sustained additional harm after 2018 because of "fraudulent litigation in the U.K., obstruction of U.S. lawsuits, a law enforcement investigation, and lost business opportunities." *See* Obj. at 22-23. That effort fails, however, where, as here, the post-2018 injuries were derivative of the 2016 injuries. *See Tech. Opportunity Grp. v. BCN Telecom, Inc.*, No. 16-CV-9576 (KMK), 2019 WL 4688628, at *6 (S.D.N.Y. Sept. 25, 2019); *see also* Compl. ¶ 5, n.2. Indeed, the "separate accrual" rule operates as an exception to the general four-year statute of limitations analysis and applies *only* where "plaintiff discovers or should have discovered a *new and independent* injury." *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 59 (2d Cir. 1998) (emphasis added). "[N]on-independent injuries will *not* cause a new limitations period to accrue." *Bingham v. Zolt*, 66 F.3d 553, 560 (2d Cir. 1995) (emphasis added).

Judge Willis carefully analyzed each of the injuries Plaintiffs allegedly sustained post-

2018—a lost loan and FFV development deal and the post-2018 legal fees—and correctly concluded that neither saves Plaintiffs' claims. R&R at 93-95.[4] As to the lost loan and development deal, courts have repeatedly held that "allegations of 'new and independent' injuries cannot depend on injuries that are derivative of the core injury sustained." *Tech. Opportunity Grp.*, 2019 WL 4688628, at *6 (quoting *Jakks*, 530 F. Supp. 2d at 524). Here, the Complaint itself "connects the lost loan to the original hack." R&R at 93 (citing Compl. ¶ 179 ("Banks have closed Azima's accounts and denied him loans citing the negative publicity brought on by the Enterprise's litigation against Azima in the U.K. based on the hacked documents.")). As to the post-2018 legal fees, Plaintiffs cannot save the Complaint by pointing to fees incurred in lawsuits that *they* brought. *See Zahl v. Kosovsky*, 2011 WL 779784, at *12 (S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 F. App'x 34 (2d Cir. 2012) (no separate accrual where injuries were "the products of Plaintiff's own initiation of proceedings in state court"). As the R&R reasoned, concluding otherwise would impermissibly "give plaintiffs the power to restart the limitations clock" and prevent claims from ever being time-barred. *Bingham*, 66 F.3d at 560. The post-2018 legal fees arise from litigation conduct that is properly construed as efforts to conceal the original hacking conduct, *see* Compl. ¶ 5, n.2, thereby rendering the fees derivative and not "independent." *In re Merrill Lynch*, 154 F.3d at 59–60.

## II.    The Complaint Does Not Adequately Plead Critical Elements of a RICO Claim

To state a RICO claim under § 1962(c), Plaintiffs must show that each Defendant engaged in "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). Judge Willis properly found that Plaintiffs did not plead cognizable predicate acts constituting a pattern of racketeering activity. R&R at 1-2.

---

[4] Because Plaintiffs do not address either category of injury, or the cases the R&R relied upon to conclude that those injuries were derivative of the original 2016 injury, Plaintiffs' perfunctory objections on this subject warrant clear error review. *Ortiz*, 558 F. Supp. 2d at 451.

### A.    The Complaint Fails to Allege Cognizable Predicate Acts

As detailed in the chart included in the R&R, Plaintiffs' alleged predicate acts are not cognizable under RICO for multiple and often overlapping reasons.  *Id.* at 40-43.  Contrary to Plaintiff's objections, the R&R did not apply the wrong standard or "improperly whittl[e] down" "hundreds of predicate acts" into "little more than a hacking scheme," Obj. at 7, 9; instead, Judge Willis carefully reviewed the allegations, liberally construed even cursory allegations, and found that the Complaint simply does not establish a viable RICO claim.

### 1.    Litigation Activities Are Not Cognizable RICO Predicate Acts

The Second Circuit has ruled that litigation activities, even "frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act."  *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018).  The R&R properly found that the litigation activities alleged in the Complaint do not constitute cognizable predicates under *Kimm*.  R&R at 43-54.

In *Kimm*, the Second Circuit affirmed dismissal of RICO claims brought by a plaintiff who had successfully defended against false and fraudulent contract and trademark claims, and then brought RICO claims against his prior adversaries and their attorneys. The plaintiff argued that the defendants' efforts to mislead the court by submitting fraudulent legal documents, including false witness declarations, amounted to "predicate acts of obstruction of justice, mail fraud, and wire fraud that constituted a pattern of racketeering activity."  *Kimm*, 884 F.3d at 104.  The Second Circuit disagreed, holding that the litigation activities could not act as a predicate offense.  *Id.* The court noted important policy considerations for its ruling, including that permitting RICO claims for litigation activities would open courts to frivolous and retaliatory lawsuits, raise serious comity issues between trial and appellate courts, erode principles underlying res judicata and collateral estoppel, and cast a chill over litigation and the concept of an open court.  *Id.*

Plaintiffs misleadingly try to cabin *Kimm* by selectively quoting from the opinion.  Obj. at

7.  But the Second Circuit did not limit the decision's reach to *only* RICO claims premised on litigation activity in connection with a *single* lawsuit; rather, the court simply declined to make a categorical ruling that litigation activity can never form the basis of a RICO action.  *Id.* at 105; *see also Butcher v. Wendt*, 975 F.3d 236, 239-42 (2d Cir. 2020) (following *Kimm* and affirming dismissal of civil RICO claim premised on alleged false statements by defendants in multiple proceedings, including arbitration, Article 75 proceeding, and federal lawsuit); *Dees v. Zurlo*, 2024 WL 2291701, at *5 (N.D.N.Y. May 21, 2024) (declining to limit *Kimm*'s holding to single-litigation matters).  The R&R was not based on any such categorical ban; Judge Willis recognized that "compelling policy arguments" supporting the "*Kimm* litigation activity bar" apply here and distinguished the few outlier cases on which Plaintiffs rely.  R&R at 44.

Plaintiffs attempt to fault Judge Willis for declining to treat the Complaint's allegations as similar to those in *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362 (S.D.N.Y. 2014), but the Complaint lacks critical features present in *Chevron*.  The scheme in *Chevron* sought to extract billions of dollars in damages through the direct corruption of the judiciary itself, via coercion and bribery of judges and their appointed neutral experts, and the secret drafting of judicial opinions and reports by the plaintiffs.  *See Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581, 601–26 (S.D.N.Y. 2011).  As the R&R noted, "because *Chevron* involved the corruption of the court's decision-making process," redress was unavailable from the same corrupted court, thereby eliminating an important reason why litigation misconduct does not form RICO predicates.  R&R at 50-51; *see also, e.g., Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 72 (E.D.N.Y. 2020) (recognizing that RICO claim should not substitute for motions for sanctions, preclusion, or other relief for fraud on the court).  The R&R also distinguished *Chevron* because legal fees incurred by

the plaintiff were primarily *defensive* in nature;[5] here, Plaintiffs seek to recover fees for *offensive* litigation that *they* initiated.  R&R at 49 & n.7.[6]

### 2.    The Alleged Acts of Concealment Are Not RICO Predicate Acts

As set forth in the R&R, many activities alleged in the Complaint do not constitute RICO predicate acts because they, as Plaintiffs even alleged, served merely to conceal the original hacking scheme and therefore did not cause Plaintiffs "new and independent injuries" separate from the original harms caused by the hacking scheme.  R&R at 54; *In re Merrill Lynch*, 154 F.3d at 59-60.  The Supreme Court has recognized "a vital distinction . . . between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime."  R&R at 55 (citing *Grunewald v. United States*, 353 U.S. 391, 405 (1957)).  The former can constitute a RICO predicate while the latter cannot.  *Compare City of New York v. Venkataram*, 396 F. App'x 722, 725 (2d Cir. 2010) (concluding alleged acts of concealment—filing fraudulent invoices to induce undeserved payments without being caught—were "essential" to overall scheme

---

[5] To the extent Azima claims harm from legal fees incurred as a result of the U.K. Case, he has already been awarded fees in those proceedings and cannot seek a double recovery here.

[6] Azima's claims also are distinguishable from isolated cases where RICO claims have been permitted to proceed, like those in *Carroll v. U.S. Equities Corp.*, 2020 WL 11563716 (N.D.N.Y. Nov. 30, 2020), and *Sykes v. Mel Harris & Assocs.*, 757 F. Supp. 2d 413 (S.D.N.Y. 2010).  The conduct in *Carroll* included filing thousands of cases, *see* 2020 WL 11563716, at *9, while *Sykes* involved filing up to 133 per day, among other abusive tactics which went far beyond what is alleged here, *see* 757 F. Supp. 2d at 419–20.  Courts have recognized the limited reach of *Carroll* and *Sykes* based on their extraordinary facts well beyond normal sanctionable litigation activities. *See, e.g.*, *Dees*, 2024 WL 2291701, at *7; *Black v. Ganieva*, 2022 WL 2374514, at *23 (S.D.N.Y. June 30, 2022) (noting that "rarely are such abusive litigation tactics or corruption successfully pled"); *Rajaratnam*, 449 F. Supp. 3d at 71.  *Cf. State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 2024 U.S. App. LEXIS 26888, at *75 & n.4 (2d Cir. Oct. 24, 2024) (noting "unusual circumstances" present and distinguishing *Kimm* when affirming injunction issued in RICO action based on scheme to recover on fraudulent insurance claims, including by initiating hundreds of baseless state court actions).

and not designed solely to conceal after the fact), *with Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 444 (S.D.N.Y. 2019) (acts of concealment following hacking and release of emails were only "done allegedly to cover the defendants' tracks" and did not qualify as RICO predicates). To be "in furtherance" of a crime's objectives, the activity must be essential to scheme's completion. *Venkataram*, 396 F. App'x at 725.

Plaintiffs argue that Judge Willis erred by "ignoring the ongoing nature of the scheme and the harm that continued into 2020." Obj. at 18. But the continuing scheme simply involved alleged efforts to cover up the previous hacking—namely, the fabrication and destruction of evidence in order to obstruct the D.C. Case, the "perjury school," and the effort to pay for a witness's silence— all of which were, by Plaintiffs' own admission, designed to conceal the scheme's earlier crimes, *i.e.*, hacking. Compl. at ¶¶ 84-86, 109-111, 173-74. Judge Willis properly found these acts of concealment could not constitute RICO predicate acts. R&R at 54-57.

### 3.    The Alleged Acts of Witness Tampering Are Not Predicates

Judge Willis correctly determined that Plaintiffs' allegations of witness tampering amounted to non-actionable concealment and relied on the same analysis employed in *Democratic National Committee* in rejecting virtually the identical argument raised here. R&R at 57-61, 65. The plaintiff in that case alleged, as Plaintiffs do here, that an "enterprise" hacked and released its emails, 392 F. Supp. 3d at 417–18, and later "attempted to cover up" its activities "through criminal obstruction of justice and witness tampering," *id.* at 424–25. The court held that the alleged witness tampering did not qualify as a RICO predicate because "'acts of concealment done after the central objectives of the conspiracy have been attained, for the purpose of covering up after the crime,' are not considered part of the conspiracy." *Id.* at 444. The same result follows here, where the alleged harm—the hacking of Azima—"had already taken place before the alleged acts of concealment." *Id.* at 444 n.29.

11

Plaintiffs nevertheless point to allegations that Del Rosso bribed a potential witness—Paul Robinson—to "[obstruct] both the Stokoe Proceeding in the U.K. and potential litigation in the US," Compl. ¶ 172, and that Defendants intimidated and threatened Aditya Jain in an attempt to prevent him from providing truthful testimony in the North Carolina Case. Even setting aside the fact that this conduct is non-actionable concealment activity, neither of these incidents rises to the level of witness tampering.

With respect to the Robinson allegations, the R&R correctly found that because foreign court proceedings do not meet the definition of "official proceeding" under the witness tampering statute, and because the alleged bribery took place before the § 1782 Proceedings had been initiated in the U.S., these allegations to do not constitute witness tampering in violation of 18 U.S.C. § 1512. R&R at 57-61. Objecting to that conclusion, Plaintiffs cite *Arthur Andersen LLP v. United States*, 544 U.S. 696, 707 (2005), and argue that a federal court proceeding need only be "foreseeable" to sustain a witness tampering charge. Obj. at 18. But Plaintiffs overstate the Court's holding in that case. There, the Court held a person does not run afoul of the statute "when he does not have in contemplation any *particular* official proceeding in which" documents or testimony "might be material." *Arthur Andersen*, 544 U.S. at 708 (emphasis added). Beyond the vague allegations that Defendants bribed Robinson because they wanted the Stokoe Proceedings to "'stay over there' in the U.K.," Compl. ¶ 174, and that they intended to obstruct "potential litigation" in the U.S., *id.* ¶ 172, Plaintiffs do not point to any "particular" federal court proceeding that Defendants contemplated and sought to obstruct.[7] Thus, Plaintiffs' allegations with respect to

---

[7] In the North Carolina Case, Azima's allegations relating to Robinson, even when coupled with a declaration from Robinson, were insufficient to establish that *any* crime or fraud had occurred for the purposes of entitling Azima to otherwise privileged material. *See Azima v. Dechert, LLP*, Case No. 1:22-cv-8728 (S.D.N.Y.), ECF No. 199, Ex. A (North Carolina Special Master Decision) at 29-30.

Robinson are insufficient to establish a predicate act based on witness tampering.[8]

Similarly, the R&R also properly rejected Plaintiffs' allegations with respect to the alleged intimidation of Jain because that alleged tampering "did not further any scheme aside from concealing the hack." R&R at 60. Plaintiffs object and argue that this case is akin to the allegations in *Chevron* and *Venkataram*, in that "the Complaint alleges Defendants threatened Jain to block his truthful testimony as part of the plan to harm Plaintiffs." Obj at 13. As the R&R correctly found, *Chevron* and *Venkataram* involved allegations unlike here, where defendants were alleged to have falsified evidence or tampered with witnesses in order to obtain a judgment or payment under false pretenses. *See Chevron*, 871 F. Supp. 2d at 252; *Venkataram*, 396 F. App'x at 725-26. Here, however, Plaintiffs allege only that Defendants "warned Jain not to reveal the hacker's role in the Enterprise" because they "fear[ed] that Jain would expose the truth about the hacking and Del Rosso's involvement and the Enterprise's illegal conduct" in the context of the North Carolina Case. Compl. ¶¶ 155, 218. Thus, unlike *Chevron* and *Venkataram*, Plaintiffs' allegations make clear that the alleged witness tampering was carried out to conceal the hacking scheme and stop *Azima* from obtaining a monetary award ***from Defendants***, rather than for the purpose of facilitating such an award from Azima ***to Defendants***.

### 4. The Provision of Authentic Documents and Accurate Information to Law Enforcement Is Not Cognizable under RICO

Plaintiffs also argue that the "Complaint adequately alleges obstruction and the improper manipulation of numerous law enforcement investigations," Obj. at 11, but it does nothing of the sort. The referenced allegations describe an effort to convince U.S. law enforcement agencies to "launch" a criminal investigation of Azima through the provision of selected hacked documents

---

[8] Although the R&R did not specifically address Plaintiffs' allegations concerning witness tampering with respect to Grayson, *see* Compl. ¶ 174, those allegations fail for the same reason.

and a "dossier" prepared by Dechert lawyers and in a meeting with an FBI agent in Houston. Compl. ¶¶ 76-79. Plaintiffs again rely on *Chevron*, which involved allegations that a RICO defendant "induc[ed] U.S. public officials to investigate . . . on the basis of *false* claims," 871 F. Supp. 2d at 236-37 (emphasis). Here, however, the Complaint nowhere alleges that any documents or information allegedly provided to law enforcement were false, inauthentic, or even inaccurate.

Instead, Plaintiffs allege only that "the RICO Conspirators did not disclose to U.S. law enforcement that they had obtained Azima's data illegally," and that he was forced "to incur significant legal and professional fees responding to document requests and subpoenas." Compl. ¶¶ 76, 79. But providing authentic materials and reports and information regarding those materials—even if the product of a hack—is not unlawful. *Reich v. Lopez*, 858 F.3d 55, 60 (2d Cir. 2017) (pattern of racketeering activity "does not exist when predicate acts are in furtherance of endeavors that are not inherently unlawful" (alterations omitted)). *See also* 3/11/24 Hr'g Tr. at 156. Plaintiffs' theory would allow a RICO suit based on submission of truthful information to law enforcement that ultimately does not result in a criminal prosecution, a wholly unwarranted and potentially harmful expansion of RICO liability. *See also* 3/11/24 Hr'g Tr. 155-56.

### 5. Post-2016 Money Laundering Did Not Cause New Injury

Judge Willis correctly concluded that Azima was aware of his alleged hacking injuries by the time he commenced the D.C. Case in 2016, R&R at 90, and thus any alleged related acts of money laundering that occurred before October 13, 2018 (*i.e.*, the start of the limitations period) would be untimely. The R&R further concluded that any post-October 2018 payments allegedly intended to conceal the original hacking are similarly non-actionable unless they caused some independent harm during the limitations period. *Id.*; *In re Merrill Lynch,* 154 F.3d at 59–60; *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 444 & n.29.

In their Objections, Plaintiffs mention in passing that 181 out of the 413 alleged acts of

money laundering occurred after October 13, 2018, but discuss only three examples of payments that allegedly caused "new and independent" injuries separate from the initial hacking and subsequent concealment.  Obj. at 19-20. Bizarrely, two of the three examples occurred *before* October 13, 2018 (in December 2015 and January 2016) and are thus untimely.  The third example concerns payments to Defendant KARV in February 2020, when the Complaint alleges that Defendant Handjani instructed hackers to obtain information about how Azima was financing his litigation efforts, which were "frustrating the Enterprise's plan to inflict financial harm on [Azima] through litigation."  Compl. ¶ 163; Obj. at 14.  But Plaintiffs do not explain how payments alleged to facilitate those efforts constitute a "new and independent injury."  Rather, the Complaint suggests that this hacking was conducted in an attempt to stop Azima from discovering the original hacking through his ongoing affirmative litigation efforts.  Nor do any of the specific February 2020 payments to KARV detailed in Exhibit A to the Complaint identify such a new and independent injury, aside from the conclusory allegations that the payments alone, without any supporting evidence, were intended to "promote unlawful Enterprise activities." *See* Compl., Ex. A, rows 334, 340.  Having failed to identify a single act of money laundering post-October 13, 2018 that caused an injury independent of concealment of the initial hacking, Plaintiffs have not met their burden to allege a timely RICO predicate based on money laundering.

### 6.    The Allegations Do Not Constitute Wire and Mail Fraud Predicates

Judge Willis properly found that Plaintiffs failed to allege actionable mail or wire fraud predicates.  As an initial matter, less than half of the 173 mail and wire fraud predicates alleged in the Complaint took place after October 2018; the others are untimely.  *See* R&R at 66-70.

With respect to the post-October 2018 predicates, the R&R correctly concluded that Plaintiffs failed to plead these predicates with particularity, as required under Rule 9(b).  Plaintiffs argue that they have met the particularity standard, pointing to the chart attached in Exhibit B to

the Complaint, which they contend must be read "in conjunction" with all other allegations.  But as the R&R noted, Exhibit B offers no specificity as to how the cited communications furthered the goals of the alleged scheme, nor does it identify which of those goals each communication sought to further.  The allegations lack the requisite particularity.

In any event, as set forth in the motion to dismiss briefing, *see, e.g.*, Mot. at 31-32; Reply at 24, the vast majority of Plaintiffs' mail and wire fraud allegations relate to the initial hacking and allegedly false statements to courts intended to conceal earlier wrongdoing, rather than attempts to obtain money or property.[9]  *See, e.g.*, Compl. ¶ 174.  Despite Plaintiffs' claim to the contrary, such allegations are untimely, and to the extent they could be argued to involve the non-incidental obtaining of money or property (either in the form of the U.K. judgment or Azima's legal fees), they constitute non-actionable litigation misconduct and/or acts of concealment.  *See supra* at 8-11.  Thus, even if Plaintiffs met their burden to plead the post-October 2018 mail and wire fraud predicates with particularity, Judge Willis correctly found that their allegations would still be insufficient for purposes of establishing an actionable RICO predicate because they fail to allege—as they must—that any of communications were made with the goal of obtaining money or property.  *See Kelly v. United States*, 590 U.S. 391, 391 (2020) (holding that in order to establish mail or wire fraud, object of scheme must be to obtain money or property; allegations that money or property were obtained incidental to another purpose are insufficient).

---

[9] Mail and wire fraud schemes involve material misrepresentations made by a defendant that a plaintiff relies upon to provide their money or property to the defendants.  *See* 18 U.S.C. §§ 1341, 1343, and 1344; *see also El Omari v. Buchanan*, 2021 U.S. Dist. LEXIS 236933, at *13 (S.D.N.Y. Dec. 10, 2021) (stating that "'property' defrauded in a mail or wire fraud claim must be property in the victim's hands"), *aff'd*, 2022 U.S. App. LEXIS 26799, at *1 (2d Cir. Sept. 26, 2022). The best Plaintiffs can allege is that Azima voluntarily paid ***his*** lawyers' fees to litigate and represent him in connection with truthful information provided to law enforcement and litigation he voluntarily decided to pursue.   His mail and wire fraud theory is, respectfully, brazen but silly.

Once such allegations are excluded, Plaintiffs are left straining to argue that the alleged mail and wire fraud predicates were committed by a RICO enterprise to obtain money from one of its alleged members.  Judge Willis acknowledged that courts (in rare circumstances) do not require that the party from whom money or property is obtained be the same as the party sought to be deceived, *see United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016), but she also properly distinguished the instant matter from *Greenberg*.  Specifically, she found that the party purportedly deprived of money or property here (RAK) was aligned with the interests of the allegedly deceiving parties (Defendants) and, therefore, any loss of money or property was merely incidental to the alleged scheme.  *See Kelly*, 590 U.S. at 391.  Malicious acts using the mail or wires do not become actionable RICO predicates simply because a party was paid for its services by another member of the enterprise.  The cases Plaintiffs cite are inapposite, because they involve alleged schemes to obtain money or property from third parties not part of the enterprise. *See Guzman v. Hecht*, No. 18-cv-3947, 2019 WL 1315888, at *5 (S.D.N.Y. Mar. 22, 2019) (involving individual plaintiffs deceived by defendants who were paid for fraudulent immigration advice); *United States v. Ng*, 578 F. App'x 38 (2d Cir. 2014) (addressing charges involving employers who paid salaries of employees who cheated on licensing exams and defendants who facilitated cheating).[10]

**B.    Plaintiffs Fail to Allege a Pattern of Racketeering Activity**

Judge Willis found that Plaintiffs failed to allege a pattern of racketeering activity, concluding that the Complaint does not allege a threat of continued criminal activity nor that the predicate acts were sufficiently related.  R&R at 70-77; *see First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004).  Those findings should be adopted.

---

[10]  In the North Carolina Case, Azima's mail and wire fraud allegations were insufficient to establish that *any* crime or fraud had occurred for the purposes of entitling Azima to otherwise privileged material. *See* ECF No. 199, Ex. A (North Carolina Special Master Decision) at 29-30; *see also id.*, Ex. B at 74-75 (skeptical comments from district court during argument on appeal).

To establish a threat of continued criminal activity, Plaintiffs must allege either an open-ended pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (*i.e.,* past criminal conduct extending over a substantial time). *See Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019). The R&R found that the Complaint alleges neither. R&R at 71-76. But for a conclusory assertion in a footnote, Plaintiffs do not challenge these findings. *See* Obj. at 23 n.14. Accordingly, the Court should review these findings for clear error, *see Lewis*, 573 F. Supp. 2d at 811, which does not exist here.

The Complaint does not allege a pattern of open-ended racketeering activity because there are no allegations that Defendants—an international law firm, lawyers, consultants, and investigators—"regularly operate" through the commission of RICO predicates, nor is their conduct inherently unlawful, *Grace Int'l*, 797 F. App'x at 606, or indicative of a threat of continued criminal activity, *see Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 243 (2d Cir. 1999). Nor do Plaintiffs adequately allege a pattern of closed-ended racketeering activity because most of the conduct alleged in the Complaint does not constitute RICO predicates and, therefore, the allegations set forth at best a "single scheme" with one victim and acts to conceal that scheme. *See Satinwood, Inc.*, 385 F.3d at 18-82; *Grace Int'l*, 797 F. App'x at 606.

Plaintiffs have also failed to show relatedness.[11] The relatedness element requires that predicate acts be "related to each other ('horizontal' relatedness), and . . . related to the enterprise

---

[11] As an initial matter, Plaintiffs create an incorrect standard for the relatedness element. *See* Obj. at 16 ("To dismiss, the Court would have to find no two predicate acts are related." (citing *United States v. Scott*, 681 F. App'x 89, 95 (2d Cir. 2017)). *Scott* is simply irrelevant: that case addresses a criminal case involving convictions under 18 U.S.C. § 924(c), "where the government [must] prove[] (1) the commission of at least two acts of racketeering and (2) at least two of those acts qualify as "'crime[s] of violence.'" *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009).

('vertical' relatedness)." *United States v. Minicone*, 960 F.2d 1099, 1106 (2d Cir. 1992). Plaintiffs argue that the R&R "misread[s]" the unlawful purpose alleged, asserting that "the initial hacking was not the Enterprise's purpose" and that its "broader goal . . . was to harm Azima and other victims financially and reputationally." Obj. at 17. But as Judge Willis correctly found, and to which Plaintiffs offer no detailed objection, "many of the predicate acts Plaintiffs allege could *only* further the purpose of concealing the original hacking." R&R at 77-78 (citing *e.g.*, Compl. ¶¶ 32–34 (allegations of money laundering); *id.* ¶¶ 154–55 (witness intimidation in proceedings Azima initiated)). The alleged litigation misconduct in *defensive* proceedings also is not related to injuring Azima or the corporate Plaintiffs. *See infra* at 22-23. And the enterprise's provision of indisputably authentic documents belonging to Azima to law enforcement authorities can hardly be deemed related to an unlawful purpose to destroy Plaintiffs either financially or reputationally.

## III.    Plaintiffs Do Not Allege a Cognizable RICO Injury or Proximate Cause

To satisfy RICO's statutory standing requirements, a plaintiff must demonstrate, among other things, "injury to business or property" and "causation of the injury by the violation." *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (per curiam). To establish causation, a plaintiff must show that the RICO violation proximately caused his injury, meaning some "direct relation between the injury asserted and the injurious conduct alleged." *Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132, 140 (2d Cir. 2018) (quotations omitted). Here, Plaintiffs' alleged "injury to business or property" rests entirely on two claims: "[1] extensive damage to Azima's reputation" that "destroy[ed] his business ventures,"[12] and "[2] substantial

---

[12] Judge Willis assumed, without deciding, that reputational injuries were cognizable under RICO, acknowledging the split of authority Defendants cited in their motion, ECF No. 156 at 33, and still recommended dismissal because the injuries were not pleaded with sufficient particularity. *See* R&R at 80-81. The Court need not delve into that debate either since Plaintiffs' deficient pleading is alone a sufficient basis for dismissal.

debts associated with legal fees." *See* Compl. ¶¶ 179-83, 229.  Judge Willis correctly found that Plaintiffs lacked RICO standing as to both injury and proximate causation.  R&R at 81-88.

A.    **Plaintiffs Insufficiently Allege Injury Due To Reputational Harm**

Plaintiffs point to only two alleged "specific, concrete examples of harm" attributable to Defendants' alleged RICO violations.  Obj. at 18 (citing Compl. ¶¶ 179-80).  First, the Complaint alleges that "[b]anks have closed Azima's accounts and denied him loans citing the negative publicity brought on by the Enterprise's litigation against Azima in the UK based on the hacked documents."  Compl. ¶ 179; *see also id.* ¶ 229.  Second, the Complaint alleges that Plaintiff FFV Development (in which Azima holds a 50% stake, and which wholly owns Plaintiffs 3260 Main and FFV W39) lost potential financing in January 2019 "due to the negative publicity instigated by the Enterprise that the bank found when conducting its due diligence," and was unable to secure alternative financing, resulting in $15 million in lost profits.  *Id.* ¶ 180.  These allegations are insufficient to establish RICO standing.

First, Plaintiffs assert that their barebones allegations are "all that is needed at this stage," citing *Reich v. Lopez*, 38 F. Supp. 3d 436, 450 (S.D.N.Y. 2014), *aff'd*, 858 F.3d 55 (2d Cir. 2017).  Obj. at 24.  But the *Reich* complaint alleged a wire fraud predicate involving "two specific phone calls, both containing intentionally false information, made to two specific clients . . . in order to induce those clients to cease all business with Plaintiffs, thereby ending the combined $40,000 per month paid to Plaintiffs."  *Reich*, 38 F. Supp. 3d at 350.  In highlighting the detailed nature of the allegations, the *Reich* court explained that "[c]ourts commonly differentiate in this fashion between insufficient claims of general reputational injury and sufficient claims of actual economic losses stemming from a harmed reputation."  *Id.* (collecting cases).  Here, Plaintiffs fail to allege any non-speculative, concrete injuries proximately caused by Defendants that satisfy the level of specificity courts require.  *See Kerik v. Tacopina*, 64 F. Supp. 3d 542, 560 (S.D.N.Y. 2014) (claim

20

of "lost business opportunity" was insufficient because it was "not pleaded with particularity" under RICO); *Prichard v. 164 Ludlow Corp.*, 390 F. Supp. 2d 408, 411 n.5 (S.D.N.Y. 2005) (same).

Second, Plaintiffs cannot establish proximate cause for purportedly lost financial services because their banks' decisions to close accounts, cancel credit cards, and deny loans were "independent actions of third and even fourth parties."  *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 15 (2010); *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994) ("[W]hen factors other than the defendant's fraud are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions.").  Plaintiffs' reliance on *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), is misplaced where, as here, the alleged injury stems from the independent actions of third parties and the "causal relationship" between the alleged racketeering and independent actions "is intricate and uncertain." *Empire Merchants*, 902 F.3d at 142 (distinguishing *Bridges*); *Petroff Amshen LLP v. Alfa Rehab PT PC*, 2022 WL 480475, at *3 (2d Cir. Feb. 17, 2022) ("The connection from Defendants' conduct to [plaintiff's] reputational harm to consequential damages in the form of lost business is too attenuated to satisfy the proximate cause requirement.").

Third, with respect to the corporate Plaintiffs, the Complaint fails to allege they were the "intended targets of the RICO violations."  *J.T. v. de Blasio*, 500 F. Supp. 3d 137, 166 (S.D.N.Y. 2020).  In *J.T.*, the court held that the RICO predicate (false Medicaid claims) was not perpetrated on the plaintiffs but instead on Medicaid, such that any claim for relief resulting from those frauds belongs to the government, not those plaintiffs.  *Id.*  Relying on *J.T.*, Judge Willis concluded that the alleged scheme "targeted Azima," not the "Corporate Plaintiffs [who] appear to have merely sustained collateral damage." R&R at 88.  Plaintiffs make no effort to distinguish *J.T.* from this case, and the mere conclusory allegations that "[o]ne of the objectives of the Enterprise's scheme

to defraud was to cause economic damages to Azima and his businesses," Compl. ¶¶ 59, 61, 82, 181, are insufficient to adequately plead that the purported enterprise or any RICO predicate specifically targeted the corporate Plaintiffs. *See J.T.*, 500 F. Supp. 3d at 166; *In re American Express Co. S'holder Litig.*, 39 F.3d 395, 400 n.3 (2d Cir. 1994) (complaint must do more than "cursorily assert that [plaintiff] was a victim of the RICO defendants' acts").

### B. Plaintiffs' Legal Fees Are Not Cognizable RICO Injuries

Legal fees are cognizable only "so long as they were proximately caused by a RICO violation." *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 152 (S.D.N.Y. 2014) (quoting *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1167 (2d Cir. 1993)). Here, Plaintiffs' legal fees stem from alleged litigation misconduct that, as set forth above, cannot form the basis of a RICO predicate. *See Black v. Ganieva*, 619 F. Supp. 3d 309, 347 (S.D.N.Y. 2022), *aff'd*, No. 22-1524-CV, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). But even assuming *arguendo* that a predicate had been alleged, Judge Willis properly found that "to permit Plaintiffs to recover for legal fees . . . in actions *they* initiated" would grant RICO "too long a reach" and render meaningless the statute's limitation to injury to "business or property" because "anything leading a RICO plaintiff to sue to protect their interests would necessarily result in damage to 'business or property.'" R&R at 84.

In reaching her finding on legal fees, Judge Willis surveyed key cases in which a plaintiff recovered legal fees in a RICO action and distinguished them because Plaintiffs' claims for damages here lack the necessary "tight nexus between the RICO plaintiff's need to expend legal fees defensively and the RICO scheme." *Id.* Plaintiffs claim error, arguing that the R&R relies on a "false dichotomy" between a RICO plaintiff's defensive and offensive litigation. Obj. at 25. That argument is inaccurate, *see Nat.-Immunogenics Corp. v. Newport Trial Grp.*, 2020 WL 7263544, at *6 (C.D. Cal. Nov. 23, 2020), and in any event, ignores the inherent logic of the well-settled rule that legal fees are only cognizable when proximately caused by the RICO predicate.

*See Bankers Trust Co.*, 859 F.2d at 1099, 1105; *Sykes*, 757 F. Supp. 2d at 427.

Plaintiffs resort to mischaracterizing these cases to assert that the litigation activities at issue were "not purely defensive." Obj. at 25. But each case makes clear that the RICO plaintiffs incurred legal costs in responding to or defending against the RICO schemes. The fact that part of a defense included filing an affirmative motion, for example, does not change the defensive nature of the underlying litigation. *Compare Bankers Trust Co.*, 859 F.2d at 1099, 1105 (fees incurred defending against fraudulent bankruptcy petition); *Chevron*, 871 F. Supp. 2d at 251-53 (legal fees incurred in "responding to defendants' allegedly fraudulent statements to U.S. courts of Section 1782 proceedings"), *with Stochastic Decisions*, 995 F.2d at 1166 (fees incurred by plaintiff seeking to (offensively) recover unpaid insurance premiums were *not* RICO damages). As noted in the R&R, if legal fees from Plaintiffs' affirmative litigation were sufficient to show harm to "business or property," then Plaintiffs could transform *any injury* into a basis for a RICO claim simply through the filing of litigation seeking redress for that injury. R&R at 84. Here, "Azima brought the DC suit, brought the North Carolina suit, and brought the § 1782 proceedings in New York, North Carolina, and Florida seeking discovery in support of counterclaims he brought in the U.K."[13] *Id*.

**IV.    Because Any Amendment Would Be Futile, The Court Should Deny Leave To Amend**

Magistrate Judge Willis properly found that leave to amend should be denied because "the

---

[13] Any legal fees Plaintiffs incurred from defending against law enforcement investigations, *see* Obj. at 26, suffer from the same proximate causation issues described below, namely that there is a break in the causal chain. Only the FBI, not Defendants, could have initiated these investigations. Moreover, to the extent Plaintiffs argue that "Azima sought foreign evidence under § 1782 to defend himself in the U.K.," *id.* at 26, that assertion is belied by Plaintiffs' own allegations that the § 1782 Proceedings were brought to aid Azima's counterclaims, which derived from offensive litigation brought in the U.S. but transferred to the U.K. *See, e.g.*, Compl. ¶¶ 127-129 (foreign discovery was "relevant to Azima's pending retrial of his claims in the UK Proceeding").

problems" with Plaintiffs' claims "are substantive, not technical [so] amendment would be futile." R&R at 112 (quoting *JRLDDS, LLC v. Hartford Fin. Servs. Grp. Inc.*, 2022 WL 3018152, at *3 (S.D.N.Y. July 29, 2022)). Plaintiffs argue that they have obtained "substantial additional evidence," and offer a bullet-point list of "new allegations" to address the R&R's concerns. Obj. at 24-25. But the proposed new allegations do not solve Plaintiffs' deficiencies.

Plaintiffs disingenuously state they "requested" leave to amend and are "renewing" it here. *See* Obj. at 2. They did not do so. *See* ECF Nos. 161-67.[14] On the other hand, Defendants did argue that the Complaint should be dismissed with prejudice because any amendment could not cure its pleading deficiencies. *See* ECF No. 156 at 4, 22, 40. Plaintiffs failed to respond to these assertions. *See* ECF No. 167. Failure to respond to that argument alone warrants finding that Plaintiffs have waived their right to plead additional facts not mentioned until now. *Reece v. Marc Ecko Unltd.*, 2011 WL 4069637, at *1 (S.D.N.Y. Sept. 9, 2011).

Further, rather than complying with S.D.N.Y. Local Civil Rule 15.1, Plaintiffs belatedly use the Opposition brief to reframe the narrative to focus the case on the remaining Defendants (*i.e.*, remaining Defendant Handjani has suddenly, without any additional facts, become a "mastermind" and a "ringleader"), to identify purportedly "new" allegations in bullet point format, *see* Obj. at 24 & n.22, and curiously to submit a July 2023 Declaration from their own counsel.

Plaintiffs' reliance on the Declaration is inappropriate for consideration here. Not only is it full of hearsay, which may not be considered in assessing the propriety of amendment, *Barker v. Rokosz*, 2021 WL 1062246, at *2 (E.D.N.Y. Mar. 18, 2021), but Plaintiffs do not (and cannot)

---

[14] At argument before Judge Willis, Plaintiffs represented they "don't want or need to amend the complaint," and offered only that they *could* "add much more color and detail" about Defendants' meetings with FBI agents. *See* ECF No. 192 at 43:21-44:9; *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (no abuse of discretion in denying leave to amend never requested).

explain why they waited more than a year after the Declaration was filed in North Carolina to seek amendment on this basis.[15]

Regardless, the additional allegations contained in the Declaration and the Objections do not cure the deficiencies identified by Judge Willis. None of these "new" allegations represents truly new information or RICO predicates. They are simply more of the same. *Compare* Obj. at 24-25, *with* Compl. ¶¶ 51-52, 63, 67-68, 76-79, 96, 120-26, 153-54, 221; *see also Kimm*, 884 F.3d at 105 (affirming denial of leave to amend where proposed amended complaint "only added more" predicate acts that were "deficient as a matter of law"). The Court should deny leave to amend based on futility, undue delay, and bad faith. *See Zahra v. Town of Southold*, 48 F.3d 674, 685-86 (2d Cir. 1995) (affirming denial of leave to amend when requested more than two years after filing complaint); *Bank v. Spark Energy, LLC*, 2020 U.S. Dist. LEXIS 219352, at *6-*9 (E.D.N.Y. Nov. 23, 2020) (court may find bad faith under Rule 15(a) where a party deliberately "waited to see 'how [they] would fare on the prior motion to dismiss'" before requesting leave to amend).

Dated: December 6, 2024
　　　　New York, New York

/s/ Daniel Filor
Daniel Filor, Esq.
**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
Tel: (212) 801-6758
Fax: (212) 801-6400
Filord@gtlaw.com

David G. Barger (admitted pro hac vice)
Michael R. Sklaire (admitted pro hac vice)
**GREENBERG TRAURIG, LLP**
1750 Tysons Boulevard, Suite 1000

/s/ Samuel Rosenthal
Samuel Rosenthal, Esq.
Lisa Herbert, Esq.
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
330 Madison Avenue, 27th Floor
New York, New York 10017
sam.rosenthal@nelsonmullins.com
lisa.herbert@nelsonmullins.com
Tel: 202-689-2915
Fax: 202-689-2860

---

[15] Plaintiffs fail to mention that two declarations refuting the Declaration were filed within weeks of its submission in July 2023 (and described proposed payments to witnesses). *See Azima v. Del Rosso*, Case No. 1:20-cv-00954 (M.D.N.C.), ECF No. 259, at 1-11; ECF No. 260, at 11-13.

McLean, Virginia 22102
Tel: (703) 749-1300
Fax: (703) 749-1301
David.Barger@gtlaw.com
Michael.Sklaire@gtlaw.com

*Counsel for Defendants Amir Handjani,*
*Andrew Frank and KARV Communications*

*Counsel for Nicholas Del Rosso and Vital*
*Management*

26